**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Seth M. Marnin
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg Shavitz (admitted *pro hac vice*)
Keith Stern (admitted *pro hac vice*)
Hal B. Anderson (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 4-4
Boca Raton, Florida 33432
Telephone: (456) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KYLE PIPPINS and JAMIE SCHINDLER,
individually and on behalf of all others similarly
situated,

                        Plaintiffs,

     v.

KPMG LLP,

                        Defendant.

**No. 11 Civ. 0377 (CM)**

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA

## TABLE OF CONTENTS

Table of Authorities .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

PROCEDURAL HISTORY.......................................................................................... 2

THE PARTIES.............................................................................................................. 2

    A.    KPMG .............................................................................................. 2

    B.    Plaintiffs .......................................................................................... 3

    C.    Opt-In Plaintiffs ............................................................................. 3

    D.    Other Declarants ............................................................................ 3

STATEMENT OF FACTS ........................................................................................... 3

    A.    KPMG Centrally Controls, Trains, and Supervises Its Audit Associates to Maintain Uniformity................................................... 3

    B.    KPMG's Compensation of Audit Associates Is Uniform. ............ 5

    C.    All Audit Associates Have to Meet the Same Minimal Job Qualifications. .............. 5

    D.    All Audit Associates Have the Same Primary Job Duties. .......... 6

ARGUMENT ................................................................................................................ 7

    A.    Court-Authorized Notice Is Fair and Efficient, and Advances the FLSA's Goals. ..... 7

    B.    Expeditious Notice Is Necessary to Protect the Rights of Audit Associates. ............. 8

    C.    Plaintiffs Exceed the Low Burden for Conditional Certification. ............................ 8

    D.    The Court Should Approve Plaintiffs' Proposed Notice. ........... 18

CONCLUSION............................................................................................................ 18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aros v. United Rentals, Inc.*,
269 F.R.D. 176 (D. Conn. 2010)..........................................................................................16

*Braunstein v. E. Photo. Labs., Inc.*,
600 F.2d 335 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979)..........................................7, 8

*Cano v. Four M Food*,
No. 08 Civ. 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009)..............................................17

*Cohen v. Gerson Lehrman Grp., Inc.*,
686 F. Supp. 2d 317 (S.D.N.Y. 2010).............................................................................9, 13, 14

*Creten-Miller v. Westlake Hardware, Inc.*,
No. 08 Civ. 2351, 2009 WL 2058734 (D. Kan. July 15, 2009)...............................................15

*Cruz v. Hook-Superx, LLC*,
09 Civ. 7717, 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010) ............................................10, 14

*Cuzco v. Orion Builders, Inc.*,
477 F. Supp. 2d 628 (S.D.N.Y. 2007)......................................................................................8

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................................... passim

*Davis v. JP Morgan Chase & Co.*,
587 F.3d 529 (2d Cir. 2009)....................................................................................................12

*Fiore v. Goodyear Tire & Rubber Co.*,
No. 2:09-cv-843-FtM-29SPC, 2011 WL 867043 (M.D. Fla. 2011) .......................................15

*Francis v. A & E Stores, Inc.*,
No. 06 Civ. 1638, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) .......................................9, 14

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
282 F. Supp. 2d 101 (S.D.N.Y. 2003)....................................................................................14

*Hallissey v. Am. Online, Inc.*,
No. 99 Civ. 3785, 2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ............................................11

*Hoffmann-La Roche v. Sperling*,
493 U.S. 165 (1989)...........................................................................................................8, 18

*Hoffmann v. Sbarro, Inc.*,
  982 F. Supp. 249 (S.D.N.Y. 1997).........................................................................8

*Holbrook v. Smith & Hawken, Ltd.*,
  246 F.R.D. 103 (D. Conn. 2007).............................................................11, 15, 17

*Indergit v. Rite Aid Corp.*,
  Nos. 08 Civ. 9361 & 11364, 2010 WL 2465488 (S.D.N.Y. June 16, 2010) .................. passim

*Jackson v. Papa John's USA, Inc.*,
  No. 08 Civ. 2791, 2009 WL 385580 (N.D. Ohio Feb. 13, 2009) ...........................................15

*Jacobsen v. Stop & Shop Supermarket Co.*,
  No. 02 Civ. 5915 (DLC), 2003 WL 21136308 (S.D.N.Y. May 15, 2003) ...........................14

*Lynch v. United Servs. Auto. Ass'n*,
  491 F. Supp. 2d 357 (S.D.N.Y. 2007)................................................................8, 10

*Masson v. Ecolab, Inc.*,
  No. 04-CV-4488, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005).............................................9

*Morgan v. Family Dollar Stores*,
  551 F.3d 1233 (11th Cir. 2008) ................................................................9, 11, 14, 17

*Morrison v. Ocean State Jobbers, Inc.*,
  No. 09 Civ. 1285, 2010 WL 1991553 (D. Conn. May 17, 2010) ...........................................15

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)................................................................................ passim

*Nerland v. Caribou Coffee Co.*,
  564 F. Supp. 2d 1010 (D. Minn. 2007).......................................................................15, 17

*Pendlebury v. Starbucks Coffee Co.*,
  No. 04 Civ. 80521, 2005 WL 84500 (S.D. Fla. Jan. 3, 2005) ...........................................16, 17

*Perkins v. S. New Eng. Tel. Co.*,
  669 F. Supp. 2d 212 (D. Conn. 2009)...........................................................................14

