UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

KYLE PIPPINS, JAMIE SCHINDLER, and EDWARD LAMBERT, Individually and On Behalf of All Others Similarly Situated,

        Plaintiffs,

    -against-

KPMG LLP,

        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**11 CV 0377 (CM)(JLC)**

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel.:  (212) 839-5300
Fax:  (212) 839-5599

*Attorneys for Defendant KPMG LLP*

**Table of Contents**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ..................................................................................................................3

ARGUMENT ........................................................................................................................6

    I.    LEGAL STANDARD FOR PROTECTIVE ORDERS.............................................6

    II.    GOOD CAUSE EXISTS FOR THE ISSUANCE OF A PROTECTIVE ORDER SHIELDING KPMG FROM THE UNDUE BURDEN OF PLAINTIFFS' DISPROPORTIONATE DEMAND THAT IT PRESERVE THOUSANDS OF HARD DRIVES. ...................................................................................................7

        A.    The Entire Hard Drives Of All Putative Collective And Class Members Are Neither Relevant Nor Reasonably Calculated To Lead To The Discovery Of Admissible Evidence................................................................................................8

        B.    KPMG's Current Preservation Of ESI And Hard Drives Is More Than Sufficient To Satisfy Any Proportional Discovery Need, While Further Efforts Would Be Unduly Burdensome And Disproportionate. ...........................................................10

        C.    In The Alternative, The Costs Of Preserving Any Additional Hard Drives Should Be Borne By Plaintiffs. .............................14

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*During v. City Univ. of N.Y.,*
   No. 05 Civ. 6992, 2006 U.S. Dist. LEXIS 53684 (S.D.N.Y. Aug. 1, 2006)
   ............................................................................................................................... 6-7

*Hill v. Eddie Bauer,*
   242 F.R.D. 556 (C.D. Cal. 2007) ........................................................................................12

*Mahar v. US Xpress Enterprises, Inc.,*
   688 F. Supp. 2d 95 (N.D.N.Y. 2010) ..................................................................................15

*Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v.
   Friedman (In re Friedman),*
   350 F.3d 65 (2d Cir. 2003) ....................................................................................................6

*Rimkus Consulting Group, Inc. v. Cammarata,*
   688 F. Supp. 2d 598 (S.D. Tex. 2010) ...................................................................................7

*Treppel v. Biovail Corp.,*
   233 F.R.D. 363 (S.D.N.Y. 2006) ..................................................................................12, 15

*Victor Stanley, Inc. v. Creative Pipe, Inc.,*
   No. MJG-06-2662, 2010 U.S. Dist. LEXIS 93644 (D. Md. Sept. 9, 2010) ...........................7

*Zubulake v. UBS Warburg LLC,*
   217 F.R.D. 309 (S.D.N.Y. 2003) ("*Zubulake I*") ..................................................................6

*Zubulake v. UBS Warburg LLC,*
   216 F.R.D. 280 (S.D.N.Y. 2003) ("*Zubulake III*") ...............................................................7

*Zubulake v. UBS Warburg LLC,*
   220 F.R.D. 212 (S.D.N.Y. 2003) ("*Zubulake IV*") ...............................................................7

*Zubulake v. UBS Warburg LLC,*
   229 F.R.D. 422 (S.D.N.Y. 2004) ("*Zubulake V*") ..............................................................10

**OTHER AUTHORITIES**

17 C.F.R. § 210.2-06 .....................................................................................................................11

8 N.Y.C.R.R. § 29.10(c) ...............................................................................................................13

Fed. R. Civ. P. 26..................................................................................................................6

American Institute of Certified Accountants Code of Professional Conduct,
 ET Rule 301.01 (as amended, January 14, 1992) ....................................................13

Public Company Accounting Oversight Board, AUDITING STANDARD
 NO. 3: AUDIT DOCUMENTATION, available at
 http://pcaobus.org/Standards/Auditing/Pages/Auditing_Standard_3.aspx
 (last visited on August 11, 2011) ....................................................................... 11-12

The Sedona Principles, Second Edition: Best Practices, Recommendations &
 Principles for Addressing Electronic Document Production (The Sedona
 Conference® Working Group Series, 2007) .............................................................7

The Sedona Conference, *The Sedona Conference Commentary on
 Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289 (2010)
 (Principle No. 1)..........................................................................................................7

Defendant KPMG LLP ("KPMG"), by and through its counsel, Sidley Austin LLP, respectfully submits this memorandum of law in support of its Motion for a Protective Order.

