UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

KYLE PIPPINS and JAMIE SCHINDLER, Individually
and On Behalf of All Others Similarly Situated,

    11 CV 0377 (CM)(JLC)

        Plaintiffs,

**DECLARATION OF
THOMAS KEEGAN IN SUPPORT
OF KPMG LLP'S MOTION
FOR PROTECTIVE ORDER**

   -against-

KPMG LLP,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      Pursuant to 28 U.S.C. § 1746, **THOMAS KEEGAN** hereby declares as follows:

      1.    I am a Principal at KPMG LLP ("KPMG") and responsible for our Forensic Technology Services for the Northeast. I am resident in KPMG's New York, NY office. I have been responsible for Forensic Technology Services since December 2004. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently thereto.

      2.    Prior to becoming the regional lead of Forensic Technology Services for KPMG, I served as a member of KPMG's forensic investigative staff from 1998-2000, and held positions in KPMG's Global IT Development Center as project coordinator (2000-2002), project manager (2002-2003), and product development manager (2003-2004).

      3.    I received training in forensic technology and related fields from KPMG's Global IT Development Center. I received an undergraduate degree (business management) from Rutgers University in 1991, and a law degree from Rutgers Law School in 1995.

      4.    I am informed and believe that Plaintiffs' current position is that KPMG must preserve entire hard drives for (1) all potential putative New York class members (defined as current and former employees in KPMG's New York offices who worked as Associates in

KPMG's audit line of service at any time on or after March 9, 2005 through the date of judgment) ("Putative New York Class Members"), and (2) all potential members of the proposed FLSA collective (defined as current and former employees in KPMG's United States offices who worked as Associates in KPMG's audit line of service at any time on or after January 19, 2008 through the date of judgment) ("Potential FLSA Opt-ins"). I am further informed and believe that it is Plaintiffs' position that for Putative New York Class Members and Potential FLSA Opt-ins who are no longer employed by KPMG, KPMG must preserve all hard drives still in existence, and for Putative New York Class Members and Potential FLSA Opt-ins who separate from KPMG in the future, KPMG must preserve all hard drives upon separation.

5. The preservation of entire hard drives for this universe of Putative New York Class Members and Potential FLSA Opt-ins would impose significant burdens and costs on KPMG.

6. As of April 20, 2011, KPMG had identified more than 1,500 current or former employees who are Putative New York Class Members. As of April 20, 2011, KPMG also had identified more than 7,500 current or former employees who are Potential FLSA Opt-ins. Approximately 1,000 of the Putative New York Class Members are also Potential FLSA Opt-ins.

7. Notwithstanding the costs and burden involved, KPMG has made a good faith effort to preserve hard drives for departed and departing Audit Associates in New York who are Putative New York Class Members. In addition, KPMG has also preserved a number of hard drives for reasons unrelated to this litigation. As a result, KPMG has preserved a significant number of hard drives of former employees who are Putative New York Class Members and/or Potential FLSA Opt-ins.

8. Specifically, KPMG has preserved hard drives for more than 500 former employees who are Putative New York Class Members.

9. Furthermore, KPMG has preserved hard drives for nearly 2,300 former employees who are Potential FLSA Opt-ins.

10. In total, KPMG has preserved hard drives for more than 2,500 of the approximately 3,800 former employees who are Putative New York Class Members and Potential FLSA Opt-ins. In some instances, KPMG has preserved more than one hard drive for former employees who are Putative New York Class Members and Potential FLSA Opt-ins.

### ESTIMATED COSTS ASSOCIATED WITH PRESERVATION AND DISCOVERY OF DATA CONTAINED ON HARD DRIVES OF FORMER EMPLOYEES

11. As set forth below, based on my experience, I estimate that the costs associated with preserving, extracting, processing, reviewing, and producing the data contained on a single hard drive of a former employee would be as follows:

