**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Seth M. Marnin
Dana Sussman
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg Shavitz (admitted *pro hac vice*)
Keith Stern (admitted *pro hac vice*)
Hal B. Anderson (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 4-4
Boca Raton, Florida 33432
Telephone: (456) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KYLE PIPPINS, JAMIE SCHINDLER, and
EDWARD LAMBERT, individually and on
behalf of all others similarly situated,

                              Plaintiffs,

        v.

KPMG LLP,

                              Defendant.

**No. 11 Civ. 0377 (CM) (JLC)**

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

## TABLE OF CONTENTS

INTRODUCTION: KPMG'S MOTION IS PREMATURE AND ILL-FOUNDED ..................... 1

FACTS UNDERLYING THIS MOTION .................................................................................. 2

    I.    PLAINTIFFS DESCRIBE WHAT IS LIKELY TO BE FOUND ON LAPTOPS ........................................................................................................... 2

    II.    KPMG TAKES POSITION THAT IT MAY DESTROY THE HARD DRIVES ............................................................................................................ 3

    III.    EFFORTS TO NEGOTIATE PRESERVATION OF HARD DRIVES FAILED ......... 5

    IV.    PLAINTIFFS' RECENT OFFER TO RESOLVE MOTION (AUG. 17-18, 2011) .............................................................................................................. 7

STANDARD OF REVIEW ................................................................................................... 8

ARGUMENT ....................................................................................................................... 9

    I.    THE EMPLOYER IS REQUIRED TO PRESERVE TIME RECORDS AS A MATTER OF LAW ...................................................................................... 9

    II.    AN ORDER AGAINST PRESERVATION OF HARD DRIVES WOULD BE PREMATURE. ......................................................................................... 10

    III.    HARD DRIVES MAY LEAD TO DISCOVERY OF ADMISSIBLE EVIDENCE ................................................................................................... 13

    IV.    KPMG'S ANALYSIS HAS NOT BEEN SUBJECTED TO DISCOVERY AND APPEARS EXAGGERATED ON ITS FACE ........................................... 14

        A.    Even on its Face, Without Further Investigation, Expenses Are Exaggerated ........................................................................................ 14

        B.    KPMG's Proposal of Keyword Searches Cannot Possibly Recover the Type of Information Plaintiffs Seek ................................................. 15

    V.    COST-SHIFTING IS UNWARRANTED. ............................................................ 17

    VI.    RECOMMENDED ALTERNATIVE TO PROTECTIVE ORDER. ................... 18

CONCLUSION ................................................................................................................... 19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*Anderson v. Mount Clemens Pottery Co.*,
    328 U.S. 680 (1946)...........................................................................................13, 14

*Asarco, Inc. v. U.S. Environmental Protection Agency*,
    No. 08 Civ. 1332, 2009 WL 1138830 (D.D.C. Apr. 28, 2009) .............................16

*B&B Hardware, Inc. v. Fastenal Co.*,
    No. 10 Civ. 0317, 2011 WL 2115546 (E.D. Ark. May 25, 2011) .........................11

*Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*,
    244 F.R.D. 614 (D. Colo. 2007) ...........................................................................11

*Cartel Asset Management v. Ocwen Financial Corp.*,
    No. 01 Civ. 1644, 2010 WL 502721 (D. Colo. Feb. 8, 2010) ................................12

*Chao v. Gotham Registry, Inc.*,
    514 F.3d 280 (2d Cir. 2008)....................................................................................9

*Computer Assocs. International, Inc. v. Quest Software, Inc.*,
    No. 02 Civ. 4721, 2003 WL 21277129 (N.D. Ill. June 2, 2003) ..........................17

*Duling v. Gristede's Operating Corp.*,
    266 F.R.D. 66 (S.D.N.Y. 2010) ..............................................................................8

*During v. City University of New York*,
    No. 05 Civ. 6992, 2006 WL 2192843 (S.D.N.Y. Aug. 1, 2006) ..........................11

*Freydl v. Meringolo*,
    No. 09 Civ. 7196, 2011 WL 134972 (S.D.N.Y. Jan. 7, 2011)..................................8

*Garcia v. Tyson Foods, Inc.*,
    No. 06 Civ. 2198, 2010 WL 5392660 (D. Kan. Dec. 21, 2010).........................13

*Goodman v. Praxair Services, Inc.*,
    632 F. Supp. 2d 494 (D. Md. 2009) ......................................................................10

*Grochowski v. Phoenix Construction*,
    318 F.3d 80 (2d Cir. 2003)....................................................................................13

*Helmert v. Butterball, LLC*,
    No. 08 Civ. 00342, 2010 WL 2179180 (E.D. Ark. May 27, 2010) ........................13

*Hill v. Eddie Bauer*,
242 F.R.D. 556 (C.D. Cal. 2007) ..........................................................................11

*In re KPMG Wage and Hour Litigation*,
No. 07 Civ. 4396-RSWL-CW (C.D. Cal.) ...............................................................3

*Mahar v. US Xpress Enterprises, Inc.*,
688 F. Supp. 2d 95 (N.D.N.Y. 2010) .........................................................11, 12, 18

*Mendez v. Radec Corp.*,
232 F.R.D. 78 (W.D.N.Y. 2005) .............................................................................14

*Mendoza v. Casa de Cambio Delgado, Inc.*,
No. 07 Civ. 2579, 2008 WL 3399067 (S.D.N.Y. Aug.12, 2008) ...........................14

