UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
KYLE PIPPINS, JAMIE SCHINDLER, and EDWARD
LAMBERT, Individually and On Behalf of All Others
Similarly Situated,

                Plaintiffs,

        -against-

KPMG LLP,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**11 CV 0377 (CM)(JLC)**

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
# DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel.: (212) 839-5300
Fax: (212) 839-5599

*Attorneys for Defendant KPMG LLP*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.    KPMG Is Not Legally Required To Preserve Data On The Hard Drives Of Putative Class Members Or Potential FLSA Opt-ins ..............................1

    II.    KPMG'S Request For A Protective Order Is Both Timely And Well-Founded ........................................................................................................4

        A.    Federal Rule Of Civil Procedure 26 Applies To Preservation .....................5

        B.    Discovery About Discovery (Preservation) Is Unnecessary ........................6

    III.    Plaintiffs Neither Cite Authority Supporting Retention Of Hard Drives Nor Identify Relevant Information On Those Drives .................................7

    IV.    Cost-Shifting Is Warranted As An Alternative To The Protective Order KPMG Seeks ...............................................................................................10

CONCLUSION ...............................................................................................................................10

# **TABLE OF AUTHORITIES**

**CASES**                                                                                           **Page**

*Garcia v. Tyson Foods, Inc.*,
   No. 06 Civ. 2198, 2010 WL 5392660 (D. Kan. Dec. 21, 2010) ................................................ 9

*Goodman v. Praxair Servs. Inc.*,
   632 F. Supp. 2d 494 (D. Md. 2009) ......................................................................................... 5

*Helmert v. Butterball, LLC*,
   No. 4:08 Civ. 00342, 2010 WL 2179180 (E.D. Ark. May 27, 2010) ....................................... 9

*Jacobsen v. Stop & Shop Supermarket Co.*,
   No. 02 Civ. 5915, 2003 WL 21136308 (S.D.N.Y. May 15, 2003) ........................................... 2

*Mahar v. US Xpress Enters, Inc.*,
   688 F. Supp. 2d 95 (N.D.N.Y. 2010) ..................................................................................... 10

*Orbit One Commc'ns Inc. v. Numerex Corp.*,
   271 F.R.D. 429 (S.D.N.Y. 2010) ............................................................................................. 6

*Rimkus Consulting Group, Inc. v. Cammarata*,
   688 F. Supp. 2d 598 (S.D. Tex. 2010) ..................................................................................... 4

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
   269 F.R.D. 497 (D. Md. 2010) ............................................................................................ 4, 5

*Zubulake v. UBS Warburg LLC*,
   220 F.R.D. 212 (S.D.N.Y. 2003) ............................................................................................. 4

**STATUTES**

17 C.F.R. § 210.2-06 ....................................................................................................................... 8

29 C.F.R. § 516.2(a) ....................................................................................................................... 2

29 C.F.R. § 516.3 ............................................................................................................................ 2

Fed. R. Civ. P. 26(b)(2)(C). ........................................................................................................... 5

N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4) ............................................................... 2

**OTHER AUTHORITIES**

The Sedona Conference, *The Sedona Conference Commentary on Proportionality
   in Electronic Discovery*, 11 Sedona Conf. J. 289 (2010) (Principle No. 1) ............................ 4

Public Company Accounting Oversight Board, AUDITING STANDARD NO. 3: AUDIT DOCUMENTATION, available at http://pcaobus.org/Standards/Auditing/Pages/Auditing_Standard_3.aspx (last visited on September 2, 2011) ................................................................................................8

## PRELIMINARY STATEMENT

Shortly after this litigation was filed, KPMG attempted to negotiate with Plaintiffs to reach a reasonable compromise regarding KPMG's preservation of former Audit Associates' hard drives. Months of attempts to engage Plaintiffs in good faith discussions have gone nowhere, resulting in this motion for a protective order.

