```
        Y
     ...ENT
   ...CTRONICALLY FILED
   DOC #:
   DATE FILED: 10/7/11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KYLE PIPPINS and JAMIE SCHINDLER,
individually and on behalf of all others similarly
situated,

                              Plaintiffs,

        -v-

KPMG LLP,

                              Defendant.
------------------------------------------------------------X

MEMORANDUM AND ORDER

11 Civ. 0377 (CM) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

In this action, Plaintiffs challenge KPMG's treatment of certain accountants in its audit practice as exempt employees under the federal Fair Labor Standards Act and New York State Labor Law. By motion dated August 12, 2011, KPMG seeks a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure to limit the scope of its preservation obligations. (Dkt. No. 90). The issue presented by the motion is whether KPMG must preserve computer hard drives for thousands of former employees who fall within a potential nationwide FLSA collective and/or a putative New York State class, or whether random sampling of a small number of hard drives would be sufficient to fulfill KPMG's preservation obligations. For the reasons that follow, KPMG's motion is denied without prejudice.

### I.    BACKGROUND

KPMG is a limited liability partnership and the U.S. member firm of the network of firms affiliated with KPMG International Cooperative, a Swiss entity. (First Amended Class Action Complaint dated April 25, 2011 ("First Amended Complaint" or "First Am. Compl.") (Dkt. No. 51), ¶¶ 1, 23; Memorandum of Law in Support of Defendant's Motion for a Protective Order

**USDC SDNY**
**DATE SCANNED** 10/7/11

("Def.'s Mem.") (Dkt. No. 91), at 3; Answer to Collective Action Complaint dated April 4, 2011 (Dkt. No. 28), ¶ 1). KPMG provides audit, tax, and advisory services to clients throughout the United States, and its audit practice includes providing financial statement audits, integrated audits of financial statements, and internal control over financial reporting. (Def.'s Mem. at 3).

Plaintiffs Kyle Pippins ("Pippins"), Jamie Schindler ("Schindler"), and Edward Lambert ("Lambert") (collectively, "Plaintiffs") are former KPMG Audit Associates and Audit Associate Seconds (together, "Audit Associates"), who worked in the KPMG audit practice group. (First Am. Compl. ¶ 2). The First Amended Complaint describes the Audit Associates as performing an "entry-level job that requires no advanced level training and primarily involves performance of routine duties," which are closely supervised by more senior KPMG employees. (Id. ¶¶ 2-3).

Plaintiffs allege that KPMG willfully misclassified Audit Associates as exempt employees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., causing them to be deprived of overtime wages for time they worked in excess of 40 hours per week. (Id. ¶ 59). Plaintiffs further allege that KPMG failed to keep accurate records of the time Audit Associates worked. (Id.). Plaintiffs assert that this conduct constitutes a "pattern or practice of violating wage and hour laws," including the FLSA and New York State Labor Law. (Id. ¶¶ 5-6).

On January 19, 2011, Pippins and Schindler filed this action pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all similarly situated persons who worked as Audit Associates for KPMG, whom KPMG classified as exempt, and who elect to opt-in to the action. (Collective Action Complaint dated January 19,

2011 (Dkt. No. 1) ¶ 6). Three additional plaintiffs—including Lambert—later filed opt-in notices in the action. (Dkt. Nos. 10, 11, 50).

On March 9, 2011, prior to joining this action, Lambert filed a separate putative class action, Lambert v. KPMG LLP, No. 11 Civ. 1622 (CM) (S.D.N.Y.), under Federal Rule of Civil Procedure 23 on behalf of current and former Audit Associates working for KPMG in New York, asserting claims under New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations (collectively, the "NYLL"). On April 25, 2011, Plaintiffs filed the First Amended Complaint, which added Lambert as a named plaintiff and incorporated the NYLL claims raised in Lambert's separate action. (First Am. Compl. ¶¶ 44-53). As a result, Judge McMahon dismissed Lambert's separate action without prejudice by a Stipulation and Order dated May 10, 2011. (Dkt. No. 56).

Pursuant to the First Amended Complaint, the FLSA collective includes opt-in plaintiffs who worked as Audit Associates in any of KPMG's U.S. offices between January 19, 2008 and January 19, 2011 (First Am. Compl. ¶ 42), and the putative New York class includes all Audit Associates who worked for KPMG in New York from March 8, 2005 until the date of final judgment. (Id. ¶ 44).

