UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

KYLE PIPPINS, JAMIE SCHINDLER, and EDWARD
LAMBERT, Individually and On Behalf of All Others
Similarly Situated,

                            Plaintiffs,

                 -against-

KPMG LLP,

                           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    :
    :
    :
    :    11 CV 0377 (CM)(JLC)
    :
    :    ECF Case
    :
    :
    :
    :
    :

## DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S MEMORANDUM AND ORDER, ENTERED AND SERVED ON OCTOBER 11, 2011, CONCERNING PRESERVATION OF COMPUTER HARD DRIVES OF POTENTIAL MEMBERS OF THE PUTATIVE CLASS OR COLLECTIVE ACTION

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York  10019
Tel:  (212) 839-5300
Fax:  (212) 839-5599

*Attorneys for Defendant KPMG LLP*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION. ............................................................................................... 1

FACTUAL BACKGROUND. ............................................................................... 3

      A.    The Nature Of This Action. ..................................................................3

      B.    KPMG's Extensive Efforts To Preserve ESI And Other Relevant
           Documents. ............................................................................................4

      C.    The Dispute Over Preserving The Hard Drives Of Putative Class Members
           And/Or Potential FLSA Opt-ins. ...........................................................5

      D.    The Magistrate Judge's Memorandum And Order. ................................6

ARGUMENT ......................................................................................................8

      I.    The Magistrate Judge Erred In Holding That Every Potential Member Of
          The Putative Class And FLSA Potential Opt-In Plaintiff Is A "Key Player"
          Whose Hard Drives Must Be Preserved. .................................................8

      II.    The Magistrate Judge Erred In Denying KPMG's Motion For A Protective
          Order And Issuing The Preservation Order Without Determining Whether
          The Cost Of Preserving The Hard Drives Is Proportional To Their Likely
          Benefit In This Litigation. ....................................................................12

CONCLUSION ...................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amendola v. Bristol-Myers Squibb Co.*,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008)........................................................................10

*Arthur Andersen LLP v. United States*,
    544 U.S. 696 (2005)....................................................................................................11

*Barrus v. Dick's Sporting Goods, Inc.*,
    465 F. Supp. 2d 224 (W.D.N.Y. 2006).......................................................................13

*Daniel v. Coleman, Inc.*,
    No. 06-5706, 2007 WL 1463102 (W.D. Wash. May 17, 2007) ..................................15

*Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*,
    No. 08 Civ. 2437, 2009 WL 274483 (S.D.N.Y. Feb. 3, 2009) ..................................15

*Gucci Am., Inc. v. Guess?, Inc.*,
    No. 09 Civ. 4373, 2011 WL 9375 (S.D.N.Y. Jan. 3, 2011)..........................................8

*Harper v. Auto-Owners Ins. Co.*,
    138 F.R.D. 655 (S.D. Ind. 1991)................................................................................10

*Hickman v. Carnival Corp.*,
    No. 04–20044 CIV UUB, 2005 WL 3675961 (S.D. Fla. July 11, 2005).....................11

*Hill v. Eddie Bauer*,
    242 F.R.D. 556 (C.D. Cal. 2007)................................................................................13

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997).............................................................................10

*Huggins v. Prince George's Cnty, Md.*,
    750 F. Supp. 2d 549 (D. Md. 2010)............................................................................12

*In re African-American Slave Descendants' Litig.*,
    No. 1491, 02 C 7764, 2003 WL 24085346 (N.D. Ill. July 15, 2003).........................15

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*,
    967 F.2d 980 (4th Cir. 1992) .....................................................................................10

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
    271 F.R.D. 429 (S.D.N.Y. 2010)................................................................................15

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,*
    685 F. Supp. 2d 456 (S.D.N.Y. 2010)....................................................................10

*Piccone v. Town of Webster,*
    No. 09-CV-6266T, 2010 WL 3516581 (W.D.N.Y. Sept. 3, 2010).........................11

*R.F.M.A.S., Inc. v. So,*
    271 F.R.D. 13 (S.D.N.Y. 2010) ...............................................................................16

*RealNetworks, Inc. v. DVD Copy Control Ass'n,*
    264 F.R.D. 517 (N.D. Cal. 2009).............................................................................11

*Rimkus Consulting Grp., Inc., v. Cammarata,*
    688 F. Supp. 2d 598 (S.D. Tex. 2010) ...............................................................14, 15

*Trask-Morton v. Motel 6 Operating L.P.,*
    534 F.3d 672 (7th Cir. 2008) ...................................................................................11

*Treppel v. Biovail Corp.,*
    233 F.R.D. 363 (S.D.N.Y. 2006) ...............................................................15, 16, 18

*Victor Stanley, Inc. v. Creative Pipe, Inc.,*
    269 F.R.D. 497 (D. Md. 2010).................................................................................15

*Walmart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ...............................................................................................9

