# *REDACTED VERSION*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

|  |  |
|---|---|
| KYLE PIPPINS, JAMIE SCHINDLER, and EDWARD LAMBERT, Individually and On Behalf of All Others Similarly Situated, | : |
| Plaintiffs, | : |
| -against- | : |
| KPMG LLP, | : |
| Defendant. | : |

: 11 CV 0377 (CM) (JLC)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## **KPMG LLP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10022
Tel.: (212) 839-5300
Fax: (212) 839-5599

*Attorneys for Defendant KPMG LLP*

2465262v.7

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1

PROCEDURAL BACKGROUND ............................................................................................. 3

FACTUAL BACKGROUND ..................................................................................................... 3

I.      Overview Of KPMG's Audit Practice And Applicable Professional Audit
        Standards........................................................................................................................ 3

        A.      General Audit Standards ......................................................................... 5

        B.      Standards Of Fieldwork ........................................................................... 6

        C.      Standards Regarding Fraud ..................................................................... 7

        D.      Standards Governing Documentation ...................................................... 7

II.     KPMG's Recruiting And Hiring Of Audit Associates ......................................... 8

III.    KPMG's Training Of Audit Associates................................................................. 9

IV.     The Role Of Audit Associates ......................................................................... 14

ARGUMENT .......................................................................................................................... 17

I.      The Summary Judgment Standard ..................................................................... 17

II.     KPMG Audit Associates Are Professionals ...................................................... 18

        A.      The Requirements Of The Professional Exemption ............................... 18

        B.      Accounting Is A Learned Profession ..................................................... 20

        C.      Audit Associates Are Required To Possess Advanced Knowledge
                Obtained Through A Prolonged Course Of Specialized Instruction And
                Study ..................................................................................................... 20

        D.      Audit Associates Have A Primary Duty Requiring Advanced
                Knowledge............................................................................................. 23

CONCLUSION ...................................................................................................................... 25

2465262v 7

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .......................................................................................................... 18

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......................................................................................................... 17

*Clarke v. JPMorgan Chase Bank, N.A.,*
2010 U.S. Dist. LEXIS 33264 (S.D.N.Y. Mar. 26, 2010) ...............................................18, 19

*Darveau v. Detecon, Inc.,*
515 F.3d 334 (4th Cir. 2008) ............................................................................................ 18

*De Jesus-Rentas v. Baxter Pharmacy Servs. Corp.,*
400 F.3d 72 (1st Cir. 2005) ............................................................................................... 18

*Donovan v. Burger King Corp.,*
675 F.2d 516 (2d Cir. 1982) ............................................................................................. 24

*Galasso v. Eisman, Zucker, Klein & Ruttenberg,*
310 F. Supp. 2d 569 (S.D.N.Y. 2004) ...........................................................................18, 20

*Owsley v. San Antonio Indep. Sch. Dist.,*
187 F.3d 521 (5th Cir. 1999) ............................................................................................ 21

*Piscione v Ernst & Young, LLP,*
171 F.3d 527 (7th Cir. 1999) .........................................................................................18, 25

*Rausch v. Wolf,*
72 F. Supp. 658 (N.D. Ill. 1947) ...................................................................................... 20

*Reich v. Wyoming,*
993 F.2d 739 (10th Cir. 1993) .......................................................................................... 22

*Rutlin v. Prime Succession, Inc.,*
220 F.3d 737 (6th Cir. 2000) ............................................................................................ 22

*Schaefer-LaRose v. Eli Lilly & Co.,*
___ F.3d. ____, 2012 WL 1592552 (7th Cir. May 8, 2012) ............................................... 24

*United States v. Arthur Young & Co.,*
465 U.S. 805 (1984) .......................................................................................................... 5

STATUTES AND REGULATIONS

29 U.S.C. § 201 et seq. .................................................................................................. 3

29 U.S.C. § 213(a)(1) ............................................................................................... 18, 19

New York Labor Law, Article 19 § 650 et seq. ....................................................... 3

29 C.F.R. § 541.300(a)(2)(i) .......................................................................... 18

29 C.F.R. § 541.301(a) ................................................................................. 19

29 C.F.R. § 541.301(b) ................................................................................. 23

29 C.F.R. § 541.301(c) ................................................................................. 20

29 C.F.R. § 541.301(d) ................................................................................. 20

29 C.F.R. § 541.301(e)(5) ............................................................................. 20

29 C.F.R. § 541.700(b) ................................................................................. 25

RULES AND OTHER AUTHORITIES

Defining and Delimiting the Exemptions for Executive, Administrative, Professional,
     Outside Sales and Computer Employees, the Preamble to the 2004 Final Rule,
     69 Fed. Reg. 22122 (April 23, 2004) .......................................................... 19, 22, 24

"Executive, Administrative, Professional … Outside Salesmen" Redefined, Wage and
     Hour Division, U.S. DOL, Report and Recommendations of the Presiding Officer
     (Harold Stein) at Hearings Preliminary to Redefinition (Oct. 24, 1940) ................. 2

Fed. R. Civ. P. 23 ........................................................................................ 3

Fed. R. Civ. P. 56 ...................................................................................... 17

UNIFORM ACCOUNTANCY ACT MODEL RULES R. 5-2(d)(2) and (d)(4)
     (Nat'l Ass'n of State Bds. of Accountancy July 29, 2011),
     http://www.aicpa.org/advocacy/state/downloadabledocuments/uaamodelrules2011.pdf ........ 9

AUDITING AND QUALITY CONTROL STANDARDS

AS No. 9 ..................................................................................................... 5

AS No. 10 ................................................................................................ 5, 24

AU 150.02 .................................................................................................. 6

AU 230.02 .................................................................................................. 6

2465262v 7

AU 230.07 ................................................................................................................................. 6

AU 230.08 ................................................................................................................................. 6

AU 311.04 ................................................................................................................................. 5

AU 311.14 ............................................................................................................................... 25

AU 316.13 ................................................................................................................................. 7

AU 339.01 ................................................................................................................................. 7

PCAOB Rule 1001(p)(i) ........................................................................................................... 5

PCAOB Rule 3100 .................................................................................................................... 5

QC 20.03 ............................................................................................................................... 5, 9

2465262v.7

KPMG LLP ("KPMG") respectfully submits this Memorandum in Support of its Motion for Summary Judgment with respect to Plaintiffs' Fair Labor Standards Act ("FLSA") claims.

