*REDACTED VERSION*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
KYLE PIPPINS, JAMIE SCHINDLER, and EDWARD    :
LAMBERT, Individually and On Behalf of All Others    :   11 CV 0377 (CM) (JLC)
Similarly Situated,    :
                Plaintiffs,    :
        -against-    :
:
KPMG LLP,    :
              Defendant.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## MEMORANDUM OF LAW OF KPMG LLP IN
## OPPOSITION TO PLAINTIFFS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT


SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10022
Tel.: (212) 839-5300
Fax: (212) 839-5599

*Attorneys for Defendant KPMG LLP*

LA1 2486270

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS .................................................................................2

    A.     Hiring Criteria For Associates Assure That They Have Advanced
         Knowledge ...............................................................................3

    B.     Professional Standards Require Associates To Exercise Judgment ........................5

    C.     First Year Associate Work Is Not "On The Job" Training .....................................7

    D.     KPMG's Formal Training Treats Associates As Professionals Who
         Already Possess Advanced Knowledge ....................................................8

    E.     Working With More Experienced Professionals Does Not Make
         Associates' Work Non-Exempt ............................................................9

    F.     Associates Participate In Audit Planning ..................................................10

    G.     Inventory Observations And Walkthroughs Constitute Exempt
         Work .....................................................................................11

    H.     KPMG's Historical Compensation Policies Are Irrelevant ...................................13

ARGUMENT ..............................................................................................13

    A.     Plaintiffs Are Not Entitled To A Summary Judgment That All
         First-Year Audit Associates Are Non-Exempt ............................................13

        1.     Associates Have A Primary Duty Requiring Advanced
             Knowledge .............................................................................14

            a.     Associates' Required Knowledge Is Advanced, Not
                Basic Or Foundational ...........................................................15

            b.     Associates' Primary Duty Includes The
                 Performance Of Work That Is Predominantly
                 Intellectual And Involves The Consistent Exercise
                 Of Discretion And Judgment ....................................................17

        2.     Associates Are Required To Possess Advanced Knowledge
             Obtained Through A Prolonged Course Of Specialized
             Intellectual Instruction ..............................................................20

          3.     Plaintiffs' Misleading Attempt To Compare Associates'
Work To Managers' Work Should Be Rejected ........................................22

    B.    Plaintiffs' Motion For Summary Judgment As To The
Administrative Exemption Must Be Denied .........................................................24

    C.    Plaintiffs Are Not Entitled To Summary Judgment On The Good
Faith Defense ....................................................................................................29

    D.    Plaintiffs Have Failed To Provide Any Evidence That On A
Position-Wide Basis, Associates Did Not Perform Their Primary
Duty As Defined By The Professional Standards And KPMG, And
Their Individual Anecdotal Evidence Should Be Rejected ...................................32

CONCLUSION.............................................................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bohn v. Park City Group, Inc.,*
   94 F.3d 1457 (10th Cir. 1996) ...............................................................................................14

*Bollinger v. Residential Capital, LLC,*
   No. C10-01123, 2012 U.S. Dist. LEXIS 74807 (W.D. Wash. May 30, 2012)........................27

*Bond v. City of Jackson,*
   727 F. Supp. 1516 (S.D. Miss. 1989) rev'd on other grounds, 939 F.2d 285
   (5th Cir. 1991) .....................................................................................................................31

*Bratt v. County of Los Angeles,*
   912 F.2d 1066 (9th Cir. 1990) ...............................................................................................31

*Brock v. National Health Corp.,*
   667 F. Supp. 557 (M.D. Tenn. 1987)................................................................................18, 19

*Brock v. Wilamowsky,*
   833 F.2d 11 (2d Cir. 1987) ....................................................................................................30

*Christopher v. SmithKline Beecham Corp.,*
   No. 11-204, __ U.S. __, 2012 WL 2196779 (June 18, 2012) .....................................14, 17, 18

*Clarke v. JP Morgan Chase Bank, N.A.,*
   No. 08 Civ. 2400, 2010 U.S. Dist. LEXIS 33264 (S.D.N.Y. Mar. 26, 2010) .........................14

*Conary v. A.O.G. Corp.,*
   20 Lab. Cas. (CCH) ..............................................................................................................25

*Counts v. South Carolina Electric & Gas Co.,*
   317 F.3d 453 (4th Cir. 2003) ................................................................................................15

*Dalheim v. KDFW-TV,*
   918 F.2d 1220 (5th Cir. 1990) ...............................................................................................15

*Davis v. J.P. Morgan Chase & Co.,*
   587 F.3d 529 (2d Cir. 2009) ......................................................................................26, 28, 29

*Hashop v. Rockwell Space Operations Co.,*
   867 F. Supp. 1287 (S.D. Tex. 1994) .....................................................................................19

*Howard v. Port Authority of New York, New Jersey,*
   684 F. Supp. 2d 409 (S.D.N.Y. 2010) ..............................................................................29, 31

iii

*Lemmon v. Ayres,*
    No. 3:09-cv-361, 2012 U.S. Dist. LEXIS 35578 (S.D. Ohio Mar. 16, 2012) ........................25

*Mitchell v. Baggett Transp. Co.,*
    27 Lab. Cas. (CCH) ...............................................................................................................25

*Owsley v. San Antonio Indep. Sch. Dist.,*
    187 F.3d 521 (5th Cir. 1999) ................................................................................................21

*Piscione v. Ernst & Young, LLP,*
    171 F.3d 527 (7th Cir. 1999) ................................................................................................18

*Quirk v. Baltimore County,*
    895 F. Supp. 773 (D. Md. 1995) ..........................................................................................31

*Rainey v. McWane Inc.,*
    No. 08-40335, 2009 WL 631610 (5th Cir. Mar. 12, 2009) ...................................................14

*Reich v. Wyo.,*
    993 F.2d 739 (10th Cir. 1993) ........................................................................................15, 21

*Roe-Midgett v. CC Servs. Inc.,*
    512 F.3d 865 (7th Cir. 2008) ................................................................................................27

*Rutlin v. Prime Succession, Inc.,*
    220 F.3d 737 (6th Cir. 2000) ................................................................................................21

*Shaw v. Prentice Hall Computer Publ'g, Inc.,*
    151 F.3d 640 (7th Cir. 1998) ................................................................................................27

*Solis v. Washington,*
    656 F.3d 1079 (9th Cir. 2011) ..............................................................................................21

*Wirtz v. J.D. Jewell, Inc.,*
    No. 1199, 1969 U.S. Dist. LEXIS 9565 (N.D. Ga. Jan. 16, 1969) ........................................25

*Zalewski v. PNC Fin. Servs. Group, Inc.,*
    No. 06-1231, 2007 U.S. Dist. LEXIS 98310 (W.D. Pa. Nov. 16, 2007) ...............................25

**STATUTES**

15 U.S.C. § 77aa ........................................................................................................................26

15 U.S.C. § 78l ...........................................................................................................................26

15 U.S.C. § 78m .........................................................................................................................26

15 U.S.C. § 80a-8 .......................................................................................................................26

LA1 2486270

15 U.S.C. § 80a-29 ......................................................................................................26

15 U.S.C. § 7262 ..........................................................................................................26

29 U.S.C. § 213(a)(1) ...........................................................................................13, 17

29 C.F.R. § 541.200(a)(2) ....................................................................................24, 26

29 C.F.R. §§ 541.200(a)(3) .........................................................................................24

29 C.F.R. § 541.201(a) ................................................................................................27

29 C.F.R. § 541.201(b) ................................................................................................25

29 C.F.R. § 541.201(c) ................................................................................................27

29 C.F.R. § 541.202 .....................................................................................................24

29 C.F.R. § 541.203(b) ................................................................................................28

29 C.F.R. § 541.205 .....................................................................................................28

29 C.F.R. § 541.301(a) ................................................................................................14

29 U.S.C. § 541.301 .....................................................................................................20

29 C.F.R. § 541.301(d) .........................................................................................16, 20

29 C.F.R. § 541.301(e)(5) .............................................................................16, 20, 23

29 C.F.R. § 541.700(a) ................................................................................................17

**RULES AND OTHER AUTHORITIES**

Defining and Delimiting the Exemptions for Executive, Administrative, Professional,
  Outside Sales and Computer Employees, the Preamble to the 2004 Final Rule, 69
  Fed. Reg. 22122 (April 23, 2004) ...............................................................passim

DOL Op. Ltr. FLSA2002-5 (Aug. 6, 2002),
  available at
  http://www.dol.gov/whd/opinion/FLSA/2002/2002_08_06_5_FLSA.pdf............................27

Merriam-Webster Online Dictionary,
  available at http://www.merriam-webster.com/dictionary/similar ...........................23

Oxford Online Dictionary,
  available at http://oxforddictionaries.com/definition/similar?region=us..................23

LA1 2486270

UNIFORM ACCOUNTANCY ACT MODEL RULES R. 5-2
   (Nat'l Ass'n of State Bds. of Accountancy July 29, 2011),
   http://www.aicpa.org/advocacy/state/downloadabledocuments/uaamodelrules2
   011.pdf ....................................................................................................................................16

LA1 2486270

KPMG LLP ("KPMG") submits this memorandum in opposition to Plaintiffs' motion for partial summary judgment on their Fair Labor Standards Act ("FLSA") claim.

## PRELIMINARY STATEMENT

Plaintiffs have moved for partial summary judgment that (1) all KPMG Audit Associates ("Associates") who are in their first year do not qualify for the "professional" exemption; (2) all Associates do not qualify for the "administrative" exemption; and (3) KPMG did not act in "good faith" in classifying them as exempt. As demonstrated below, Plaintiffs' motion must be denied in its entirety for a number of reasons.