*Ruggles v. WellPoint, Inc.*,
  591 F. Supp. 2d 150 (N.D.N.Y. 2008)...........................................................................8

*Shajan v. Barolo, Ltd.*,
  10 CIV. 1385 (CM), 2010 WL 2218095 (S.D.N.Y. June 2, 2010)........................8, 9, 12, 16

*Sipas v. Sammy's Fishbox, Inc.*,
  No. 05-CV-10319, 2006 WL 1084556 (S.D.N.Y. Apr. 24, 2006) ...........................................9

*Stillman v. Staples, Inc.*,
    No. 07 Civ. 849, 2008 WL 1843998 (D.N.J. April 22. 2008) ...................................................15

**STATUTES**

29 U.S.C. § 207(a)(1) ...................................................................................................................11

29 U.S.C. § 216(b) .....................................................................................................................7, 8

**OTHER AUTHORITIES**

29 C.F.R. § 541.301(d) .................................................................................................................12

U.S Dist. Ct. Rules S.D.N.Y., Civil Rule ......................................................................................2

## PRELIMINARY STATEMENT

KPMG LLP ("KPMG") classifies its salaried first- and second-year Audit Associates ("Audit Associates"), who primarily perform routine, low-level clerical and physical tasks, as "exempt" from the overtime protections of the Fair Labor Standards Act and correspondingly fails to pay them overtime for hours they work over 40 in a workweek.  Through this Motion, Plaintiffs seek to protect the rights of Audit Associates across the country by timely sending them Court-approved Notice of this action so that they can make an informed decision as whether to join this action to recover the unpaid wages KPMG owes them.

In this Motion, Plaintiffs far exceed their low burden, which requires them to demonstrate that KPMG subjected all Audit Associates to the same unlawful policy of classifying them as exempt from the FLSA's overtime pay requirements.  KPMG admits that it classifies all Audit Associates as exempt and has previously acknowledged (in support of its Motion to Transfer) that Plaintiffs and potential collective members all "share the same title" and "work in the same audit function."[1]  In addition, in further support of their Motion, Plaintiffs submit KPMG's uniform job descriptions and the declarations of Audit Associates who worked in six states - New York, New Jersey, Nebraska, Texas, Florida, and Washington.

Time is of the essence with respect to this Motion.  The statute of limitations for each Audit Associate's FLSA claim continues to run until he or she affirmatively opts into the case. As a result, potential opt-in plaintiffs' claims are diminished (or extinguished) each day.

---

[1]     *See* Mem. of Law in Support of Def.'s Mot. to Transfer, or in the Alternative, Stay this Action ("the Transfer Motion") at 5, Docket No. 14.

## PROCEDURAL HISTORY

Plaintiffs Kyle Pippins and Jamie Schindler filed a Collective Action Complaint ("Compl.") on January 19, 2011.  Declaration of Justin Swartz in Support of Mot. for Conditional Cert. ("Swartz Decl.") ¶ 2.[2]  Since then, two other Audit Associates have joined the case as Opt-in Plaintiffs.  *Id*. ¶ 3.  On February 15, 2011, KPMG filed the Transfer Motion, arguing that the consolidated wage and hour cases, *In re KPMG Overtime Litigation*, No. 07-04396-RSWL-CW, "completely subsume[]" the Plaintiffs' and potential collective members' claims in this case.  Transfer Motion at 5.  The Court denied the Transfer Motion on March 21, 2011.  Decision and Order, Docket No. 23.[3]  On March 29, 2011, KPMG requested a waiver from the requirements of Local Rule 6.3 to file a motion for reconsideration of the Court's denial.  Swartz Decl. ¶ 6.  On March 30, 2011, the Court granted KPMG leave to file a short statement summarizing developments in *In re KPMG Overtime Litigation*.  Docket No. 26.  On April 4, 2011, KPMG filed an Answer ("Ans.") and a Motion for Reconsideration of the denial of the Transfer Motion.  Docket Nos. 28-31.

## THE PARTIES

### A.    KPMG

KPMG is an audit, tax, and advisory firm with 87 offices nationwide and more than 23,000 employees.  Compl. ¶1.  It is the U.S.-member firm of the KPMG network of firms affiliated with KPMG International, a Swiss Company.  Ans. ¶ 1.  KPMG International works in 144 countries and had combined revenues of over $20 billion in 2009 and 2010.  Compl. ¶ 1.

---

[2]      Unless otherwise indicated, all exhibits are attached to the Swartz Decl.

[3]      On March 9, 2011, Edward Lambert, an Audit Associate who worked in New York and New Jersey filed a separate action, *Lambert v. KPMG, LLP*, No. 1:11-cv-01622-CM, which the Court accepted as a related case to this one on March 15, 2011.  Swartz Decl. ¶¶ 10-11.

### B.      Plaintiffs

Plaintiff Kyle Pippins worked for KPMG as an Audit Associate in Dallas, Texas, from approximately September 2007 through approximately March 2009.  In or around September 2008, Pippins became an Audit Associate Second.  Ex. A (Pippins Decl.) ¶ 1.  Plaintiff Jamie Schindler worked for KPMG as an Audit Associate in Fort Lauderdale, Florida, from approximately August 2008 through approximately April 1, 2009.  Ex. B (Schindler Decl.) ¶ 1.