**PRELIMINARY STATEMENT**

In this proceeding, which challenges KPMG's treatment of certain accountants in its Audit practice ("Audit Associates") as exempt employees under New York law and the federal Fair Labor Standards Act ("FLSA"), KPMG has undertaken broad efforts to preserve electronically stored information ("ESI") and documents. KPMG's efforts far exceed the reasonable and proportional measures the law requires. The issue presented by this motion is whether KPMG should be required to preserve computer hard drives for thousands of former employees who fall within the definition of the putative New York state class and/or the potential nationwide FLSA collective, or whether a random sample of 100 such hard drives should be selected, against which reasonable search terms should be applied to select a universe of documents to be preserved for <u>potential</u> discovery in this action.

Plaintiffs, despite asserting that their own individual claims are representative of a proposed nationwide FLSA collective and a putative New York state class and that all Audit Associates perform the same routine job duties,[1] have taken the unreasonable position that KPMG must indefinitely preserve the entire computer hard drives of <u>all</u> (or, more recently, an unreasonably large number) of KPMG's former Audit Associates that KPMG has collected for this and other matters, and also preserve the computer hard drives of KPMG's Audit Associates as they depart KPMG on a going-forward basis. Plaintiffs have made this excessive and burdensome demand despite the fact that KPMG has already preserved an enormous corpus of

---

[1] *See* First Amended Class Action Complaint ¶¶ 2-7, 64, 42-44 (Dkt. No. 51); Plaintiffs' Memorandum Of Law In Support Of Motion For Conditional Certification And Court-Authorized Notice Pursuant To Section 216(b) Of The FLSA, at 6-7 (Dkt. No. 34).

1

many thousands of such hard drives, from which a reasonable sample could be drawn.

Moreover, Plaintiffs have rejected KPMG's request that preservation efforts be tailored in a sensible manner. Specifically, Plaintiffs have rejected KPMG's request that they propose case specific search terms that would be applied to a reasonable sample of hard drives to facilitate the preservation of a still large (but more limited) volume of data that might at least bear some resemblance to a corpus of material that may ultimately become properly subject to discovery in this case. Plaintiffs' refusal to even consider proposing search terms, the use of which has become a staple of reasonable discovery protocols, in effect means that they are insisting that KPMG preserve an enormous amount of material so that they may, at some point in the future, conduct a massive fishing expedition through thousands of hard drives to gather information about the work performed by KPMG's Audit Associates.

On its face, Plaintiffs' approach conflicts with the mandate in the federal rules that discovery and preservation must be reasonable and proportional. Further, it is particularly inappropriate where, as here, the fundamental premise of Plaintiffs' case is that the work of KPMG's Audit Associates is sufficiently uniform and routine that the Named Plaintiffs can represent all of KPMG's current and former Audit Associates who members of the putative New York state class and the proposed FLSA collective.

Critically, Plaintiffs' broad, unfocused approach necessarily will result in the imposition of enormous costs, well in excess of what could remotely be considered reasonable. Indeed, as set forth more fully below, the cost of preserving the hard drives at issue and then possibly subjecting them to discovery without the use of search terms would likely swallow the amount at stake in this litigation. Accordingly, to reduce the enormous burden on KPMG, the Court should issue a protective order limiting KPMG's preservation obligations to a random

sample of 100 of the hard drives already being preserved, against which reasonable search terms proposed by Plaintiffs would be run.  Alternatively, the Court should order Plaintiffs to bear the costs of KPMG's efforts to preserve the hard drives at issue.