| TOTAL ESTIMATED COSTS TO PRESERVE HARD DRIVES AND TO INCLUDE DATA FROM HARD DRIVES IN DISCOVERY | | |
|---|---|---|
| | ESTIMATED COST IF REASONABLE SEARCH TERMS ARE USED | ESTIMATED COST IF REASONABLE SEARCH TERMS ARE NOT USED |
| Preservation of hard drive (see ¶¶ 12-13, below) | $600 | $600 |
| Extracting potentially discoverable data (see ¶¶ 15-19, below) | $500 | $500 |
| E-discovery processing of extracted data (see ¶¶ 20-22, below) | $300 | $1,500 |
| Hosting extracted data for attorney review (9 month duration) (see ¶¶ 23-24, below) | $180 | $1,350 |
| Attorney review of processed data (see ¶¶ 25-31, below) | $5,488 – $9,375 | $41,164 – $70,312 |
| Production of discoverable data (see ¶¶ 32-33, below) | $300 | $300 |
| TOTAL COST PER HARD DRIVE | $7,368 – $11,255 | $45,414 – $74,562 |

A. **ESTIMATED COSTS: PRESERVATION**

12. KPMG has incurred, and continues to incur, significant costs associated with its preservation of hard drives. The preservation of each hard drive costs approximately $600, which includes preservation of the hard drive itself, administration costs, coordination of

3

the hard drive collection, and related preservation of the employee's network storage and Microsoft Exchange datastore. Accordingly, KPMG has incurred more than $1,500,000 in costs associated with the collection and storage of the more than 2,500 hard drives of former Putative New York Class Members and Potential FLSA Opt-ins.

13.     That figure does not include the costs to extract, process, host, review, and produce in discovery the materials contained on the hard drives, which I am informed and believe would need to be reviewed and possibly redacted to address KPMG's professional and legal obligations regarding confidentiality of client information.

**B.    ESTIMATED COSTS: DISCOVERY**

14.     In addition to the upfront and ongoing costs associated with preserving each hard drive, the downstream costs of including the number hard drives sought by plaintiffs in discovery would be very substantial. Among other things, for each hard drive, such costs would include amounts necessary (1) to extract potentially discoverable data from the hard drive; (2) to process that extracted data for hosting and attorney review; (3) to host the data for review; (4) to review that data for responsiveness and privilege or other protections or restrictions against disclosure; and (5) to process data that is responsive and not privileged for production to plaintiffs.

**Estimated Discovery Costs: Extraction**

15.     The first step in processing a hard drive for use in civil discovery is to extract the data that may be discoverable. This is typically done by indexing the items on the hard drive; excluding certain files and file types (such as system files) that are known not to contain user data; applying agreed upon, reasonable search terms to the remaining items; and extracting all items that "hit" on the search terms. Depending upon the forensic tool(s) used to perform the extraction, it may also be possible at this stage to perform at least some deduplication of data. In my experience, this work is performed by forensics professionals and billed at hourly rates. Based on my experience, it takes a forensics professional approximately 2

4

hours to extract data from a single hard drive at a rate of $250 per hour, for an approximate cost of $500 per hard drive.

16.  The amount of data extracted from an individual hard drive as a result of the process described in paragraph 15 can vary widely and depends on a number of factors, including the size of the hard drive, the nature of the custodian's work and his/her individual practices with respect to retention of electronically stored information, the nature and operation of the entity's information technology systems, and the number and reasonableness of the search terms, if any, that are used to identify documents for extraction.

17.  Based on my experience with civil litigation generally, for data extracted using reasonable search terms, it would be reasonable to assume that each hard drive from which data is extracted would yield approximately 1 gigabyte of data. If search terms are not used, it would be reasonable to expect that each hard drive would yield 5 gigabytes of data.

18.  For search terms to have the impact estimated in paragraph 17, above, they would have to be reasonable in number and scope. For example, in this case, a term such as "KPMG" would cause most if not virtually all of the documents on an individual hard drive to be "hits" and therefore would not result in any meaningful reduction in data extracted.

19.  I am informed and believe that in this case, Plaintiffs have taken the position that it is not possible to limit the data to be extracted by using search terms.