*Mikron Industries, Inc. v. Hurd Windows & Doors, Inc.*,
No. 07 Civ. 0532, 2008 WL 1805727 (W.D. Wash. 2008) .....................................17

*The Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC*,
685 F. Supp. 2d 456 (S.D.N.Y. 2010) ...............................................................10, 11

*Philips Electronics North America Corp. v. BC Technical*,
773 F. Supp. 2d 1149 (D. Utah 2011) .....................................................................10

*Reich v. Southern New England Telecommunications Corp.*,
121 F.3d 58 (2d Cir. 1997) .....................................................................................14

*Rimkus Consulting Group, Inc. v. Cammarata*,
688 F. Supp. 2d 598 (S.D. Tex. 2010) ....................................................................11

*In re Subpoena Issued to Dennis Friedman*,
350 F.3d 65 (2d Cir. 2003) .....................................................................................11

*Tran v. Alphonse Hotel Corp.*,
281 F.3d 23 (2d Cir. 2002) .....................................................................................14

*Treppel v. Biovail Corp.*,
233 F.R.D. 363 (S.D.N.Y. 2006) ...............................................................12, 16, 18

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
269 F.R.D. 497 (D. Md. 2010) ..........................................................................11, 12

*Zubulake v. UBS Warburg LLC*,
217 F.R.D. 309 (S.D.N.Y. 2003) ("*Zubulake I*") .............................................12, 17

*Zubulake v. UBS Warburg LLC*,
220 F.R.D. 212 (S.D.N.Y. 2003) ("*Zubulake IV*") ...............................................11

iii

*Zubulake v. UBS Warburg, LLC*
    229 F.R.D. 422 (S.D.N.Y. 2004) ("*Zubulake V*")...........................................................10, 12

**STATUTES**

29 U.S.C. §§ 203(e)(1), (g) ...................................................................................................9

29 U.S.C. § 211(c) ................................................................................................................9

29 U.S.C. § 215(a)(5)............................................................................................................9

N.Y. Lab. L. § 196-a ...........................................................................................................14

**RULES AND REGULATIONS**

29 C.F.R. § 516.2(a)(7) .........................................................................................................9

29 C.F.R. § 516.6(a)(1) .........................................................................................................9

N.Y. Comp. Codes R. & Regs., tit. 12, §142-2.6(a)(4) ........................................................9

Fed. R. Civ. P. 26(b)(2)...........................................................................................1, 10, 12, 17

**OTHER AUTHORITIES**

Charles Alan Wright, Arthur Miller, Richard L. Marcus, & Mary Kay Kane, *Federal Prac. & Proc.* § 2035 (3d ed. 2010) ...................................................................................8

Jason R. Baron & Edward C. Wolfe, *A Nutshell on Negotiating E-Discovery Search Protocols*, 11 Sedona Conf. J. 229, 231 (2010) ....................................................................16

Jay Grenig, Browning Marean & Mary Pat Poteet, *Electronic Discovery & Records Management Guide: Rules, Checklists & Forms* (2009 ed.) § 15:15 .....................................16

*A Project of the Sedona Conference Working Group on Best Practices for the Use of Search & Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 152, 192 (2007).................................................................................................................................16

KPMG, *Litigation Readiness and Subpoena Response*, http://www.kpmg.com/US/en/IssuesAndInsights/ArticlesPublications/Documents/litigation-readiness.pdf......................................................................................................1

## INTRODUCTION: KPMG'S MOTION IS PREMATURE AND ILL-FOUNDED

It is hard to fathom the timing of this motion.  KPMG's request for a protective order is not necessary at this time to limit ***production*** of data, because discovery is stayed.  Nor is this genuinely a motion about ***preserving*** thousands of hard drives, which KPMG has apparently already done.  KPMG simply wants amnesty for its unilateral decision to destroy the hard drives of departing Audit Associates since 2009, and a green light to destroy thousands more.

Plaintiffs have not placed untenable preservation demands on KPMG.  Plaintiffs agree in principle to sampling and other search technologies to reduce the costs of preservation and, in the interest of compromise, proposed the initial turnover of just *five* hard drives (*see infra* at Facts § IV).  But even this is too much for KPMG, which promotes itself as an industry leader in assisting companies with records management and e-discovery.[1]  KPMG refuses to divulge one byte of data until Plaintiffs sign on blindly to a proposal that limits preservation to an arbitrary number of hard drives and that ESI preserved on those drives be confined by keyword searches (an outmoded search tool), with wholesale deletion of all other hard drives without any review.

This motion should instead be denied, and the destruction of hard drives halted.  The argument below shows *first* (§ I) that KPMG wants to dump data that the company is legally required to preserve under federal and New York law, independent of any discovery obligations. *Second* (§ II), KPMG improperly demands relief under Rule 26(b)(2)(C)(iii), which concerns the *production* of data in discovery, not its *preservation*. *Third* (§ III), review of the Audit Associates' hard drives appear reasonably calculated to lead to the discovery of admissible

---

[1]  *See* KPMG, *Litigation Readiness and Subpoena Response*, http://www.kpmg.com/US/en/IssuesAndInsights/ArticlesPublications/Documents/litigation-readiness.pdf) (last visited Aug. 25, 2011).

evidence. *Fourth* (§ IV), KPMG's cost estimates are overstated and its supposed compromise is an unacceptable pig-in-a-poke to Plaintiffs. *Finally* (§ V), cost-shifting is unwarranted here.