In their Opposition ("Opp."), Plaintiffs profess to concur with the notion of sampling and the application of search techniques (Opp. at 1) and acknowledge that if they are permitted to litigate the case on a representative basis, the hard drives will be unnecessary (Opp. at 18). It therefore defies logic that Plaintiffs persist in seeking the preservation of thousands of hard drives, a position that ignores any notion of proportionality and reasonableness in allocating burdens. Plaintiffs' Opposition fails to address the uncontroverted law and facts cited by KPMG, mischaracterizes the authority on which Plaintiffs rely, and misstates the parties' discussions with this Court.[1] In order to reduce the enormous burden associated with hard drive preservation, KPMG respectfully seeks a protective order limiting its obligation to preserve a random sample of 100 of the hard drives already being preserved, against which reasonable search terms proposed by Plaintiffs would be run. Alternatively, the Court should order Plaintiffs to bear the costs of hard drive preservation.

## ARGUMENT

**I.   KPMG Is Not Legally Required To Preserve Data On The Hard Drives Of Putative Class Members Or Potential FLSA Opt-ins**

Plaintiffs falsely, and for the first time, claim that federal and New York law require

---

[1] During the July 26, 2011 conference, the Court suggested the preservation of 750 hard drives selected in a random manner consistent with that proposed in KPMG's July 15, 2011 letter to Plaintiffs. Stern Dec. ¶¶ 4-5. At no time did the Court adopt Plaintiffs' position that KPMG should select hard drives in order to achieve "representativeness." *Id.* Moreover, contrary to Plaintiffs' claim, KPMG expressly accepted the parameters suggested by the Court, including the retention of hard drives going forward, asking only for an agreement with respect to the use of search terms. It was Plaintiffs who then demanded a greater number of hard drives. Stern Dec. ¶¶ 6-7 and Ex. A.

KPMG to preserve the hard drives of its departing Audit Associates in order to preserve data regarding their hours worked. (Opp. at 9-10, 1, 3.)[2] Plaintiffs' authority is entirely irrelevant since it relates only to non-exempt employees, not the Audit Associates at issue here, who KPMG classified as exempt and paid on a salary basis. *See Jacobsen v. Stop & Shop Supermarket Co.*, No. 02 Civ. 5915, 2003 WL 21136308, at *3 (S.D.N.Y. May 15, 2003) (29 C.F.R. § 516.2(a) requires employers to maintain records for non-exempt employees); *see also* 29 C.F.R. § 516.3 (specifically eliminating the record keeping requirement as to exempt employees); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4) (definition of "employee" does not include employees who qualify for the executive, administrative or professional exemption).

Moreover, even if KPMG were required to preserve records of hours worked by its Audit Associates, it already has done so. Specifically, KPMG maintains, and is preserving for this action, records showing the hours recorded by its Audit Associates. (Opening Memorandum ("Memo.") at 4, 8.) During the relevant period, KPMG's professionals (including Audit Associates) were required to record their time, whether spent on training, practice development, client work, or other projects, in the TIMEnX system. *See* Declaration of David Butler filed on June 24, 2011 ¶ 72 (Attached as Ex. B to the Stern Declaration). KPMG's TIMEnX records are the best evidence of the hours worked by KPMG's Audit Associates.

Plaintiffs' claim that KPMG's TIMEnX records were inaccurate or incomplete because they "contain[] only time billed to clients" is both unsupported by their own declarations and contradicted by the TIMEnX records of Plaintiffs themselves. (Opp. at 9.) Indeed, the declarations of the Plaintiffs submitted in support of this motion (Exhibits C-F and T-U of the

---

[2] Plaintiffs' novel argument is impossible to reconcile with their previous, and professed continuing, willingness to agree "in principle" to sampling. (Opp. at 1.)