In a Decision and Order dated March 21, 2011, Judge McMahon denied KPMG's Motions to Transfer and Stay the Action. (Dkt. No. 23). Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Motion to Certify") (Dkt. No. 33) is sub judice. By Order dated May 23, 2011, Judge McMahon referred the issue presented by KPMG's pending motion to me. (Dkt. No. 65). By endorsement dated

June 27, 2011, Judge McMahon ordered that discovery was stayed pending resolution of the Motion to Certify. (Dkt. No. 79).

## II. THE PRESENT MOTION

Although Judge McMahon has stayed discovery pending resolution of the Motion to Certify, KPMG seeks clarification from this Court concerning its obligation to preserve certain electronically stored information ("ESI"), specifically the hard drives from former and departing Audit Associates' laptop computers. Plaintiffs anticipate that these hard drives will contain "such data as the usage information, log-in/log-out information, application records, forms, and other contents stored on the laptops in the course of the business day, which would be helpful in showing both the range of hours during which they worked and the substance of their work." (Plaintiffs' Memorandum of Law In Opposition to Defendant's Motion for Protective Order ("Pls.' Mem.") (Dkt. No. 96), at 3). However, Plaintiffs acknowledge that the exact contents of the hard drives are unknown. (Id. at 12).

After extensive negotiations between the parties and several mediation efforts by the Court failed to resolve the dispute over KPMG's duty to preserve these hard drives during the pendency of the litigation, KPMG has now moved for a protective order that would limit the scope of its preservation obligations. In particular, KPMG seeks an order that would require it to preserve only a random sample of 100 hard drives from among those hard drives of former Audit Associates that it has already preserved in the course of this and other litigations, against which the parties could then apply keyword searches using terms proposed by Plaintiffs. (Def.'s Mem. at 1-2). These searches, KPMG claims, would isolate a "universe of documents" that KPMG would preserve without the level of expense required by more widespread preservation efforts.

4

(Id. at 1). Alternatively, KPMG seeks an order compelling Plaintiffs to bear the costs of preserving the hard drives beyond the scope of preservation KPMG has suggested. (Id. at 2-3, 14-15).

KPMG's primary argument in support of its motion is that the burden of preserving the hard drives of all former and departing KPMG Audit Associates is disproportionate to the potential benefit. KPMG claims that, given the possibility of preserving a sample of hard drives or a smaller "universe of documents," it is unnecessary and unreasonable for KPMG to incur the expense of continuing to preserve the hard drives already in its possession and then preserving any additional hard drives that it might accumulate as Audit Associates—potential members of the FLSA collective and putative New York class members—leave KPMG. (Id. at 1-2). According to KPMG, there are more than 7,500 potential opt-in plaintiffs to the FLSA collective nationwide and more than 1,500 putative class members in New York. (Declaration of Thomas Keegan dated August 12, 2011 ("Keegan Decl.") (Dkt. No. 92), ¶ 6). It estimates that the cost to preserve each hard drive is approximately $600. (Id. ¶¶ 11-12). Because KPMG has already preserved more than 2,500 hard drives of Audit Associates—including 500 former Audit Associates who are members of the putative class in New York and nearly 2,300 former Audit Associates who are potential members of the FLSA collective—it claims to have already incurred more than $1,500,000 in hard-drive preservation. (Id. ¶¶ 8-9, 12). In its motion and at a pre-motion conference before this Court, KPMG raised concerns about additional long-term costs of ongoing preservation, beyond the $600 cost to preserve a single hard drive, including the costs that may be incurred if these hard drives remain available and subject to discovery in other litigation. (See Transcript of June 16, 2011 Conference ("June 16 Tr.") (Dkt. No. 83), at 12).

These costs would, KPMG argues, "swallow the amount at stake" in the litigation. (Def.'s Mem. at 2).