*West v. Goodyear Tire & Rubber Co.,*
    167 F.3d 776 (2d Cir. 1999)........................................................................................9

*Zubulake v. UBS Warburg LLC,*
    217 F.R.D. 309 (S.D.N.Y. 2003) ("*Zubulake I*") ..................................................14

*Zubulake v. UBS Warburg LLC,*
    220 F.R.D. 212 (S.D.N.Y. 2003) ("*Zubulake IV*")....................................7, 8, 9, 11

## STATUTES

26 U.S.C. § 6713 ...............................................................................................................5

26 U.S.C. § 7216 ...............................................................................................................5

28 U.S.C. § 636(b)(1)(A)................................................................................................1, 8

29 U.S.C. § 216(b) .............................................................................................................3

## OTHER AUTHORITIES

8 N.Y.C.R.R. § 29.10(c) ...................................................................................................5

17 C.F.R. § 210.2-06 ........................................................................................................12, 13

American Institute of Certified Public Accountants Code of
    Professional Conduct, ET Rule 301.01 .........................................................................5

Fed. R. Civ. P. 26(b) .....................................................................................................14

Fed. R. Civ. P. 72(a) ...................................................................................................1, 8

Public Company Accounting Oversight Board, AUDITING STANDARD NO. 3:
    AUDIT DOCUMENTATION, *available at*
    http://pcaobus.org/Standards/Auditing/Pages/Auditing_Standard_3.aspx
    (last visited on August 11, 2011) .................................................................................13

The Sedona Conference, *Cooperation Proclamation: Resources*
    *for the Judiciary* (2011 Public Comment Version), *available at*
    http://www.thesedonaconference.org/dltForm?did=Judicial_Resources.pdf .........................17

The Sedona Conference, *The Sedona Conference Commentary on Proportionality in*
    *Electronic Discovery*, 11 Sedona Conf. J. 289 (2010) (Principle No. 1) ................................15

The Sedona Principles: *Best Practices Recommendations & Principles*
    *for Addressing Electronic Document Production* (2d ed. 2007) ............................................15

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and 28 U.S.C.

§ 636(b)(1)(A), KPMG LLP ("KPMG") submits this Memorandum of Law in support of its

objections to Magistrate Judge Cott's Memorandum And Order, entered and served on October

11, 2011 (the "October 11 Order") (attached to the Declaration of Andrew W. Stern as Exhibit

1). The October 11 Order denied KPMG's motion for a protective order, and then went on to

affirmatively require KPMG to preserve computer hard drives for thousands of former and

departing employees. It did so for the sole reason that those employees are potential members of

a putative class action under New York wage and hour laws and/or a proposed nationwide

collective action under the Fair Labor Standards Act ("FLSA"). This was error, and, for the

reasons that follow, the October 11 Order should be set aside in its entirety or, at a minimum,

substantially modified.

## INTRODUCTION

In the face of Plaintiffs' unreasonable demand that KPMG preserve the entire computer

hard drives of thousands of former and departing employees who are potential members of the

putative class or proposed nationwide collective, KPMG followed the procedure recommended

by courts and commentators alike: It filed a motion for a protective order. The Magistrate Judge

not only denied KPMG's motion, but also entered an expansive and onerous preservation order

*against* KPMG. The October 11 Order is unprecedented in its scope, imposing massive costs

and preservation obligations beyond what any other court has done, at a time when judges,

scholars and practitioners alike recognize the need for appropriate limitations over a party's

preservation obligations. The October 11 Order is based on several clear errors of law, and

therefore should be set aside or modified by this Court.

*First*, the October 11 Order is based on an unreasonably broad definition of "key players"

for whom electronically stored information ("ESI") must be retained, sweeping in thousands of

1

current and former KPMG employees who will never be plaintiffs or witnesses in this action. (*See* October 11 Order at 11-12).  The "key player" analysis has never been extended to require the preservation of ESI of every potential member of a putative class or proposed FLSA collective action.  Indeed, the Magistrate Judge's assertion that every potential member of the putative class or collective is a "key player" is fundamentally inconsistent with Plaintiffs' central claim that this case can and should be litigated on a representative basis.

*Second*, the October 11 Order compounds that initial error by opining that, even if Plaintiffs' motion for certification is *denied*, KPMG must preserve the hard drives of all former employees who fall within the putative class and/or proposed collective, because there is the "potential" that some might file individual lawsuits in the future.  (*Id.* at 12).  This conclusion is without any support in law:  never has it been held that an employer on notice of a putative class action or proposed collective must impose a "litigation hold" and preserve ESI (among other materials) for every current or former employee who theoretically could bring an individual action in the future.  If companies were required to retain documents whenever there is a mere possibility that they could be sued, they effectively would face a perpetual duty to preserve and thus would be unable to implement document-retention policies.