## PRELIMINARY STATEMENT

KPMG's Audit Associates are highly educated professionals who have prepared for and embarked on a career in public accounting, yet Plaintiffs challenge KPMG's longstanding policy classifying them as exempt professionals under the FLSA. Their attempt to discard professional status in pursuit of overtime pay should be rejected. The uncontroverted facts demonstrate that Audit Associates – whose primary job duty is the performance of audit work, consistent with applicable professional standards including Generally Accepted Accounting Principles ("GAAP") and Generally Accepted Auditing Standards ("GAAS") – are exempt professionals. Their work requires advanced knowledge in a field of science or learning (Accounting) that is customarily acquired through a prolonged course of specialized intellectual instruction.

In fact, KPMG recruits and hires candidates who have learned GAAP and GAAS through a college- or graduate-level course of study that is required for them to become Certified Public Accountants ("CPAs"). Forty percent also have a Master's degree in accounting, finance, or business administration.

Since at least 1940, the Department of Labor ("DOL") has considered Accounting to be a learned profession, and has recognized that the entry-level accountants working in major accounting firms (that is, Audit Associates) are required to have advanced, specialized knowledge in their field. In 1940, the DOL described the accountancy profession this way:

> Twenty or 25 years ago it was the normal practice for accounting firms to hire young men with a general academic education and to train them through what might be described as an apprenticeship system. Today, with the development of uniform standards for the certificate of C.P.A., it is no longer practical for accounting firms to hire persons with a more general education. <u>With few exceptions, it is now required that the entrants into accounting firms be persons with a thorough training in the principles and practices of accountancy as given in some recognized institution of learning.</u>

1

"Executive, Administrative, Professional ... Outside Salesmen" Redefined, Wage and Hour

Division, U.S. DOL, Report and Recommendations of the Presiding Officer (Harold Stein) at

Hearings Preliminary to Redefinition (Oct. 24, 1940) ("Stein Report") at 35 (emphasis added).

　　　This Court correctly observed in the January 3, 2012 Order that set the stage for this

motion that "[t]he primary job function of an Audit Associate is to perform audits of KPMG's

customers' financial records." January 3, 2012 Decision And Order Granting Plaintiffs' Motion

For Conditional Certification And Court-Authorized Notice ("January 3 Order"), at 2 [Dkt. No.

129]. Audit Associates performing this primary duty readily qualify for the professional

exemption based on their education and job responsibilities, and the professional standards that

require them to use "due professional care," adopt a mental attitude of "professional skepticism,"

and exercise "professional judgment" throughout all of their audit work.

　　　To comply with quality control standards applicable to KPMG as a firm, KPMG provides

professional training to Audit Associates. Before they begin work on audit engagements, Audit

Associates must complete an initial training course, Audit Fundamentals, that introduces

KPMG's proprietary audit methodology and reinforces the importance of every audit team

member's adherence to professional standards.

　　　In addition, KPMG clearly communicates to Audit Associates their job responsibilities,

and the skills and knowledge required for their role, through various documents, all of which

reflect that Audit Associates must use advanced knowledge of GAAP and GAAS to perform

their primary duty of performing audits in accordance with professional standards. Thus, in

performing their audit responsibilities – for example, gathering audit evidence, evaluating the

competency and sufficiency of audit evidence, considering fraud, and documenting their audit

work – Audit Associates must employ knowledge of accounting principles to such extent as can

2

only be acquired through years of intense study and must comply with professional standards.

For these reasons, KPMG is entitled to summary judgment.

## PROCEDURAL BACKGROUND

In the First Amended Class Action Complaint dated April 25, 2011 ("FAC"), Plaintiffs assert two claims based on KPMG's failure to pay overtime wages to Audit Associates: (1) a claim under the FLSA, 29 U.S.C. § 201 *et seq.* (FAC ¶¶ 87-99) and (2) a claim under New York Labor Law, Article 19 § 650 *et seq.* (FAC ¶¶ 100-109). [Dkt. No.51]. They assert the FLSA claim as a collective action on behalf of themselves and all Audit Associates who elect to opt in to this action. (*Id.* ¶ 42) They assert the New York law claim on behalf of a proposed class of all New York Audit Associates under Federal Rule of Civil Procedure 23. (*Id.* ¶ 42)

In its January 3 Order, the Court granted Plaintiffs' motion for conditional certification of the FLSA claim. [Dkt. No. 129]. Plaintiffs have not moved for class certification of the New York law claim.

The Court also ordered that, following the close of expedited discovery, the parties shall file summary judgment motions on the issue of whether "*all* Audit Associates are, by virtue of either their educational attainments or job expectations" professionally exempt. [Dkt. No. 129].

## FACTUAL BACKGROUND

**I.    Overview Of KPMG's Audit Practice And Applicable Professional Audit Standards**

KPMG provides audit, tax, and advisory services to public and private clients in the U.S. (Statement Of Undisputed Material Facts ("SOF") ¶ 1) As of June 5, 2012, KPMG's Audit practice employed approximately 6,700 audit professionals providing client services in the Firm's 87 U.S. offices. (SOF ¶ 1) Approximately 2,500 of these audit professionals were in the entry-level position of Audit Associate. (SOF ¶ 1) Throughout the relevant period, KPMG paid its Audit Associates on a salary basis, at an annual rate of approximately $41,000 to $64,000.