The primary conclusion Plaintiffs ask the Court to endorse is that no first year Associates qualify as exempt professionals under the FLSA. This result would be unprecedented. Plaintiffs' position is founded upon extreme contentions that derogate the value of an accounting education, deny the relevance of critical aspects of the professional standards that govern audit work performed by all professionals, and ultimately would require the Court to disregard the longstanding status of accounting as one of the learned professions.

Plaintiffs are exempt professional employees. KPMG's motion for summary judgment [ECF Dkt. Nos. 264-269] demonstrated that the primary duty of all Associates – including those in their first year – is the performance of audit work for KPMG's clients. In performing this duty, Associates readily qualify for the professional exemption based on their education, training, job responsibilities, and the professional standards that require them to exercise "due professional care," "professional skepticism," and "professional judgment." From day one as KPMG auditors, Associates must understand Generally Accepted Accounting Principles ("GAAP") and Generally Accepted Auditing Standards ("GAAS"). For this reason, KPMG hires candidates who have completed a college or graduate-level course of study that is a prerequisite to becoming Certified Public Accountants ("CPAs"). The advanced knowledge of accounting

1

provided by this course of study is the foundation for KPMG's initial training (Audit Fundamentals), which is designed to enable Associates to immediately participate on audit engagements and do work that complies with professional standards and KPMG's proprietary audit methodology. Plaintiffs' arguments against application of the professional exemption lack merit.

Plaintiffs' motion relies on snippets of testimony taken out of context and documents (or highly selective portions of documents) that provide no support, much less undisputed support, for Plaintiffs' arguments. For example, Plaintiffs rely on KPMG documents to show the duties of more senior auditors but ignore the same documents' description of Associates' duties. This selective presentation cannot mask the reality that Associates' primary duty is performing exempt professional work.

Plaintiffs' argument that the administrative exemption does not apply to the work of Associates is wrong as a matter of law. Plaintiffs characterize Associates as "production workers" and rely on a distinction between administration and production that the Department of Labor ("DOL") and courts alike have held to be not applicable to employees – like Associates – engaged in providing financial and accounting services to their employer's clients.

Finally, KPMG acted in good faith in classifying Associates as exempt. As set forth in KPMG's motion for summary judgment for summary judgment, the decision was *correct*. Moreover, the record does not permit a finding that the decision was made in bad faith.

## STATEMENT OF FACTS

The facts pertinent to this motion – including the professional standards applicable to Associates, KPMG's criteria for hiring them, the training programs KPMG requires them to complete, and the audit roles that they perform – are set forth in KPMG's motion for summary judgment. Those facts, and the additional facts presented in opposition to Plaintiffs' motion,

2

demonstrate that Plaintiffs' motion should be denied.

A.    **Hiring Criteria For Associates Assure That They Have Advanced Knowledge**

Plaintiffs mischaracterize KPMG's hiring criteria as requiring "a very limited"

accounting background. (Plaintiffs' Memorandum of Law in Support of Motion for Partial

Summary Judgment ("Pls. Mem."), at 17-18 [ECF Dkt. No. 272]) This is incorrect. The

assertion that KPMG "does not require Associates to have any particular degree" (*Id.* at 17),

disregards the undisputed fact that KPMG requires completion of a course of academic study that

Associates are CPA eligible, or very near CPA eligible. (Plaintiffs' Statement of Undisputed

Material Facts ("Pls. SOF") ¶ 303; KPMG Statement of Undisputed Material Facts ISO Motion

for Summary Judgment ("KPMG SOF") at ¶¶ 28-31 [ECF Dkt. No. 266]) Plaintiffs' retort – that

almost 19% of the 1,096 Associates who opted-in before May 15, 2012, did not have accounting

degrees (Pls. Mem. at 18) – is neither compelling nor relevant. What is remarkable is that

81.66% of those Associates – four out of every five – had already earned either undergraduate or

graduate degrees in accounting and another 14.14% held undergraduate or graduate degrees in

Business, Finance or Economics, which are common degrees in the profession. In conjunction

with a concentration in accounting, these degrees make someone CPA eligible.[1]  Critically, of

the remaining 4.20% (46 out of 1,096 opt-ins), 43 obtained a minor, emphasis or certificate in

accounting, 2 had other degrees but were CPA eligible, and 1 had another degree but already was

a licensed CPA before starting at KPMG. (KPMG's Response to Plaintiffs' Statement of

---

[1] Plaintiff Keeley Young's background is illustrative. She held a degree in Business but had
taken the following accounting courses: Accounting 201 and 202, Tax Accounting, Intermediate
Accounting 303 and 304 Intermediate Managerial Accounting, Accounting Information Systems,
Advanced Federal Income Tax. Gov't/Non-Profit Accounting/Audit; International Accounting,
Principles of Auditing, Advanced IT Audit. (Deposition of Keeley Young, Vol. II, Tr. at 7:5-8,
12:25-13:17, and Exhibit 79 (P001788) (résumé listing education and relevant courses) (Landau
Opp. Decl. Exs. I & K))

Undisputed Facts ("KPMG Resp.") ¶¶ 321-328)

Plaintiffs' related bald assertion that "KPMG has hired Audit Associates . . . who had not taken any accounting courses during their undergraduate or graduate educations" (Pls. SOF ¶ 329 [ECF Dkt. No. 271]) is also contradicted by the record evidence.  (KPMG Resp. ¶ 329; *see also* KPMG SOF ¶ 28; Pls. SOF ¶ 303)

In short, Plaintiffs have failed to identify any evidence to contradict KPMG's showing that it hires CPA-eligible Associates.  Plaintiffs do not even suggest that any of the 1,308 Associates who have opted into this case (and are now represented by Plaintiffs' counsel) did not meet KPMG's stated hiring criteria.  That is because they cannot.

Plaintiffs' fallback assertion – that even CPA eligibility does not assure advanced knowledge of accounting – is both unsupported and would lead to absurd results.[2] They contend that KPMG's hiring criteria merely require Associates to be CPA-eligible "*in any state*" and assert that this equates to "a low bar."  (Pls. Mem. at 24)  But again Plaintiffs misstate the record.[3]  To the contrary, KPMG requires Audit Associates to be CPA-eligible in their home state, *i.e.*, where they will practice.  (KPMG Resp. ¶ 318)  An Audit Associate in New York must be CPA-eligible in New York (which requires 33 semester hours of accounting courses and 36 semester hours of general business courses).  That Associate would not satisfy KPMG's

---

[2] While the educational requirements for CPA licensure vary from state to state, nearly all states require a minimum education of a baccalaureate degree with an accounting concentration or the equivalent (typically requiring at least 24 semester hours of courses in accounting and at least 24 semester hours of additional courses in business), within a course of study totaling at least 150 semester hours of college-level education.  (KPMG SOF ¶¶ 29-30)

[3] Plaintiffs assert that several states (Delaware, New Hampshire, Maine, and Idaho) require "very few" credits to be CPA eligible (Pls. Mem. at 18).  But KPMG does not have offices in New Hampshire, Maine or Delaware, and Plaintiffs have misstated the educational requirements for licensure in Idaho.  *See* Idaho Admin. Code R.01.01.01.300.01.C (CPA licensure requires 150 semester hours of education, including 24 semester hours in accounting).

4

requirement by merely meeting the standards of CPA-eligibility in, for example, Maine.

Plaintiffs' argument also would require the Court to reject the determination, made by state

legislatures and boards of accountancy around the country, as to the educational background that

is the "standard prerequisite" for entrance into the accounting profession.  This argument should

be rejected.  *See* Section I.A.2, below.

**B.    Professional Standards Require Associates To Exercise Judgment**

Critically, Plaintiffs do not (because they cannot) dispute that the work of Associates is

governed by professional standards.[4]  Further, Plaintiffs' discussion of the import of these

professional standards reflects a fundamental misunderstanding of them.  The standards of "due

professional care," "professional skepticism," and "professional judgment" do not merely

describe a "philosophical mindset."  (Pls. Mem. at 13-14)  These bedrock standards are

decidedly not philosophical; they are important, practical precepts that apply to all accounting

professionals, including Associates.  (KPMG Resp. ¶¶ 227-238; KPMG SOF ¶¶ 6-21)

This practical application of professional skepticism and its direct linkage to auditor

judgment is made clear from the outset of Associates' employment at KPMG – in KPMG's

Audit Fundamentals training.  (Pls. MSJ Ex. GG at KPMG-PIP 0098419 (Professional

skepticism means we "make a critical assessment of the validity of evidence.") [ECF Dkt. No.

273-33])  In this training, Associates are required, among other things, to work through practical

exercises that demonstrate how professional skepticism will enable them to exercise good

judgment in conducting some typical first year audit procedures.  (*Id.* at KPMG-PIP 0098438-58

---

[4] The obligation to comply with professional standards in imposed by law. (KPMG Memorandum of Law ISO Motion for Summary Judgment ("KPMG Mem.") at 5 n.1 [ECF Dkt. No. 265])  It is also confirmed with all Associates when they are hired, because they are required to execute an employment Affidavit that acknowledges their obligation.  Deposition of Edward Lambert, Tr. at 92:7-93:22, 77:2-79:3 (Landau Opp. Decl. Ex. H).

(Professional Judgment Scenarios related to Inventory, Payroll, Cash, Substantive Analytical

Procedures on Interest Expense, Substantive Testwork on Investment Balances, Bank

Reconciliations and Accounts Receivable))  Plaintiffs' argument that professional skepticism is

nothing more than "common sense," unrelated to the exercise of discretion and judgment by

Associates (Pls. Mem. at 28), is demonstrably wrong.