### C.      Opt-In Plaintiffs

Keeley Young worked for KPMG as an Audit Associate in Omaha, Nebraska, from approximately January 2007 to approximately March 2009.  Ex. E (Young Decl.) ¶ 1.  Samuel Bradley worked for KPMG as an Audit Associate in Seattle, Washington, from approximately September 2007 to approximately June 2008.  Ex. C (Bradley Decl.) ¶ 1.  In or around July 2008, Bradley became an Audit Associate Second.  He worked as an Audit Associate Second until approximately April 2009.  *Id.*

### D.      Other Declarants

Edward Lambert worked for KPMG as an Audit Associate in New York and New Jersey, from approximately August 15, 2008 through approximately April 1, 2009.  Ex. D (Lambert Decl.) ¶ 1.  Mark Litchfield worked for KPMG as an Audit Associate in Washington, from approximately July 2003 through approximately July 2004.  *See* Ex. H (Litchfield Decl.) ¶ 4.

## <u>STATEMENT OF FACTS</u>

### A.      KPMG Centrally Controls, Trains, and Supervises Its Audit Associates to Maintain Uniformity.

KPMG maintains top-down control over its Audit Associates to ensure that they perform their duties in a uniform manner.  All Audit Associates are required to follow the same policies

and requirements contained in various KPMG documents, including the "KPMG Audit Manual," the "Integrated Audit Manual," and the "Audit Toolkit." *See* Ex. F (2008 Audit Workbook Supplement) at 1. These policies and requirements must be "complied with when conducting [a KPMG] audit." *Id*. The Audit Associate Manual is accessible to all Audit Associates on their computers. *Id*.

All Audit Associates also receive the same training during a multi-day orientation when they begin their employment at KPMG. Ex. C (Bradley Decl.) ¶¶ 26-27; Ex. D (Lambert Decl.) ¶¶ 26-27; Ex. A (Pippins Decl.) ¶¶ 26-27; Ex. B (Schindler Decl.) ¶¶ 25-26; Ex. E (Young Decl.) ¶¶ 25-26; Ex. H (Litchfield Decl.) ¶ 44. During the training, KPMG describes to Audit Associates the process for conducting a KPMG customer audit from beginning to end in order to ensure that the same steps are taken for each audit. Ex. C (Bradley Decl.) ¶ 28; Ex. D (Lambert Decl.) ¶ 27; Ex. A (Pippins Decl.) ¶ 28; Ex. B (Schindler Decl.) ¶ 27; Ex. E (Young Decl.) ¶ 27; *see* Ex. H (Litchfield Decl.) ¶ 44.

After attending the mandatory, uniform training, Audit Associates are then assigned to a KPMG team that is tasked with providing auditing services to KPMG's customers. Audit Associates are supervised by several tiers of higher-level KPMG employees, typically one or more Senior Audit Associates, one or more Project Managers, and a Partner. Ex. C (Bradley Decl.) ¶ 10; Ex. D (Lambert Decl.) ¶ 10; Ex. A (Pippins Decl.) ¶ 10; Ex. B (Schindler Decl.) ¶ 10; Ex. E (Young Decl.) ¶ 10; Ex. H (Litchfield Decl.) ¶ 8. In performing their duties, Audit Associates are never free from the immediate direction or supervision of the senior members of the team. Ex. C (Bradley Decl.) ¶ 11; Ex. D (Lambert Decl.) ¶ 11; Ex. A (Pippins Decl.) ¶ 11; Ex. B (Schindler Decl.) ¶ 11; Ex. E (Young Decl.) ¶ 11; Ex. H (Litchfield Decl.) ¶ 23. KPMG does not provide additional customer-specific training to Audit Associates when they rotate from

one customer to another because their duties with respect to each audit remain essentially the same. Ex. C (Bradley Decl.) ¶ 31; Ex. D (Lambert Decl.) ¶ 30; Ex. A (Pippins Decl.) ¶ 31; Ex. B (Schindler Decl.) ¶ 30; Ex. E (Young Decl.) ¶ 30.

**B.      KPMG's Compensation of Audit Associates Is Uniform.**

KPMG subjects all Audit Associates to the same compensation policies and practices and admits that it classifies them as exempt from the overtime requirements of the FLSA. Compl. ¶¶ 26-27; Ans. ¶¶ 26-27 & Third Defense. KPMG also admits that it does not pay Audit Associates overtime for hours that they work over forty in a workweek. Ans. ¶ 26; Ex. C (Bradley Decl.) ¶ 33; Ex. D (Lambert Decl.) ¶ 32; Ex. A (Pippins Decl.) ¶ 33; Ex. B (Schindler Decl.) ¶ 32; Ex. E (Young Decl.) ¶ 32; Ex. H (Litchfield Decl.) ¶ 56.

**C.      All Audit Associates Have to Meet the Same Minimal Job Qualifications.**

KPMG requires all prospective Audit Associates to have the same minimal qualifications in order to be hired as an Audit Associate. KPMG does not require Audit Associates to have advanced degrees or to have completed advanced courses of study. *See* Ex. G (Job Postings); Ex. C (Bradley Decl.) ¶¶ 5-6; Ex. D (Lambert Decl.) ¶¶ 5-7; Ex. A (Pippins Decl.) ¶¶ 5-6; Ex. B (Schindler Decl.) ¶¶ 5-7; Ex. E (Young Decl.) ¶¶ 5-7; *see* Ex. H (Litchfield Decl.) ¶¶ 4-5. KPMG admits that it hires many Audit Associates right out of college. Between 2009 and 2010, for example, it hired approximately 3,682 recent graduates, most of whom became Audit Associates. Ans. ¶¶ 21-22.