## BACKGROUND

KPMG is a limited liability partnership that provides audit, tax, and advisory services to a wide variety of public and private clients throughout New York state and the United States.  The audit services provided by KPMG to its clients include financial statement audits, integrated audits of financial statements and internal control over financial reporting, and other services.  Like the other major accounting firms, KPMG has classified Audit Associates as exempt employees, and in doing so has relied on what it believes is clear authority in both New York law and the FLSA.

Kyle Pippins and Jamie Schindler filed this action on January 9, 2011, challenging KPMG's treatment of its Audit Associates as exempt employees under the FLSA and seeking to represent a nationwide Collective.  Three additional plaintiffs (Samuel Bradley, Keeley Young, and Edward Lambert) subsequently filed opt-in notices with the Court.  On March 9, 2011, Mr. Lambert filed a putative class action on behalf of Audit Associates assigned to work in KPMG's New York offices, asserting claims under New York state law.  On April 25, 2011, the Named Plaintiffs filed an Amended Complaint, adding Edward Lambert as a Named Plaintiff and adding claims under New York law on behalf of a putative class of current and former Audit Associates in New York.

The number of current and former employees who are putative class members in KPMG's New York offices during the relevant time period is more than 1,500 individuals.  (*See* accompanying Declaration of Thomas Keegan ("Keegan Decl.") ¶ 6.)  The number of current and former employees who are potential opt-in FLSA plaintiffs throughout the United States is

more than 7,500.  (*Id.*)

In connection with this action, and several other overlapping actions that were filed several years ago, KPMG undertook broad efforts to preserve ESI and other relevant documents.  In particular, KPMG has undertaken to identify and to preserve documents that would tend to show the job duties of the Named Plaintiffs and the putative class members, such as Human Resources records describing their job duties and job titles, recruiting documents and job postings, performance reviews, training materials describing general and specific job responsibilities and standards for professional conduct and performance, time records showing their hours recorded, and payroll records showing their compensation.  KPMG also has undertaken to preserve the ESI for the Named Plaintiffs that existed as of the filing of the complaint and ESI for the Named Plaintiffs' supervisors.  Out of an abundance of caution, KPMG also made good faith efforts to preserve hard drives for the departing employees who are putative class members in New York.  KPMG has not, however, instituted a litigation hold to preserve the hard drives for departing employees throughout the country who <u>may</u> elect, in the future, to opt in to this case, <u>if</u> the proposed nationwide FLSA collective is conditionally certified.  However, as a result of litigation holds that KPMG has imposed in this and other matters, KPMG has preserved hard drives for more than 500 former employees who are members of the putative New York class and for nearly 2,300 former employees who are potential members of the proposed nationwide collective.  In total, KPMG has already preserved hard drives for more than 2,500 of the approximately 3,800 former employees who are members of the putative New York class and/or the potential nationwide collective. (*See* Keegan Decl. ¶¶ 7-10.)

As soon as reasonably practicable following the filing of the action, KPMG

attempted to engage Plaintiffs in a discussion regarding a draft ESI protocol and preservation agreement that could be presented to the Court.  KPMG informed Plaintiffs at the outset of those discussions that it was not preserving, *inter alia*, hard drives of <u>all</u> departing Audit Associates who fell within the potential nationwide collective.  Some time later, Plaintiffs suggested that KPMG should agree to preserve the hard drives of all departing employees throughout the country who were members of the proposed FLSA collective as well as all departing employees in New York who were members of the putative New York class.  KPMG rejected this proposal as overbroad and unduly burdensome and suggested that, in light of the substantial corpus of hard drives already preserved, the parties should limit preservation of such ESI to a reasonable sample of hard drives already preserved by KPMG, against which reasonable search terms to be proposed by Plaintiffs would be run.  After significant delays by Plaintiffs stalled the meet-and-confer process, KPMG sought leave to bring the instant motion.