### Estimated Discovery Costs: Processing

20.  Once potentially discoverable data has been extracted from a hard drive, that data must be sent to an e-discovery vendor for further processing before it can be made available for attorney review. That processing includes, among other things, further culling the data through further application of reasonable search terms, date ranges, and/or other limitations; possibly performing further deduplication; as well as extracting metadata and text and preparing the data to be loaded into a hosted review platform. Based on my experience, the e-discovery processing described in this paragraph costs at least $300 per gigabyte. Applying this figure to

the volumes of data assumed in paragraph 17, above, the e-discovery processing described in this paragraph would cost approximately $300 if reasonable search terms were used for the extractions described in paragraphs 15, above, or $1,500 per hard drive if search terms were not used in such extractions.

21.     Based on my experience, it is reasonable to expect that the culling processes applied by the e-discovery vendor would reduce the volume of data to be reviewed by approximately 50 percent if reasonable search terms are included in such processing, or by 25 percent if search terms are not used. Applied to the estimated volumes set forth in paragraph 17, above, each hard drive would yield approximately 0.50 gigabytes for attorney review if reasonable search terms are used, or approximately 3.75 gigabytes if search terms are not used.

### Estimated Discovery Costs: Hosting

22.     In addition to the cost of extracting and processing the data contained on a hard drive, KPMG would also have to pay monthly fees to have the data hosted for attorney review. Based on my experience, that cost would be approximately $40 per gigabyte per month. Applying this figure to the volumes of data estimated in paragraph 21, above, the hosting described in this paragraph would cost approximately $20 per hard drive per month if reasonable search terms are used to identify potentially responsive data, or approximately $150 per hard drive per month if search terms are not used.

23.     In my experience, it is reasonable to expect that any review database would be hosted for at least 9 months. Applying that duration to the volumes of data and monthly fees estimated in paragraphs 21-22, above, the hosting described in that paragraph would cost of at least approximately $180 per hard drive if reasonable search terms are used to identify potentially responsive data, or at least approximately $1,350 per hard drive if search terms are not used.

**Estimated Discovery Costs:  Attorney Review**

24. After data has been extracted, processed, and made available on a hosted review platform, it is necessary to have attorneys review the data for responsiveness, privilege, and other considerations. Such other considerations include, importantly, but are not limited to, ensuring that KPMG complies with its ethical and legal obligations to maintain in confidence information entrusted to it by its clients. Often that process will entail redacting or otherwise excising or obscuring client confidential information in otherwise responsive documents, an entirely manual, time-consuming, and expensive process.

25. More specifically, the attorney review process includes at least the following components: (1) first-tier review of all documents, usually performed by contract attorneys; (2) quality control review of samples of documents selected from the first-tier determinations, usually performed by a combination of contract attorneys and counsel of record; (3) second-tier review of selected documents, such as those identified by first-tier reviewers as "close calls" or otherwise needing further review, usually performed by counsel of record; and (4) final review of documents containing redactions and documents to be withheld under claim of privilege, also usually performed by counsel of record.

26. Based on my experience, for the purpose of estimating costs of attorney review, it is reasonable to assume that 1 gigabyte of data is equivalent to approximately 75,000 printed pages; that on average 1 document contains approximately 10 printed pages; and that, therefore, 1 gigabyte of data comprises approximately 7,500 documents. Applying these figures to the volumes of data estimated in paragraph 21, above, I would estimate that each hard drive would yield approximately 3,750 documents for attorney review if reasonable search terms are used to identify potentially responsive data, or approximately 28,125 documents if search terms are not used.

27. Also based on my experience, it is reasonable to assume that where only light redaction is required, the first-tier and quality control reviews described in paragraph 25, above, would proceed at the rate of approximately 60-80 documents per hour. Because the

documents sought by Plaintiffs in this case are likely to contain large amounts of confidential information related to KPMG's clients, I expect that substantial redaction will be required. Therefore, I believe that an appropriate assumption for this case would be that the first-tier and quality control reviews described in paragraph 25, above, would proceed at the rate of not more than approximately 45-55 documents per hour. Applying these figures to the volumes of documents set forth in paragraph 21, above, I would estimate that each hard drive would require between approximately 68 and 83 hours of first-tier review and between approximately 7 and 8.5 hours of quality control review if reasonable search terms are used to identify potentially responsive data, and between approximately 511 and 625 hours of first-tier review and between approximately 51 and 62 hours of quality control review if search terms are not used.