<u>**FACTS UNDERLYING THIS MOTION**</u>

KPMG describes a history of negotiation over preservation and discovery that is materially inaccurate. Memorandum of Law in Support of Defendant's Motion for Protective Order ("Def.'s Memo.") at 3-5. Plaintiffs, as the record reveals, have been open to sampling, the application of search techniques to limit production, and other methods of reducing the burden of discovery. It is KPMG that takes the unyielding position that only an arbitrary number of laptops will be preserved *and* that Plaintiffs must first proffer keyword search terms. KPMG has refused to provide discovery about the cost of production and will not produce a single hard drive to allow Plaintiffs to determine what data might be relevant. KPMG has consistently threatened to go to Court if Plaintiffs do not accept its framework for preservation.

**I.     PLAINTIFFS DESCRIBE WHAT IS LIKELY TO BE FOUND ON LAPTOPS.**

Plaintiffs have had no discovery in this matter to date, and so cannot directly investigate what may be located on the Plaintiffs' or other Audit Associates' hard drives. Judge McMahon struck all of Plaintiffs' discovery pending the Court's decision on 29 U.S.C. §216(b) conditional certification. Declaration of Justin M. Swartz in Support of Plaintiffs' Opposition to Defendant's Motion for Protective Order ("Swartz Decl.") Ex. A (Order of Judge McMahon, June 27, 2011) ("Plaintiff's [sic.] discovery requests are stricken. I said there would be no discovery until I deal with conditional certification"). Despite Plaintiffs' informal requests for information about the hard drives, KPMG refuses to answer inquiries that might help narrow the dispute. Swartz Decl. Ex. B (Justin M. Swartz letter to the Court, June 10, 2011) ("instead of providing the information Plaintiffs requested, KPMG's counsel has been dismissive of Plaintiffs' questions, calling them

'unprofessional,' 'absurd,' and not 'in good faith,' and providing only limited and often vague responses.").

Curiously, KPMG nowhere states in its papers whether it has examined what is contained on the hard drives. Plaintiffs, who actually used the laptops, have personal knowledge of at least some of what might be expected to be found there, and such data are relevant to this case. The laptops would include such data as the usage information, log-in/log-out information, application records, forms, and other contents stored on the laptops in the course of the business day, which would be helpful in showing both the range of hours during which they worked and the substance of their work. Swartz Decl. Ex. T (Declaration of Edward Lambert, August 25, 2011) ¶¶ 4, 5, 8; Ex. U (Declaration of Kyle Pippins, August 25, 2011) ¶¶ 4, 5, 8; Ex. V (Declaration of Jamie Schindler, August 26, 2011) ¶¶ 4, 5, 8.

Although KPMG kept time records for Audit Associates, the time records likely do not reflect all of the hours worked under the broad definition of "work" recognized under wage and hour law (*see* Argument, § I, *infra*). Defendant discouraged Audit Associates from recording all of the hours that they actually worked. KPMG set a budget for each audit performed and if that budget was exceeded, KPMG wrote down only the hours actually charged so that customers would not know that its employees exceeded the number of hours allowed in the budget. Swartz Decl. Ex. C (Declaration of Samuel Bradley, April 5, 2011) ¶ 34; Ex. D (Declaration of Edward Lambert, April 5, 2011) ¶ 33; Ex. E (Declaration of Kyle Pippins, March 31, 2011) ¶ 34; Ex. F (Declaration of Jamie Schindler, March 31, 2011) ¶ 33.

## II.   KPMG TAKES POSITION THAT IT MAY DESTROY THE HARD DRIVES.

In this case, and the parallel litigation pending in California, *In re KPMG Wage and Hour Litigation*, No. 07 Civ. 4396-RSWL-CW (C.D. Cal.), KPMG has taken the position that it need

3

not and will not preserve hard drives of most of the absent class members, although it has (of its

own accord) set aside hard drives of putative class members in California and New York:

> We repeatedly informed Plaintiffs' counsel, including Steve Elster and Jerry
> Wells, that KPMG LLP was not preserving ESI or hard drives for all departing
> employees – during at least our calls on July 15, 2009 and August 21, 2009. In
> particular, during our discussion on August 21, 2009, Messrs. Elster and Wells
> specifically asked me if KPMG LLP was preserving hard drives for all employees
> in the United States. I replied that KPMG LLP was not preserving hard drives for
> all departing employees in the United States.

Swartz Decl. Ex. G (Colleen M. Kenney Letter, September 16, 2010) at 2.

KPMG takes the same position here as it has in California: that it will not commit to

preserve the hard drives of departing Audit Associates except as part of an overarching proposal

to preserve a limited sample, and only on condition that Plaintiffs commit to key term searches in

advance. *See id.* at 2-3; Swartz Decl. Ex. H (Colleen M. Kenney Letter, June 6, 2011) at 4

("KPMG will not agree to preserve computer hard drives of all of the departing employees who

are potential FLSA opt-in plaintiffs throughout the country.") and at 1-2 ("we told you that

KPMG is not currently preserving and does not intend to preserve . . . ESI related to Putative

Class Members.").