Swartz Dec.) do not in any way suggest that KPMG directed its Audit Associates to record only client-chargeable time. Moreover, the TIMEnX records demonstrate that Plaintiffs, in fact, recorded both chargeable and non-chargeable time. *See, e.g.,* Stern Dec. Ex. C (Lambert Depo. Ex. 64) (TIMEnX records reflect more than 350 hours on non-chargeable matters).[3]

Similarly, Plaintiffs' claim that the TIMEnX records were inaccurate because KPMG somehow discouraged them from recording all of their time or because KPMG might reduce the time billed to clients because of budgetary concerns (Opp. at 3, 9) is also contradicted by Plaintiffs' own admissions. As noted above, Named Plaintiff Lambert authenticated his TIMEnX records at deposition and admitted that he had recorded the hours he had worked. *See* Stern Dec. Exs. H and C (Deposition of Edward Lambert at 273:6-11 and Ex. 64 thereto). Likewise, in a declaration submitted by Plaintiffs in support of their Motion for Conditional Certification, the Named Plaintiff in a substantially identical lawsuit against KPMG pending in Washington State Court confirmed that KPMG required its Audit Associates "to accurately record all the hours worked" in TIMEnX and that he had "complied with this policy." Litchfield Dec. ¶ 55 (Attached as Ex. H to Swartz Dec. filed on April 6, 2011 (Dkt. 35)). Plaintiffs' most recent self-serving declarations thus fail to demonstrate that the TIMEnX records are inaccurate.

Finally, even if Plaintiffs had raised a question as to the accuracy of KPMG's TIMEnX records, that would not compel the preservation of hard drives of departing Audit Associates based on the possibility that such hard drives might contain log-in/log-out data. That is because Plaintiffs have not shown how such data could possibly demonstrate what the Audit Associates

---

[3] *See also* Stern Dec. Ex. D (Schindler Depo. Ex. 17) (TIMEnX records reflect more than 350 hours on non-chargeable matters); Stern Dec. Ex. E (Young Depo. Ex. 94) (TIMEnX records show more than 450 non-chargeable hours, and more than 50 of the nearly 350 hours recorded by Young during the relevant period were on non-chargeable matters); Stern Dec. Ex. G (Bradley's TIMEnX records reflect more than 400 non-chargeable hours, including more than 300 during the relevant period); Stern Dec. Ex F (Pippins' TIMEnX records show more than 400 hours on non-chargeable matters, including nearly 300 during the relevant period).

were doing while they were logged in, and, importantly, even whether they were working at all. For example, Audit Associates likely used their computers for personal use, as Named Plaintiff Keeley Young testified she did. Stern Dec., Ex. I (Deposition of Keeley Young at 58:15-59:24) (admitting to having deleted personal files from her laptop before turning it in following her termination from KPMG). Similarly, log-in/log-out data would not address situations in which KPMG's Audit Associates worked offline at a client location, worked at a client site using a client computer, or remained logged in for several days in a row.

## II.   KPMG'S Request For A Protective Order Is Both Timely And Well-Founded

Plaintiffs do not dispute that KPMG need not preserve "every shred of paper, every e-mail or electronic document and every back-up tape" because such "a rule would cripple large corporations." (Memo. at 7, citing *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 217 (S.D.N.Y. 2003) and *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522 (D. Md. 2010)). Nor do Plaintiffs cite any authority contrary to the principle that preservation efforts, just like production efforts, should be proportionate to the litigation at issue. (*Id.*, citing *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010).) Plaintiffs also take no issue with the common sense standard that where information provides little value to a case or is not unique, it need not be preserved. (*Id.*, citing The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 291 (2010) (Principle No. 1).) Plaintiffs further do not dispute that KPMG has undertaken broad efforts to preserve electronically stored information and other documents that pertain to the issues in the litigation (Memo. at 4, 8).

Instead, Plaintiffs hurl unfounded accusations that KPMG is seeking "amnesty" to "destroy" useful or relevant information. (Opp. at 1.) Plaintiffs are wrong. At great expense, KPMG has already preserved hard drives of more than 2,500 former Audit Associates who are

4

putative class members or potential FLSA opt-in plaintiffs. This corpus of hard drives far exceeds the reasonable and proportional measures required by law. And nothing in Plaintiffs' Opposition remotely suggests that KPMG's Motion is premature or without merit.