Plaintiffs respond that they are not averse to using sampling as a means to preserve a more limited number of hard drives at a lower cost. (Pls.' Mem. at 1). However, the parties have repeatedly disagreed on the methodology by which a meaningful sample could be obtained. (See Def.'s Mem. at 2). Plaintiffs raise three objections in response to KPMG's proposal that the parties use keyword searches to create a sample of documents for preservation. First, they argue that any action that will result in the destruction of hard drives is premature because there has been insufficient discovery to enable the parties and the Court "to knowledgably craft a plan for preservation and production." (Pls.' Mem. at 12). Plaintiffs have indicated that it would be difficult, if not impossible, to generate search terms without the opportunity to first determine what the hard drives contain. (Id.). Second, Plaintiffs argue that using keyword searches is an "outmoded method of data recovery" that does not reflect context or capture all relevant materials. (Id. at 15-16). Finally, Plaintiffs believe that the information they seek, which may demonstrate the Audit Associates' work product and hours worked, would not be culled using keyword searches. (Id. at 16).

Likewise, Plaintiffs have suggested that any meaningful sample of documents or hard drives could not be obtained by searching an entirely random selection of hard drives because the sample would need to account for possible differences among potential members of the FLSA collective and the putative class in New York given KPMG's argument that Plaintiffs are not representative of either group. (June 16 Tr. at 6). These differences include the geography or office locations of the Audit Associates; the client industries for which the Audit Associates

provided services; the seniority or tenure of the Audit Associates; and the time period of the Audit Associates' employment to account for changing economic circumstances. (Id. at 6-11).

On that point, KPMG claims there is a tension between Plaintiffs' asserting that their own individual claims are representative of a proposed nationwide FLSA collective and putative New York class while also requesting that KPMG preserve the computer hard drives of all, or many, of KPMG's former and departing Audit Associates. (Def.'s Mem. at 1-2). In response, Plaintiffs concede that because they propose to litigate this case on a representative basis, if their Motion to Certify is granted, it would be "unnecessary for KPMG to preserve indefinitely the hard drive of every departing Audit Associate," although they question whether KPMG's proposal that it preserve 100 samples would be sufficient. (Pls.' Mem. at 18 & n.4).

Separately, Plaintiffs contest KPMG's arguments that continuing its preservation efforts has caused the company an undue burden that is disproportionate to the potential relevance of the materials contained on the hard drives. (Id. at 12, 14-15). In particular, Plaintiffs have pointed to their inability to cross-examine KPMG's assessments of the cost of ongoing preservation (Id. at 12), such as the $600 figure, and KPMG's assertions that the purported costs are solely attributable to this litigation rather than to separate preservation demands required by state and federal regulations or industry practices, or litigation holds in other lawsuits. (Id. at 9-10, 12, 15).[1]

Finally, Plaintiffs seek an order directing KPMG to (1) provide Plaintiffs with five hard drives for inspection that, Plaintiffs argue, would enable the parties to negotiate a possible sample, and (2) preserve the hard drives of all departing Audit Associates until the parties can

---

[1] In reply, KPMG contends that these "back out" expenses are not determinative of the potential expenses KPMG will incur to preserve hard drives for this lawsuit, because those independent preservation obligations could be lifted in the future. (Reply Memorandum of Law in Further Support of Defendant's Motion for a Protective Order dated September 2, 2011 ("Def.'s Reply Mem.") (Dkt. No. 100), at 6 n.4).

agree to a methodology to obtain an appropriate sample. (Id. at 18). Plaintiffs further request that the Court give "the parties guidance about how to proceed." (Id.).

### III. DISCUSSION

#### A. Legal Standards Governing Protective Orders and Preservation

Federal Rule of Civil Procedure 26(c) authorizes a federal court to issue a protective order "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." See S.E.C. v. Rajaratnam, 622 F.3d 159, 181 (2d Cir. 2010) (enumerating the measures that a district court may take to protect legitimate interests in course of discovery). The party seeking a protective order pursuant to Rule 26(c) bears the burden to establish the existence of good cause necessitating the order. See Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004) (citing In re Agent Orange Prod. Liab. Litig., 821 F.2d 139, 145 (2d Cir. 1987)). Good cause exists when a party seeking the protective order can articulate "'a clearly defined, specific and serious injury'" that will result in the absence of the order. In re Terrorist Attacks on September 11, 2001, 454 F. Supp. 2d 220, 222 (S.D.N.Y. 2006) (quoting Shingara v. Skiles, 420 F.3d 301, 306 (3d Cir. 2005)); see also In re Parmalat Secs. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test") (citations omitted). Although the party seeking the protective order bears the burden of establishing good cause, the court must weigh the interests of both parties in considering the necessity and scope of the order. See Mitchell v. Fishbein, 227 F.R.D. 239, 245 (S.D.N.Y. 2005) ("'[U]nder Rule 26(c), the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectable interests of the party from

whom discovery is sought.'") (quoting Apex Oil Co. v. DiMauro, 110 F.R.D. 490, 496 (S.D.N.Y. 1985)).