*Third*, the Magistrate Judge further erred in concluding that the "proportionality" test of Federal Rule of Civil Procedure 26 limits only the duty to *produce* evidence, not the duty to *preserve* it.  (October 11 Order at 10, 15).  This is not the law.  When, as here, the costs of preserving ESI are grossly disproportional to information's potential value, the defendant is not obligated to preserve information that it would never have to produce.

For these reasons, the October 11 Order should be set aside and KPMG's motion for a protective order should be granted.  But in all events and at a minimum, the Order must be

modified to the extent it grants affirmative relief to Plaintiffs.  Even leaving aside the basic procedural infirmity that affirmative relief was granted to Plaintiffs when they did not cross-move for any such relief, there was no basis for the Magistrate Judge to speculate, in an advisory fashion, about whether former and departing Audit Associates will be "key players" if certification is denied and, on that basis, affirmatively to order preservation.  Plaintiffs made no meaningful showing of relevance, much less proportionality, and, more to the point, the Magistrate Judge made no finding that the information contained on the hard drives is relevant or proportional.  Accordingly, and at a minimum, the Court should vacate the relief granted against KPMG and correct the legal errors contained in the October 11 Order.

## FACTUAL BACKGROUND

### A.    The Nature Of This Action.

KPMG is a limited liability partnership that provides audit, tax, and advisory services to a wide variety of public and private clients throughout New York and the United States.  (October 11 Order at 1-2).  Like other major accounting firms, KPMG has classified associates who work in its Audit Practice ("Audit Associates") as exempt employees, relying on what it believes to be clear authority under both New York law and the FLSA.  The Named Plaintiffs are former Audit Associates who challenge that classification and allege that it deprived them of overtime wages for the time they worked in excess of 40 hours per week.  (*Id.* at 2).  Their First Amended Complaint asserts a claim pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves and all potential opt-in plaintiffs who worked as Audit Associates in any of KPMG's offices in the United States between January 19, 2008 and January 19, 2011.  (October 11 Order at 3).  It also asserts a claim under New York law on behalf of a putative Rule 23 class of all Audit Associates who worked for KPMG in New York from March 8, 2005 until the date of final judgment in this case.  (*Id.*).

**B.      KPMG's Extensive Efforts To Preserve ESI And Other Relevant Documents.**

In connection with this action and several overlapping actions that were first filed in 2007, KPMG undertook what Magistrate Judge Cott acknowledged were "comprehensive" efforts to preserve relevant ESI and other documents.  (October 11 Order at 13-14).  In particular, KPMG identified and preserved documents that would tend to show the job duties of the Named Plaintiffs and the members of the putative class and proposed collective, such as Human Resources records describing their job duties and job titles, recruiting documents and job postings, performance reviews, training materials describing general and specific job responsibilities, and standards for professional conduct and performance.  KPMG also identified and preserved time records (showing recorded hours of work) and payroll records (showing compensation) for the Named Plaintiffs and members of the putative class and proposed collective.  (*See* Letter from Colleen M. Kenney to Justin Swartz at 3-5 (June 6, 2011) ("Kenney Letter") (attached as Exhibit 6-H to the Stern Declaration)).

KPMG also took steps to preserve ESI for the Named Plaintiffs and the Named Plaintiffs' supervisors that existed as of the filing of the complaint.  Although KPMG did not and does not believe it was required to do so, in an abundance of caution KPMG also made good faith efforts to preserve computer hard drives of departing employees who are putative class members in New York.  However, prior to the issuance by the Magistrate Judge of the preservation order at issue here, KPMG had not instituted a litigation hold to preserve the hard drives for departing employees throughout the country who theoretically could but in all likelihood will not elect to opt into the case if the proposed FLSA collective were conditionally certified.  (Kenney Letter at 2).

Nevertheless, as a result of litigation holds in other cases and for reasons unrelated to this litigation, KPMG already has preserved the hard drives of more than 2,500 of the approximately

3,800 former employees who are putative New York class members and/or potential FLSA opt-in plaintiffs.  (*See* Declaration of Thomas Keegan ("Keegan Declaration") ¶¶ 7, 10 (attached as Exhibit 4 to the Stern Declaration)).  In particular, KPMG has preserved hard drives for more than 500 former employees who are putative New York class members and nearly 2,300 former employees who are potential FLSA opt-ins.  (*Id.* ¶¶ 8-9).  KPMG already has incurred more than $1.5 million in costs associated with the preservation of these hard drives, and these costs will continue to rise as long as KPMG is required to preserve additional hard drives of departing employees who are putative New York class members or potential FLSA opt-ins on a going-forward basis.  (*Id.* ¶ 12).  It costs approximately $600 to preserve each hard drive, including the preservation of the hard drive itself, administration costs, coordination of hard drive collection, and related preservation of the employee's network storage and Microsoft Exchange datastore.[1]  (*Id.*).