(SOF ¶ 22)  While Audit Associates are the most junior members of audit engagement teams, their position is a career-track position, and Audit Associates have the opportunity to advance to the positions of Senior Associate, Manager, Senior Manager, and Partner.  (SOF ¶ 5)

Public and private companies prepare financial statements in accordance with GAAP, the authoritative accounting principles established by the Financial Accounting Standards Board. (SOF ¶ 2(a))  Independent auditors such as KPMG express opinions, based on audits conducted in conformity with applicable professional standards, on whether the financial statements are presented, in all material respects, in conformity with GAAP.  (SOF ¶ 2(a); *see also* SOF ¶ 2(b))

For private companies, the applicable auditing standards are GAAS.  The Auditing Standards Board (the "ASB"), the senior technical body of the American Institute of Certified Public Accountants (the "AICPA"), promulgates Statements on Auditing Standards ("SASs") which are codified in GAAS as "AU" sections.  For public companies, the applicable auditing standards are the standards of the Public Company Accounting Oversight Board (the "PCAOB"). The PCAOB promulgates Auditing Standards, cited as "AS" sections.  The PCAOB adopted GAAS as of April 16, 2003, codifying AU sections, with various additions and modifications, as AS sections applicable to public companies.  Both the ASB and the PCAOB have also adopted Quality Control Standards which outline the elements of a quality control system that an auditing firm, such as KPMG must have in place to provide reasonable assurance that its audits are performed in accordance with auditing standards applicable to particular financial statement audits.  The PCAOB adopted certain of the ASB's existing Quality Control Standards as of April 16, 2003, codifying them with additions and modifications as "QC" sections.  GAAS and PCAOB standards are the professional audit standards (the "professional audit standards"). (SOF ¶ 7)

4

The United States Supreme Court has recognized that the independence and professionalism of auditors – assured through the professional audit standards – is critical to the fulfillment of the important role they play in the nation's financial markets:

> The SEC requires the filing of audited financial statements in order to obviate the fear of loss from reliance on inaccurate information, thereby encouraging public investment in the nation's industries. It is therefore not enough that financial statements be accurate; the public must also perceive them as being accurate. Public faith in the reliability of a corporation's financial statements depends upon the public perception of the outside auditor as an independent professional.

*United States v. Arthur Young & Co.*, 465 U.S. 805, 819 n.15 (1984).

Audits are conducted by engagement teams consisting of several professionals. (SOF ¶ 4) A typical engagement team consists of one or more Partners, one or more Senior Managers or Managers, one or more Senior Associates, and one or more Audit Associates. (SOF ¶ 4) The professional auditing standards apply to every member of the team, including Audit Associates, whether licensed or unlicensed, and any team member may be subject to discipline for failure to comply.[1] (SOF ¶¶ 16-17)

### A.   General Audit Standards

The most basic professional standards are set forth in ten broad statements: three general standards, three standards of field work, and four standards of reporting. (SOF ¶ 8) The three general standards, applicable to all engagement team members, are as follows:

1.   The audit is to be performed by a person or persons having adequate technical training and proficiency as an auditor.

---

[1] *See* AS No. 10 (engagement partner and "engagement team members who assist" must comply with standards); AS No. 9, ¶ 4 n.2 (same); AU 230.02 ("[d]ue professional care imposes a responsibility upon each professional within an independent auditor's organization"); AU 311.04 ("auditor with final responsibility" and "assistants" must comply with standards); PCAOB Rule 1001(p)(i) & Rule 3100 (firm and associated persons must comply with standards); QC 20.03 & n.4 (firm is responsible for ensuring that all personnel, defined to including "all individuals who perform professional services for which the firm is responsible, whether or not they are CPAs," comply with standards).

2.  In all matters relating to the assignment, an independence in mental attitude is to be maintained by the auditor or auditors.

3.  Due professional care is to be exercised in the performance of the audit and the preparation of the report.

(SOF ¶ 9) (AU 150.02)  By their express terms, these standards are "general" and apply to all aspects of an audit. (SOF ¶ 10)  They require all members of an audit engagement team to adopt an "independent mental attitude" and to "maintain" that attitude throughout "all matters" relating to the engagement, and they require them to employ "due professional care" in the performance of all of their activities on the audit. (SOF ¶ 10) (AU 150.02)

AU Section 230 elaborates on the meaning of "due professional care" – the third general audit standard – explaining that "[d]ue professional care imposes a responsibility upon each professional within an independent auditor's organization to observe the standards of field work and reporting." (SOF ¶ 11) (AU 230.02)  "Due professional care requires the auditor to exercise *professional skepticism*," which is "an attitude that includes a questioning mind and a critical assessment of audit evidence." (SOF ¶ 11) (AU 230.07)

Significantly, auditors must employ due professional care and professional skepticism in all their activities throughout the audit:

> Gathering and objectively evaluating audit evidence requires the auditor to consider the competency and sufficiency of the evidence. Since evidence is gathered and evaluated throughout the audit, professional skepticism should be exercised throughout the audit process.

(SOF ¶ 12) (AU 230.08)

## B.  Standards Of Fieldwork

In addition to the three general audit standards that apply to all aspects of the audit, there are three standards of fieldwork which apply to auditors' work in the field. (SOF ¶ 13)  These standards require all members of an audit engagement team to exercise judgment. The third

6

standard of fieldwork, for example, is as follows:

> Sufficient competent evidential matter is to be obtained through inspection, observation, inquiries, and confirmations to afford a reasonable basis for an opinion regarding the financial statements under audit.