      Plaintiffs' related contention that KPMG has classified categories of audit procedures

performed by Associates as "non-judgmental" (Pls. Mem. at 11) is also wrong and based on a

mischaracterization of the evidence.  (KPMG Resp. ¶¶ 181-186)  Since 2007, KPMG has

supported its engagement teams with a Global Delivery Center ("GDC") located in India, which

was created to enable certain non-judgmental tasks associated with some audit procedures to be

handled at much reduced costs.  (Pls. MSJ Ex. Y at KPMG-PIP 0099298, 0099300 [ECF Dkt.

No. 273-25])  But, as reflected in the very training materials Plaintiffs rely upon to improperly

suggest that a broad range of Associate responsibilities are "non-judgmental," the GDC is only

expected to perform the routine <u>portions</u> of work in the areas identified and only a very small

portion of audit work (███ of total audit hours in 2010 and ███ of total audit hours in 2011) was

expected to qualify.  (Pls. MSJ Ex. FF at KPMG PIP 0099273 [ECF Dkt. No. 273-32]; Landau

Opp. Decl. Ex. N at KPMG-CA&PIP 0123786; *see also* KPMG Resp. ¶¶ 135, 181-186, 279)

      Nothing about the work of the GDC supports the contention that the primary duty of

Associates (who participate in assigning tasks to the GDC and reviewing its work) is not exempt.

The vast majority of audit work cannot be fairly characterized as routine, and, if anything, the

advent of the GDC has allowed Associates to devote even more of their time and attention to

their primary duty of performing substantive, judgment-based audit procedures.  In any event,

spending a small amount of time performing routine work would not vitiate the exemption; any

argument to the contrary would be tantamount to arguing that brief writing is routine because the task of proof-reading changes might be assigned to a proof-reader rather than a lawyer.

Similarly, Plaintiffs' statement that Associates "are discouraged from exercising judgment and discretion" (Pls. Mem. at 14) is also unsupported and demonstrably false. Again, as a threshold mater, professional standards *require* the exercise of judgment and discretion, and KPMG affirmatively and repeatedly emphasizes this precept to Associates in job description and training materials. (KPMG SOF ¶¶ 43–48, 59–61, 63–64) For example, in one of the Professional Judgment Scenarios included in Audit Fundamentals training, Associates are instructed on how they would be expected to address a discrepancy in an investment balance confirmation received from a custodian holding a client's investments. (Pls. MSJ Ex. GG at KPMG-PIP 0098450-0098452 [ECF Dkt. No. 273-33]) The scenario includes almost a dozen questions the Associate should consider in addressing the issue and indicates that consultation with various employees of the client (i.e., accountant, product controller, risk manager, and financial manager) and the third party custodian who returned the discrepant confirmation, would be appropriate to enable the Associate to gather relevant information *before* consulting with a more senior engagement team member. (*Id.*) The training scenario also discusses the consequences that could occur if the Associate did not exercise good judgment in performing these follow-up procedures. (*Id.* at KPMG-PIP 0098452)

## C.    First Year Associate Work Is Not "On The Job" Training

Plaintiffs' characterization of the entire first year of an Associate's experience as "A Training Year" in which they learn "on the job" how to perform audit work is also unsupported and contrary to the evidence. (KPMG Resp. ¶¶ 239-246). Indeed, much of Plaintiffs' argument is predicated upon a single inapt document used in 2007 by the Washington D.C./Tysons Corner offices to provide practical orientation. It provides no insights relevant to whether the primary

7

duty of Associates is exempt work, but rather covered such basic topics such as "First Day

Jitters," "How do jobs get staffed?" and "Not having a car and what it means." It also discussed

the firm's dress code. (Pls. MSJ Ex. U at P002343-P002359 [ECF Dkt. No. 21]) One of the

slides that Plaintiffs find particularly compelling is entitled: "Expectations of a First Year

Associate" and states: *"Your first year is a learning experience*, have a positive attitude, it will

only help." It also assures the newly hired Associates that they are "an important member of the

engagement team" and "just as important as everyone else on the team." *Id.* at P002350

(emphasis added). That Plaintiffs place so much emphasis on these snippets of text speaks

volumes as to the weakness of their motion.[5] The reference to an Associate's first year as a

learning experience does not suggest (much less demonstrate) that these Associates did not

perform substantive audit procedures, employ their advanced knowledge in performing their

work, or exercise discretion and professional judgment. Indeed, the slide that Plaintiffs find so

compelling is entirely irrelevant to the issues before the Court. In contrast, the relevant evidence

demonstrates that Associates are highly-educated, well-prepared professionals who are hired,

trained, expected and – consistent with professional standards – *required* to perform substantive

audit procedures that necessitate a pre-existing knowledge of GAAP and GAAS. That evidence,

and not the caricature of a first year Associate's role Plaintiffs attempt to paint based on partial

passages from a new-hire office orientation, should control.

### D.   KPMG's Formal Training Treats Associates As Professionals Who Already Possess Advanced Knowledge

Plaintiffs similarly distort the record to support their erroneous contentions that "[t]he

core role of Audit Associates is to execute audit procedures learned in KPMG training and on the

---

[5] Plaintiffs' brief cites this orientation presentation no less than 6 times. (Pls. Mem. at 10, 11, 15, 26, 29) It is the source of much of the "evidence" Plaintiffs rely upon to support their contention that the "role" of Associates is to perform routine work. (Pls. Mem. at 10-12, 26)

job" (Pls. Mem. at 8) and that the Audit Fundamentals course teaches Associates "what they will need to know in the following year." (*Id.* at 15)  Thus, Plaintiffs limit their description of the content of Audit Fundamentals to a single sixty-minute training module presented in 2007, titled "What is an Audit," which Plaintiffs cite to suggest that the entire Audit Fundamentals course provides training on basic audit concepts.  (Pls. SOF ¶¶ 266-277)  But this one-hour module at the outset of the (then two-week long) course was simply an "effort *to refresh* our participants' knowledge" on material they learned first in their undergraduate and graduate coursework, and surely was not intended to substitute for that coursework.  (KPMG Resp. ¶¶ 266-277)[6]

In fact, Associates' primary duty requires that they understand GAAP and GAAS, and they do not learn GAAP and GAAS in KPMG training or on the job.  Rather, they learn it through extensive formal education, which education is supplemented and reinforced through training and on-the-job experience.  (KPMG SOF ¶¶ 39-42)  The record is clear that KPMG's training programs presuppose that Audit Associates already have an understanding of GAAP and GAAS.  (KPMG SOF ¶¶ 34, 41)  The fact that Associates are required to take continuing education courses (just as lawyers must) in no way diminishes the fact that they have acquired advanced knowledge through a course of specialized instruction in the first instance.

### E.    Working With More Experienced Professionals Does Not Make Associates' Work Non-Exempt

Plaintiffs dwell at length on the roles of Partners, Managers and Senior Associates.  (Pls. SOF ¶¶ 95-126)  This is a red herring.  While the engagement partner is responsible for directing the audit in accordance with professional standards and KPMG policies, and more senior

---

[6] Notably, because KPMG concluded Associates already had "a tremendous amount of advanced knowledge" from their college studies on these topics, this particular module was removed from subsequent Audit Fundamentals courses and placed into web-based self-study training.  (KPMG Resp. ¶¶ 266-277)

members of engagement teams supervise the work of lower-level members, *all members of engagement teams* are required to be knowledgeable in GAAP and GAAS and to exercise judgment. (KPMG SOF ¶¶ 9-17, 20)  KPMG reasonably expects them to do so.  (KPMG SOF ¶¶ 43-47, 59-64)  And the fact that in some instances they are expected to consult with more senior auditors does not mean that they are not exercising judgment.  (KPMG SOF ¶ 59(b) (in exercising professional judgment, Audit Associates expected to "consult as appropriate"); KPMG SOF ¶ 60(d) ("Audit Associates determine when to consult with others"); KPMG Resp. ¶¶ 147, 148, 170, 173 (Audit Associates' responsibility to make judgments and draw conclusions regarding potential errors *prior to* consulting with more senior audit professionals))

It is also significant that, while Plaintiffs rely upon KPMG's various job descriptions and evaluation documents to explicate the responsibilities of the more senior members of the engagement teams, they essentially ignore the descriptions of the responsibilities of Associates contained in the same documents.[7]  Plaintiffs' selective presentation of evidence fails to establish that Associates are non-exempt, particularly in the face of KPMG's evidence that the duties of Associates, as shown in these documents, establish the position as an exempt one. (KPMG SOF ¶¶ 53-59)

### F.    Associates Participate In Audit Planning

Plaintiffs also mischaracterize the audit planning process as occurring "before the actual audit begins," and their assertion that "Audit Associates' primary duties do not include making the decisions that are part of the planning process" (Pls. Mem. at 5) is equally misleading.  While

---

[7] Plaintiffs concede that the job descriptions in the Skills, Assessment, and Development document (Pls. MSJ Ex. FFF [ECF Dkt. No. 273-68]) created in the 2006-2007 time frame as part of the Career Architecture Project, are "good descriptions of what KPMG expects of Audit Associates." (Pls. SOF ¶ 193)  That document includes pages of details of KPMG's expectations from Associates in the areas of "critical thinking," "knowledge of accounting standards," "knowledge of auditing standards," and "decision making," among others.