KPMG admits that it does not require Audit Associates to be Certified Public Accountants ("CPAs"). Ans. ¶¶ 54, 60; Ex. G (Job Postings); Ex. C (Bradley Decl.) ¶ 2; Ex. D (Lambert Decl.) ¶ 2; Ex. A (Pippins Decl.) ¶ 2; Ex. B (Schindler Decl.) ¶ 2; Ex. E (Young Decl.) ¶ 2; Ex. H (Litchfield Decl.) ¶ 5. Nor does it require them to become CPAs in order to retain their position. Ans. ¶¶ 54, 60; Ex. C (Bradley Decl.) ¶ 3; Ex. D (Lambert Decl.) ¶ 3; Ex. A

(Pippins Decl.) ¶ 3; Ex. B (Schindler Decl.) ¶ 3; Ex. E (Young Decl.) ¶ 3; *see* Ex. H (Litchfield Decl.) ¶¶ 5, 45.  While KPMG requires all Audit Associates to have attained a Bachelor's degree,  it does not require the degree to be in a particular subject, such as accounting, nor does it require Audit Associates to earn an advanced degree in order to qualify for or to retain their job. Ex. G (Job Postings); Ex. C (Bradley Decl.) ¶¶ 6-7; Ex. D (Lambert Decl.) ¶¶ 5-7; Ex. A (Pippins Decl.) ¶¶ 5-7; Ex. B (Schindler Decl.) ¶¶ 5-7; Ex. E (Young Decl.) ¶¶ 5-7; (Litchfield Decl.) ¶¶ 3-4.

      **D.**      **All Audit Associates Have the Same Primary Job Duties.**

All Audit Associates, regardless of the geographic area in which they work, have the same primary job function: assisting a team of KPMG employees to perform audits of KPMG's customers' financial records.  This is evident from the uniform Audit Associate job descriptions that KPMG posts on its website.  Ex. G (Job Postings).  Audit Associates' primary duties do not vary from office to office or from customer to customer.  *See id*.; Ex. C (Bradley Decl.) ¶¶ 19, 24; Ex. D (Lambert Decl.) ¶¶ 19, 24; Ex. A (Pippins Decl.) ¶¶ 19, 24; Ex. B (Schindler Decl.) ¶¶ 19, 24; Ex. E (Young Decl.) ¶¶ 19, 24; Ex. H (Litchfield Decl.) ¶ 12.

Audit Associates perform the "nuts and bolts" tasks of audits, but not the audits themselves.  Ex. C (Bradley Decl.) ¶¶ 13-23; Ex. D (Lambert Decl.) ¶¶ 13-23; Ex. A (Pippins Decl.) ¶¶ 13-23; Ex. B (Schindler Decl.) ¶¶ 13-23; Ex. E (Young Decl.) ¶¶ 13-23; Ex. G (Job Postings), Ex. H (Litchfield Decl.) ¶¶ 13-15.  These day-to-day "nuts and bolts" tasks include: conducting basic reviews of client documents and financial records, conducting inventory counts, photocopying client documents and records, and entering data into Excel spreadsheets. Ex. C (Bradley Decl.) ¶ 13; Ex. D (Lambert Decl.) ¶ 13; Ex. A (Pippins Decl.) ¶ 13; Ex. B (Schindler Decl.) ¶ 13; Ex. E (Young Decl.) ¶ 13.  In performing these duties, KPMG requires Audit Associates to follow detailed guidelines and standards that it has developed.  Ex. C

(Bradley Decl.) ¶ 18; Ex. D (Lambert Decl.) ¶ 18; Ex. A (Pippins Decl.) ¶ 18; Ex. B (Schindler

Decl.) ¶ 18; Ex. E (Young Decl.) ¶ 18; *see* Ex. F (2008 Audit Workbook Supplement) at 1.

      Audit Associates perform their duties under the supervision of the more senior members

of the team and do not have the authority to deviate from KPMG's methodology without

approval from their supervisors.  Ex. C (Bradley Decl.) ¶¶ 20-21; Ex. D (Lambert Decl.) ¶¶ 20-

21; Ex. A (Pippins Decl.) ¶¶ 20-21; Ex. B (Schindler Decl.) ¶¶ 20-21; Ex. E (Young Decl.) ¶¶

20-21; Ex. H (Litchfield Decl.) ¶¶ 47-53.  Audit Associates' primary duties, regardless of

location, involve the performance of routine physical and clerical tasks according to standard

procedures and protocols that KPMG has developed.  Ex. C (Bradley Decl.) ¶¶ 20, 22-23; Ex. D

(Lambert Decl.) ¶¶ 20, 22-23; Ex. A (Pippins Decl.) ¶¶ 20, 22-23; Ex. B (Schindler Decl.) ¶¶ 20,

22-23; Ex. E (Young Decl.) ¶¶ 20, 22-23; *see* Ex. H (Litchfield Decl.) ¶ 17.  As explained above,

these tasks include conducting basic reviews of client documents and financial records,

conducting inventory counts, photocopying client documents and records, and entering data into

Excel spreadsheets.  Ex. C (Bradley Decl.) ¶ 13; Ex. D (Lambert Decl.) ¶ 13; Ex. A (Pippins

Decl.) ¶ 13; Ex. B (Schindler Decl.) ¶ 13; Ex. E (Young Decl.) ¶ 13.