       Pursuant to the Court's efforts at mediating the dispute, Plaintiffs have acknowledged that sampling is an appropriate procedure, yet they insist that KPMG must not only preserve a sample that is excessive in size, but further, that KPMG must continue to collect hard drives as Audit Associates throughout the country leave the firm.  Moreover, when KPMG proposed the possibility that, rather than preserve complete hard drives of departing employees within the putative class or potential collective on a going-forward basis, reasonable search terms to be proposed by Plaintiffs would be run against the hard drives to identify a smaller universe of ESI for preservation, Plaintiffs replied that search terms are entirely unworkable in this litigation.  Thus, KPMG and Plaintiffs were unable to reach a compromise primarily because Plaintiffs continue to insist that KPMG preserve an extremely large number of hard drives at significant and undue expense, despite the fact that KPMG already has collected and preserved far more

hard drives than the parties might reasonably use in discovery.

## ARGUMENT

I.     **LEGAL STANDARD FOR PROTECTIVE ORDERS**

Although "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), Rule 26 also reasonably limits discovery to matters based on considerations of proportionality:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that: . . . (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C). In turn, Rule 26(c)(1) states that a district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." Fed. R. Civ. P. 26(c)(1) (emphasis added).

Thus, if a party can show that a discovery request is unduly burdensome under the "proportionality test" of Rule 26(b)(2)(C)(iii), then "good cause" exists under Rule 26(c)(1) for the issuance of a protective order. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003) ("*Zubulake I*") (stating that a responding party may invoke Rule 26(c) to obtain an order protecting it from "undue burden or expense," where the discovery request runs afoul of the "proportionality test" of Rule 26(b)(2)(iii)); *see also Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman (In re Friedman)*, 350 F.3d 65, 69-70 (2d Cir. 2003) (commenting on the similarity of Rule 26(b)(2) and Rule 26(c) in allowing district courts broad discretion to manage discovery); *During v. City Univ. of N.Y.*, No. 05 Civ. 6992, 2006 U.S. Dist. LEXIS 53684, at *8 n.2 (S.D.N.Y. Aug. 1, 2006) ("In determining what discovery would be unduly burdensome, courts appear to treat Rule 26(b)(2) and 26(c)'s considerations as highly

6

similar, if not identical."); *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 283 (S.D.N.Y. 2003) ("*Zubulake III*") ("[Discovery] requests that run afoul of the Rule 26(b)(2) proportionality test may subject the requesting party to protective orders under Rule 26(c), including orders conditioning discovery on the requesting party's payment of the costs of discovery.").

## II.  GOOD CAUSE EXISTS FOR THE ISSUANCE OF A PROTECTIVE ORDER SHIELDING KPMG FROM THE UNDUE BURDEN OF PLAINTIFFS' DISPROPORTIONATE DEMAND THAT IT PRESERVE THOUSANDS OF HARD DRIVES.

An organization need not preserve "every shred of paper, every e-mail or electronic document, and every back-up tape" because "[s]uch a rule would cripple large corporations . . . that are almost always involved in litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("*Zubulake IV*"); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. MJG-06-2662, 2010 U.S. Dist. LEXIS 93644, at *87 (D. Md. Sept. 9, 2010).  As noted above, under Rule 26, the analysis of what is a "reasonable" scope of preservation turns on considerations of proportionality.  *See Victor Stanley*, 2010 U.S. Dist. LEXIS 93644, at *89-91; *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010)) (citing The Sedona Principles, Second Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production (The Sedona Conference® Working Group Series, 2007), at 17 cmt 2.b).  Specifically, "[w]hether preservation or discovery conduct is acceptable in a case depends on what is *reasonable*, and that in turn depends on whether what was done – or not done – was *proportional* to that case and consistent with clearly established applicable standards."  *Rimkus*, 688 F. Supp. 2d at 613 (emphasis in original).  Where information provides little value to a case or is not unique, it need not be preserved.  *See* The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 291 (2010) (Principle No. 1).