28.  Also based on my experience, it would be reasonable to assume that the second-tier review and final privilege review described in paragraph 25, above, would proceed more slowly than the first-tier and quality control reviews; therefore, using the same assumption of 45-55 documents per hour, for the sake of simplicity, would be conservative and, if anything, likely would understate the actual cost associated with those processes. Applying these figures to the volumes of documents set forth in paragraph 21, above, and assuming that only 5% of documents require second-tier and final privilege review, I would estimate that each hard drive would require between approximately 3.5 and 4 hours of second-tier review and between approximately 3.5 and 4 hours of final privilege review if reasonable search terms are used to identify potentially responsive data, and between approximately 26 and 31 hours of second-tier review and between approximately 26 and 31 hours of final privilege review if search terms are not used.

29.  Based on my experience, it would be reasonable to assume that the average hourly rate for contract attorneys performing work described in paragraphs 25 and 27, above, would be $40-$50 per hour. Also based on my experience, it would be reasonable to assume that the average hourly rate for counsel of record performing work described in paragraphs 25 and 28, above, would be between $365 and $575 per hour.

8

30. Based on the numbers set forth above, following are the estimated costs of attorney review for the data extracted from one hard drive:

| ESTIMATED ATTORNEY REVIEW COSTS, PER HARD DRIVE, IF REASONABLE SEARCH TERMS ARE USED TO IDENTIFY POTENTIALLY RESPONSIVE DATA | | | | | | |
|---|---|---|---|---|---|---|
| | LOW END OF RANGE | | | HIGH END OF RANGE | | |
| | Unit Cost | Units | Extended Cost | Unit Cost | Units | Extended Cost |
| First-tier review (3,750 documents) | $40.00 | 68.2 | $2,727.27 | $50.00 | 83.3 | $4,166.67 |
| Quality control review (10%=375 documents) | $40.00 | 6.8 | $272.73 | $50.00 | 8.3 | $416.67 |
| Second-tier review (5%=188 documents) | $365.00 | 3.4 | $1,244.32 | $575.00 | 4.2 | $2,395.83 |
| Final privilege review (5%=188 documents) | $365.00 | 3.4 | $1,244.32 | $575.00 | 4.2 | $2,935.83 |
| | | TOTAL | $5,488.64 | | TOTAL | $9,375.00 |

| ESTIMATED ATTORNEY REVIEW COSTS, PER HARD DRIVE, IF REASONABLE SEARCH TERMS ARE NOT USED TO IDENTIFY POTENTIALLY RESPONSIVE DATA | | | | | | |
|---|---|---|---|---|---|---|
| | LOW END OF RANGE | | | HIGH END OF RANGE | | |
| | Unit Cost | Units | Extended Cost | Unit Cost | Units | Extended Cost |
| First-tier review (28,125 documents) | $40.00 | 511.4 | $20,454.55 | $50.00 | 625.0 | $31,250.00 |
| Quality control review (10%=375 documents) | $40.00 | 51.1 | $2,045.45 | $50.00 | 62.5 | $3,125.00 |
| Second-tier review (5%=2,812 documents) | $365.00 | 25.6 | $9,322.39 | $575.00 | 31.3 | $17,968.75 |
| Final privilege review (5%=2,812 documents) | $365.00 | 25.6 | $9,332.39 | $575.00 | 31.3 | $17,968.75 |
| | | TOTAL | $41,164.78 | | TOTAL | $70,312.50 |

### Estimated Discovery Costs: Production

31. After the attorney review process has been completed, the documents selected for production must be processed for production, which includes generating *.tiff images of such documents, applying Bates numbers and confidentiality legends as appropriate, creating a data load file containing metadata and other information necessary for the requesting party to use the production, and burning all of this information to DVD or some other production media. Based on my experience, the cost of these production steps is approximately $0.04 per page.

32. Based on a conservative assumption that no more than 20% of documents reviewed using reasonable search terms would be produced, I estimate that production costs would be approximately $300 per hard drive if reasonable search terms are used to identify potentially responsive data. If search terms are not used, I estimate that production costs would exceed $300 per hard drive.

◆ ◆ ◆ ◆ ◆

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 12, 2011.

_____
Thomas Keegan

10