KPMG has also not denied, under direct questioning by this Court on June 16, 2011, that

it intends to destroy the hard drives on the ground that it believes them too burdensome to

preserve:

> 10       Mr. Hoffman, why does KPMG have to destroy any of
> 11   these hard drives?  Why not wait until the case moves further
> 12   along and you know whether conditional certification takes
> 13   place or not, just maintain the status quo, and you don't
> 14   destroy any hard drives.
> 15       Why is there some necessity to resolving this question
> 16   now?
> 17       MR. HOFFMAN:  Sure.  It is certainly burdensome.
> 18       THE COURT:  How so?
> 19       MR. HOFFMAN:  Our estimate is it's $600 approximately

4

20    per hard drive to preserve a hard drive.  That includes the
21    fact that when they have to preserve the hard drive, then they
22    have to go out and buy a new one for another employee who would
23    otherwise get the same machine.  So there is a cost there
24    associated with it.

Swartz Decl. Ex. I (Tr. of Proceedings, June 16, 2011) at 11.   KPMG rejected even a two-week

moratorium proposed by Plaintiffs in this case. *See* Swartz Decl. Ex. H (Kenney Letter, June 6,

2011) at 2-3.

## III.    EFFORTS TO NEGOTIATE PRESERVATION OF HARD DRIVES FAILED.

When this issue first emerged in the present case, Plaintiffs asked that KPMG at least

temporarily commit to preserving the hard drives, to reach a sampling agreement that would

preserve a representative array of hard drives, and to allow discovery of what is actually on the

hard drives and to furnish information supporting the alleged cost of data preservation. Swartz

Decl. Ex. J (Justin M. Swartz Letter, May 31, 2011) at 2-3.  As Plaintiffs noted, KPMG refused

Plaintiffs' inquiries to inform them of what was contained on the hard drives, to furnish

Plaintiffs' access to any hard drives, to inform Plaintiffs whether the data on the hard drives

might be derived from other sources, or to discuss the costs of possible alternatives to preserving

the data on the hard drives. Swartz Decl. Ex. B (Justin M. Swartz Letter to the Court, June 10,

2011) at 3-4.

In a meet-and-confer on June 8, 2011, Plaintiffs again raised the same issues concerning

the contents and accessibility of the hard drives, and KPMG declined to provide a Rule 30(b)(6)

witness to answer questions about the hard drives or a sample hard drive for review to determine

what might be stored there.  Swartz Decl. Ex. K (Eric G. Hoffman Letter to the Court, June 10,

2011) at 2.  KPMG wrote that unless Plaintiffs agreed to a "preservation of only a sample of the

hard drives" that afternoon, it would cease negotiating.  *Id.* at 2-3.  *See also* Swartz Decl. Ex. L

(Eric G. Hoffman Letter, June 9, 2011) at 1-2 (demanding a response to KPMG random sample preservation proposal by "tomorrow" or "we will advise Judge Cott . . . that the parties have reached an impasse").

On July 15, 2011, KPMG proposed a limited preservation of 250 hard drives, selected randomly with a limited "swap out" of hard drives to mitigate any skewing of the results.  Swartz Decl. Ex. M (Eric G. Hoffman Letter, July 15, 2011) at 1.  Again, it insisted that either Plaintiffs accept this proposal (i.e., "a clear statement that this framework is acceptable to Plaintiffs") or it would inform the Court that the parties were not going to be able to reach agreement on their own. *Id.*

There have been several further Court-directed efforts to extend and mediate the hard drive preservation dispute.  On July 15, 2011, Plaintiffs requested an additional ten days to attempt to resolve the preservation issue, which this Court granted.  Swartz Decl. Ex. N. (Order of Magistrate Judge Cott, July 15, 2011).  KPMG immediately signaled its intention not to cooperate, in a follow-up letter to the Court the same day, "disagree[ing] with the Plaintiffs' suggestion . . . that the discussion of this issue should continue." *Id.*  The Court ordered "counsel to continue to negotiate between now and July 25, 2011.  If the parties are unable to resolve this issue on their own, the parties shall appear at a pre-motion conference before the Court on Tuesday July 26, 2011 . . . ." *Id.*

At the July 26, 2011 conference, the Court made a proposal for a compromise which KPMG rejected.  *See* Swartz Decl. Ex. P (Andrew W. Stern Letter, July 29, 2011) at 1.  The Court proposed that the parties consider preservation of 750 hard drives now, and one-third of future departing Audit Associates' hard drives thereafter.  The Court further proposed that the hard drives be selected based on negotiated criteria in an effort to achieve representativeness and

6

that the parties negotiate a stipulation on the admissibility of the hard drives that would preclude KPMG from making certain arguments in the future.  On July 27, 2011, the Court ordered that "[t]he parties shall have until August 2, 2011 to continue their meet and confer regarding a framework for the preservation of certain hard drives of KPMG's departing employees."  Swartz Decl. Ex. O (Order of Magistrate Judge Cott, July 27, 2011).  The Court offered to meet with the parties collectively or separately to resolve the dispute.  *Id.*

On July 29, 2011, KPMG rejected the Court's suggested framework and instead proposed that: (1) the hard drives be purely randomly selected, instead of chosen for representativeness; (2) KPMG be able to destroy all of the hard drives if conditional certification is denied or the opt-in period ends; (3) KPMG be allowed to destroy all other hard drives; and (4) KPMG be permitted to preserve only the ESI found on the future hard drives responsive to keyword search terms.  Swartz Decl. Ex. P (Stern Letter, July 29, 2011) at 1.