### A. Federal Rule Of Civil Procedure 26 Applies To Preservation

Plaintiffs erroneously contend that KPMG's Motion is untimely because Fed. R. Civ. P. 26 is concerned with production, and not preservation, of information. (Opp. at 10.) KPMG previously demonstrated that the proportionality standard embodied in Rule 26 applies to **all** stages of discovery, whether preservation, search, review, or production. (Memo. at 7.)

Plaintiffs' reliance on a footnote in Magistrate Judge Grimm's opinion in *Goodman v. Praxair Servs. Inc.*, 632 F. Supp. 2d 494, 518 (D. Md. 2009) is puzzling. *Goodman* merely stated in dicta that the failure of a party to run key-word searches against back-up tapes did not constitute spoliation and does not support Plaintiffs' position that Rule 26's proportionality rule applies only to production, not preservation. Further, and as Magistrate Judge Grimm has expressly stated, preservation falls within the Rule's proportionality mandate. *Victor Stanley, Inc.*, 269 F.R.D. at 523 ("courts have tended to overlook the importance of proportionality in determining whether a party has complied with its duty to preserve evidence in a particular case, this should not be the case because Rule 26(b)(2)(C) cautions that all permissible discovery must be measured against the yardstick of proportionality.").

Although Plaintiffs correctly note that many of the cases cited by KPMG are spoliation or sanctions cases, this fact illustrates the timeliness of the instant motion. As one Court noted:

> Reasonableness and proportionality are surely good guiding principles for a court that is considering imposing a preservation order or evaluating the sufficiency of a party's efforts at preservation after the fact. Because these concepts are highly elastic, however, they cannot be assumed to create a safe harbor for a party that is obligated to preserve evidence but is not operating under a court-imposed preservation order.

5

*Orbit One Commc'ns Inc. v. Numerex Corp.*, 271 F.R.D. 429, 437 n.10 (S.D.N.Y. 2010).  KPMG is not required to guess as to the parameters of its preservation obligations and wait for Plaintiffs' inevitable motion for sanctions.  KPMG is acting responsibly, and in good faith, by presenting this motion now, in an effort to clarify and comply with those obligations.

### B. Discovery About Discovery (Preservation) Is Unnecessary

Plaintiffs attack KPMG's estimated preservation costs as "exaggerated" (Opp. at 14) and argue that they must "cross-examine" KPMG about its cost estimates and review the contents of "hard drives" before they can negotiate regarding preservation and/or determine whether to seek full discovery of the contents of the hard drives (Opp. at 12).  Plaintiffs are wrong.

In support of its Motion, KPMG submitted the declaration of its forensic technology expert, which sets forth in substantial detail the financial burdens of preservation and the anticipated costs of production associated with the hard drives of departing Audit Associates. (Memo. at 12; Keegan Dec. ¶¶ 11-32.)  As this uncontroverted evidence establishes, KPMG has already incurred costs of more than $1.5 million on the collection and storage of the more than 2,500 hard drives for departed employees that fall within the putative New York class and/or the proposed nationwide FLSA collective.  Plaintiffs' failure to offer any competent evidence in response demonstrates the lack of any basis for questioning KPMG's cost estimates. [4]

Further, Plaintiffs do not explain why "discovery" into KPMG's cost estimates is necessary or what quibbling over the accuracy of KPMG's estimates will accomplish.  As this Court recognized, *whatever* the exact dollar figure associated with the preservation of a hard

---

[4] Nor do Plaintiffs succeed in poking holes in KPMG's estimate.  Plaintiffs contend that KPMG's $1.5 million figure is too high because KPMG should have to "back out" expenses KPMG must incur anyway for reasons unrelated to this lawsuit, *i.e.*, preservation obligations generated by other cases and by Sarbanes-Oxley compliance. (Opp. at 15).  But as other cases are resolved, those litigation holds and preservation obligations will be lifted.  Also, as noted above and in KPMG's Opening Brief, professional standards and federal regulations require the preservation of workpapers and other documents related to audits – they do not require the preservation of the entire hard drives of anyone working on those audits.  *See* Memo. at 11 n.3.

drive, the aggregate cost will be substantial and something that the Court will have to address. *See* Stern Dec., Ex. J (June 16, 2011 Hrg. Tr., at 13:19-21, 14:13-21).  In short, adjudicating the issue of the exact dollar figure associated with the cost of hard drive preservation does not address the underlying issue giving rise to this Motion – the disproportionality of requiring KPMG to retain thousands of hard drives with minimal, if any, relevance to this matter.