KPMG's motion thus requires the Court to balance the company's interest in avoiding "annoyance, embarrassment, oppression, or undue burden or expense" that would result from its obligation to preserve the hard drives with its duty to preserve, which is rooted in the concern that once potentially relevant materials on the hard drives have been disposed of, their contents will forever be gone.

The duty to preserve has been described as follows:

> [A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary. While a litigant is under no duty to keep or retain every document in its possession . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.

Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("Zubulake IV") (footnotes, internal quotation marks, and citations omitted). In the context of discovery, relevance "is to be interpreted broadly" and includes "'any matter that bears on, or that . . . reasonably could lead to other [information] that could bear on, any issue that is or may be in the case.'" In re Flag Telecom Holdings, Ltd. Secs. Litig., 236 F.R.D. 177, 183 (S.D.N.Y. 2006) (quoting Sherwin-Williams Co. v. Spitzer, No. 04 Civ. 185 (DNH), 2005 WL 2128938, at *11 (N.D.N.Y. Aug. 24, 2005) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978))). The scope of this preservation duty extends to the "key players" in a lawsuit, meaning "individuals 'likely to have discoverable information that the disclosing party may use to support its claims or defenses.'" Zubulake IV, 220 F.R.D. at 218 (quoting Fed. R. Civ. P. 26(a)(1)(A)). The duty is also prospective, requiring "[a] party or anticipated party [to] retain all relevant

9

documents (but not multiple identical copies) in existence at the time the duty to preserve attaches, and any relevant documents created thereafter." Id.

KPMG seeks to reconcile its duty to preserve discovery material with the burden of that preservation by advocating a proportionality test. (Def.'s Mem. at 6-8 (citing Zubulake IV; Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497, 522-23 (D. Md. 2010); Rimkus Consulting Group, Inc. v. Cammarata, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010))). This test, in effect, blends the protections afforded by Rule 26(b)(2), "which permits the court to limit discovery if the burden or expense of production outweighs its potential benefits," and Rule 26(c), "which permits the issuance of protective orders, including by shifting the costs of unduly burdensome or expensive production." Quinby v. WestLB AG, 245 F.R.D. 94, 106 (S.D.N.Y. 2006), amended on other grounds, 2007 WL 38230 (S.D.N.Y. Jan. 4, 2007).

However, courts have recognized that in the context of preservation, "this [proportionality] standard may prove too amorphous to provide much comfort to a party deciding what files it may delete or backup tapes it may recycle." Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 436 (S.D.N.Y. 2010) (considering numerous preservation failures in the context of sanctions). Accordingly, "[u]ntil a more precise definition is created by rule," prudence favors retaining all relevant materials. Id. (citing Zubulake IV, 220 F.R.D. at 218).

### B. KPMG's Obligations

To determine the scope of KPMG's preservation obligations, the Court first must determine whether the material Plaintiffs seek to have preserved is indeed relevant. Plaintiffs will ultimately bear the burden of establishing their job duties, which will determine whether they were exempt from overtime payments under the FLSA, and the hours they worked, for

which they claim they were underpaid. Accordingly, any material contained on the hard drives that tends to show either the Audit Associates' job responsibilities or the hours they worked is relevant. (Pls.' Mem. at 13-14). Plaintiffs go so far as to suggest that because each and every Audit Associate who may opt-in to the FLSA collective or who is a member of the putative New York class may have to prove his or her damages, KPMG must maintain the hard drive of each and every Audit Associate. (Id. at 14).

In response, KPMG relies less on establishing that the material on the hard drives is irrelevant and more on demonstrating the availability of alternative sources of information that may be more authoritative than the materials contained on the hard drives in proving the disputed factual issues. (Def.'s Mem. at 8-10). However, at this point it is not entirely clear what the hard drives contain, in part because of KPMG's own efforts to keep that information at bay. Given the absence of that crucial information and because "relevance" in the context of discovery is "an extremely broad concept," Condit v. Dunne, 225 F.R.D. 100, 105 (S.D.N.Y. 2004), Defendants have failed to establish that the contents of the disputed hard drives are not relevant.