C.   **The Dispute Over Preserving The Hard Drives Of Putative Class Members And/Or Potential FLSA Opt-ins.**

Although this Court stayed discovery pending resolution of Plaintiffs' motion for conditional certification under the FLSA, KPMG voluntarily initiated discussions with the Named Plaintiffs concerning the scope of its preservation obligations.  Plaintiffs and KPMG agreed that sampling techniques should be used to limit the number of hard drives from former members of the putative class and/or proposed collective that are preserved, but the parties could not agree on the sampling criteria or the number of hard drives to be included in the sample.

---

[1] This does not even consider the far more substantial costs that will be associated with searching those datastores for discoverable information, and the ensuing attorney review of such data prior to any production so that KPMG can comply with its legal and contractual obligations regarding client confidentiality.  *See* Keegan Declaration, ¶¶ 13-30 (Stern Decl., Ex. 4); *see also* 8 N.Y.C.R.R. § 29.10(c) (generally prohibiting accountants from disclosing client confidences without client consent); American Institute of Certified Public Accountants Code of Professional Conduct, ET Rule 301.01 (as amended, January 14, 1992) (same); 26 U.S.C. §§ 6713 and 7216.

(*See* October 11 Order at 6). After "extensive negotiations between the parties and several mediation efforts by [Magistrate Judge Cott] failed to resolve the dispute," KPMG moved for a protective order to define and narrow the scope of its preservation obligations with respect to the hard drives. (*Id.* at 4). Specifically, KPMG requested an order that would require it to preserve a random sample of 100 hard drives against which reasonable search terms proposed by Plaintiffs could be run to select a universe of data to be preserved for potential discovery. (*Id.* at 4-5). This approach, KPMG explained, is consistent with the mandate in the Federal Rules of Civil Procedure that preservation and discovery must be reasonable and proportional to the needs of the case. In the alternative, KPMG requested that, if it were required to preserve more than 100 hard drives, Plaintiffs be required to bear the preservation costs. (*Id.* at 5). Plaintiffs opposed KPMG's motion and, although they did not move (or cross-move) for relief of their own, Plaintiffs requested in their opposition brief an order requiring KPMG to preserve the hard drives of all departing Audit Associates. Plaintiffs also asked the Magistrate Judge to allow them to inspect five hard drives to enable them to negotiate with KPMG about how data should be extracted. (*Id.* at 7-8).

### D.   The Magistrate Judge's Memorandum And Order.

In the October 11 Order, Magistrate Judge Cott denied KPMG's motion. The Magistrate Judge then also went on to affirmatively require KPMG

- "to continue its preservation of the existing hard drives that belonged to former Audit Associates who are potential members of the FLSA collective or putative class members in New York;" and

- "Going forward . . . to preserve the hard drives of all departing Audit Associates who are potential members of the FLSA collective or putative class members in New York. Because of the scope of the FLSA collective, KPMG need not preserve, for the purposes of this litigation, the hard drives of any former or departing Audit Associates who worked exclusively outside of New York and whose employment was limited to a period prior to January 12, 2008 or after January 19, 2011. Likewise, given the scope of the putative New York class,

> KPMG need not preserve, for purposes of this litigation, the hard drives of any
> former Audit Associates who worked in New York prior to March, 2005."

(October 11 Order at 18-19).  This order is to remain in effect "[u]ntil further Order of this

Court – or an agreement on a methodology to obtain an appropriate sample is reached by the

parties."  (*Id*. at 18).  It is also "without prejudice to KPMG renewing its application for a

protective order" after this Court has resolved the Motion to Certify.  (*Id*. at 19).

     The Magistrate Judge based its October 11 Order on several conclusions of law.

First, the Magistrate Judge held that a proportionality analysis – under which the costs of

preservation are weighed against the likely benefit of the information in the litigation – is

irrelevant to a party's duty to preserve evidence.  Instead, until a "'more precise definition is

created by rule,' prudence favors retaining all relevant materials."  (*Id*. at 10 (quoting *Zubulake*

*v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) (*Zubulake IV*))).  Here, the

Magistrate Judge found that it "is not entirely clear what the hard drives contain." (October 11

Order at 11).  Because, however, "'relevance' in the context of discovery is an extremely broad

concept," the Magistrate Judge held that KPMG "failed to establish that the contents of the

disputed hard drives are not relevant" to show the Audit Associates' job responsibilities or the

hours they worked.  (*Id.* (internal quotations and citations omitted)).

     Second, the Magistrate Judge held that "until the pending Motion to Certify is resolved,

each and every former Audit Associate . . . is a potential plaintiff and thus . . . a 'key player'"

within the meaning of the case law defining "key players" as "those who are 'likely to have

relevant information'" and therefore fall within the duty to preserve.  (*Id*. at 12 (quoting

*Zubulake IV*, 220 F.R.D. at 217-18)).  Moreover, the Magistrate Judge held, even if this Court

denies the Motion for Conditional Certification, KPMG must preserve the hard drives of all

departing Audit Associates because "all potential members of the FLSA collective and all

members of the putative New York class are key players in any one of the many *potential actions* that *could result* if the Motion to Certify is denied." (*Id.* at 12 (emphases added)).