(SOF ¶ 13) (AU 150.02)[2]

### C.   Standards Regarding Fraud

The professional audit standards stress the importance of auditors exercising due professional care including professional skepticism in considering the potential for fraud by management.  (SOF ¶ 14) (AU Section 316 (codifying SAS No. 99 and SAS No. 113))  AU Section 316 reiterates that "[d]ue professional care requires the auditor to exercise professional skepticism," which "is an attitude that includes a questioning mind and a critical assessment of audit evidence" and "requires an ongoing questioning of whether the information and evidence obtained suggests that a material misstatement due to fraud has occurred."  (SOF ¶ 14) (AU 316.13)  In this context, auditors again must exercise professional skepticism "in gathering and evaluating evidence" and "should not be satisfied with less-than-persuasive evidence because of a belief that management is honest."  (SOF ¶ 14) (AU 316.13)

### D.   Standards Governing Documentation

The professional audit standards governing documentation also require auditors to exercise judgment.  AU Section 339, which "establish[es] standards and provide[s] guidance on audit documentation," states that "[t]he exercise of professional judgment is integral in applying the provisions of this section" as "professional judgment is used in determining the quantity, type, and content of audit documentation."  (SOF ¶ 15) (AU 339.01)

---

[2] The above formulation was effective from 2001 to 2010.  The PCAOB modified the language slightly ("competent" changed to "appropriate") for public company audits of fiscal years beginning on or after December 15, 2010.  (SOF ¶ 13)

## II.     KPMG's Recruiting And Hiring Of Audit Associates

To comply with quality control standards applicable to the firm, KPMG recruits and hires
Audit Associates who possess specialized knowledge required to comply with the applicable
professional standards, including the requirement that every audit team member possess
technical proficiency in accounting and the ability to exercise professional judgment and due
care in their work. (SOF ¶¶ 24-25)  KPMG focuses its recruiting efforts on accounting programs
at schools accredited by the Association to Advance Collegiate Schools of Business ("AACSB")
in accounting. (SOF ¶¶ 26-27)

The vast majority of KPMG's Audit Associates have at least a Bachelor's degree in
accounting, finance or business management/administration and those who have graduated with
a degree in another subject have nonetheless completed a "concentration" in Accounting so that
they are "CPA eligible." (SOF ¶ 28)  KPMG occasionally hires Audit Associates who are not
CPA eligible, but this is usually in situations where the recruit has satisfied nearly all of the
educational requirements to be CPA eligible, and there is a specific plan to become CPA eligible
in short order. (SOF ¶ 31)  Approximately forty percent of incoming Audit Associates have a
Master's degree in accounting, finance, or business in addition to their undergraduate degrees.
(SOF ¶ 32)

Thus, KPMG recruits individuals who have completed a course of study at a college or
university that is necessary for them to become licensed as CPAs in their home states. (SOF ¶
28)  While the educational requirements for CPA licensure vary from state to state, nearly all
states require a Bachelor's degree with an accounting concentration or the equivalent, with at
least 150 semester hours of college-level education.  In addition, while the details vary across the

states,[3] most require at least 24 semester hours of courses in accounting and at least 24 semester hours of additional courses in business, which is what the Uniform Accountancy Act Model Rules, issued by the National Association of State Boards of Accountancy, require.[4]  (SOF ¶ 29)

### III.    KPMG's Training Of Audit Associates

As a firm, KPMG must maintain quality controls to provide reasonable assurance that its personnel, including Audit Associates, comply with professional audit standards.  The PCAOB has adopted the AICPA's Auditing Standards Board's Statements on Quality Control Standards, which provide that a firm must "ensure that its personnel comply with the professional standards applicable to its accounting and audit practice" and state that a "system of quality control is broadly defined as a process to provide the firm with reasonable assurance that its personnel comply with applicable professional standards and the firm's standards of quality." (QC 20.03)

KPMG provides formal training to its Audit professionals through continuing professional education ("CPE") courses on a wide variety of general and specialized audit and accounting topics, beginning at the start of their employment and continuing throughout their professional development at the Firm.  (SOF ¶ 37)  KPMG's training introduces Audit

---

[3] For example, New York requires 33 semester hours of accounting courses and 36 semester hours of general business courses, Texas requires 30 semester hours of upper level accounting courses and 24 semester hours of upper level general business courses, and Florida requires 36 semester hours in upper division accounting courses and 39 semester hours in general business courses.  (SOF ¶ 30)

[4]  Under the Model Rules, qualifying accounting courses include Financial Accounting and Reporting for Business Organizations, Financial Accounting and Reporting for Government and Not-for-Profit Entities, Auditing and Attestation Services,  Managerial or Cost Accounting, Taxation,  Fraud Examination, Internal Controls and Risk Assessment,  Financial Statement Analysis, Accounting Research and Analysis, Tax Research and Analysis, Accounting Information Systems and Ethics.  Qualifying business courses include Business law, Economics, Management, Marketing, Finance, Business communications, Statistics, Quantitative methods, Information systems or technology, and Ethics (business course).  *See* UNIFORM ACCOUNTANCY ACT MODEL RULES, R. 5-2(d)(2) and (d)(4) (Nat'l Ass'n of State Bds. of Accountancy July 29, 2011), http://www.aicpa.org/advocacy/state/downloadabledocuments/uaamodelrules2011.pdf.