10

auditors typically undertake significant planning activities before commencing field work, the professional standards require auditors to continually assess and revisit the planned audit procedures and to adjust and supplement them based on the results of their work *throughout the audit*. (KPMG Resp. ¶¶ 71, 77-79, 85, 155-156 (citing AU 311.01 ("Planning and supervision continue throughout the audit"); AU 311.03 ("Planning is not a discrete phase of the audit but rather an iterative process that … continues throughout the audit ."))) Consequently, Plaintiffs' suggestion that the senior members of an audit team plan the audit, and that the junior members then mechanically implement the plan (Pls. Mem. at 5-6), is false. On the contrary, all members of the audit team are required by professional standards to be alert to the need for modifications and additions to the audit plan. (KPMG Resp. ¶¶ 71, 77-79, 85, 155-56) This is in fact one of the many ways in which all members of the audit team, including first-year Associates, are required to exercise judgment and discretion.[8]

G.      **Inventory Observations And Walkthroughs Constitute Exempt Work**

Plaintiffs' brief focuses on only two (of many) particular types of audit activities undertaken by Associates – inventory observation and internal control walkthroughs (Pls. Mem. at 9-10). However, Plaintiffs are mistaken in suggesting that these tasks do not require the exercise of judgment and discretion. (KPMG Resp. ¶¶ 141–145 (inventory observation); KPMG Resp. ¶ 149 (internal control walkthroughs))

---

[8] Plaintiffs also assert that KPMG discourages Associates from exercising judgment and discretion, and that the firm "believes that professional judgment is acquired with experience." (Pls. Mem. at 14, citing Pls. SOF ¶ 232) This is extremely misleading. The full statement in the Audit Fundamentals module cited by Plaintiffs is: "stress to participants that although professional judgment is acquired with experience, *it is important that they begin applying professional judgment on their engagements to help ensure high Audit Quality for the firm*." (Pls. MSJ Ex. GG at KPMG-PIP 0098430 (emphasized text omitted by Plaintiffs) [ECF Dkt. No. 273-33])

LA1 2486270

Even as described by Plaintiffs, performing an inventory observation necessarily involves more than a mechanical application of procedures. For example, as Plaintiffs concede, Associates not only physically count the client's inventory, but also "evaluat[e] the results." (Pls. Mem. at 9) Depending on the results of this procedure, the Associate must determine whether additional procedures are necessary, whether risk assessments need to be reevaluated, whether the planned procedures require modification, whether to escalate issues to more senior members of the team, and potentially a host of additional matters, depending on the circumstances. (KPMG Resp. ¶ 143)

That KPMG expects Associates to use judgment when performing an inventory observation is demonstrated both by professional standards and KPMG's training materials. For example, in the Audit Fundamentals module on Professional Judgment, Associates are required to work through a hypothetical scenario involving a bin of inventory stored in a back corner of the warehouse that appears to be dusty with some parts partially damaged. This training module makes crystal clear that the Associate is expected to use his or her accounting knowledge to evaluate the circumstances, consider the accounting and internal control issues that might be implicated, assess possible explanations for the existence of what may be obsolete inventory that is not properly accounted for by the client, and to follow up with the client to gather more information before bringing the issues to the attention of the Senior or In Charge on the engagement. (Pls. MSJ Ex. GG at KPMG-PIP 0098438-0098440 [ECF Dkt. No. 273-33]; *see also* KPMG Resp. ¶ 145)

Similarly, in performing internal control walkthroughs, Associates do much more than Plaintiffs contend. They directly communicate with client representatives and make many judgments about the scope of inquiry and follow-up. They constantly assess the design and

12

operating effectiveness of the client's internal controls and whether additional substantive audit procedures are warranted in light of the results of the walkthrough.  (KPMG Resp. ¶ 149) (discussing judgment scenarios arising out of walkthroughs regarding internal controls)

### H.    KPMG's Historical Compensation Policies Are Irrelevant

Finally, Plaintiffs' claim that the position of Audit Associate was traditionally an overtime-eligible position (Pls. Mem. at 1, 19) is inapposite and also mischaracterizes KPMG's compensation practices more than fifteen years ago.  As KPMG's 30(b)(6) witness testified, KPMG has always considered the Audit Associate position (including its predecessor job titles of assistant accountant and staff accountant) to be an exempt professional position under the FLSA.  (Deposition of Bruce Pfau ("Pfau Tr."), at 45:16-46:10, 142:7-144:8 (Landau Opp. Decl. Ex. B))  KPMG's incentive-based compensation system in 1997 was not an FLSA-compliant, 40-hour-workweek overtime model compensation system, and nothing about the changes made by KPMG in 1997 to its compensation system had anything to do with exempt status.  (*Id.* at 97:14-25; KPMG Resp. ¶¶ 370-374, 376-388, 404-405)

Similarly, the fact that various proposals have surfaced at various points since 1997, to consider some kind of overtime component, or hours-based incentive compensation for Associates, does not undermine their exempt status.  (KPMG Resp. ¶¶ 348-349, 406-407)

ARGUMENT

### A.    Plaintiffs Are Not Entitled To A Summary Judgment That All First-Year Audit Associates Are Non-Exempt

The FLSA exempts persons "employed in a bona fide ... professional capacity" from the overtime provisions of the Act. 29 U.S.C. § 213(a)(1).  The U.S. Supreme Court very recently noted that "[t]he statute's emphasis on the 'capacity' of the employee counsels in favor of a functional, rather than formal, inquiry, one that views an employee's responsibilities in the

13

context of the *particular industry* in which the employee works." *Christopher v. SmithKline Beecham Corp.*, No. 11-204, __ U.S. __, 2012 WL 2196779, at *11 (June 18, 2012) (emphasis added). As shown below, such a functional analysis here – focused as it must be on the accounting profession – supports KPMG's classification of Associates as exempt professionals.

To qualify for the professional exemption, an employee's primary duty must satisfy three elements:

(1) The employee must perform work requiring advanced knowledge;

(2) The advanced knowledge must be in a field of science or learning; and

(3) The advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction.

29 C.F.R. § 541.301(a). Plaintiffs do not dispute the second requirement of the professional exemption – that accounting is a "field of science or learning." (Pls. Mem. at 23 (disputing only first and third prongs); KPMG Mem. at 20) Plaintiffs' arguments regarding the other two elements are without merit.

### 1.    Associates Have A Primary Duty Requiring Advanced Knowledge

This Court has explained, "[t]he term 'primary duty' means the employee's 'principal, main, major or most important duty,'" and "[i]n determining an employee's primary duty, courts look to 'all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.'" *Clarke v. JP Morgan Chase Bank, N.A.*, No. 08 Civ. 2400, 2010 U.S. Dist. LEXIS 33264, at *44 (S.D.N.Y. Mar. 26, 2010) (citations and footnote omitted). The determination of "primary duty" is grounded in the employer's expectations.[9] It is also focused

---

[9] *See Rainey v. McWane Inc.*, No. 08-40335, 2009 WL 631610, at *695 (5th Cir. Mar. 12, 2009) ("In applying [the primary duty test], we look to the aspect of the employee's job that is 'of principal value to the employer.'"); *Bohn v. Park City Group, Inc.*, 94 F.3d 1457, 1461 (10th Cir. 1996) ("'the employee's primary duty will usually be what [he] does that is of principal value to the employer, not the collateral tasks that [he] may also perform, even if they consume more than

LA1 2486270

on a "holistic approach" and not "day-by-day scrutiny of the tasks." *Counts v. South Carolina Electric & Gas Co.*, 317 F.3d 453, 456 (4th Cir. 2003) (cited in Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, the Preamble to the 2004 Final Rule, 69 Fed. Reg. 22122, 22186 (April 23, 2004) ("Preamble").

This Court previously acknowledged that "the primary job function of an Audit Associate is to perform audits of KPMG's customers' financial records." January 3, 2012 Decision And Order Granting Plaintiffs' Motion For Conditional Certification And Court-Authorized Notice ("January 3 Order") at 2 [ECF Dkt. No. 129]. Plaintiffs advance two arguments that Associates' primary duty does not require advanced knowledge (Pls. Mem. at 24-28), each of which is without merit.

        **a.**    **Associates' Required Knowledge Is Advanced, Not Basic Or Foundational**

Plaintiffs' first argument – that first-year Associate work requires only "basic" or "foundational" rather than "advanced" knowledge (Pls. Mem. at 24-25) – lacks record support and is based upon their mischaracterization of the word "foundational," which KPMG's 30(b)(6) witness intended to have the opposite meaning ascribed by Plaintiffs. (KPMG Resp. ¶ 307)[10]

More important, Plaintiffs' distinction between "foundational" and "advanced" is artificial and ignores the reality that Associates must have a strong knowledge of GAAP and

---

half [his] time'" (citation omitted)); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990)(same); *Reich v. Wyo.*, 993 F.2d 739, 742-43 (10th Cir. 1993) ("Both parties agree that an employee's primary duty is not only based on the number of hours spent on particular tasks, but is that which is of primary importance to the employer.").

[10] KPMG's 30(b)(6) witness made clear that he was using the phrase "foundational knowledge" to be synonymous with "advanced education." (Deposition of David Butler ("Butler Tr."), at 246:22-247:6 (Landau Opp. Decl. Ex. A))

GAAS and be CPA eligible to perform their audit work. (Declaration of David Butler (June 8, 2012) ("Butler Decl."), Exs. C, D, E, F (incoming Audit Associates expected to have "[s]trong understanding of US GAAP, US GAAS, and preferably, PCAOB auditing standards") [ECF Dkt. No. 268-3 to 268-6]; *see also* KPMG Resp. ¶ 319)  And, the accounting profession as a whole regards the specialized education it requires as both foundational and equipping Associates to exercise judgment. *See* UNIFORM ACCOUNTANCY ACT MODEL RULES R. 5-2 (Nat'l Ass'n of State Bds. of Accountancy July 29, 2011),

http://www.aicpa.org/advocacy/state/downloadabledocuments/uaamodelrules2011.pdf (special educational requirements required for licensure "intended to provide a *foundation* in accounting and business course subjects" and should "[d]evelop the skills required to apply the knowledge attained (including skills in communication, research, *judgment* and *analysis*.") (emphasis added).