## ARGUMENT

### A.    Court-Authorized Notice Is Fair and Efficient, and Advances the FLSA's Goals.

      The FLSA authorizes private parties to bring an overtime claim "[o]n behalf of . . .

themselves and other employees similarly situated."  29 U.S.C. § 216(b).  In furtherance of the

FLSA's "broad remedial purpose," courts have the authority to notify potential opt-in plaintiffs

that they may join an existing action early in the proceedings.  *Braunstein v. E. Photo. Labs.,*

*Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979); *Myers v. Hertz Corp.,*

624 F.3d 537, 554 (2d Cir. 2010) ("[D]istrict courts have 'discretion, in appropriate cases, to

implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs"); *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007); *Shajan v. Barolo, Ltd.*, 10 CIV. 1385 (CM), 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010).

Collective actions provide workers an opportunity to "lower individual costs to vindicate rights by pooling resources," and enable the "efficient resolution in one proceeding of common issues of law and fact." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).  Nationwide notice here will provide collective members with a single forum in which to determine whether KPMG's overtime policies are lawful.

**B.**    **Expeditious Notice Is Necessary to Protect the Rights of Audit Associates.**

Employees must receive timely notice in order for the "intended benefits of the collective action . . . to accrue." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007). The FLSA statute of limitations runs until an employee files a consent form. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997).  Time is of the essence because Audit Associates' claims are diminished or extinguished every day.  Timely notice will curtail their continued erosion, *Ruggles v. WellPoint, Inc.*, 591 F. Supp. 2d 150, 162 n.12 (N.D.N.Y. 2008), and is necessary to effectuate the FLSA's "broad remedial purpose," *Braunstein*, 600 F.2d at 336.

**C.**    **Plaintiffs Exceed the Low Burden for Conditional Certification.**

Courts in the Second Circuit employ a two-step approach when faced with a motion for conditional certification.  *Myers,* 624 F.3d at 554-55.  At the initial "notice stage," plaintiffs must establish that other employees "may be similarly situated" to them.  *Id*. at 554 (internal quotation marks omitted).  "Nothing more is needed at this stage of the litigation."  *Shajan*, 2010 WL 2218095, at *1.  In an FLSA exemption case, plaintiffs can meet their burden "by making some

showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Myers,* 624 F.3d at 555 (quoting *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259 (11th Cir. 2008)).

At this initial stage, Plaintiffs face a "low standard of proof" and need only make a "modest factual showing" that they and others are similarly situated. *Myers,* 624 F.3d at 555. This is because "the purpose of the first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist. *Id.* Accordingly, at this stage, "[w]eighing of the merits is absolutely inappropriate." *Shajan*, 2010 WL 2218095, at *1. At the second stage, based upon a fuller record, the district court may determine that the plaintiffs who opted in are in fact not similarly situated and can de-certify the collective. *Myers*, 624 F.3d at 555.

Here, Plaintiffs submit sufficient evidence to meet the minimal standard required for conditional certification. Courts in this circuit regularly grant conditional certification based on one or two plaintiff affidavits and little more. *See Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010) ("The Complaint and [plaintiff's] Affidavit are sufficient to warrant preliminary certification of a collective action in this case."); *Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008) (granting conditional certification based upon a single affidavit and deposition testimony that job duties were similar at all stores); *Sipas v. Sammy's Fishbox, Inc.,* No. 05-CV-10319, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (conditionally certifying collective on basis of three affidavits and complaint's allegations); *Masson v. Ecolab, Inc.,* No. 04-CV-4488, 2005 WL 2000133, at *14 (S.D.N.Y. Aug. 17, 2005) (conditionally certifying collective on the basis of affidavits from

three opt-in plaintiffs).

In this case, Plaintiffs submit declarations from six individuals who worked in six different states - New York, New Jersey, Nebraska, Texas, Florida, and Washington.  Ex. C (Bradley Decl.) ¶ 1; Ex. D (Lambert Decl.) ¶  1; Ex. A (Pippins Decl.) ¶ 1; Ex. B (Schindler Decl.) ¶ 1; Ex. E (Young Decl.) ¶ 1; Ex. H (Litchfield Decl.) ¶ 1.  They testify that they all performed essentially the same job duties and were subject to the same compensation policies as Audit Associates at KPMG.  Ex. C (Bradley Decl.) ¶¶ 8-21; 32-35; Ex. D (Lambert Decl.) ¶¶ 8-21; 31-34; Ex. A (Pippins Decl.) ¶¶ 8-21; 32-35; Ex. B (Schindler Decl.) ¶¶ 8-21; 31-34; Ex. E (Young Decl.) ¶¶ 8-21; 31-34; Ex. H (Litchfield Decl.) ¶¶ 16-43; 54-57.

This witness testimony is bolstered by KPMG's uniform job descriptions that show that KPMG expected all Audit Associates to perform the same duties and required the same job prerequisites no matter where they worked.  *See* Ex. G (Job Postings).  In addition, KPMG admits that it classifies all Audit Associates as exempt from the overtime requirements of the FLSA regardless of where they worked.  *See* Ans. ¶ 26 & Third Defense.  KPMG also concedes in its Transfer Motion that Plaintiffs and potential collective members all "share the same title" and "work in the same audit function."  Transfer Motion at 5.