Here, Plaintiffs' demand that KPMG preserve hard drives of all (or an unreasonably large proportion) of its departing employees who fall within the definition of the putative New York class or proposed nationwide collective is unreasonable and disproportionate to the case. The Court should reject Plaintiffs' demand that KPMG preserve thousands of hard drives for at least two reasons. First, such ESI is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this action. Second, Plaintiffs' demand for the preservation of hard drives grossly exceeds what is reasonable and proportional in this action.

**A. The Entire Hard Drives Of All Putative Collective And Class Members Are Neither Relevant Nor Reasonably Calculated To Lead To The Discovery Of Admissible Evidence.**

The claims and defenses in this action require an examination of the job duties and activities actually performed by KPMG's Audit Associates. The best source of information regarding the job responsibilities of, and work actually performed by, the Named Plaintiffs and the putative class members is not the content of their hard drives – in whatever state they may have been left upon the departure of each particular Audit Associate – but, rather, their testimony, and the testimony of their supervisors. Also likely relevant are time records showing the hours recorded by the Named Plaintiffs, the putative class members and the potential FLSA opt ins, payroll records showing their compensation, documents that illustrate KPMG's expectations for its Audit Associates, such as Human Resources records describing their job duties and job titles, recruiting documents and job postings, performance reviews, and training materials describing general and specific job responsibilities and standards for professional conduct and performance. Plaintiffs' blunderbuss demand that KPMG preserve the computer hard drives of all (or an unreasonably large proportion) of its departing employees who fall within the definition of the putative New York class or the nationwide collective is simply unreasonable.

8

It cannot be – and Plaintiffs have never even attempted to articulate – that the entire hard drives of the Named Plaintiffs or the thousands of putative class members and potential FLSA opt-in plaintiffs throughout the country could possibly constitute relevant material that must be preserved, much less produced, in this action. Ordinarily, litigants seek specific ESI based on a list of key custodians and reasonable search terms. Here, Plaintiffs have rejected KPMG's request that preservation efforts be focused on key custodians and have stated that search terms could not be employed to narrow the significant amount of information that exists on even a single hard drive. Rather, by insisting on the preservation of entire hard drives from all (or an unreasonably large proportion of) departing putative class members and potential opt-in FLSA plaintiffs throughout the country, Plaintiffs are essentially suggesting that they are entitled to engage in a wholesale fishing expedition, by reviewing every single email, memo, spreadsheet, photograph, etc. that was ever saved to a hard drive, based on the possibility that they may somehow be relevant to a determination of the nature of their job responsibilities and the work they actually performed. Plaintiffs' suggestion is contrary to the limitations imposed by the Federal Rules of Civil Procedure. More importantly, it is also completely antithetical to the notion that Plaintiffs' claims can be – or should be – litigated on a class or collective basis.

Plaintiffs are seeking certification of a collective action and class action status under the theory that they are similarly situated to the potential opt-in plaintiffs and putative class members that they seek to represent. As a matter of pure logic, Plaintiffs are either right or wrong about whether these claims can be tried on a representative basis, but in either case, the inordinately large number of hard drives that Plaintiffs seek to have preserved should not be necessary. If, as KPMG contends, these claims are not appropriate for class or collective treatment, then the hard drives will not be necessary as the case proceeds since the claims of

other employees will not be part of this litigation. On the other hand, if Plaintiffs were correct that the issue of whether they and other Audit Associates were exempt or non-exempt can be tried on a representative basis, then discovery of a reasonable sample of the proposed class or collective should be sufficient to try the issue. In other words, Plaintiffs cannot credibly claim that their claims are representative of the proposed class or collective, while at the same time claiming to need individualized discovery of a huge number of hard drives from the proposed class or collective.