## IV.   PLAINTIFFS' RECENT OFFER TO RESOLVE MOTION (AUG. 17-18, 2011).

At each stage of this process, Plaintiffs have sought a middle ground, asking questions about the hard drives calculated to determine how important the data might be to the case, and agreeing to negotiate sampling, but at each turn they have been rebuffed.  Swartz Decl. Ex. Q (Justin M. Swartz Email, July 22, 2011) ("if we had access to the other discovery that we will ultimately obtain [about the hard drives], we would be better informed with respect to this issue because we would have a better idea of how badly we need the hard drives and whether they are the only source of certain evidence."); Swartz Decl. Ex. B (Swartz Letter to Court, June 10, 2011) at 1 (laying out history of negotiations; "KPMG has not yet provided sufficient information, including with respect to the contents of the hard drives, the number of hard drives in question, and the cost of preservation, to allow Plaintiffs to negotiate an informed resolution . .

7

. "Plaintiffs have always been willing to attempt to negotiate a reasonable sample"); Swartz Decl. Ex. J (Swartz Letter, May 31, 2011) at 2-3 (inquiring about the costs of preserving the hard drives, possible methods of sampling, and whether the hard-drive data might be available from other sources).

Last week, in the interest of compromise, Plaintiffs suggested the production of a sample of just *five* laptop hard drives to allow Plaintiffs' counsel an opportunity to review the kinds of data that might appear on them, to facilitate a discussion about how many hard drives and what kind of data we may need to have preserved.  Swartz Decl. Ex. R (Justin M. Swartz Letter, August 17, 2011).  In fewer than twenty-four hours, this offer was rejected with no alternative proposal. Swartz Decl. Ex. S (Andrew W. Stern Letter, August 18, 2011).  KPMG flatly described the proposal as "unworkable" and insisting once again that Plaintiffs must specify search terms as a "threshold."

## STANDARD OF REVIEW

"The party seeking a protective order bears the burden of establishing that good cause for the order exists." *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010). "[T]he existence of good cause for a protective order 'is a factual matter to be determined from the nature and character of the information sought,'" and cannot be established by "stereotyped and conclusory statements." 8A Charles Alan Wright, Arthur Miller, Richard L. Marcus, & Mary Kay Kane, *Federal Prac. & Proc.* § 2035 (3d ed. 2010) (citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Duling,* 266 F.R.D. at 71 (citation omitted).  The district court exercises its discretion in deciding whether to issue a protective order.  *Id.* at 72; *Freydl v. Meringolo*, No. 09 Civ. 7196, 2011 WL 134972, at *3 (S.D.N.Y. Jan. 7, 2011).  KPMG, as we shall see, has not met its burden.

8

## ARGUMENT

I.    **THE EMPLOYER IS REQUIRED TO PRESERVE TIME RECORDS AS A MATTER OF LAW.**

At the outset, the hard drives in this case contain records of work performed by the Plaintiffs and absent class members. The FLSA requires that employers "make, keep, and preserve" an accurate record of hours worked by their employees. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a)(7).  Such records are to be preserved for two years.  29 C.F.R. § 516.6(a)(1). Failure to keep such records is a separate, substantive violation of the FLSA. 29 U.S.C. § 215(a)(5). The NYLL contains similar requirements. N.Y. Comp. Codes R. & Regs., tit. 12, §142-2.6(a)(4) (requiring employers to keep records of hours worked for a six-year period).

Plaintiffs' declarations establish that the time that KPMG *officially* recorded for Audit Associates is *not* a complete and accurate record of all of their work, as it contains only time billed to clients – time that management evidently could reduce in its discretion. The definition of work, for purposes of wage and hour laws, is obviously far broader than that.  The FLSA defines an employee as "any individual employed by an employer" and defines "employ" as "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), (g). As the Second Circuit has observed:

> The broad meaning that has emerged from Supreme Court cases describes work as exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities.

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008).  Thus, KPMG is already under a legal obligation – as to which KPMG points to no exemption – to preserve what might be the only existing records of hours that absent class members actually worked under that broad meaning, outside of those billed to clients.  The statutes grant no authority to the Court to waive

9

this obligation or shift KPMG's compliance costs. The motion should be denied on this ground alone.

## II.      AN ORDER AGAINST PRESERVATION OF HARD DRIVES WOULD BE PREMATURE.

KPMG's motion is premature. There is now a stay of discovery and no opportunity for Plaintiffs to scrutinize KPMG's claimed storage costs, or to examine the hard drives themselves. We concern ourselves at this stage with the interim issue of *preservation* before discovery commences, a burden broader than the duty of production. *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 518 n.10 (D. Md. 2009) (citing "important difference between the duty to *preserve* and the duty to *produce*" under Fed. R. Civ. P. 26) (emphasis in original). There is no urgent need to resolve the preservation issue because KPMG has already apparently preserved thousands of hard drives, and has not shown that it will cost significantly more to continue to preserve them. The Court should briefly maintain the status quo, halt any destruction of hard drives, and push for compromise.