In addition, Plaintiffs' claim that they need to review sample hard drives in order to determine whether to seek discovery of the entire contents of hard drives or to engage in a substantive discussion regarding how best to extract relevant data (Opp. at 12, 17, 18) is not credible.  Plaintiffs worked as Audit Associates at KPMG and may be presumed to be familiar with the information they stored on their hard drives.

### III. Plaintiffs Neither Cite Authority Supporting Retention Of Hard Drives Nor Identify Relevant Information On Those Drives

Plaintiffs' Opposition does not cite a single case – federal or state – supporting their claim that KPMG must preserve the hard drives of departing putative class members or potential FLSA Opt-ins.  That is because no such authority exists.  Plaintiffs' demands are excessive, unprecedented, and unsupported.

Instead, Plaintiffs argue that KPMG should preserve the hard drives of the thousands of departed and departing Audit Associates throughout New York state and the country because those "hard drives may lead to the discovery of admissible evidence." (Opp. at 13.)  In making this argument, Plaintiffs weakly speculate that the hard drives of KPMG's departing Audit Associates may contain (1) information regarding the number of hours worked; and (2) "data relevant to Plaintiffs' work." (Opp. at 13.)  Plaintiffs' generalized statements as to the purported relevance of the data on the hard drives at issue confirm what KPMG has suspected for some time – Plaintiffs cannot articulate how the entire hard drives (or even portions of the hard drives)

7

of the thousands of departed Audit Associates could possibly constitute relevant material that must be preserved, much less produced. Plaintiffs' obvious motive in seeking such preservation is to increase KPMG's costs.

First, as noted above, KPMG is already preserving complete and accurate records of the hours worked by its Audit Associates through its TIMEnX system. These records are independent of any information stored on an individual hard drive and are inherently more reliable and complete than whatever unspecified information might be contained on any individual hard drive. Further, Plaintiffs provide no explanation or evidence to support their unsubstantiated claim that the hard drives will provide any relevant information relating to the hours worked by Audit Associates, or even how it is even possible to extract such information.

Second, Plaintiffs' generalized claim that the hard drives may contain "data relevant to Plaintiffs' work" is impermissibly and unnecessarily vague, particularly given that the Named Plaintiffs themselves are well aware of the information they stored on their laptops. Indeed, Plaintiffs' failure to have identified a single piece of particularized information that may be found only on a hard drive highlights Plaintiffs' true intentions: drive up KPMG's costs while preserving an enormous corpus of irrelevant hard drives because they may, at some point in the future, wish to engage in a massive fishing expedition. That is not permitted by the Federal Rules.

Further, KPMG is legally obligated to retain for seven years after the conclusion of any financial statement audit or review, records relevant to the audit or review. (Memo. at 11-12 and n. 3, citing 17 C.F.R. § 210.2-06 and PCAOB, AS 3.) These requirements pertain not only to workpapers but also to other documents that form the basis of the audit or review as well as memoranda, correspondence, communications, other documents, and records (including

electronic records) that contain conclusions, opinions, analyses, or financial data related to the audit or review, which encompass documents created by KPMG's Audit Associates. Thus, KPMG has preserved a substantial body of potential discovery material, more than could ever reasonably be required. Any data contained on hard drives is superfluous.[5]

Finally, Plaintiffs' claim that because they "have not served discovery targeted at the ESI . . . estimates of how much it will cost to extract data from the hard drives can only be based on speculation as to what Plaintiffs *might* request, and should not be credited for purposes of this motion" (Opp. at 15) has no merit. On May 24, 2011, Plaintiffs served their First Request for Production of Documents. See Stern Dec. Ex. K. Plaintiffs' discovery sought the production of documents, including emails, "to the extent that such documents discuss work assignments, work performance, job requirements, or job duties of Plaintiffs, Class Members, and/or Collective Members." *Id*. at 16 (RFP No. 12). The fact that Judge McMahon struck Plaintiffs' discovery as premature (Opp. at 2) cannot change the fact that Plaintiffs have already requested broad discovery relating to work performed. Thus, KPMG's estimates regarding the overwhelming burden and expense that would be associated with the potential production of data from hard drives are not speculative. Instead, they show the significant burden and expense KPMG faces in discovery, and the reason why a protective order is necessary.