The Court must next determine whether the material to be preserved was created by or for "key players" in the litigation, meaning those who are "likely to have relevant information." Zubulake IV, 220 F.R.D. at 217-18; see also Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 433-34 (S.D.N.Y. 2004) ("Zubulake V") (key players include "the people identified in a party's initial disclosure and any subsequent supplementation thereto"); Goodman v. Praxair Servs., Inc., 632 F. Supp. 2d 494, 512 (D. Md. 2009) ("[I]dentifying a 'key player' in litigation is not dependent on the volume of interaction between an individual and a litigant, but rather is determined by whether an individual is likely to have information relevant to the events that

11

underlie the litigation."). Despite KPMG's claims that former and departing Audit Associates are not "key players" in this litigation (Def.'s Mem. at 10-11), until the pending Motion to Certify is resolved, each and every Audit Associate whom the company deemed was exempt from overtime payments under the FLSA is a potential plaintiff and thus could be found to be a "key player."

Additionally, assuming arguendo that Judge McMahon were to deny the Motion to Certify, KPMG's duty to preserve the hard drives containing information created by or for these Audit Associates would fall within the class of discovery materials that KPMG is obligated to preserve because the company is on notice that the hard drives may contain discovery material relevant to potential "future litigation" brought by these Audit Associates. See Orbit One Commc'ns, Inc., 271 F.R.D. at 436 (quoting Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998) (noting that the duty to preserve may attach even before a lawsuit is commenced), overruled on other grounds, Rotella v. Wood, 528 U.S. 549 (2000)). Accordingly, although the Court does not reach whether all potential members of the FLSA collective and all members of the putative New York class will be key players if the Motion to Certify is granted, these Audit Associates are, at the very least, key players in any one of many potential actions that could result if the Motion to Certify is denied. As such, KPMG has failed to establish that the hard drives do not relate to "key players" in the litigation.

Finally, the Court must consider whether the ongoing preservation of hard drives would be duplicative of other discovery materials subject to KPMG's separate preservation efforts. See Zubulake IV, 220 F.R.D. at 218 (although corporate parties must preserve all relevant documents in existence at the time the duty to preserve attaches as well as any relevant documents created

thereafter, they need not preserve "multiple identical copies" of relevant discovery materials). KPMG has not argued explicitly that the materials contained on the hard drives are duplicative of other materials it has already preserved. Rather, it has enumerated various categories of discovery materials that it deems more likely to resolve the factual matters in dispute, and which, the company claims, include materials already subject to ongoing preservation. To that end, KPMG notes that it has undertaken "broad efforts to preserve ESI and other relevant documents" that would tend to show the job duties and hours of Audit Associates, including "Human Resources records describing their job duties and job titles, recruiting documents and job postings, performance reviews, training materials describing general and specific job responsibilities and standards for professional conduct and performance, time records showing their hours recorded, and payroll records showing their compensation." (Def.'s Mem. at 4). Additionally, KPMG refers to its obligations under "professional standards and federal regulations that require the retention of certain documentation, including electronic records, related to an audit or review for at least seven years after its conclusion," which would preserve additional discovery material reflecting Audit Associates' job responsibilities and hours. (Id. at 11). Finally, KPMG suggests that "[t]he best source of information regarding the job responsibilities of, and work actually performed by," Audit Associates is the testimony of the Audit Associates and their supervisors. (Id. at 8).

While KPMG's preservation efforts appear to have been comprehensive and, at a later point in the litigation, the parties and the Court will have to resolve what evidence is most authoritative as to the factual issues in dispute, the documents and other potential discovery materials that KPMG possesses do not appear to be duplicative of the material that Plaintiffs

13

anticipate will be on the hard drives. (Pls.' Mem. at 3). For example, because the hard drives contain the contents of Audit Associates' individual laptops, they may contain materials that would not otherwise be preserved by KPMG as the company has described the scope of its current preservation, such as drafts, personal notations or memoranda, or correspondence among Audit Associates and other KPMG employees. In other words, the hard drives may reflect the types of unofficial work materials that would supplement the official company materials KPMG already has preserved, and which might well favor the company. In sum, KPMG has not demonstrated that the materials it seeks to dispose of are duplicative of materials that are already subject to its preservation efforts. Accordingly, KPMG has not established the absence of a duty to preserve the hard drives.