Third, the Magistrate Judge held that although KPMG's efforts to preserve ESI and other documents showing the job duties, hours worked, and compensation "appear to have been comprehensive," it is possible that the hard drives "may contain materials that would not otherwise be preserved by KPMG." (*Id.* at 13-14). And even though "it is unclear whether an application of a proportionality test would weigh in favor of a protective order," the Magistrate Judge concluded that it is "not unreasonable that KPMG continue its preservation" efforts given "the finality that would result from granting KPMG's motion." (*Id.* at 14-16).

## ARGUMENT

A district court must "modify or set aside any part" of a magistrate judge's order concerning non-dispositive matters that is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Gucci Am., Inc. v. Guess?, Inc.*, No. 09 Civ. 4373, 2011 WL 9375, at *1 (S.D.N.Y. Jan. 3, 2011). The October 11 Order should be set aside because it holds, contrary to law, that every potential member of a putative class or a proposed FLSA collective action is a "key player" whose ESI must be preserved, regardless of whether the cost of preservation is disproportionate to the needs of the case. KPMG's request for a protective order therefore should be granted. At a minimum, and in the alternative, the grant of relief to Plaintiffs and against KPMG should be set aside because it depends upon insufficient findings as well as basic errors of law.

## I. The Magistrate Judge Erred In Holding That Every Potential Member Of The Putative Class And FLSA Potential Opt-In Plaintiff Is A "Key Player" Whose Hard Drives Must Be Preserved.

It is beyond dispute that a defendant, in recognizing the threat of litigation, is not required to preserve every shred of paper, email or electronic document or backup tape. *Zubulake IV*, 220

F.R.D. at 217.  At the same time, a party to a lawsuit may not destroy "unique, relevant evidence that might be useful to an adversary." *Id.*; *see, e.g.*, *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (discussing the duty to preserve documents and property "for another's use as evidence in pending or reasonably foreseeable litigation").  The duty therefore must be defined in such a way that a defendant facing litigation can identify and preserve ESI that may be relevant without effectively requiring it to undertake the massive burden of preserving all ESI.  As the court in *Zubulake IV* recognized, "to hold that a corporation is under a duty to preserve all e-mail potentially relevant to any future litigation would be tantamount to holding that a corporation must preserve all email. . . .  Such a proposition is not justified."  220 F.R.D. at 217, n.21 (internal quotations omitted) (omissions in original).  *Zubulake IV* therefore held that a company's duty to preserve extends to the documents and ESI of "those employees *likely* to have relevant information – the 'key players' in the case."  *Id.* at 218 (emphasis added).

Here, the Magistrate Judge extended *Zubulake IV*, which did not involve a class action, in an unprecedented fashion that is fundamentally inconsistent with its principles.  Specifically, he held that "until the pending Motion to Certify is resolved, each and every Audit Associate whom [KPMG] deemed was exempt from overtime payments" is a "'key player'" whose ESI therefore must be preserved.  (October 11 Order at 12).  KPMG is not aware of a single case – and neither Plaintiffs nor the Magistrate Judge cited any – holding that every potential member of a putative class or FLSA collective action is a "key player."  Indeed, the assertion that every member of a putative class or proposed FLSA collective is a "key player" is squarely contradicted by the purportedly representative nature of the action, which is permitted only if the named plaintiffs are "appropriate representatives" who "possess the same interest and suffer the same injury as the class members."  *Walmart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (class actions

are limited to claims "fairly encompassed by the named plaintiffs' claims") (internal quotations omitted); *see also, e.g.*, *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) (conditional certification of FLSA collective action requires "preliminary determination that the employees who will be receiving the notice are *similarly situated* to the plaintiff") (emphasis added); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 263 (S.D.N.Y. 1997) (Sotomayor, J.) ("FLSA collective actions are still representative actions and, given that individuals who 'opt in' to this proceeding will most likely be represented by the named-plaintiffs' counsel, the Court has an equitable interest in ensuring that they are adequately represented.").