9

Associates to KPMG's proprietary audit methodology and assists them in complying with professional standards in the performance of audit work and the CPE requirements for client service professionals (including both CPAs and non-CPAs) mandated by the PCAOB, the AICPA and the National Association of State Boards of Accountancy.  (SOF ¶ 38)

Specifically, KPMG requires Audit Associates, upon their arrival at the firm, to attend "Audit Fundamentals," a week-long, in-person course.  (SOF ¶ 39)  The Audit Fundamentals course and associated web-based programs are designed to introduce new Audit Associates to KPMG's audit methodology and to facilitate their application of the advanced knowledge they already possess in a series of audit simulations of real-life situations they are likely to encounter in the field performing audit procedures during their first year at KPMG.  (SOF ¶ 39(a))  For example, in 2009, the Audit Fundamentals course provided guidance regarding the application of KPMG audit methodology to a variety of audit procedures that Audit Associates may be asked to perform on audit engagements during their first-year at KPMG, including, *inter alia*: ███████

███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
█████████████████████████████████
██████████████████████████



(SOF ¶ 39(b))

KPMG's training is not a substitute for the advanced knowledge that Audit Associates are expected to have obtained through their college or graduate school coursework.  (SOF ¶ 40) KPMG's training is designed with the expectation that Audit Associates already possess an advanced knowledge of accounting so that they will be able to understand Audit Fundamentals and apply their advanced knowledge immediately.  (SOF ¶ 41)  Without the advanced knowledge gained through their college and graduate level studies, KPMG's Audit Associates would not be able to understand the content of KPMG's training courses or to perform their work effectively.  (SOF ¶ 42)

For example, █████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████████████████████

11



(SOF ¶ 42(a))  Without the advanced knowledge gained through their college or graduate level

studies, Audit Associates would not be able to understand the ███████ and other accounting

concepts discussed in Audit Fundamentals, let alone to perform audit procedures in the field, in

compliance with professional standards.  (SOF ¶ 42(b))

    The training provided in Audit Fundamentals also repeatedly emphasizes Audit

Associates' obligation to comply with professional standards, including their personal

responsibility to use due professional care, to adopt and maintain a mindset of professional

skepticism, and to employ sound professional judgment in their work, throughout every phase of

every audit.  (SOF ¶ 43)  For example, KPMG reiterates that such obligations, including the duty

to employ professional skepticism, are "always" in effect and apply to all aspects of the work

Audit Associates perform on audits.  Specifically, KPMG tells Audit Associates that they:



2465262v.7



(SOF ¶ 44)

KPMG also provides instruction on Audit Associates' obligations under SAS 99,

including to employ "professional skepticism." 

(SOF ¶ 44)

KPMG also instructs that professional standards require that Audit Associates maintain

their own level of skepticism and, therefore, that they may not rely on senior auditors.

Specifically, 

(SOF ¶ 45)

(SOF ¶ 45)

KPMG's training also emphasizes the importance of exercising sound professional

judgment in Audit Associates' performance of audit procedures.  (SOF ¶ 46)  Specifically,

13

██████████████████████████████████████████

██████████████████████████████████████████

(SOF ¶ 46; *see also* SOF ¶¶ 47-48)

## IV.    The Role Of Audit Associates

Audit Associates' primary job responsibility is to perform audits of KPMG's clients' financial records.  (SOF ¶ 49)  In performing this role, they function as integral members of engagement teams performing audit work that enables the firm to issue an audit report expressing an opinion about whether the client's financial statements are presented, in all material respects, in conformity with GAAP.  (SOF ¶ 50)  Audit Associates are responsible for performing front-line audit fieldwork on site at the client.  At times, they may be the only member of the engagement team present, for example when conducting inventory observations or interviewing client employees.  (SOF ¶ 51)

While their specific responsibilities vary depending on the circumstances of the audit or the engagement, Audit Associates are required to perform all of their work in accordance with professional standards.  (SOF ¶ 52)  Not surprisingly, a key qualification that KPMG requires for its Audit Associates is a "strong understanding of US GAAP, US GAAS and preferably PCAOB auditing standards."  (SOF ¶ 52; *see also* SOF ¶ 20)  This key qualification, which Plaintiffs cannot dispute, requires the advanced knowledge that KPMG's hiring criteria are designed to assure that all Audit Associates possess.  (SOF ¶¶ 34-35)

KPMG clearly communicates to its Audit Associates in various documents additional details regarding the responsibilities that are included in their primary duty of performing audit work in accordance with professional standards.  (SOF ¶¶ 53-59)  These include Skills, Assessment and Development – Audit documents, Job Level Descriptions (also referred to as Role Descriptions), and Role Summaries, which demonstrate that Audit Associates'

14

responsibilities include:

**Professional Skepticism.** Audit Associates exercise professional skepticism, including to "maintain an objective state of mind" and "to challenge and probe rather than accepting client information at face value." (SOF ¶ 59(a))

**Judgment.** Audit Associates are expected to develop and apply professional judgment, including to "raise risk issues when encountered," to "generate opportunities and suggest approaches for addressing issues," to "[p]ropose solutions to issues that come up during the course of engagements," and to "make proactive and timely decisions by applying an appropriate decision making process including fact finding, consult[ing] as appropriate, formulat[ing] key questions critical to the decision making process, consider[ing] evidence that supports/contradicts all facets of the argument, and defin[ing] the impact of decision alternatives." (SOF ¶ 59(b))  In brief, Audit Associates are expected to "exercise sound judgment regarding when to refer issues outside of [their] authority to more senior staff." (SOF ¶ 59(b))

**Testing Internal Controls.** Audit Associates perform procedures to test clients' internal controls over financial reporting.  These (and many other audit procedures) include interviews of client representatives (referred to as "walkthroughs") during which Audit Associates are expected to "integrate, filter, and summarize key points," to "summarize responses and modify questions quickly when necessary," to "draw conclusions from interviews," to "note and interpret body language," to "probe on inconsistencies," and to "determine sufficiency of audit evidence." (SOF ¶ 59(c))  They also include procedures "to evaluate the design and implementation" of internal controls, and procedures "to test the operating effectiveness of controls," during which Audit Associates are expected to "form [] preliminary conclusions on operating effectiveness of controls including IT controls where appropriate." (SOF ¶ 59(c))