Further, in attacking the educational backgrounds of Associates, Plaintiffs fail to recognize that they, like all Associates, share the same educational backgrounds as licensed CPAs – who are exempt under the FLSA. *See* 29 C.F.R. § 541.301(e)(5) (noting that CPAs are generally exempt). Associates arrive at KPMG today with the same (or some cases more) accounting education than partners have. If Associates' education is not sufficient to constitute "advanced knowledge," then it would mean that KPMG's partners also lack "advanced knowledge." It would also mean that the various state legislatures and boards of accountancy, which define the educational achievements required for licensure, have erred. To state these propositions should be enough to demonstrate the lack of merit in Plaintiffs' argument.[11]

---

[11] As discussed below, the requirement that advanced knowledge is "customarily required by a prolonged course of specialized intellectual instruction" has a defined meaning. It is "specialized academic training [that] is a standard prerequisite for entrance into the profession." 29 C.F.R. §

16

**b.    Associates' Primary Duty Includes The Performance Of Work That Is Predominantly Intellectual And Involves The Consistent Exercise Of Discretion And Judgment**

Plaintiffs' second argument – that first-year Audit Associates do not perform "predominantly intellectual" work or "consistently exercise discretion and judgment" (Pls. Mem. at 25-28) – is also incorrect as a matter of law and fact.

First, the argument is premised on the erroneous notion that KPMG must prove that the most "frequent" or "common" work performed by Associates is intellectual work requiring the exercise of judgment. (Pls. Mem. at 26)  That is not the correct standard, although KPMG's evidence likely satisfies even Plaintiffs' heightened standard. The FLSA regulations define primary duty *not* in terms of the *frequency* of the performance of exempt work, but in terms of whether the most "*important*" duties require exempt work, *see* 29 C.F.R. § 541.700(a), and state that "nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work." *Id.* § 541.700(b).

Moreover, under the professional exemption, the primary duty (*i.e.*, the most important work) must be "predominantly intellectual in character, and which *includes* work requiring the consistent exercise of discretion and judgment." *Id.* § 541.301(b) (emphasis added). The use of an expansive word  such as "includes" (rather than a more restrictive word such as "requires" or "constitutes") is key, as the Supreme Court recently noted in construing another exemption that, like the professional exemption, appears in Section 13(a)(1) of the FLSA, 29 U.S.C. § 213(a)(1). *See Christopher*, 2012 WL 2196779, at *11 (use of the word "'includes'" "makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive"). Further, as the

541.301(d) (emphasis added).  By virtue of KPMG's hiring criteria (*see* above), all Associates have the specialized academic training that is the standard prerequisite for entrance to the accounting profession in their state.

17

DOL has recognized, the performance of work by a learned professional is presumed to require the exercise of discretion and judgment. *See* Preamble, 69 Fed. Reg. at 22151 ("The Department continues to believe that having a primary duty of 'performing work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction' includes, by its very nature, exercising discretion and independent judgment ... The Department has been unable to identify any occupation that would meet the primary duty test for the professional exemption, but not require the consistent exercise of discretion and judgment.").

Second, Plaintiffs' argument is also factually flawed. The nature of the audit profession (which the Court in *Christopher* counsels is a very relevant consideration in evaluating exemption decisions) *requires* that Associates constantly use discretion and judgment in the work that they do. Professional standards governing KPMG and all Associates require that they use "due professional care," employ a mental attitude of "professional skepticism," and exercise "professional judgment." *See* KPMG Mem. at 5-7 and KPMG SOF ¶¶ 6-21 (citing AU §§ 150.02, 230.02, 230.07, 230.08, 316.13, and 339.01). That is what all members of the Audit engagement teams are employed to do, and that is their most important duty.

Further, as demonstrated above and in KPMG's motion, Plaintiffs' description of Associates' work as routine, manual, or clerical is simply incorrect. Even the audit procedures that Plaintiffs have singled out by way of example – inventory counts and walkthroughs – require the constant exercise of judgment. *See supra* at 11-13. And the "evidence" Plaintiffs

rely upon to prove that Associates' work is not intellectual (Pls. SOF ¶¶ 243-44, 246) is, as shown above, based upon a badly misleading caricature. *See supra* at 7-8.[12]

Plaintiffs' reliance on *Brock v. National Health Corp.*, 667 F. Supp. 557, 566 (M.D. Tenn. 1987) (Pls. Mem. at 27) further reflects their misunderstanding of the Associate position. The *Brock* Court found the "staff accountants" at issue akin to bookkeepers, whose rote checking of nursing home books in accordance with a step-by-step process differentiated them from auditors. Critically, the staff accountants in *Brock* did not possess college level degrees in accounting or a closely related field. In sharp contrast, KPMG's Associates are not bookkeepers; they have completed a specialized course of study in college and perform audit work and must comply with professional standards. In 1940, the DOL distinguished bookkeepers ("one of the most routine of all normal business occupations") from "accountants and auditors" ("whose work … requires in general far more training, discretion, and independent judgment"). *See* Executive, Administrative, Professional … Outside Salesmen" Redefined, Wage and Hour Division, U.S. Department of Labor, Report and Recommendations of the Presiding Officer (Harold Stein) at Hearings Preliminary to Redefinition (Oct. 10, 1940) (the "Stein Report") at 32 (Landau MSJ Decl. Ex. E) [ECF Dkt. No. 269-5]. Plaintiffs therefore fail in their attempt to equate Audit Associates to bookkeeper as a matter of law and uncontroverted fact.[13]

---

[12] Plaintiffs' claim that consultation with others precludes exempt status also lacks merit. *See Piscione v. Ernst & Young, LLP*, 171 F.3d 527, 536 (7th Cir. 1999) ("many individuals who exercise discretion and independent judgment often do so after consultation with others."); *see also* KPMG Mem. at 24-25.

[13] Plaintiffs' reliance on *Hashop v. Rockwell Space Operations Co.*, 867 F. Supp. 1287, 1298 (S.D. Tex. 1994) is also misguided. This decision predated the DOL's 2004 revisions to the profession exemption regulations, and the DOL specifically stated in the adopting release that the amendments being implemented in §541.704 were intended to avoid "the absurd result" in that case. Preamble, 69 Fed. Reg. at 22188.

LA1 2486270

### 2. Associates Are Required To Possess Advanced Knowledge Obtained Through A Prolonged Course Of Specialized Intellectual Instruction

Plaintiffs offer two arguments that the accounting knowledge required of Associates is not "customarily acquired by a prolonged course of specialized intellectual instruction" within the meaning of the FLSA regulations. (Pls. Mem. at 29-31)  Neither argument has merit.

First, Plaintiffs argue that the required educational background of KPMG's Associates is insufficient for exemption because KPMG does not require Associates to have taken any accounting courses or to have a degree in accounting and because CPA eligibility mandates only a small number of accounting courses.  As demonstrated above, Plaintiffs' claims are factually and legally incorrect.  There is no support for Plaintiffs' claim that KPMG does not require its Associates to have taken an accounting course. (KPMG Resp. ¶ 329)  The claim is controverted by the undisputed fact that KPMG requires incoming Associates to have completed (or in rare instances to have nearly completed)[14] a course of college- or graduate-level academic study with sufficient accounting and business classes such that they are CPA eligible. (Pls. SOF ¶ 303; KPMG SOF ¶¶ 28-31)  Plaintiffs have not identified a single state (let alone a single state in which KPMG has an office) that does not require CPA applicants to have taken an accounting

---

[14] Plaintiffs overstate the significance of KPMG's occasional hiring of candidates who are near-CPA eligible.  KPMG's hiring of such individuals is rare and occurs only where an otherwise qualified candidate is missing a small number of credits to become CPA eligible in the state that they will work (for example, where there has been a revision to the state's education requirements) and there is a specific plan in place for the individual to become CPA eligible in short order. (KPMG Resp. ¶¶ 303, 342; Butler Tr. at 250:5-6, 376:24-377:3 (Landau Opp. Decl. Ex. A))  These minor exceptions to KPMG's education requirements are not sufficient to vitiate the exempt classification of the entire collective.  *See* 29 C.F.R. § 541.301(d) ("The phrase '*customarily acquired* by a prolonged course of specialized intellectual instruction' restricts the exemption to professions where specialized academic training is a *standard prerequisite* for entrance into the profession ... However, the word 'customarily' means that the exemption is also available to employees in such professions who have substantially the same knowledge level and perform substantially the same work as the degreed employees...") (emphasis added).

20

course.  Plaintiffs also have not identified a single opt-in who had not taken an accounting

course.

Plaintiffs' additional claim that the accounting courses taught in college and graduate

school are not "specialized enough" because "only a minimal number of accounting courses" are

required for CPA eligibility (Pls. Mem. at 30) is on its face meritless.  The FLSA regulations

recognize that Accounting is one of the "traditional learned professions" (29 U.S.C.