KPMG's common classification of all Audit Associates as exempt and the uniformity of Plaintiffs' job duties as reflected in KPMG's job descriptions and witness declarations satisfy Plaintiffs' light burden to show that they and potential members of the collective are similarly situated.  *See Lynch*, 491 F. Supp. at 369 (conditional certification granted because, among other reasons, all plaintiffs were subject to same job descriptions); *Cruz v. Hook-Superx, LLC*, 09 Civ. 7717, 2010 WL 3069558, at *2 (S.D.N.Y. Aug. 5, 2010) (granting conditional certification on the basis of 9 witness declarations from various store locations around the country).

    **1.**    **Plaintiffs and Audit Associates Are Similarly Situated With Respect to Their FLSA Claims.**

This lawsuit challenges a straightforward, uniform KPMG policy – its classification of all Audit Associates as exempt from the FLSA's overtime requirements and the failure to pay them overtime as required under 29 U.S.C. § 207(a)(1).  This is precisely the type of claim that the Second Circuit has recognized as being appropriate for conditional certification.  *Myers,* 624 F.3d at 555 ("In an FLSA exemption case, plaintiffs [can meet their burden] by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme.") (quoting *Morgan*, 551 F.3d at 1259).

Courts have held that a "blanket" classification policy, like KPMG's policy, without much more, can meet the low threshold for conditional certification.  *See Indergit v. Rite Aid Corp.*, Nos. 08 Civ. 9361 & 11364, 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010) (conditional certification "may be appropriate . . . where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy" of classifying a category of workers as exempt); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (a "blanket determination is evidence that differences in the position, to the extent that there are any, are not material to the determination of whether the job is exempt from overtime requirements"); *Hallissey v. Am. Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008) (plaintiffs were similarly situated where they alleged that they were all misclassified as "volunteers"); *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007) ("The consistent manner in which Smith & Hawken classified its [Assistant Store Managers] is sufficient to carry [Plaintiff]'s burden" to show that they were similarly situated).

KPMG's professional and administrative exemption defenses also raise common issues appropriate for collective resolution. Although an evaluation of the merits is not appropriate at this early stage, *Shajan*, 2010 WL 2218095, at *1, the application of these exemptions turns on common issues that are not individual to each employee. For example, the professional exemption is restricted to "professions where specialized academic training is a standard prerequisite for entrance into the profession." 29 C.F.R. § 541.301(d). Thus, whether the exemption applies depends on the prerequisites of the Audit Associate job (not on the Audit Associates' job duties) – a question perfectly suited to collective adjudication. Similarly, the administrative exemption hinges on whether the work performed falls on the production or administrative side of the production/administrative dichotomy. *See Davis v. JP Morgan Chase & Co.*, 587 F.3d 529, 531-32 (2d Cir. 2009) ("Employment may . . . be classified as belonging in the administrative category, which falls squarely within the administrative exception, or as production/sales work, which does not.") Because each Plaintiff and potential plaintiff performed the same "job function," Transfer Motion at 5, application of the administrative exemption will depend on whether that job function is categorized as production work or administrative work. *See Davis*, 587 F.3d at 534 (underwriter job "concerns the 'production' of loans – the fundamental service provided by the bank" – and therefore fell on the production side of the production/administrative dichotomy).

### 2.    Plaintiffs and Audit Associates Are Similarly Situated With Respect to Their Job Duties.

KPMG's own Audit Associate job description demonstrates its view that all Audit Associates perform essentially the same duties no matter where they are located around the country. *See* Ex. G (Job Postings). Plaintiffs, Opt-Ins, and two other former KPMG Audit Associates also testify to performing the same duties. *See* Ex. C (Bradley Decl.) ¶¶ 13-23; Ex. D

(Lambert Decl.) ¶¶ 13-23; Ex. A (Pippins Decl.) ¶¶ 13-23; Ex. B (Schindler Decl.) ¶¶ 13-23; Ex. E (Young Decl.) ¶¶ 13-23; Ex. H (Litchfield Decl.) ¶¶ 13-15.  Their duties did not vary even though they worked in several different states around the country.  Ex. C (Bradley Decl.) ¶ 1; Ex. D (Lambert Decl.) ¶ 1; Ex. A (Pippins Decl.) ¶ 1; Ex. B (Schindler Decl.) ¶ 1; Ex. E (Young Decl.) ¶ 1; Ex. H (Litchfield Decl.) ¶ 1.

Courts routinely grant conditional certification where plaintiffs present similar job descriptions and other evidence of common job duties.  *See, e.g., Cohen*, 686 F. Supp. 2d at 330-31 (granting conditional certification based on complaint and affidavit alleging that plaintiff and potential opt-ins had similar job duties and were classified as exempt); *Indergit*, 2010 WL 2465488, at *3 (holding that evidence that "all [Assistant Store Managers] perform basically the same duties, are sufficient at this stage to meet Plaintiff's burden"); *Damassia*, 2006 WL 2853971 at *4 (concluding that plaintiff assistant store managers were similarly situated to opt-in class where all were uniformly classified as exempt).  Here, Plaintiffs present KPMG's own uniform job descriptions and declarations from Audit Associates who worked in different states around the country.  This evidence is sufficient to meet their minimal burden to show that they and other Audit Associates are similarly situated.