Thus, while it is possible that there may be material on a hard drive of a particular departing Audit Associate that would be relevant to that particular Audit Associate's (unasserted) FLSA or New York Labor Law claim, such material is simply not relevant to the claims of the Named Plaintiffs, nor is it relevant to the prosecution of their proposed collective or class case.

**B.    KPMG's Current Preservation Of ESI And Hard Drives Is More Than Sufficient To Satisfy Any Proportional Discovery Need, While Further Efforts Would Be Unduly Burdensome And Disproportionate.**

Even assuming, *arguendo*, that ESI contained in hard drives of departing Audit Associates could possibly be relevant to the claims and the defenses in this action, KPMG's preservation of ESI and hard drives exceeds what is reasonable and in proportion to the issues in this case. The duty to preserve information extends only to those likely to have relevant information, the "key players" in the litigation. *See, e.g., Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433 (S.D.N.Y. 2004) ("*Zubulake V*").

Here, the key players are the Named Plaintiffs, and, arguably, their supervisors – not the thousands of putative class members in New York or throughout the country. Among other diligent preservation efforts, KPMG made a good faith effort to preserve the ESI for each of the Named Plaintiffs that existed at the time the litigation was filed. In addition, and although such preservation is overbroad and unduly burdensome, KPMG also has made a good faith effort

to preserve hard drives for departing employees who may be in the New York putative class. Furthermore, as a result of litigation holds that KPMG imposed in this and other matters, KPMG has preserved hard drives for more than 500 former Audit Associates in the putative New York class and nearly 2,300 former Audit Associates who are potential FLSA opt-in plaintiffs.[2] (*See* Keegan Decl. ¶¶ 7-10.) Any "representative discovery" that Plaintiffs might claim to need could easily be culled from those hard drives – further efforts to collect hundreds or thousands of hard drives as additional Audit Associates depart from KPMG will not add anything material to this case.

Furthermore, not only has KPMG preserved more than a sufficient corpus of hard drives from which a reasonable sample could be drawn, but KPMG also retains other documents, including ESI, related to departed employees. Indeed, KPMG is subject to professional standards and federal regulations that require the retention of certain documentation, including electronic records, related to an audit or review for at least seven years after its conclusion.[3] The

---

[2] KPMG's decision not to preserve every hard drive on a nationwide basis is amply supported by the fact that the absent potential opt-in FLSA plaintiffs have never asserted a claim against KPMG and will not become parties to this action unless the Court approves conditional certification and they affirmatively opt-in. Indeed, the hard drives in question were in the custody of the potential opt-in FLSA plaintiffs prior to their departure from KPMG, and those individuals certainly could have made their own request that KPMG preserve information from those hard drives – but none did.

[3] 17 C.F.R. § 210.2-06, which was adopted pursuant to Sarbanes-Oxley, provides in relevant part:

> (a) For a period of seven years after an accountant concludes an audit or review of an issuer's financial statements to which section 10A(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78j-1(a)) applies, or of the financial statements of any investment company registered under section 8 of the Investment Company Act of 1940 (15 U.S.C. 80a-8), the accountant shall retain records relevant to the audit or review, including workpapers and other documents that form the basis of the audit or review, and memoranda, correspondence, communications, other documents, and records (including electronic records), which:
>
> (1) Are created, sent or received in connection with the audit or review, and
>
> (2) Contain conclusions, opinions, analyses, or financial data related to the audit or review.

*See also* Public Company Accounting Oversight Board, AUDITING STANDARD NO. 3: AUDIT DOCUMENTATION, ¶14, available at http://pcaobus.org/Standards/Auditing/Pages/Auditing_Standard_3.aspx (last visited on August 11, 2011) ("The auditor must retain audit documentation for seven years from the date the

documents that KPMG has preserved pursuant to those requirements, wholly apart from any litigation hold requirement, provide a substantial body of potential discovery material – more than could ever reasonably be required. Thus, given the preservation of this vast amount of material and the burden that already exists on KPMG, there is no justification for KPMG to preserve even more.