KPMG relies on Rule 26(b)(2)(C)(iii)'s proposition that the burden or expense of the proposed discovery outweighs its likely benefit, but this balancing applies explicitly to *production* of discovery, not to the duty of *preservation*. Def.'s Memo. at 6. "Cases across the country confirm that the duty to preserve means action must be taken to preserve evidence, meaning that it is not lost, destroyed, inadvertently or negligently overwritten, or intentionally wiped out, and that it is available to be produced to the other side." *Philips Elecs. N. Am. Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1195 (D. Utah 2011). *See also Zubulake v. UBS Warburg, LLC* ("*Zubulake V* "), 229 F.R.D. 422, 432-33 (S.D.N.Y. 2004); *The Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 685 F. Supp. 2d 456, 475 (S.D.N.Y. 2010).  Courts agree that the costs of preservation presumptively lie with the party in

custody of the records, as KPMG's authority confirms. *Mahar v. US Xpress Enters., Inc*., 688 F. Supp. 2d 95, 113 (N.D.N.Y. 2010) (*citing, inter alia*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)).

KPMG also cites *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("*Zubulake IV*"), Def.'s Memo. at 7, but that case concerns data on backup tapes that are characteristically less accessible than employee hard drives ("a party need not preserve all backup tapes even when it reasonably anticipates litigation"). *Accord B&B Hardware, Inc. v. Fastenal Co*., No. 10 Civ. 0317, 2011 WL 2115546, at *4-5 (E.D. Ark. May 25, 2011) (contrasting relative accessibility of employee hard drives with backup tapes).  Employee hard drives fall within the scope of media that ordinarily need to be preserved.  *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc*., 244 F.R.D. 614, 629 (D. Colo. 2007) (awarding sanctions for party's failure to suspend expunging hard drives of former employees after litigation commenced).

KPMG cites not *one* case where a court excused a party of its pre-discovery duty of preservation, let alone shifted the cost to a party that *might* at some date request its production. Its cases nearly all concern demands made by parties seeking production of discovery.  *See In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69-70 (2d Cir. 2003) (deposition of lawyer); *Victor Stanley, Inc. v. Creative Pipe, Inc*., 269 F.R.D. 497, 506 (D. Md. 2010) (spoliation sanctions); *Rimkus Consulting Grp.*, *Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612-13 (S.D. Tex. 2010) (spoliation sanctions); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 559-60 (C.D. Cal. 2007) (production of employment records); *During v. City Univ. of N.Y.*, No. 05 Civ. 6992, 2006 WL 2192843, at *1 (S.D.N.Y. Aug. 1, 2006) (production of employment records); *Treppel v. Biovail Corp*., 233 F.R.D. 363, 371-73 (S.D.N.Y. 2006) (plaintiff seeking protective order against party

11

in custody of the data; held to be premature); *Zubulake V*, 229 F.R.D. at 424 (spoliation

sanctions); *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 311 (S.D.N.Y. 2003) ("*Zubulake I*")

(production of communications between defendant's employees concerning plaintiff).  The

exceptional case, *Mahar*, 688 F. Supp. 2d at 112-13, concerned the interesting, if irrelevant,

question of whether the collateral expense of preserving evidence (a wrecked tractor-trailer)

could be taxed as damages in a tort action.  None of these cases support a protective order here.

The motion is premature for a second reason: there has been no discovery to allow the

parties and Court to knowledgably craft a plan for preservation and production.  Plaintiffs have

not cross-examined KPMG's claims of excessive cost, or even determined whether to seek full

discovery of the contents of the hard drives. This motion depends on fact-bound determinations

that require at least targeted discovery in order for Plaintiffs to respond. *Victor Stanley, Inc.*, 250

F.R.D. at 260 n.10 ("[D]eciding whether ESI discovery is not reasonably accessible because of

undue burden or cost (Fed. R. Civ. P. 26(b)(2)(B)) involves factual determinations, as does

determining whether discovery sought is too expensive or burdensome under Fed. R. Civ. P.

26(b)(2)(C) . . . .").  Were Plaintiffs to investigate some sample hard drives to see what is

contained in them, they may be able to propound targeted requests for specific files contained

within the hard drives at lesser cost.  So far, though, Plaintiffs have not been allowed to do so.

Defendants have failed to hold up their end of the process and, thus, are not entitled to a

protective order.  *See, e.g., Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01 Civ. 1644, 2010 WL

502721, at *15 (D. Colo. Feb. 8, 2010) (on motion for protective order, movant's burden cannot

be sustained with bald generalizations; "'the responding party should present details sufficient to

allow the requesting party to evaluate the costs and benefits of searching and producing the

identified sources'") (*quoting Mikron Indus., Inc. v. Hurd Windows & Doors, Inc*., No. 07 Civ.

0532, 2008 WL 1805727, at \*1 (W.D. Wash. 2008)).

## III.    HARD DRIVES MAY LEAD TO DISCOVERY OF ADMISSIBLE EVIDENCE.

KPMG's suggestion that examination of the hard drive contents is not likely to lead to the

discovery of admissible evidence is groundless.  Def.'s Memo. at 8-10.  As the declarations

show, Audit Associates used their laptops for work and the machines recorded that work.

Laptops often contain work documents different from the ones that might appear on a company

server.  *See Helmert v. Butterball, LLC*, No. 08 Civ. 00342, 2010 WL 2179180, at \*7 (E.D. Ark.

May 27, 2010) ("This Court is not persuaded that a search of laptop or computer hard drives

would duplicate the email search. A computer's hard drive could contain a number of relevant

documents that were never sent by email."). We can reasonably expect that the hard drives will

contain data relevant to Plaintiffs' work.  Employee hard drives are a recurring source of ESI

discovery in FLSA cases.  *See id.*; *Garcia v. Tyson Foods, Inc*., No. 06 Civ. 2198, 2010 WL

5392660, at \*13 (D. Kan. Dec. 21, 2010). That, as KPMG points out, some of this information

can be obtained by other means (such as depositions of supervisors) does not render the data on

the laptops less relevant or admissible.