In addition, Plaintiffs' position on the use of the keyword ESI search methodology is not only unsupported by law but is contradictory. For example, Plaintiffs protest "stand[ing] still and accept[ing] this method as a condition for preserving data when better technologies exist." Yet they propose no "better" method for consideration by KPMG or the Court.

---

[5] In addition, the cases cited by Plaintiffs support KPMG's positions. Both *Helmert v. Butterball, LLC*, No. 4:08 Civ. 00342, 2010 WL 2179180, at *7 (E.D. Ark. May 27, 2010) and *Garcia v. Tyson Foods, Inc.*, No. 06 Civ. 2198, 2010 WL 5392660, at *13 (D. Kan. Dec. 21, 2010) are "donning and doffing" cases for unpaid overtime/wages for periods of time when meat packing plant workers are donning or doffing sanitary protective gear. Nowhere in these cases do Plaintiffs request that the hard drives of former employee putative class members be preserved.

9

Further, Plaintiffs' claim that they cannot propose any alternative to the use of search terms because they do not know what is on the hard drives is not credible. *See* Opp. at 17 ("Once Plaintiffs learn in discovery the types of data available on the hard drives, they will be in a better position to evaluate what might be the best, most economical method to extract relevant data."). That is because Plaintiffs also argue that, given what they know about the data they stored on their own hard drives, search terms would be too limiting and would "obviously fail to yield the information" Plaintiffs seek. (Opp. at 16). Plaintiffs cannot have it both ways – either they know what information is contained on the hard drives and can propose search terms, or they have no basis to claim that search terms are unworkable.

### IV. Cost-Shifting Is Warranted As An Alternative To The Protective Order KPMG Seeks

Plaintiffs suggest that cost-shifting is inappropriate since reasonably accessible hard drives are at issue here rather than backup storage media. (Opp. at 17.) The distinction to which Plaintiffs allude, however, operates in the context of the *production* of ESI, where the relative accessibility of the data entails significant cost differences that justify shifting costs in certain circumstances. Here, however, in the *preservation* context, the accessibility of the ESI is not the issue that controls the undue nature of the burden imposed, but rather the sheer volume of the preservation demanded by Plaintiffs, whatever the form in which that data is preserved. *See Mahar v. US Xpress Enters, Inc.*, 688 F. Supp. 2d 95, 113 (N.D.N.Y. 2010).

### CONCLUSION

For the foregoing reasons, and those set forth in its moving papers, KPMG respectfully requests that the Court grant its Motion for a Protective Order

10

Dated: New York, New York
September 2, 2011

        SIDLEY AUSTIN LLP

By: /s/ Andrew W. Stern
    Andrew W. Stern
    Alex J. Kaplan
    787 Seventh Avenue
    New York, New York 10019
    Tel.: (212) 839-5300
    Fax: (212) 839-5599
    Email: astern@sidley.com
    Email: ajkaplan@sidley.com

    Michael C. Kelley (*pro hac vice*)
    Jennifer Altfeld Landau (*pro hac vice*)
    555 West Fifth Street, Suite 4000
    Los Angeles, California 90013
    Tel.: (213) 896-6000
    Fax: (213) 896-6600
    Email: mkelley@sidley.com
    Email: jlandau@sidley.com

    Steven T. Catlett (*pro hac vice*)
    One South Dearborn Street
    Chicago, Illinois 60603
    Tel.: (312) 853-7000
    Fax: (312) 853-7036
    Email: scatlett@sidley.com

    *Attorneys for Defendant KPMG LLP*