## C. Proportionality

As noted, courts in this district have cautioned against the application of a proportionality test as it relates to preservation. See, e.g., Orbit One Commc'ns, Inc., 271 F.R.D. at 436 n.10 ("Proportionality is particularly tricky in the context of preservation. It seems unlikely, for example, that a court would excuse the destruction of evidence merely because the monetary value of anticipated litigation was low."). At this point in the litigation, it is unclear whether an application of a proportionality test would weigh in favor of a protective order. Certainly KPMG's preservation of the hard drives is not without considerable expense. (See Keegan Decl. at ¶¶ 6-12). However, KPMG has not been able to establish conclusively that the materials contained on the hard drives are of either "little value" or "not unique." (Def.'s Mem. at 7 (citing The Sedona Conference, The Sedona Conference Commentary on Proportionality in Electronic Discovery, 11 Sedona Conf. J. 289, 291 (2010) (Principle No. 1)). Until discovery

proceeds and the parties can resolve what materials are contained on the hard drives and whether those materials are responsive to Plaintiffs' document requests, it would be premature to permit the destruction of any hard drives. Moreover, the parties should be able to make such a determination promptly once the Motion to Certify is resolved and the stay of discovery is lifted. Because it is not possible to predict when that determination will be made, it is similarly difficult to conclude what KPMG's costs of preservation will be on an ongoing basis. With so many unknowns involved at this stage in the litigation, permitting KPMG to destroy the hard drives is simply not appropriate at this time.

It bears noting that this is a dispute about preservation, not production. Although "[p]rotective orders can take a variety of forms in order to fit the circumstances of the case," Standard Investment Chartered, Inc. v. National Association of Securities Dealers, Inc., No. 07 Civ. 2014 (SWK), 2008 WL 199537, at *2 (S.D.N.Y. Jan. 22, 2008) (citation omitted), the more common circumstances giving rise to a protective order involve parties seeking to limit the dissemination of otherwise private material and, in effect, preserve the integrity of that material as, for example, privileged or confidential. See, e.g., Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 74 (S.D.N.Y. 2010) (defendants sought order limiting plaintiff employees' use of employment records produced in discovery, including materials that tended to "implicate privacy concerns and have the potential to embarrass the subject employee if revealed"). Directing KPMG to continue its preservation in this case maintains the integrity of the materials contained on the hard drives by preventing their destruction. Given the finality that would result from granting KPMG's motion and what stands to be lost—especially as compared to the potential (if not likelihood) that the ongoing preservation can (and will) be limited through sampling once the

Motion to Certify is resolved and discovery proceeds—it is not unreasonable that KPMG continue its preservation at this time.

Additionally, KPMG's ongoing burden is self-inflicted to a large extent. It is suffering from the effects of its own reluctance to work with Plaintiffs to generate a reasonable sample that may well be less burdensome to maintain. (See Def.'s Mem. at 12 (citations omitted)). KPMG is correct that "[t]he concept of sampling to test both the cost and the yield is now part of the mainstream approach to electronic discovery." S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403, 418 (S.D.N.Y. 2009) (citing Zubulake I, 217 F.R.D. at 322); see also Zubulake V, 229 F.R.D. at 432 ("It may be possible to run a system-wide keyword search; counsel could then preserve a copy of each 'hit.'. . . When the opposing party propounds its document requests, the parties could negotiate a list of search terms to be used in identifying responsive documents, and counsel would only be obliged to review documents that came up as 'hits' on the second, more restrictive search.") (footnotes omitted). However, to date, KPMG has failed to work effectively with Plaintiffs in order to generate a potential means of constructing an appropriate sample. Despite KPMG's contention that Plaintiffs have "refus[ed] to even consider the application of search terms" as a means of producing a meaningful sample (Def.'s Mem. at 12), the record suggests that KPMG did not provide Plaintiffs with the opportunity to learn of the hard drive's contents—such as by reviewing a handful of hard drives that counsel had vetted for privilege or created a log of contents—that might have enabled them to "propound targeted requests for specific files contained within the hard drives at lesser cost." (Pls.' Mem. at 12). While the Court will not direct KPMG to provide Plaintiffs with five hard drives for inspection, it encourages the parties to continue to meet and confer in light of this decision to see if an

16

agreement on sampling can be reached, sooner rather than later, thus alleviating the cost concerns KPMG has raised in its motion.