The Magistrate Judge sought to justify this expansive definition of "key players" in this case by asserting that the potential FLSA opt-ins and the putative class members are "at the very least, key players in one of many *potential* actions that could result" if no class or collective is certified.  (October 11 Order at 12 (emphasis added)).  This conclusion distorts *Zubulake*'s concept of "key players" beyond all recognition.  "It is well established that the duty to preserve evidence arises when a party reasonably anticipates litigation." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 466 & n.25 (S.D.N.Y. 2010) (citing cases).  But the mere "potential" that a hypothetical putative class member or FLSA opt-in plaintiff conceivably could file an individual suit at some time in the future if certification is denied cannot trigger a duty to preserve the hard drives of every member of the putative class or collective. "[L]itigation is an ever-present possibility in American life," *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992), and a potential claim can be identified at almost any time, *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D. Ind. 1991).  If companies were required to retain documents

whenever "potential" litigation was on the horizon, they would effectively face a perpetual duty to preserve and thus would be unable to implement document-retention policies, despite the important and legitimate purposes the Supreme Court has recognized that they serve. *See Arthur Anderson LLP v. United States*, 544 U.S. 696, 704 (2005).

Consequently, a duty to preserve evidence "must be based on more than the mere possibility that something may occur at some time in the future." *Hickman v. Carnival Corp.,* No. 04–20044 CIV UUB, 2005 WL 3675961, at *2 (S.D. Fla. July 11, 2005). A "general concern over litigation" is not enough. *RealNetworks, Inc. v. DVD Copy Control Ass'n,* 264 F.R.D. 517, 526–27 (N.D. Cal. 2009). A company does not incur a duty to preserve evidence "[m]erely because one or two employees contemplate the possibility that a fellow employee might sue." *Zubulake IV*, 220 F.R.D. at 217. Rather, "a substantial number of key personnel at a company or organization [must] anticipate litigation" by the plaintiff. *Piccone v. Town of Webster*, No. 09-CV-6266T, 2010 WL 3516581, at *5 (W.D.N.Y. Sept. 3, 2010); *see also Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) (defendant had no duty to preserve evidence where litigation was not imminent).

Here, there is no reason to believe that KPMG will be subject to suit by any particular Audit Associate if Plaintiffs' motion for conditional certification is denied. Nevertheless, the Magistrate Judge ordered KPMG to preserve the hard drives of thousands of former and departing Audit Associate because of the mere "*potential*" that some unspecified Audit Associate "*could*" file an individual action "if the Motion to Certify is denied." (October 11 Order at 12 (emphasis added)). That is insufficient as a matter of law to give rise to a duty to preserve evidence. Indeed, the logical result of the Magistrate Judge's conclusion "is that a defendant is required to hold all possibly relevant records to all possible litigation if any litigation could

11

possibly occur – an extreme position that extends forseeability beyond reasonableness."

*Huggins v. Prince George's Cnty, Md.*, 750 F. Supp. 2d 549, 561 (D. Md. 2010). This Court

should make clear that that unprecedented and legally erroneous position is not the law, and on

that basis set aside the October 11 Order.

## II. The Magistrate Judge Erred In Denying KPMG's Motion For A Protective Order And Issuing The Preservation Order Without Determining Whether The Cost Of Preserving The Hard Drives Is Proportional To Their Likely Benefit In This Litigation.

**A.** The Magistrate Judge also erred in denying KPMG's motion for a protective order –

and then granting the request in Plaintiffs' opposition brief that KPMG be directed to preserve

the hard drives of every member of the putative New York class, and every potential opt-in

plaintiff of the nationwide FLSA collective action. (*See* October 12 Order at 14). KPMG

demonstrated that it is unreasonable for Plaintiffs to demand that KPMG preserve thousands of

hard drives at a growing cost of millions of dollars when KPMG already has preserved more

information than ever reasonably could be required (or meaningfully reviewed). In addition to

KPMG's "comprehensive" efforts to preserve documents and ESI that may be relevant to this

litigation (October 11 Order at 13), KPMG is subject to professional standards and federal

regulations that require the rigorous retention of audit documentation, including electronic

records, related to an audit or review for at least seven years after its conclusion.[2]  Given the

---

[2] 17 C.F.R. § 210.2-06, adopted pursuant to Sarbanes-Oxley, provides in relevant part:

> (a) For a period of seven years after an accountant concludes an audit or review of an issuer's financial statements to which section 10A(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78j-1(a)) applies, or of the financial statements of any investment company registered under section 8 of the Investment Company Act of 1940 (15 U.S.C. 80a-8), the accountant shall retain records relevant to the audit or review, including workpapers and other documents that form the basis of the audit or review, and memoranda, correspondence, communications, other documents, and records (including electronic records), which:

preservation of this vast amount of material and the burden already borne by KPMG, it is unduly burdensome to require KPMG to preserve the hard drive of every departing Audit Associate as well as thousands of hard drives from those Audit Associates who had departed previously.

The unreasonableness of this requirement is all the more evident in light of the fact that courts regularly use sampling as a method for reducing the burden of discovery in class and collective actions, and thus KPMG will never be required to produce all of the information on all of the more than 2,500 hard drives it already has preserved. *See, e.g.*, *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 232 (W.D.N.Y. 2006) (court may limit post-notice discovery to a "reasonable sampling of defendants' stores or to a limited number of regions."); *Hill v. Eddie Bauer*, 242 F.R.D. 556, 564 (C.D. Cal. 2007) (endorsing defendant's sampling proposal in wage and hour class action to limit unduly burdensome discovery requests by plaintiffs). Indeed, even Plaintiffs admit that sampling may be used in this case "as a means to preserve a more limited number of hard drives at a lower cost." (October 11 Order at 6). KPMG has already preserved more than a sufficient corpus of hard drives from which a reasonable sample could be drawn.