15

**Substantive Audit Procedures.** Audit Associates also perform substantive audit procedures, which include substantive analytical procedures and tests of details. In performing substantive analytical procedures, Audit Associates are expected to "investigate/analyze relationships"; to "describe not just what happened but why"; to "[i]dentify key factors, key relationships and other considerations that drive the business"; to "[d]etermine precision based on assessment of RoSM [the risk of significant misstatement] and set acceptable difference"; to "[s]et and corroborate expectations"; and to "[c]ompare actual amounts to our expectations and evaluate results." (SOF ¶ 59(d)) In performing tests of details, Audit Associates are expected to "[k]now how to determine appropriate audit sampling technique" and to "[d]etermine if audit evidence is sufficient and appropriate for tests performed." (SOF ¶ 59(d))

**Preparation Of Audit Work Papers.** Based on their knowledge of "what constitutes sufficient appropriate documentation," Audit Associates prepare audit work papers that comply with such documentation requirements, during which Audit Associates "writ[e] conclusions that clearly state the results of work performed and conclusions reached," "perform quality review of [their] own work," and "perform quality review of junior associates and interns." (SOF ¶ 59(e))

**Research And Consultation.** Audit Associates also are expected to perform research and consultation, including to "identify accounting or auditing issues relevant to assigned audit tasks that may require independent research," to "use [KPMG] technology tools ... to identify information relevant to audit tasks," to "communicate authoritative literature clearly and accurately," and to "appropriately document the issues and their conclusions and consult with appropriate partners and professionals as necessary." (SOF ¶ 59(f))

KPMG also identifies responsibilities that Audit Associates are expected to assume as part of their primary duty to perform audit procedures in accordance with professional standards

in the training modules contained in Audit Fundamentals.  (SOF ¶¶ 60, 60(a)-(f))  For example,



(SOF ¶ 60(f))

Moreover, throughout the engagement, and regardless of the areas in which they may be performing audit procedures, Audit Associates are expected to use their knowledge of accounting and of the client's business to keep an eye out for any unusual transactions or other circumstances that might suggest that further investigation is appropriate or that consideration should be given to modifying the nature, timing, or extent of planned audit procedures based on information that they obtain.  (SOF ¶ 64)

## ARGUMENT

**I.      The Summary Judgment Standard**

Summary judgment is granted where there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Summary judgment is "not … a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted).  The moving party bears the initial burden of proving entitlement to judgment, after which the burden shifts.  *Id.* at 323.  The opposing party "may not rest upon mere allegation or denials in his pleading, but

2465262v 7

must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Only "disputes over facts that might affect the outcome" are relevant; "disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

Courts have granted summary judgment to employers who establish the exempt status of employees. *See, e.g., De Jesus-Rentas v. Baxter Pharmacy Servs. Corp.*, 400 F.3d 72 (1st Cir. 2005) (affirming summary judgment for employer because compound pharmacists met "professional" exemption); *Darveau v. Detecon, Inc.*, 515 F.3d 334 (4th Cir. 2008) (affirming summary judgment for employer because sales director met "administrative" exemption); *Piscione v Ernst & Young, LLP*, 171 F.3d 527 (7th Cir. 1999) (affirming summary judgment for accounting firm because human resources consultant met "professional" and "administrative" exemptions); *Clarke v. JPMorgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 33264 (S.D.N.Y. Mar. 26, 2010) (McMahon, J.) (granting summary judgment for employer because employee met "computer employee" exemption); *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 575 (S.D.N.Y. 2004) (McMahon, J.) (granting summary judgment for employer where accountant met requirements of "professional" exemption). This Court should do likewise here.

## II.   KPMG Audit Associates Are Professionals

### A.   The Requirements Of The Professional Exemption

The FLSA exempts from minimum wage and overtime provisions bona fide professional employees who, in addition to meeting the FLSA's salary level and salary basis tests,[5] have a primary duty of performing work "[r]equiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.300(a)(2)(i); 29 U.S.C. § 213(a)(1). This exemption, like the

---

[5] KPMG pays its Audit Associates on a salary basis in excess of the regulatory minimum of $455 per week.  (SOF ¶ 23)

18

exemptions for other categories of white-collar employees set forth in 29 U.S.C. § 213(a)(1), is "premised on the belief that the workers exempted typically earned salaries well above the minimum wage, and they were presumed to enjoy other compensatory privileges such as above average fringe benefits and better opportunities for advancement, setting them apart from the nonexempt workers entitled to overtime pay." Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, the Preamble to the 2004 Final Rule, 69 Fed. Reg. 22122, 22124 (April 23, 2004) ("Preamble").

In applying the learned professional exemption, the regulations specify that:

This primary duty test includes three elements:

(1) The employee must perform work requiring advanced knowledge;

(2) The advanced knowledge must be in a field of science or learning; and

(3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § 541.301(a). As this Court has noted, "[t]he term 'primary duty' means the employee's 'principal, main, major or most important duty,'" and "[i]n determining an employee's primary duty, courts look to 'all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.'" *Clarke*, 2010 U.S. Dist. LEXIS 33264, at *44 (citations and footnote omitted).

The undisputed facts establish that Audit Associates are professionally exempt. Based on their advanced knowledge gained through college or graduate level studies, Audit Associates are required, as their most important duty, to perform audit procedures in accordance with the rigorous professional standards. Thus, they qualify as learned professionals within the meaning of the FLSA. Moreover, harkening back to the FLSA's animating principles, their opportunities for advancement at KPMG set them far apart from the nonexempt workers entitled to overtime.