§§ 541.301(c), (e)(5)), with  a specialized field of study that is the "standard prerequisite" for

entrance into the profession.  *See supra* at n.2 and KPMG SOF ¶¶ 29-30.  Further, nothing in the

regulations or law requires there to be specified minimum number of courses in a particular topic

to render a course of instruction "specialized."

Plaintiffs' reliance on *Solis v. Washington*, 656 F.3d 1079 (9th Cir. 2011), (Pls. Mem. at

29-31) is misplaced because that case involved significantly different facts, and because the

Ninth Circuit's reasoning in fact supports application of the exemption in the present

circumstances.  In *Solis*, the Ninth Circuit addressed the "specialized intellectual instruction"

requirement as it related to certain state social workers who were required to have a bachelor's

degree or sufficient credits in any one of approximately 15 different fields that the Court found

were too general and not sufficiently related to the social workers' duties to qualify for the

professional exemption.  *Id.* at 1081-82.  In contrast, KPMG requires that its Associates satisfy

the educational requirements for CPA licensure.  By definition, these educational requirements

are both specialized and directly related to the practice of accountancy.  *Solis* supports this same

conclusion.  *Id.* at 1085-86; *see, e.g., Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 524

(5th Cir. 1999) (state licensed athletic trainers who were required to obtain a bachelor's degree in

any field and complete courses in "(a) human anatomy; (b) health, disease, nutrition, fitness,

21

wellness, or drug and alcohol education; (c) kinesiology; (d) human physiology or physiology of

exercise; and (e) athletic training" qualify for the learned professional exemption); *Rutlin v.*

*Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000) (licensed funeral home directors who are

not required to obtain a college degree but are required to complete a year of mortuary

instruction and two years of college including classes in chemistry and psychology qualify for

the learned professional exemption); *Reich*, 993 F.2d 739 (game wardens who must obtain a

bachelor's degree in wildlife management, wildlife biology, or a related field and obtain basic

law enforcement training qualify for the learned professional exemption); Preamble, 69 Fed.

Reg. at 22152 (rejecting determination that instructors with "college degrees in electrical

engineering, mathematics or physics" who trained Space Shuttle ground control personnel were

not exempt).

      Second, Plaintiffs also assert that Associates acquire the necessary knowledge from Audit

Fundamentals training and while working "on the job." (Pls. Mem. at 29-30)  There is no

support in the record for this assertion.  As explained above, Associates must possess advanced

knowledge of accounting, GAAS, and GAAP before they begin work at KPMG, and the formal

and on-the-job training they receive after joining the firm merely supplements this existing base

of knowledge. *See supra* at 3-5, 8-9; KPMG SOF ¶¶ 34, 39-42; KPMG Resp. ¶¶ 296-302.

### 3.    Plaintiffs' Misleading Attempt To Compare Associates' Work To Managers' Work Should Be Rejected

      Plaintiffs also argue that Associates are not exempt because their work is not "similar" to

the work of KPMG's Managers, who are required by firm policy to be CPAs. (Pls. Mem. at 31

(citing 29 C.F.R. § 541.301(e)(5)))  This argument is seriously flawed.

      First, while Manager is the first KPMG position in the employment hierarchy for which

licensure is required, the evidence, including some cited by Plaintiffs, establishes that many less

22

experienced engagement team members, including Senior Associates and Associates, are also

CPAs. (Pls. MSJ Ex. LL, at Ex. A [ECF Dkt. No. 273-39]) Named Plaintiff Jamie Schindler

obtained her CPA license within a few months after she started work at KPMG, while she was

working as an Associate. (Deposition of Jamie A. Schindler, Tr. at 99:15-18, 106:12-107:14,

and Exhibit 10 (KPMG-PIP 0000049 – 0000052, at 0000052) (CPA License) (Landau Opp.

Decl. Exs. F & G))  In addition, 47 of the individuals who opted in to this case on or before May

15, 2012, became licensed either before or during their first-year with KPMG and another 197

became licensed in their second year with KPMG. (Landau Opp. Decl. ¶ 18 and Ex. V)  Thus, to

the extent that a comparison of the duties of first year Associates to CPAs is relevant to the

exemption issue at all, the comparison actually supports KPMG's position because many

Associates are CPAs.

Second, Plaintiffs based their argument on a strained reading of the word "similar."

While the FLSA regulations do not define the word "similar," it means "having characteristics in

common." *See* Merriam-Webster Online Dictionary, *available* at http://www.merriam-

webster.com/dictionary/similar (last visited June 26, 2012). Another authoritative dictionary

defines it to mean "resembling without being identical." *See* Oxford Online Dictionary,

*available* at http://oxforddictionaries.com/definition/similar?region=us&q=similar (last visited

June 26, 2012). These definitions support a broad definition of "similar job duties." Thus, first

year Associates' job duties would be exempt if they have "characteristics in common" with the

job duties of CPAs or if they "resemble" job duties of CPAs. This standard is clearly met

because the primary duty of Associates shares many characteristics in common with the duties of

other KPMG auditors who are CPAs.

The FLSA regulation Plaintiffs rely upon contrasts the job duties of exempt accountants

with those of non-exempt "accounting clerks, bookkeepers and other employees who normally perform a great deal of routine work." 29 C.F.R. § 541.301(e)(5). First year Associates, just like CPAs working on audits with them, are subject to professional standards governing audits, are constrained by the independence standards of the profession and SEC rules, prepare work papers and evaluate audit evidence, perform analytical procedures and test of details, and have to understand and apply GAAP. (KPMG SOF ¶¶ 9-17, 20, 49-64) None of these duties and responsibilities apply to bookkeepers and accounting clerks. Therefore, Associates' primary duty more than meets the standard of being similar to the duties of CPAs.

For all of those reasons, the uncontroverted evidence demonstrates that Associates – whose primary job duty is the performance of audit work, consistent with applicable professional standards including GAAP and GAAS – are exempt professionals. Their work requires advanced knowledge in a field of science or learning (Accounting) that is customarily acquired through a prolonged course of specialized intellectual instruction. Plaintiffs' motion for summary judgment should be denied.

### B.    Plaintiffs' Motion For Summary Judgment As To The Administrative Exemption Must Be Denied

Next, Plaintiffs seek summary judgment that they "were not properly classified as exempt under the FLSA administrative exemption at any time as Audit Associates." (Pls. Mem. at 2, 32-34) On the contrary, KPMG's Audit Associates perform quintessentially administrative work within the meaning of the FLSA.

To fall within the administrative exemption, an employee's "primary duty" must be "the performance of office or non-manual work directly related to the management or general

24

business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2).[15]

The employee must "perform work directly related to assisting with the running or servicing of

the business." *Id.* § 541.201(a). As the FLSA regulations make clear, the employee need not

himself manage or administer the business – he need not be, as Plaintiffs mistakenly suggest – an

"administrator," (Pls. Mem. at 34), but rather, need only perform work "*directly related to*

*assisting with* the running or servicing of the business." This exemption sweeps in a broad

variety of job functions including, directly relevant here, "work in functional areas such as tax;

finance; accounting; budgeting; [and] auditing." 29 C.F.R. § 541.201(b); *see generally id.*

§ 541.203 (giving examples of exempt employees). This is why accountants repeatedly have

been found to fall within the administrative exemption.[16] Indeed, that this is the rule has been

clear for more than fifty years.[17]

     The work performed by Audit Associates is not merely "directly related to" "running …

the business" of KPMG's clients, but indeed is absolutely essential to their financial health and

---

[15] The exemption also contains additional criteria, such as that the employee's "primary duty include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. §§ 541.200(a)(3), 541.202. That issue overlaps with the professional exemption, and KPMG has responded to Plaintiffs' arguments thereon in Section I, above.

[16] *See, e.g., Lemmon v. Ayres*, No. 3:09-cv-361, 2012 U.S. Dist. LEXIS 35578, at *57-58 (S.D. Ohio Mar. 16, 2012) (applying the administrative exemption to a staff accountant); *Zalewski v. PNC Fin. Servs. Group, Inc.*, No. 06-1231, 2007 U.S. Dist. LEXIS 98310, at *26-27 & n.23 (W.D. Pa. Nov. 16, 2007) (applying the administrative exemption to a staff accountant who "compiled required reports for filings and audits, analyzed balance sheets and income statements, verified financial reports/data, and monitored millions of dollars in investments for accuracy/compliance") (magistrate's report and recommendation), *adopted by* 555 F. Supp. 2d 555, 564-65 & n.23 (W.D. Pa. 2008); *Wirtz v. J.D. Jewell, Inc.*, No. 1199, 1969 U.S. Dist. LEXIS 9565 (N.D. Ga. Jan. 16, 1969) (applying the administrative exemption to a cost accountant).

[17] *See, e.g., Mitchell v. Baggett Transp. Co.*, 27 Lab. Cas. (CCH) P 68879 (N.D. Ala. 1954) (applying the administrative exemption to an accountant); *Conary v. A.O.G. Corp.*, 20 Lab. Cas. (CCH) P 66363 (D.R.I. 1951) (applying the administrative exemption to an accountant/field auditor).

LA1 2486270

well-being.  Two processes related to KPMG's audit engagements form the basis for its assertion

of the administrative exemption:  (a) procedures related to its clients' financial reporting

function, including, for example, the identification of potential accounting adjustments to the

clients' financial statements; and (b) procedures related to the evaluation of and

recommendations for improvements to management regarding internal controls.  (Declaration of

David Butler (June 24, 2011), at ¶¶ 59-70 [ECF Dkt. No. 75] (attached as Exhibit A to

Previously Filed Materials Provided to the Court as a Courtesy ("Courtesy Copy")))  Plainly,

auditing clients' financial statements and assessing the clients' system of internal control is work

that is "directly related to" its clients' management policies or general business operations.