**3.      KPMG's Transfer Motion Supports Conditional Certification.**

In support of its Transfer Motion, KPMG makes representations that support conditional certification.  Just the fact of KPMG's Transfer Motion demonstrates that KPMG believes that it would be efficient to prosecute Plaintiffs' claims alongside the claims of Audit Associates who worked all the way across the country.  In particular, KPMG acknowledges that the Plaintiffs in this case and potential collective members (in both this case and in *In re KPMG Overtime Litigation*) "share the same title" and "work in the same audit function."  Transfer Motion at 5.

4.   **The Court Can Grant Conditional Certification Even If KPMG's Exemption Defense Requires Some Fact-Specific Analysis.**

KPMG may claim that its exemption defense precludes a collective action because it requires "fact-specific inquiries" of the tasks that every Audit Associate performed. "This argument ignores the purposes of the FLSA." *Indergit*, 2010 WL 2465488, at *9. "Just because the inquiry is fact-intensive does not preclude a collective action where plaintiffs share common job traits." *Morgan*, 551 F.3d at 1263. "[S]ection 216(b) clearly applies to misclassification claims as well as other FLSA claims. Had Congress intended to exclude misclassification claims from collective actions, it would have done so." *Perkins v. S. New Eng. Tel. Co.,* 669 F. Supp. 2d 212, 218 (D. Conn. 2009).

Accordingly, courts in this District have soundly rejected the argument that the fact-intensive nature of exemption defenses precludes conditional certification. *Cohen*, 686 F. Supp. 2d at 329 (listing cases). Courts routinely grant conditional certification in misclassification cases in this District, *see, e.g.*, *Cruz*, 2010 WL 3069558, at *2 (conditionally certifying nationwide collective of CVS assistant store managers); *Indergit*, 2010 WL 2465488, at *10 (granting conditional certification of class of misclassified drug store managers and assistant managers); *Cohen*, 686 F. Supp. 2d at 317 (conditionally certifying class of misclassified research associates); *Francis*, 2008 WL 4619858, at *3 (granting conditional certification of class of misclassified retail store assistant managers); *Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295, 2007 WL 2873929, at *6 (S.D.N.Y. Oct. 2, 2007) (conditionally certifying class of misclassified assistant drug store managers); *Damassia*, 2006 WL 2853971 (same); *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 104-5 (S.D.N.Y. 2003) (granting conditional certification of misclassified supermarket workers); *Jacobsen v. Stop & Shop Supermarket Co.*, No. 02 Civ. 5915, 2003 WL 21136308, at *4 (S.D.N.Y. May 15, 2003)

14

(conditionally certifying collective of misclassified supermarket managers); as well as in other districts, *Fiore v. Goodyear Tire & Rubber Co.*, No. 2:09-cv-843-FtM-29SPC, 2011 WL 867043 (M.D. Fla. 2011); *Morrison v. Ocean State Jobbers, Inc.*, No. 09 Civ. 1285, 2010 WL 1991553 (D. Conn. May 17, 2010) (granting conditional certification of misclassified assistant store managers); *Creten-Miller v. Westlake Hardware, Inc.*, No. 08 Civ. 2351, 2009 WL 2058734, at *2 (D. Kan. July 15, 2009) (granting conditional certification of misclassified front end supervisors of hardware store chain); *Jackson v. Papa John's USA, Inc.*, No. 08 Civ. 2791, 2009 WL 385580, at *4-5 (N.D. Ohio Feb. 13, 2009) (conditionally certifying collective and authorizing nationwide notice to assistant managers of pizza restaurants); *Stillman v. Staples, Inc.*, No. 07 Civ. 849, 2008 WL 1843998, at *4-5 (D.N.J. Apr. 22, 2008) (same in case brought by Staples sales managers); *Holbrook*, 246 F.R.D. at 106 (same in case brought by retail assistant store managers); *see also Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1016-26 (D. Minn. 2007) (denying motion to decertify nationwide class of coffee store managers).  As in these cases, KPMG's exemption defense is no obstacle to granting conditional certification.

### 5.   The Court Can Grant Conditional Certification Despite Claims of Varying Job Duties.

KPMG will likely claim that Audit Associates' job duties varied from office to office or from customer to customer.  It may ask its current employees to submit declarations on its behalf and present other information to which Plaintiffs have not had access and/or an opportunity to challenge.  This evidence should not defeat conditional certification for three reasons.

First, it is premature at this early stage.  At this point, Plaintiffs seek a preliminary determination.  For notice to issue, Plaintiffs only need to make a "modest factual showing" that they and the potential opt-ins were subject to a common policy that violated the FLSA.  *Myers*, 624 F.3d at 555.  Any evidence that KPMG submits can "[a]t most . . . raise questions as to

whether [P]laintiffs could prevail under a more stringent standard and whether the opt-in plaintiffs will survive a decertification motion at the close of discovery." *Damassia*, 2006 WL 2853971, at *5. Such arguments are "inappropriate" at the initial conditional certification stage. *Id.* at *4; *Shajan*, 2010 WL 2218095, at *1; *see also Myers*, 624 F.3d at 555 (the purpose of the first stage is "merely to determine *whether* 'similarly situated' plaintiffs do in fact exist" and not "whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs") (emphasis in original).