Moreover, the use of search terms, or keywords, has become a standard part of search protocols for mitigating the costs and burdens of e-discovery. *See Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("Defined search strategies are even more appropriate in cases involving electronic data, where the number of documents may be exponentially greater."). Plaintiffs' refusal to even consider the application of search terms will increase exponentially the already exorbitant costs associated with the preservation and the potential production of hard drives.

Indeed, the preservation of hard drives is very expensive, which would further exacerbate the burden on KPMG absent some sort of sampling procedure. *See Hill v. Eddie Bauer*, 242 F.R.D. 556, 563-565 (C.D. Cal. 2007) (endorsing defendant's sampling proposal in a wage and hour class action with respect to unduly burdensome discovery requested by plaintiffs). The preservation of each hard drive costs approximately $600. (*See* Keegan Decl. ¶¶ 11-12.) This includes, *inter alia*, the hard drive itself, administration costs, coordination of the hard drive collection, and exchange server preservation. (*Id.*) KPMG has spent more than $1,500,000 on the collection and storage of the more than 2,500 hard drives for departed employees who fall within the putative New York class and/or the proposed nationwide FLSA collective. (*Id.*) However, that figure does not include the costs to process and review the materials contained on

---

auditor grants permission to use the auditor's report in connection with the issuance of the company's financial statements … unless a longer period is required by law.").

the hard drives, which need to be reviewed and possibly redacted to protect the confidences of KPMG's clients, as required by relevant law. (*See id.* ¶ 13.) *See* 8 N.Y.C.R.R. § 29.10(c) (generally prohibiting accountants from disclosing client confidences without client consent); American Institute of Certified Public Accountants Code of Professional Conduct, ET Rule 301.01 (as amended, January 14, 1992) (same).

Since the claims of any individual member of the putative class or collective are small – in fact, Plaintiffs have explicitly alleged that their claims and the claims of the proposed New York Labor Law class should be tried together precisely because those claims are "small compared to the expense and burden of individual prosecution of this litigation," (First Am. Compl. ¶ 53 (Dkt. No. 51)) – the cost of including these hard drives in KPMG's discovery efforts would potentially swallow the amount at stake, placing a disproportionate burden on KPMG. Indeed, KPMG estimates that the cost of preserving and producing ESI from a single hard drive for a single Audit Associate in document production efforts would range from $45,414 to $74,562. (Keegan Decl. ¶¶ 11-32). This estimate is larger than what is commonplace in e-discovery because Plaintiffs have taken the position that search terms cannot be used to narrow the scope of review.[4] Accordingly, even if Plaintiffs estimate the potential value of the average claim at $50,000 to $70,000 – as they did before the Court at the conference on June 16 – the cost of including a single hard drive in discovery efforts alone eclipses the value of the individual's claim.

Thus, if, as Plaintiffs have demanded, KPMG were required to preserve and to produce ESI (without search terms) from the more than 2,500 hard drives it has preserved to

---

[4] KPMG estimates that if reasonable case specific search terms were run against the hard drives at issue, the cost to preserve and produce a single hard drive would range from approximately $7,000 to more than $11,000, a cost that would still be expensive, but far lower than the estimated cost in the absence of search terms. (*See* Keegan Decl. ¶¶ 11-32.)

13

date, the cost would range from $113,535,000 to $186,405,000. (*See* Keegan Decl. ¶¶ 11-32.) And that number would increase exponentially if KPMG were required to preserve and to produce ESI (without search terms) from hundreds or thousands of additional hard drives that would be collected as Audit Associates depart KPMG on a going forward basis.