The same data may also be relevant to the *number* of hours worked by an employee, and

therefore to damages.  An employee who sues for unpaid wages or overtime compensation has

the burden of proving that the employer did not compensate him for completed work.  *Anderson*

*v. Mt. Clemens Pottery Co*., 328 U.S. 680, 686-87 (1946); *Grochowski v. Phoenix Constr.*, 318

F.3d 80 (2d Cir. 2003).  Under the FLSA, even "[w]hen accurate records or precise evidence of

the hours worked do not exist, 'an employee has carried out his burden if he proves that he has in

fact performed work for which he was improperly compensated and if he produces sufficient

evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31 (2d Cir. 2002) (*quoting Anderson*, 328 U.S. at 687), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215, 227-28 (2d Cir. 2006). *Accord Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 69 (2d Cir. 1997). If an employee establishes the amount of uncompensated work as a matter of "just and reasonable inference," the burden shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687-88. If the employer fails to meet this burden, the employee may receive damages "even though the result be only approximate." *Id*. at 688. New York law also provides that where an employer fails "to keep adequate records, . . . the employer in violation shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. L. § 196-a.

Indeed, each Audit Associate may potentially have to prove damages, making each participant a key player in their own claim and in need of their personal data. *See Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 WL 3399067, at *7 (S.D.N.Y. Aug.12, 2008) (FLSA/NYLL hybrid case); *Mendez v. Radec Corp.*, 232 F.R.D. 78, 93-4 (W.D.N.Y. 2005) (same).

## IV.   KPMG'S ANALYSIS HAS NOT BEEN SUBJECTED TO DISCOVERY AND APPEARS EXAGGERATED EVEN ON ITS FACE.

### A.   Even on its Face, Without Further Investigation, Expenses Are Exaggerated.

For the time being, Plaintiffs seek only *preservation* of the hard drives, with the details of ESI recovery to await further negotiation and discovery. The only listed cost for preservation of the hard drives is $600 (Declaration of Thomas Keegan in Support of Defendant's Motion for

14

Protective Order ¶ 11),[2] so the temporary cost of holding onto the 2,500 hard drives itself by

KPMG's admission is $1.5 million, *id.* ¶ 12 – even before Plaintiffs have an opportunity to do

discovery on this estimate – a tiny fraction of the $113-186 million estimates that KPMG offers

up elsewhere, Def.'s Memo. at 13-14.  Plaintiffs have not served discovery targeted at the ESI,

so estimates of how much it will cost to extract data from the hard drives can only be based on

speculation as to what Plaintiffs' *might* request, and should not be credited for purposes of this

motion.  And even the $1.5 million figure cannot be solely allocated to the Plaintiffs. This

estimate appears to be the gross cost – *see id.* (calculating entire alleged cost of preserving all of

the hard drives) – without backing out expenses that KPMG must incur because it is required to

preserve the data for other reasons, *e.g.,* compliance with federal and state wage laws (§ I,

*supra*), with Sarbanes-Oxley, and with accounting practices, *id.* at 11 n.3.

 Even on the present motion, KPMG provides only the *ipse dixit* declaration of one of its

executives that offers an otherwise unsupported cost estimate for preservation and search of the

hard drives, without any statement as to whether these numbers reflect the actual costs to the

defendant or merely the retail price that KPMG would charge to its own clients as a vendor.

 **B.** **KPMG's Proposal of Keyword Searches Cannot Possibly Recover the Type of Information Plaintiffs Seek.**

 KPMG's proposal for preservation of one-third of future departing Audit Associates'

hard drives was conditioned on the use of keyword searches, which is not only an outmoded

method of data recovery, but one that is completely useless for the type of information Plaintiffs

---

 [2] KPMG insists that it costs $600 per hard drive to preserve the data, but fails to specify how it arrives at this figure, relying on the *ipse dixit* of its own executive's declaration.  In addition to the cost of the hard drive itself, KPMG asserts that the figure includes categories such as administration costs, coordination of the hard drive collection, and exchange server preservation. Plaintiffs have been allowed no discovery on this issue and KPMG has declined to respond to informal inquiries on this issue.

seek to obtain from the hard drives.  Swartz Decl. Ex. P (Andrew W. Stern Letter, July 29, 2011).  Plaintiffs were justified in not capitulating to this demand.

First, Plaintiffs will not agree to Defendant's proposed "compromise" because the type of information Plaintiffs seek on KPMG's hard drives cannot possibly be recovered through a keyword search.  Plaintiffs seek information demonstrating the actual work Audit Associates did and the time they spent doing it.  This information is not topic- or keyword-specific, and requiring Plaintiffs to develop keyword search terms when such terms would obviously fail to yield the information Plaintiffs seek is simply an attempt by KPMG to paint Plaintiffs into a corner.