**D. Cost-Shifting**

In the context of discovery, there is a presumption "that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion . . . to grant orders protecting him from 'undue burden or expense . . . .'" Oppenheimer Fund, Inc., 437 U.S. at 358 (citing Fed. R. Civ. P. 26(c)); see Quinby, 245 F.R.D. at 101-02 (same). A district court may therefore issue an order under Rule 26(c) that protects the responding party from undue burden or expense by "conditioning discovery on the requesting party's payment of the costs of discovery." Oppenheimer Fund, Inc., 437 U.S. at 358; see Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 283 (S.D.N.Y. 2003) ("Zubulake III"). For example, "[i]f the demanding party seeks the preservation of information that is likely to be of only marginal relevance but is costly to retain, then rather than deny a preservation order altogether, a court may condition it upon the requesting party assuming responsibility for part or all of the expense." Treppel v. Biovail Corp., 233 F.R.D. 363, 373 (S.D.N.Y. 2006) (citation omitted); see also Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 318 (S.D.N.Y. 2003) ("Zubulake I") ("The burden or expense of discovery is, in turn, 'undue' when it 'outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.") (citing Fed. R. Civ. P. 26(b)(2)(iii)). The party seeking the cost-shifting bears the burden of establishing good cause for such an order. See

17

Quinby, 245 F.R.D. at 101 (citing Zubulake III, 216 F.R.D. at 283; Wiginton v. CB Richard Ellis, Inc., 229 F.R.D. 568, 573 (N.D. Ill. 2004)).[2]

For the same reasons that KPMG has failed to establish that it has no duty to preserve the hard drives—specifically, it has failed to demonstrate that the discovery materials contained on the hard drives are of only marginal relevance and that it would be unduly burdensome to continue its current preservation efforts while the Motion to Certify is pending—it has also failed to establish that cost-shifting is warranted on the present record.

## IV.  CONCLUSION

For the reasons set forth above, KPMG's motion for a protective order is DENIED. Until further order of this Court—or an agreement on a methodology to obtain an appropriate sample is reached by the parties—KPMG is directed to continue its preservation of the existing hard drives that belonged to former Audit Associates who are potential members of the FLSA collective or putative class members in New York. Going forward, KPMG is directed to preserve the hard drives of all departing Audit Associates who are potential members of the FLSA collective or putative class members in New York. Because of the scope of the FLSA collective, KPMG need not preserve, for the purposes of this litigation, the hard drives of any former or departing Audit Associates who worked exclusively outside of New York and whose employment was limited to a period prior to January 19, 2008 or after January 19, 2011. Likewise, given the scope of the putative New York class, KPMG need not preserve, for the

---

[2] Here, the parties disagree about whether the multi-factor test set forth in Zubulake I, 217 F.R.D. at 322—which governs the appropriateness of cost-shifting in the context of inaccessible materials—applies to this dispute concerning preservation rather than production. (Pls.' Mem. at 17-18; Def.'s Reply Mem. at 10). However, as the parties apparently agree, whether or not that cost-shifting inquiry applies to the expense of preserving digital data, it is inapplicable here because the hard drives, the ESI at issue, are still in accessible form. See Zubulake I, 217 F.R.D. at 318 (clarifying that cost-shifting is appropriate only when digital data is relatively inaccessible, such as in backup tapes). As such, the Court need not determine whether the factors Zubulake I articulated apply to a preservation dispute.

18

purposes of this litigation, the hard drives of any former Audit Associates who worked in New York prior to March, 2005.

This decision is without prejudice to KPMG renewing its application for a protective order—or negotiating with Plaintiffs as to a sample using keyword searches or otherwise—once Judge McMahon has resolved the Motion to Certify and the scope of Plaintiffs' representation is clarified.

**SO ORDERED.**

Dated: New York, New York
October 7, 2011

JAMES L. COTT
United States Magistrate Judge

**Copies of this Order have been sent by ECF to all counsel**