In light of this concession about the appropriateness of the use of sampling, and the fact that the burden of preserving the hard drives far exceeds any minimal relevance they may have in

---

> (1) Are created, sent or received in connection with the audit or review, and
> (2) Contain conclusions, opinions, analyses, or financial data related to the audit or review.

*See also* Public Company Accounting Oversight Board, AUDITING STANDARD NO. 3: AUDIT DOCUMENTATION, ¶14, *available at* http://pcaobus.org/Standards/Auditing/Pages/Auditing_Standard_3.aspx (last visited on August 11, 2011) ("The auditor must retain audit documentation for seven years from the date the auditor grants permission to use the auditor's report in connection with the issuance of the company's financial statements … unless a longer period of time is required by law.").

resolving the legal issues in this case, the Magistrate Judge should have granted KPMG's request to select a random sample of 100 hard drives and cease to preserve the remainder of the more than 2,500 hard drives it has preserved to date.  The preservation of 100 hard drives, in combination with the vast amount of other documents and ESI that KPMG already has preserved, is more than sufficient to litigate this case if conditional certification were granted. Notwithstanding KPMG's demonstration of the undue burden of preserving thousands of hard drives that will never be produced in this litigation, the Magistrate Judge denied KPMG's motion for a protective order because he concluded that proportionality analysis applies only to the duty to produce evidence, but not to a party's duty to *preserve* evidence.  (October 11 Order at 15). That is incorrect.

Although parties generally may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defense, Fed. R. Civ. P. 26(b)(1), discovery must be reasonable and proportional to the case.  The court "must limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil Procedure]" if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  *Id*. 26(b)(2)(C); *see generally Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003) (*Zubulake I*) (party responding to discovery may seek a protective order under Rule 26(c) to protect it from "'undue burden or expense'" where the discovery request runs afoul of the "proportionality test" of Rule 26(b)(2)(iii)).  Thus, the line between what is "acceptable and unacceptable conduct in preserving information and in conducting discovery" in any given case "depends on what is *reasonable*, and that in turns depends on . . . what [is] *proportional* to that case and consistent

14

with clearly established applicable standards." *Rimkus Consulting Grp., Inc.*, *v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010) (emphasis in original); *see also, e.g.*, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 522 ((D. Md. 2010) (same). As *Rimkus* recognized, "'[e]lectronic discovery burdens should be proportional to the amount in controversy and the nature of the case. Otherwise, transaction costs due to electronic discovery will overwhelm the ability to resolve disputes fairly in litigation.'" 688 F. Supp. 2d at 522 n.8 (quoting The Sedona Principles: *Best Practices Recommendations & Principles for Addressing Electronic Document Production* 17 cmt. 2.b. (2d ed. 2007)). For those reasons, the "burdens and costs of preservation of potentially relevant information should be weighed against the potential value and uniqueness of the information when determining the appropriate scope of preservation." The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 291 (2010) (Principle No. 1).

Indeed, the very decision upon which the Magistrate Judge principally relied states expressly that "[r]easonableness and proportionality are surely good guiding principles for a court that is considering imposing a preservation order." *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 436 n.10 (S.D.N.Y. 2010). That sensible rule is consistent with established precedent in this District and elsewhere that the party seeking a preservation order must demonstrate that the order is "not unduly burdensome." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 372 (S.D.N.Y. 2006) (denying motion for preservation order); *see also, e.g.*, *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08 Civ. 2437, 2009 WL 274483 (S.D.N.Y. Feb. 3, 2009) (same); *In re African-American Slave Descendants' Litig.*, No. 1491, 02 C 7764, 2003 WL 24085346 (N.D. Ill. July 15, 2003) (denying motion for order to preserve a large numbers of documents because it "would be too burdensome at this stage); *Daniel v.*

*Coleman, Inc.*, No. 06-5706, 2007 WL 1463102, at *3 (W.D. Wash. May 17, 2007) (denying protective order to prevent sale of camper that "might be of interest to the jury to see" where the burden on plaintiff was substantial and defendant could use other means to show the jury its size, layout and contents).

    **B.**   Not only did the Magistrate Judge disregard precedent requiring consideration of proportionality, he also went on to impose an affirmative obligation on KPMG to preserve thousands of hard drives – at what he acknowledged to be "considerable expense" – based on nothing more than naked speculation that the hard drives "may contain materials that would not otherwise be preserved" by KPMG.  (October 11 Order at 14).  The Magistrate Judge concluded that this was "not unreasonable," because Plaintiffs have not had an "opportunity to learn of the hard drive's contents," and, therefore, lack sufficient information to propose search terms or more targeted requests.  (*Id*. at 16).  The Magistrate Judge's conclusion is both legally erroneous and factually insufficient.