**B.      Accounting Is A Learned Profession**

Plaintiffs cannot dispute that Accounting has been recognized as a "field of science or

learning" under the FLSA for over 60 years. *See* Stein Report at 35. The FLSA regulations

expressly provide that, "[t]he phrase 'field of science or learning' includes the traditional

professions of law, medicine, theology, **accounting** ... and other similar occupations that have a

recognized professional status ...." 29 C.F.R. § 541.301(c) (emphasis added). The regulations

also state that "[c]ertified public accountants generally meet the duties requirements for the

learned professional exemption," and that "many other accountants who are not certified public

accountants but perform similar job duties may qualify as exempt learned professionals." 29

C.F.R. § 541.301(e)(5). Courts have long agreed, holding that accountants who, among other

things, perform audit work are exempt professionals. *See, e.g.*, *Galasso*, 310 F. Supp. 2d at 575

(S.D.N.Y. 2004) (McMahon, J.); *Rausch v. Wolf*, 72 F. Supp. 658 (N.D. Ill. 1947).

**C.      Audit Associates Are Required To Possess Advanced Knowledge Obtained
Through A Prolonged Course Of Specialized Instruction And Study**

Without question, the knowledge required to work as a professional within the field of

accounting and auditing is "customarily acquired by a prolonged course of specialized

intellectual instruction." Under the FLSA regulations:

> The phrase "customarily acquired by a prolonged course of specialized intellectual
> instruction" restricts the exemption to professions where specialized academic training is
> a standard prerequisite for entrance into the profession. The best prima facie evidence
> that an employee meets this requirement is possession of the appropriate academic
> degree. However, the word "customarily" means that the exemption is also available to
> employees in such professional who have substantially the same knowledge level and
> perform substantially the same work as the degreed employees, but who attained the
> advanced knowledge through a combination of work experience and intellectual
> instruction.

29 C.F.R. § 541.301(d). Accounting is taught in college- and graduate-level courses across the

nation. (SOF ¶ 33) Many colleges offer a concentration in accounting, as do graduate schools.

(SOF ¶ 33)  The most common method of acquiring knowledge of accounting – the way such knowledge is "customarily acquired" – is by pursuing such a course of study to obtain a specialized degree.  *See* Stein Report at 35 (recognizing that, as long ago as 1940, most entry-level employees of public accounting firms arrived "with a thorough training in the principles and practices of accountancy as given in some recognized institution of learning.").

The vast majority of KPMG's Audit Associates have a Bachelor's degree in accounting, finance, or business management/administration, and those who have graduated with a degree in another subject have nonetheless completed a "concentration" in Accounting such that they are "CPA eligible."  (SOF ¶ 28).  Approximately 40% of KPMG's incoming Audit Associates also have a Master's degree in accounting, finance, or business.  (SOF ¶ 32)  To find these individuals, KPMG primarily recruits from colleges and universities AACSB accredited in accounting, and, with rare exceptions, KPMG hires as Audit Associates only those who are "CPA eligible," meaning that they have completed a course of study that will enable them to become licensed CPAs in their home states.  (SOF ¶¶ 26-31)  Being CPA eligible typically requires *at least* a bachelor's degree with an accounting concentration or equivalent in a course of study totaling at least 150 semester hours of college-level education—far more, in other words, than required for a general bachelor's degree alone.  (SOF ¶¶ 29-30)

Such rigorous educational requirements are well beyond what courts and the DOL have found sufficient to satisfy the specialized instruction requirement of the professional exemption in other contexts.  *See, e.g., Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 524 (5th Cir. 1999) (state licensed athletic trainers who were required to obtain a bachelor's degree in any field and complete courses in "(a) human anatomy; (b) health, disease, nutrition, fitness, wellness, or drug and alcohol education; (c) kinesiology; (d) human physiology or physiology of

21

exercise; and (e) athletic training" qualify for the learned professional exemption); *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000) (licensed funeral home directors who are not required to obtain a college degree but are required to complete a year of mortuary instruction and two years of college including classes in chemistry and psychology qualify for the learned professional exemption); *Reich v. Wyoming*, 993 F.2d 739 (10th Cir. 1993) (game wardens who must obtain a bachelor's degree in wildlife management, wildlife biology, or a related field and obtain basic law enforcement training qualify for the learned professional exemption); Preamble, 69 Fed. Reg. at 22152 (rejecting determination that instructors with "college degrees in electrical engineering, mathematics or physics" who trained Space Shuttle ground control personnel were not exempt).

A solid accounting background is critical to the Audit Associate's ability to perform his or her job up to KPMG's expectations. As KPMG's job descriptions documents make clear, incoming Audit Associates are expected to have an "[u]nderstanding and knowledge of testing both the design and effectiveness of internal controls," and a "[s]trong understanding of the US GAAP, US GAAS, and preferably, PCAOB auditing standards." (SOF ¶¶ 52-59; *see also* SOF ¶¶ 20, 34-35) That is not possible without the "prolonged course of specialized instruction" that KPMG requires.

Plaintiffs have suggested that advanced knowledge of accounting is not required, and that anyone – with or without a college degree – can take Audit Fundamentals and effectively perform the work of an Audit Associate. Plaintiffs are wrong, and their theory would wholly invalidate Accounting as a learned profession. KPMG's training presumes and presupposes that Audit Associates already have the specialized background and advanced knowledge of accounting that KPMG requires. (SOF ¶¶ 40-41) In Audit Fundamentals, KPMG spends

22

minutes, or at most a few hours, reviewing audit procedures relating to accounting issues that students spend weeks or entire courses learning in school. (SOF ¶¶ 42, 42(a)-(b)). The knowledge of accounting gained in college or graduate school provides the essential conceptual foundation upon which KPMG's training is built.