Performing these functions is similar to "supervising a business's internal financial activities

through the accounting department," which the Second Circuit has held qualifies for the

exemption; both are "functions that must be performed no matter what the business produces."

*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009).

Not only is preparing and issuing financial statements an important part of the business

operations of KPMG's clients, in the case of KPMG's client's who are public companies, it is

mandated by federal law.  *See, e.g.*, 15 U.S.C. §§ 77aa, 78l, 78m, 80a-8, 80a-29.  Such

companies also are required by Section 404 of the Sarbanes-Oxley Act to maintain effective

systems of internal control over their financial reporting, and to assess and report on those

systems.  15 U.S.C. § 7262.  These companies also are required to obtain from their auditor an

opinion on whether it agrees with management's assertions regarding the system of internal

control over financial reporting.  *Id.*  These duties are, therefore, "'clearly related to servicing the

business itself.'"  *Davis*, 587 F.3d at 536; *see also id.* (work is exempt when it "contributes to

running the business itself" (internal quotations omitted)).  In the same way that "'a business

must pay its taxes and keep up its insurance,'" *id.*, it also must have its financial statements audited and maintain effective financial controls. *See also id.* (exemption applies to "'tasks that every business must undertake in order to function'").

Plaintiffs dispute none of this. They contend instead, that the work of KPMG's audit teams is mere "production work" because performing audits is, in their view, the product that "KPMG's Audit function offers to its clients." (Pls. Mem. at 33) But the exemption is not precluded merely because work was performed by one company for another, rather than within a single company. The FLSA regulations explicitly state that exempt work may be performed for the employer's customers. 29 C.F.R. § 541.200(a)(2). Even more saliently, the regulations elaborate that "employees acting as advisors or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." 29 C.F.R. § 541.201(c).

Plaintiffs' reliance on the "so-called 'production versus staff' dichotomy," *see* Preamble, 69 Fed. Reg. at 22140, is misplaced. The DOL has explained, "the dichotomy between administrative employees and production or sales employees must take into account whether the employer in question is a company *engaged in providing administrative services for its customers*."[18] Further, the DOL severely limited the applicability of the dichotomy to jobs in service industries with the revised 2004 regulations. The Seventh Circuit has stated:

> [T]he so-called production/administrative dichotomy – a concept that has an industrial age genesis – is only useful by analogy in the modern service-industry context. "The typical example of the ... dichotomy is a factory setting where the 'production' employees work on the line running machines, while the administrative employees work in an office communicating with the customers and doing paperwork." *Shaw v. Prentice Hall Computer Publ'g, Inc.*, 151 F.3d 640, 644 (7th Cir. 1998). The analogy is not terribly useful here, particularly given that *the 2004 regulations suggest a more*

---

[18] DOL Op. Ltr. FLSA2002-5 (Aug. 6, 2002), *available at* http://www.dol.gov/whd/opinion/FLSA/2002/2002_08_06_5_FLSA.pdf (last visited June 26, 2012) (emphasis added).

LAI 2486270

*traditional meaning of "production."* The new regulations state that the "directly related" test is met by employees who "assist[ ] with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a) (2006).

*Roe-Midgett v. CC Servs. Inc.*, 512 F.3d 865, 872-73 (7th Cir. 2008) (emphasis added); *see also, e.g.*, *Bollinger v. Residential Capital, LLC*, No. C10-01123, 2012 U.S. Dist. LEXIS 74807, at *10-11 (W.D. Wash. May 30, 2012) ("Applying the dichotomy requires a conservative approach in general and particular care where there is no tangible good. Before 2004, the regulation in question distinguished broadly between administrative and 'production' work. 29 C.F.R. § 541.201(a) (2003). *But now the 'production' example has a narrower, more traditional focus: 'working on a manufacturing production line.' Id.* (current version).") (emphasis added).

The 2004 regulations are unambiguous: "Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments, or debts," 29 C.F.R. § 541.203(b). That, of course, is one significant aspect of what KPMG does for its clients. There can be little debate that if an accountant performing accounting work for his employer would fall within the administrative exemption, *see supra* n.16, then a KPMG accountant performing accounting work for one of KPMG's clients would also fall within the exemption; under the regulations, the result is no different.[19]

Plaintiffs also err in asserting that "[e]mployees are properly exempt administrators *only*

---

[19] The evidence underlying Plaintiffs' contrary assertion speaks to a different subject entirely. (Pls. Mem. at 34 (citing Pls. SOF ¶¶ 20-27, 29-30, based on the deposition of David Butler at pages 48-49, 55, and 59)). David Butler, upon whose testimony Plaintiffs' argument ultimately relies, testified about the independence rules for auditors imposed by the PCAOB, SEC and AICPA, but those requirements – that independent auditors be separate from the companies they are auditing – say nothing whatsoever about whether the accounting work being performed (in a manner consistent with those independence obligations) is administrative in nature within the meaning of the FLSA.

LA1 2486270

when they perform ˙substantial *advisory* duties.'" Pls. Mem. at 34 (quoting *Davis*, 587 F.3d at 534) (emphases added). Neither the FLSA nor the Second Circuit in *Davis*, cited by Plaintiffs, imposed any such requirement. The *Davis* Court looked to a DOL Opinion Letter responding to an inquiry whether certain "advisory duties" gave rise to exempt status, but the opinion letter did not say that such duties are required for exemption, and neither did *Davis*, as is clear from the Second Circuit's statement later in the same paragraph that work pertaining to "'general business operations'" may be exempt, *Davis*, 587 F.3d at 534; from the cases upon which *Davis* relies, which impose no such requirement, *see id.* at 533-37; and from the FLSA regulations cited above, which make clear that "advising" a business is just one example of exempt work, *see* 29 C.F.R. § 541.205.[20]

Finally, Plaintiffs suggest that the case for exemption is undermined because "KPMG evaluates Associates based on their productivity." (Pls. Mem. at 33) Plaintiffs rely for this argument on *Davis*, but that case focuses on something very different – namely, "being able to quantify a worker's productivity *in literal numbers of items produced*" and even then, says only that this "illustrates the concerns that motivated the FLSA." 587 F.3d at 535 (emphasis added). But Audit Associates are not paid based on "literal numbers of items produced." *Id.* They may be evaluated in part based on their hours worked, but that is true of numerous exempt workers, including attorneys. And nowhere does *Davis* say that such incentives are determinative of exempt status.

### C.   Plaintiffs Are Not Entitled To Summary Judgment On The Good Faith Defense

Plaintiffs' request for summary judgment on the good faith defense must be denied for two reasons. First, as set forth in KPMG's motion for summary judgment, KPMG's decision

---

[20] *See* DOL Op. Ltr. (Feb. 16, 2001), *available at* 2001 WL 1558764.

LA1 2486270

was *correct*. Second, and even if the Court does not find that KPMG's decision was correct as a matter of law, the evidence does not permit a finding that KPMG made its classification decision in bad faith.

Plaintiffs admit that KPMG believed that Associates are exempt and that such belief was "deeply ingrained." (Pls. Mem. at 22)  Plaintiffs cite absolutely no evidence that KPMG formulated or held such belief in bad faith.  Moreover, and contrary to Plaintiffs' suggestion (Pls. Mem. at 20), the good faith defense does not require the presentation of a legal analysis or the waiver of the attorney-client privilege to any such legal analysis, *see, e.g., Howard v. Port Authority of New York, New Jersey*, 684 F. Supp. 2d 409, 416 (S.D.N.Y. 2010) (employer acts in good faith where it takes "'active steps to ascertain the dictates of the FLSA and then move[s] to comply with them'"); *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (for good faith, employer need only demonstrate "an honest intention to ascertain what the Act requires and to comply with it") (citation omitted).

Plaintiffs' claim that "KPMG never considered whether classifying Associates as exempt was legal or not" (Pls. Mem. at 35) is refuted by some of the very evidence cited by Plaintiffs. The record evidence demonstrates that KPMG reviewed the Associate position whenever relevant changes in the FLSA or in the Associate job description have arisen, and KPMG never encountered any changes in the FLSA or the position that would call the exempt status of Associates into question. (Pfau Tr. at 142:7:16-144:8 (Landau Opp. Decl. Ex. B))  For example, Plaintiffs admit that KPMG looked at the 2004 FLSA regulations and determined that the amendments did not impact the exempt status of Associates. (Pls. SOF ¶ 392)  In addition, Plaintiffs concede that in 2006, KPMG took a "careful look" at the job duties of Associates when it developed detailed job description documents in connection with the firm's Employee Career

30

Architecture project. (Pls. SOF ¶ 394)  At that time, KPMG carefully reviewed the expectations

of and work performed by Associates, and again confirmed that the position was exempt. (Pfau

Tr. at 172:24:173:14, 229:16-230:2 (Landau Opp. Decl. Ex. B); *see also* KPMG Resp. ¶ 394)[21]

Thus, KPMG's view that the exempt status of Associate is axiomatic reflects repeated

reaffirmations of a long-standing decision and in no way suggests ignorance of the FLSA's

requirements.  To the contrary, the undisputed evidence supports a finding a *good* faith. (Pls.

SOF ¶¶ 392, 394)  At a minimum, the fact that KPMG periodically reviewed its job categories,

including in the context of new legislation, should be sufficient to preclude Plaintiffs from

obtaining summary judgment that KPMG acted in *bad* faith.