The proper focus now is on Plaintiffs' submissions and whether they meet the low burden required for notice to issue. At the second stage, after Plaintiffs have had the opportunity to depose KPMG's affiants and challenge KPMG's other evidence, KPMG will have "ample opportunity" to demonstrate that Plaintiffs case should not proceed as a collective action. *Damassia*, 2006 WL 2853971, at *7; *see Aros v. United Rentals, Inc*., 269 F.R.D. 176, 180 (D. Conn. 2010) (declining to review declarations submitted by defendant seeking to rebut plaintiff's showing at conditional certification stage). At that later point, the Court can weigh KPMG's evidence against Plaintiffs' evidence and decide whether to decertify the collective. *See Myers,* 624 F.3d at 555; *see also Pendlebury v. Starbucks Coffee Co.*, No. 04 Civ. 80521, 2005 WL 84500 at *3 (S.D. Fla. Jan. 3, 2005) (Starbucks' employee affidavits "raise[d] factual matters not appropriate for consideration at this notice stage of litigation").

Second, the standard defense argument – that no two workers are alike and the Court must undertake an individualized, person-by-person analysis to resolve the case – is undermined here by the fact that KPMG uses the same Audit Associate job description throughout the country, Ex. G (Job Postings), that KPMG, by its own admission, classified all Audit Associates as exempt in one fell swoop, Ans. ¶ 26 & Third Defense, and that the professional and

16

administrative exemptions at issue in this case hinge on common proof, *see* Section C.1., *supra*. As a result, all Audit Associates' claims "are based on the same course of events and legal theory," namely that KPMG's "decision to classify its [Audit Associates] as 'exempt' is inconsistent with the requirements of the FLSA." *Damassia*, 250 F.R.D. at 158.   KPMG's decision to classify Audit Associates as exempt "constitutes a common scheme or plan that renders all [Audit Associates] similarly situated for FLSA purposes." *Holbrook*, 246 F.R.D. at 106; *see Myers*, 624 F.3d at 555.

Any differences among Audit Associates' duties were clearly "not material" to KPMG's "determination of whether the job is exempt from overtime requirements." *Damassia*, 250 F.R.D. at 159.  It would be "disingenuous" for KPMG, "on one hand, to collectively and generally decide that all [Audit Associates] are exempt from overtime compensation without an individualized inquiry, while on the other hand, claiming that plaintiffs cannot proceed collectively to challenge the exemption." *Nerland*, 564 F. Supp. 2d at 1024; *see also Indergit*, 2010 WL 2465488, at *9-10; *Morgan*, 551 F.3d at 1263; *Pendlebury*, 518 F. Supp. 2d at 1352.

Third, even where defendants assert an FLSA exemption defense, conditional certification does not require proof "that the prospective class members all performed the same duties." *Cano v. Four M Food*, No. 08 Civ. 3005, 2009 WL 5710143, at *7 (E.D.N.Y. Feb. 3, 2009) (conditionally certifying class of maintenance workers and holding that "[i]t is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs"); *see Indergit*, 2010 WL 2465488, at *8.  In other misclassification cases, courts have conditionally certified collectives even where there were differences among employees' locations, clientele, and job duties.  *See Indergit*, 2010 WL

17

2465488, at *8 (unique characteristics of each store and differences in stores' clientele, among other factors, provided no basis for denying conditional certification); *Damassia*, 2006 WL 2853971, at *6 (noting that differences in plaintiffs' authority to arrange store displays, among other factors, were "hardly relevant" to whether plaintiffs and opt-ins were common victims of unlawful misclassification). Plaintiffs need show only that their duties were similar, not identical, to the duties performed by potential collective members. *See Indergit*, 2010 WL 2465488, at *8 ("[Plaintiff] is not required to demonstrate at this early stage that his duties were identical to those of all other store managers.  Instead, he must show that he was similarly situated to other store managers with respect to the claimed violation of the FLSA.")  In this case, Plaintiffs have amply shown that they are similarly situated to other KPMG Audit Associates.

> ### D.   The Court Should Approve Plaintiffs' Proposed Notice.

Plaintiffs request that the Court authorize them to send the Proposed Notice, attached to the Swartz Decl. as Exhibit I, to all individuals who have worked as KPMG Audit Associates and/or Audit Associate Seconds at any time between January 19, 2008 and the present ("Collective Members").  The Proposed Notice is "timely, accurate, and informative," and therefore should be approved.  *Hoffmann-La Roche*, 493 U.S. at 172.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) conditionally certify this case as a collective action; (2) order KPMG to produce a computer-readable data file containing all Collective Members' names, last known mailing addresses, last known telephone numbers, Social Security numbers, work locations, and dates of employment; (3) authorize the issuance of the Proposed Notice to all Collective Members and a reminder notice during the opt-in period; and (4) order KPMG to post the approved Notice at all locations where Collective

Members work.

Dated:          April 6, 2011
                New York, New York

                                    Respectfully submitted,
                                    **OUTTEN & GOLDEN LLP**
                                    By:

                                    /s/ Justin M. Swartz
                                    Justin M. Swartz

                                    **OUTTEN & GOLDEN LLP**
                                    Justin M. Swartz
                                    Rachel Bien
                                    Seth M. Marnin
                                    3 Park Avenue, 29th Floor
                                    New York, New York 10016
                                    Telephone:  (212) 245-1000

                                    **SHAVITZ LAW GROUP, P.A.**
                                    Gregg Shavitz (admitted *pro hac vice*)
                                    Keith Stern (admitted *pro hac vice*)
                                    Hal B. Anderson (admitted *pro hac vice*)
                                    1515 S. Federal Highway, Suite 4-4
                                    Boca Raton, Florida 33432
                                    Telephone: (456) 447-8888

                                    *Attorneys for Plaintiffs*