The numbers are staggering even if applied to the "compromise number of 750 hard drives" that the Court previously proposed. The cost to preserve and produce ESI (without search terms) from 750 hard drives would range from $34,060,500 to $55,921,500. (*See id.*) If search terms were applied, the cost to preserve and produce from 750 hard drives would still be disproportionate and unreasonable – $5,526,000 to $8,441,250. (*See id.*) Further, and again, both of those estimates would increase substantially if KPMG also were ordered to preserve and to produce ESI (with or without search terms) from hundreds or thousands of additional hard drives collected from Audit Associates departing KPMG in the future.

KPMG's proposal – preservation of a random sample of 100 hard drives, against which reasonable search terms to be proposed by Plaintiffs would be run – would still result in substantial expense, ranging from $736,000 to $1,125,500. (*See* Keegan Decl. ¶¶ 11-32.) And that approximate $1 million figure applies only to the preservation and production of ESI from the individual hard drives of putative class members and potential opt-in plaintiffs. It does not include the very substantial costs associated with the many other categories of documents and materials – much more likely to be relevant to the merits of Plaintiffs' claims – that KPMG has also preserved and likely will be required to produce. *See supra* at 4, 8-9.

      **C.**    **In The Alternative, The Costs Of Preserving Any Additional Hard Drives Should Be Borne By Plaintiffs.**

In the alternative, and for the reasons already explained above, KPMG respectfully submits that the Court should shift the costs of any additional preservation of hard

drives to Plaintiffs. *See Mahar v. US Xpress Enterprises, Inc.*, 688 F. Supp. 2d 95, 113 (N.D.N.Y. 2010) (holding that it is appropriate to shift the costs of preservation, where, as here, the information sought to be preserved is "likely to be of marginal relevance and is costly to retain and preserve"); *see also Treppel*, 233 F.R.D. at 373 ("Certainly, the presumption is that the party possessing information must bear the expense of preserving it for litigation. However, especially with respect to electronic data, that cost can become prohibitive. If the demanding party seeks information that is likely to be of only marginal relevance but is costly to retain ... a court may condition it upon the requesting party assuming responsibility for all or part of the expense.").

## **CONCLUSION**

For the foregoing reasons, KPMG respectfully requests that the Court grant its Motion for a Protective Order and enter an Order directing that:

(a) KPMG's current preservation of hard drives is sufficient;

    (i) KPMG shall select a random sample of 100 hard drives against which search terms shall be run;

    (ii) Plaintiffs shall propose, and the parties shall meet and confer on such search terms;

    (iii) KPMG may cease preserving, for purposes of this litigation, the additional hard drives that it has preserved to date; and

    (iv) KPMG shall not be required, in the future, to save additional hard drives of putative New York class members or potential opt-in FLSA plaintiffs; or

(b) Plaintiffs shall reimburse KPMG for the costs of any further preservation of hard drives of departing Audit Associates requested by Plaintiffs; and

(c) together with such other and further relief as the Court may deem just and

proper.

Dated: New York, New York
August 12, 2011

                        SIDLEY AUSTIN LLP

                By:    /s/ Andrew W. Stern
                    Andrew W. Stern
                    Alex J. Kaplan
                    Eric G. Hoffman
                    787 Seventh Avenue
                    New York, New York 10019
                    Tel.: (212) 839-5300
                    Fax: (212) 839-5599
                    Email: astern@sidley.com
                    Email: ajkaplan@sidley.com
                    Email: eghoffman@sidley.com

                    Michael C. Kelley (*pro hac vice*)
                    Jennifer Altfeld Landau (*pro hac vice*)
                    555 West Fifth Street, Suite 4000
                    Los Angeles, California 90013
                    Tel: (213) 896-6000
                    Fax: (213) 896-6600
                    Email: mkelley@sidley.com
                    Email: jlandau@sidley.com

                    Steven T. Catlett (*pro hac vice*)
                    One South Dearborn Street
                    Chicago, Illinois 60603
                    Tel: (312) 853-7000
                    Fax: (312) 853-7036
                    Email: scatlett@sidley.com

                    *Attorneys for Defendant KPMG LLP*