Second, courts and commentators recognize the limitations inherent in keyword searches, and there is no reason in law why Plaintiffs must stand still and accept this method as a condition for preserving data when better technologies exist. *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, No. 08 Civ. 1332, 2009 WL 1138830, at *2 (D.D.C. Apr. 28, 2009) ("keyword searches are no longer the favored methodology").  While KPMG cites a single, five-year-old case, Def.'s Memo. at 12, in support of keyword searches, *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006), the world has turned since then.  Recovery of ESI is moving away from this method.[3]

---

[3] Jason R. Baron & Edward C. Wolfe, *A Nutshell on Negotiating E-Discovery Search Protocols*, 11 Sedona Conf. J. 229, 231 (2010) ("a growing body of case law" recognizes that "the exponential growth of ESI coupled with the ambiguities of human language pose profound challenges to constructing efficacious keyword searches for the purpose of finding all or most relevant documents in a given collection"); Jay Grenig, Browning Marean & Mary Pat Poteet, *Electronic Discovery & Records Management Guide: Rules, Checklists & Forms* (2009 ed.) § 15:15 ("keyword searches do not reflect context" and "can also miss documents containing a word that has the same meaning as the term used in the query but is not specified"); *A Project of the Sedona Conference Working Group on Best Practices for the Use of Search & Information Retrieval Methods in E-Discovery*, 8 Sedona Conf. J. 152, 192 (2007) ("advanced forms of search techniques, including various forms of fuzzy logic, text mining and machine learning all

In any event, this issue is premature.  This motion is about whether to preserve the hard drives, not how to extract data from them.  Again, there is no discovery going on at this time.  Once Plaintiffs learn in discovery the types of data available on the hard drives, they will be in a better position to evaluate what might be the best, most economical method to extract relevant data.  They should not be forced to pick blindly now as a condition for preserving the data.

## V.   COST-SHIFTING IS UNWARRANTED.

As noted, there is a presumption that the party in custody of discoverable information bears the costs of its preservation. This applies no less to ESI than to other forms of discovery. *See, e.g., Computer Assocs. Int'l, Inc. v. Quest Software, Inc*., No. 02 Civ. 4721, 2003 WL 21277129, at *2 (N.D. Ill. June 2, 2003) ("Defendants here seek to recover the costs of their preventive measures [relating to review of electronically stored information] undertaken before the actual disclosure of the information to plaintiff. These costs are analogous to the review of documents for privileged information and should not be shifted to the requesting party.") Particularly where, as here, the data is readily accessible on the employees' hard drives, cost shifting would not be warranted.  *See Mikron Indus., Inc.*, 2008 WL 1805727, at *2 (W.D. Wash. Apr. 21, 2008) (cost-shifting inappropriate where data was available on "defendants' non-backup ESI, including *employee hard drives* and active e-mail servers" because "this ESI is considered reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(C)"); *Zubulake I*, 217 F.R.D. at 318 (ESI on hard drives accessible).

---

automatically organize electronically stored information in new ways not achieved by past more familiar methods, including the simple use of 'keywords' as the only automated aid to conducting manual searches") (http://www.thesedonaconference.org/ content/miscFiles/Best_Practices_Retrieval_Methods___revised_cover_and_preface.pdf).

At any rate, the cost-shifting issue, too, is premature. Even in the case law cited by KPMG – *none of which*, it warrants noting, *actually* ordered cost-shifting to another party – a cost-shifting order must involve data of "marginal relevance" and that is "costly to retain and preserve," *Mahar*, 688 F. Supp. 2d at 113, and here, Plaintiffs have been allowed no opportunity to investigate.  *See Treppel*, 233 F.R.D. at 373 (stating "I appreciate that the Plaintiff's inability to meet his burden of demonstrating the need for a preservation order is due in part to Biovail's refusal to provide information about its electronic information system" and denying motion as premature).

## VI.    RECOMMENDED ALTERNATIVE TO PROTECTIVE ORDER.

While KPMG falls far short of its burden for entry of a protective order, and it would be sufficient for the Court to stop there, Plaintiffs believe that it would advance the litigation if the Court also gave the parties guidance about how to proceed.[4]  Because Plaintiffs propose to litigate this case on a representative basis, then – assuming that the action is certified as a collective and class action (or that KPMG consents to such certification) – they recognize that it is unnecessary for KPMG to preserve indefinitely the hard drive of every departing Audit Associate.  Upon denial of this motion, this Court should order KPMG to permit Plaintiffs to inspect five hard drives and order KPMG to preserve the hard drives of departing Audit Associates.

---

[4] KPMG urges preservation of 100 hard drives, Def.'s Memo. at 1, 3, 14, 15, without ever explaining once why 100 is a valid sample, as opposed to the 750 previously offered.  The number seems to be purely arbitrary.

18

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny KPMG's

motion for protective order in its entirety.

Dated:         August 26, 2011
              New York, New York

                                        Respectfully submitted,
                                        **OUTTEN & GOLDEN LLP**
                                        By:

                                        /s/ Justin M. Swartz_____
                                        Justin M. Swartz

                                        **OUTTEN & GOLDEN LLP**
                                        Justin M. Swartz
                                        Rachel Bien
                                        Seth M. Marnin
                                        3 Park Avenue, 29th Floor
                                        New York, New York 10016
                                        Telephone: (212) 245-1000

                                        **SHAVITZ LAW GROUP, P.A.**
                                        Gregg Shavitz (admitted *pro hac vice*)
                                        Keith Stern (admitted *pro hac vice*)
                                        Hal B. Anderson (admitted *pro hac vice*)
                                        1515 S. Federal Highway, Suite 4-4
                                        Boca Raton, Florida 33432
                                        Telephone: (456) 447-8888