    It was legal error for the Magistrate Judge to enter a protective order against KPMG without requiring Plaintiffs to bear the burden of proving that "the requested preservation order is 'not unduly burdensome.'"  *Treppel*, 233 F.R.D. at 372 (quoting *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004)).  KPMG was the moving party on its request for a protective order, but not on Plaintiffs' own request for a preservation order.  The Magistrate Judge's apparent frustration with the parties' inability to "work effectively" together (October 11 Order at 16) does not justify his imposition of the burden of proof on KPMG.

    Moreover, in filing its motion for protective order when the parties could not resolve the preservation dispute, KPMG followed the procedure recommended by courts and commentators alike.  *See, e.g.*, *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 33 (S.D.N.Y. 2010) (if defendant thought

the preservation of certain evidence to be unduly burdensome, "it should have sought a protective order [pursuant to Rule 26(c)] instead of resorting to self help"); The Sedona Conference, *Cooperation Proclamation: Resources for the Judiciary*, at 10 (2011 Public Comment Version), *available at* http://www.thesedonaconference.org/dltForm?did= Judicial_Resources.pdf (suggesting that the court "[d]irect the parties to present any disputes about preservation to the court as soon as possible, so that the judge can issue appropriate orders regarding what should or should not be preserved in the earliest stage of litigation"). By placing the burden of proof on KPMG as to the Plaintiffs' (procedurally improper) request for a preservation order, the Magistrate Judge effectively punished KPMG for proactively elevating a dispute to the court.

Most fundamentally, Plaintiffs did not show that, in light of KPMG's showing of what has already been separately preserved, the information on the hard drives is unique and of sufficient relevance to this litigation as to outweigh the substantial burden on KPMG of preserving thousands of hard drives in their entirety. The Magistrate Judge was clearly wrong to believe that Plaintiffs lacked sufficient information to make the required showing. The hard drives at issue were taken from the laptop computers that Plaintiffs and other Audit Associates themselves used in performance of their job duties at KPMG. Plaintiffs therefore possessed the information necessary to explain the relevance of the material on the hard drives and to propose reasonable search terms that could be used to limit the universe of data that would need to be reviewed and redacted to ensure KPMG's compliance with its legal and contractual obligations regarding confidentiality. *See supra* note 1. But at a bare minimum, the Magistrate Judge's conclusion that it is "unclear" whether the preservation costs are disproportional to the likely benefits (October 11 Order at 14) means that no affirmative relief ought to have been given. If

17

this truly was "unclear" – and KPMG submits that the clear evidence is that costs grossly

outweighed benefits – then Plaintiffs did not meet their burden and should not have been granted

relief.

## CONCLUSION

For the foregoing reasons, the Magistrate Judge should have granted KPMG's motion for

a protective order, or at least conditioned the issuance of the preservation order on Plaintiffs'

"assuming responsibility for part or all of the expense." *Treppel*, 233 F.R.D. at 373.  But in all

events, there was no basis to issue an order affirmatively requiring KPMG to preserve the hard

drives.  That conclusion rested upon clear errors of law and insufficient factual findings, as well

as inappropriate speculation about the state of litigation after this Court rules on certification.

KPMG therefore respectfully requests the Court to set aside the October 11 Order and grant

KPMG's motion for a protective order.  Alternatively, the Court should correct the legal errors

contained in the October 11 Order and set aside the relief erroneously awarded to Plaintiffs.

Dated:  New York, New York                           SIDLEY AUSTIN LLP
            October 28, 2011


                                                     By:____/s/  Andrew W. Stern_____
                                                         Andrew W. Stern
                                                         Alex J. Kaplan
                                                         787 Seventh Avenue
                                                         New York, New York 10019
                                                         Tel.:  (212) 839-5300
                                                         Fax:  (212) 839-5599
                                                         Email:  astern@sidley.com
                                                         Email:  ajkaplan@sidley.com

                                                         Michael C. Kelley (*pro hac vice*)
                                                         Jennifer Altfeld Landau (*pro hac vice*)
                                                         555 West Fifth Street, Suite 4000
                                                         Los Angeles, California 90013
                                                         Tel.:  (213) 896-6000
                                                         Fax:  (213) 896-6600
                                                         Email:  mkelley@sidley.com
                                                         Email:  jlandau@sidley.com

Steven T. Catlett (*pro hac vice*)
One South Dearborn Street
Chicago, Illinois 60603
Tel.:  (312) 853-7000
Fax:  (312) 853-7036
Email:  scatlett@sidley.com

*Attorneys for Defendant KPMG LLP*