### D. Audit Associates Have A Primary Duty Requiring Advanced Knowledge

The undisputed evidence also demonstrates that KPMG's Audit Associates' primary duty is to perform audit work that requires the application of advanced knowledge within the meaning of the FLSA. The FLSA regulations explain that "[t]he phrase 'work requiring advanced knowledge' means work which is predominantly intellectual in character, and which includes work requiring the consistent exercise of discretion and judgment, as distinguished from performance of routine mental, manual, mechanical or physical work." 29 C.F.R. § 541.301(b). Thus, "[a]n employee who performs work requiring advanced knowledge generally uses the advanced knowledge to analyze, interpret or make deductions from varying facts or circumstances." *Id.* This is particularly true with accounting, where the professional standards require the use of skepticism – a higher level of discretion and judgment – in all that they do.

Audit Associates perform front-line audit work in the field. They play an integral role on audit teams. While specific responsibilities will vary depending on the circumstances of the audit, Audit Associates are *all* required to perform *all* of their work in accordance with professional standards, which require that they use "due professional care," employ a mental attitude of "professional skepticism," and exercise "professional judgment" in *all* that they do. In order to perform their work and to comply with professional standards, Audit Associates must apply the advanced knowledge they acquired through the specialized undergraduate or graduate coursework that made them eligible for a CPA license.

The obligation to comply with professional standards and KPMG's audit methodology in no way precludes the exercise of discretion and judgment. "[T]he final rule recognizes that some learned professionals in the modern workplace are required to comply with national or international standards or guidelines. Certified Public Accountants have not under current law, and will not under the final rule, lose the learned professional exemption because they follow the Generally Accepted Accounting Principles (GAAP)." Preamble, 69 Fed. Reg. at 22152; *see also, e.g., Schaefer-LaRose v. Eli Lilly & Co.*, ___ F.3d. ____, 2012 WL 1592552, at *16 (7th Cir. May 8, 2012) (holding pharmaceutical representatives "were required to exercise a significant measure of discretion and independent judgment, despite the constraints placed on them, and indeed on all representatives of the pharmaceutical industry, by the regulatory environment in which they must live"); *Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d Cir. 1982) (finding a corporation's issuance of detailed guidelines to employees does not prevent the exercise of discretion and judgment, where corporate success is as dependent upon discretion "as adherence to 'the book'" and also finding that although employees spent "'at least half their time'" on non-exempt work, their managerial tasks were "most important or critical").

That Audit Associates are encouraged to consult, as needed, with more senior auditors does not preclude Audit Associates from exercising discretion and judgment. As discussed above, the professional standards require Audit Associates to act with due professional care and professional skepticism in everything they do, and furthermore do not permit them to subordinate their judgment to other firm personnel involved in an audit. *See* AS No. 10 ("In applying due professional care in accordance with AU sec. 230, each engagement team member has a responsibility to bring to the attention of appropriate persons, disagreements or concerns the engagement team member might have with respect to accounting and auditing issues that he or

24

she believes are of significance to the financial statements or the auditor's report regardless of how those disagreements or concerns may have arisen."); AU 311.14 (all members of the engagement team "should be aware of the procedures to be followed when differences of opinion concerning accounting and auditing issues exist among firm personnel involved in the audit."). Consulting with others is in no way inconsistent with these requirements. *See also Piscione*, 171 F.3d at 536 ("[M]any individuals who exercise discretion and independent judgment often do so after consultation with others. Consultation implies an exchange of views or a request for advice; it does not mean an abdication of an individual's own discretion or independent judgment.").

Finally, it also does not matter if some portion of what Audit Associates do is routine. "[N]othing in [the FLSA regulations] requires that exempt employees spend more than 50 percent of their time performing exempt work." 29 C.F.R. § 541.700(b). What matters is whether "the principal, main, major, or most important duty that the employee performs" is exempt. *Id.* at § 541.700(a). *See Piscione*, 171 F.3d at 543-45 (declaring that "[e]ven if an employee's responsibilities require her to engage in some routine work, the position may be classified as coming within the professional exemption. For example, an employee may be required to collect information, but would still be within the professional exemption if he had to interpret that data as well" and holding that consultant fell within professional exemption where his "responsibilities, similarly, required both routine and complex tasks") (*citing Reich v. Wyoming*, 993 F.2d 739, 742 (10th Cir. 1993)).

There is no avoiding the conclusion that Audit Associates have as their primary duty exempt, professional work.

## CONCLUSION

For all of the foregoing reasons, Defendant KPMG respectfully requests that the Court grant its motion for summary judgment.

25

2465262v.7

Dated:  New York, New York
June 8, 2012

SIDLEY AUSTIN LLP

By:   /s/ Jennifer Altfeld Landau
      Michael C. Kelley (pro hac vice)
      Jennifer Altfeld Landau (pro hac vice)
      555 West Fifth Street, Suite 4000
      Los Angeles, California 90013
      Tel: (213) 896-6000
      Fax: (213) 896-6600
      Email: mkelley@sidley.com
      Email: jlandau@sidley.com

      Colleen M. Kenney (pro hac vice)
      One South Dearborn Street
      Chicago, Illinois 60603
      Tel: (312) 853-7000
      Fax: (312) 853-7036
      Email: ckenney@sidley.com

      Gregory G. Ballard
      787 Seventh Avenue
      New York, New York 10022
      Tel.: (212) 839-5300
      Fax: (212) 839-5599
      Email: gballard@sidley.com
      *Attorneys for Defendant KPMG LLP*

26

2465262v 7