     In addition, summary judgment on KPMG's good faith defense is particularly

inappropriate given the lack of legal authority questioning the professional status of entry-level

accountants working on audits.  Although KPMG carries the ultimate burden of proving a good

faith defense, the appropriateness of liquidated damages poses a "triable issue" of fact where the

employer puts forward some evidence that it acted in good faith and there is "uncertainty in the

law." *Howard*, 684 F. Supp. 2d at 416 (denying summary judgment for plaintiff on good faith

issue despite the "somewhat cursory nature" of defendant's classification decision).  "The

absence of precedent is also evidence of good faith." *Quirk v. Baltimore County*, 895 F. Supp.

773, 788 (D. Md. 1995); *see also Bratt v. County of Los Angeles*, 912 F.2d 1066, 1072 (9th Cir.

1990) (finding reasonable grounds for classification where regulations did not "specifically

address" exempt status of position at issue, and the duties performed "reasonably could be

---

[21] Similarly, when KPMG combined the job titles of "assistant accountant" and "staff
accountant" into the Associate position in 2001 and developed a job description for the new job
title, KPMG reviewed the job duties of the position and determined that they reinforced KPMG's
view that the work required judgment and advanced training. (Pfau Tr. at 128:15-130:8 (Landau
Opp. Decl. Ex. B); KPMG Resp. ¶¶ 381-382)

LA1 2486270

construed as analogous to [various positions] cited in the regulations as examples of exempt employees"); *Bond v. City of Jackson*, 727 F. Supp. 1516, 1519 (S.D. Miss. 1989) (denying liquidated damages where there was "no clear legal precedent which would have advised [the employer] that its conduct was manifestly condemned under the law" and the regulations were "somewhat ambiguous") *rev'd on other grounds*, 939 F.2d 285 (5th Cir. 1991). Accordingly, even if KPMG's long-standing decision to classify Associates as exempt is somehow deemed incorrect, construing the evidence in the light most favorable to KPMG, the classification should at a minimum be deemed objectively reasonable.

> **D.** **Plaintiffs Have Failed To Provide Any Evidence That On A Position-Wide Basis, Associates Did Not Perform Their Primary Duty As Defined By The Professional Standards And KPMG, And Their Individual Anecdotal Evidence Should Be Rejected**

In its motion for summary judgment, KPMG demonstrated that the primary duty of all Associates – including those in their first year – is the performance of audit work that, as dictated by applicable professional standards and required by KPMG's description of the Associate role set forth in job duties and expectations documents, requires the application of advanced knowledge of accounting and the exercise of professional judgment. As demonstrated above, nothing in Plaintiffs' motion undermines KPMG's contention that this is the primary duty of KPMG Associates. And that primary duty fits squarely into the professional exemption.

Plaintiffs' ultimate "fallback" argument, must also be rejected. That argument is based on proferred testimony from three named plaintiffs and a few opt-ins to the effect that, regardless of the primary duty of the Associate position, as defined by KPMG and the profession, the work that each of them performed at KPMG was routine, clerical work that neither entailed use of their knowledge of accounting nor the exercise of professional judgment. (Pls. Mem at 9-10, 26-27) This argument must be rejected.

LA1 2486270

As a threshold matter, Plaintiffs' reliance on testimony from individual Associates asserting that they did not perform the exempt work required by their employer's definition of the position's primary duty (and by the professional standards they were bound to follow), is fundamentally inconsistent with the Court's January 3 Order. The individual experiences of Plaintiffs and a few opt-ins are irrelevant to the issue on which the Court directed the parties to file summary judgment motions – namely, whether "all Audit Associates are, by virtue of either their educational attainments or job expectations" professionally exempt, "without regard to their personal situations." January 3 Order at 27 [ECF Dkt. No. 129].[22]

However, even if evidence from individual Associates is to be considered, Plaintiffs have at most demonstrated only that their individualized experiences were anomalous and not consistent with KPMG's expectations or professional standards. They present no basis to conclude that their experience is remotely representative of what other Associates did. In other words, Plaintiffs' motion *at most* proves only that *certain* individuals employed by KPMG failed to perform the jobs they were hired (and compensated) to perform. But Plaintiffs may not manufacture a claim under the FLSA and seek *additional* compensation by claiming that they failed to perform their primary duty. Even assuming, *arguendo*, that Plaintiffs' contention *might* give rise to an *individualized* claim of misclassification (which is dubious), it utterly fails to demonstrate that the *all* Associates worked in a manner fundamentally at odds with the primary duty defined for the position of Associate. Thus, Plaintiffs have not made any credible demonstration that "all Audit Associates" failed to perform exempt work.

---

[22] Thus, all of Plaintiffs' purportedly undisputed facts that rely upon such testimony are immaterial and should be disregarded. *See* Official Transcript of March 2, 2012 Conference, at 23 (Individualized evidence "not appropriate at this stage.") [ECF Dkt. No. 164] (Landau Opp. Decl. Ex. U). This includes paragraphs 65, 118-119, 143, 150-53, 249, 319, 402, 415-418 from Plaintiffs' SOF.

33

Nor could they in view of the documentary evidence and the numerous detailed declarations from current and former Associates that KPMG first filed with the Court in June 2011. That evidence is resubmitted here for this Court's convenience and reference. These Associates confirm that, consistent with KPMG's expectations and job descriptions documents, and armed with their advanced, specialized accounting education, they performed complex and substantive audit work, requiring the exercise of professional care, discretion, and judgment. For instance, these first-year Associates:

- Planned audit procedures and redesigned audit steps. (Catania ¶ 13 (Courtesy Copy Ex. F))[23]

- Made inquiries and evaluated the reasonableness of the responses received from client representatives, including whether to ask follow-up questions or seek additional documentation. (Vick ¶ 13 (Courtesy Copy Ex. O); Totah ¶¶ 13-14 (Courtesy Copy Ex. N))

- Prepared work papers in which they decided what information to include so as to satisfy professional standards. (Vick ¶ 14 (Courtesy Copy Ex. O))

- Served as the in-charge, including planning audit engagements, identifying risks, planning audit procedures to mitigate those risks, assigning audit procedures to others on the engagement team, reviewing work papers, providing comments, and discussing areas for follow-up. (Vick ¶¶ 11 (Courtesy Copy Ex. O))

- Performed inventory observations independently at client sites. (Borden ¶¶ 8-11 (Courtesy Copy Ex. E); Miller ¶¶ 10-11 (Courtesy Copy Ex. I))

- Identified the disclosures required by SEC and FASB standards and assessed whether the client's disclosures complied with those obligations. (Catania ¶¶ 7-9 (Courtesy Copy Ex. F))

- Researched and analyzed complex accounting and auditing issues, and drafted technical white papers and memoranda describing various accounting methodologies. (Blair ¶¶ 12-16 (Courtesy Copy Ex. D); Chan ¶ 8 (Courtesy Copy Ex. G))

- Applied auditing and accounting guidance principles to evaluate and test the reasonableness of client classifications of leases as capital leases or operating leases

---

[23] Each of the declarations of Audit Associates submitted by KPMG can be found as an exhibit to the Previously-Filed Materials Provided to the Court as a Courtesy ("Courtesy Copy"), submitted herewith, and are cited herein by reference solely to the last names of the declarants for brevity and distinction.

LA1 2486270

(Wake ¶¶ 13-15 (Courtesy Copy Ex. P)), to evaluate the reasonableness of client estimates of oil and gas reserves (Miller ¶¶ 15-17 (Courtesy Copy Ex. I)), and to assess the reliability of operating reports based on forecasts of financial performance (Totah ¶ 10 (Courtesy Copy Ex. N)).

Equally important, in all their work – from interviewing client personnel to reviewing and analyzing accounting documentation – the Associates exercised professional judgment and professional skepticism, on the basis of what they saw as well as what they did not see, in identifying issues to be raised and discussed with client representatives and the engagement team. (Kruskol ¶ 18 (Courtesy Copy Ex. H)) These declarations amply demonstrate that first year Associates perform exempt work, consistent with KPMG's expectations. At a minimum, the existence of these sharply contrasting descriptions of the work performed by dozens of Associates precludes Plaintiffs from partial summary judgment on their contention that *all* Associates perform non-exempt work.

Critically, however, while there may be contrasting viewpoints as to the day-to-day work experiences of Associates, there remains *no* dispute that KPMG has shown on a position-wide basis that the job for which each Associate was hired *requires*: (i) the advanced knowledge in accounting sufficient to make each of them CPA-eligible; (ii) the consistent exercise of professional skepticism, due professional care and professional judgment under professional standards; and, therefore (iii) the hallmark elements of discretion and judgment required to classify the Associate job as professionally exempt.

## CONCLUSION

For all of the foregoing reasons, KPMG respectfully requests that the Court deny Plaintiffs' motion for partial summary judgment.

Dated: New York, New York
June 29, 2012

SIDLEY AUSTIN LLP

By:   */s/  Jennifer Altfeld Landau*
      Michael C. Kelley (pro hac vice)
      Jennifer Altfeld Landau (pro hac vice)
      555 West Fifth Street, Suite 4000
      Los Angeles, California 90013
      Tel: (213) 896-6000
      Fax: (213) 896-6600
      Email: mkelley@sidley.com
      Email: jlandau@sidley.com

      Colleen M. Kenney (pro hac vice)
      One South Dearborn Street
      Chicago, Illinois 60603
      Tel: (312) 853-7000
      Fax: (312) 853-7036
      Email: ckenney@sidley.com

      Gregory G. Ballard
      787 Seventh Avenue
      New York, New York 10022
      Tel.: (212) 839-5300
      Fax: (212) 839-5599
      Email: gballard@sidley.com

      *Attorneys for Defendant KPMG LLP*

36