**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Elizabeth Wagoner
Dana Sussman
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg Shavitz (admitted *pro hac vice*)
Keith Stern (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (456) 447-8888

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

KYLE PIPPINS, JAMIE SCHINDLER, and
EDWARD LAMBERT, individually and on
behalf of all others similarly situated,

                            Plaintiffs,                    **No. 11 Civ. 0377 (CM)(JLC)**

             v.

KPMG LLP,

                            Defendant.

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

ARGUMENT ................................................................................................................. 1

I.      KPMG Does Not Describe First-Year Associates' Primary Duty in
        Sufficient Detail ............................................................................................... 1

II.     The "Importance of the Work" Factor Favors Plaintiffs ................................... 1

III.    KPMG Ignores Other Factors Relevant to First-Year Associates' Primary Duty ............. 2

IV.     Advanced Knowledge Is Not Necessary to First-Year Associates' Primary Duty ............ 3

V.      First-Year Associates' Work Does Not Involve Consistent Discretion and
        Judgment ........................................................................................................... 4

VI.     "Field of Learning" Is Not Dispositive ............................................................ 6

VII.    Associates Are Not Exempt Administrators ..................................................... 8

VIII.   KPMG Does Not Create a Triable Issue on Its Good Faith Defense ............... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brock v. National Health Corp.*,
    667 F. Supp. 557 (M.D. Tenn. 1987)...........................................................................6

*Christopher v. SmithKline Beecham Corp.*,
    132 S. Ct. 2156 (2012).................................................................................................4, 5

*Davis v. J.P. Morgan Chase & Co.*,
    587 F.3d 529 (2d Cir. 2009).........................................................................................9, 10

*Ely v. Dolgencorp, LLC*,
    827 F. Supp. 2d 872 (E.D. Ark. 2011).........................................................................1

*Giannullo v. City of New York*,
    322 F.3d 139 (2d Cir. 2003).........................................................................................2

*Henderson v. Transp. Grp., Ltd.*,
    No. 09 Civ. 7328, 2010 WL 2629568 (S.D.N.Y. July 1, 2010) .................................1, 5, 6

*Herman v. RSR Sec. Servs. Ltd.*,
    172 F.3d 132 (2d Cir. 1999).........................................................................................10

*Myrick v. Dolgencorp, LLC*,
    No. 09 Civ. 5, 2010 WL 146874 (M.D. Ga. Jan. 11, 2010)........................................1

*In re Novartis Wage & Hour Litig.*,
    611 F.3d 141 (2d Cir. 2010).........................................................................................6

*Plaunt v. Dolgencorp, Inc.*,
    No. 09 Civ. 079, 2010 WL 5158620 (M.D. Pa. Dec. 14, 2010) .................................1

*Reich v. S. New Eng. Telecommc'ns. Corp.*,
    121 F.3d 58 (2d Cir. 1997)...........................................................................................10

**REGULATIONS**

29 C.F.R. § 541.201 ..........................................................................................................8, 9

29 C.F.R. § 541.202 ..........................................................................................................5, 6

29 C.F.R. § 541.203(b) .....................................................................................................9

29 C.F.R. § 541.301 ..........................................................................................................3, 5, 7, 8

29 C.F.R. § 541.304(a).......................................................................................................7

29 C.F.R. § 541.700(a)..................................................................................................2

29 C.F.R. § 541.705......................................................................................................8

**OTHER AUTHORITIES**

Administrator's Interpretation No. 2010-1 (U.S. Dep't of Labor Mar. 24, 2010),
    *available at*:
    http://www.dol.gov/WHD/opinion/adminIntrprtn/FLSA/2010 /FLSAAI2010_1.pdf
    (last visited July 12, 2012) .......................................................................................9

American Institute of Certified Public Accountants ("AICPA"), *available at*:
    https://www.thiswaytocpa.com/exam-licensure/get-licensed/licensure-checklist/
    (last visited July 12, 2012)........................................................................................8

Merriam-Webster Online Dictionary, *available at*:
    http://www.merriam-webster.com/dictionary/require (last visited July 12, 2012)....................3

American Bar Association 2011-2012 Standards and Rules of Procedure for Approval of
    Law Schools, Chapter 3: Program of Legal Education, Standard 304 & Interpretation
    304-4, *available at*: http://www.americanbar.org/content/dam/aba/publications/
    (last visited July 12, 2012) .......................................................................................7

## ARGUMENT

**I.      KPMG Does Not Describe First-Year Associates' Primary Duty in Sufficient Detail.**

KPMG's conclusory descriptions of the First-Year Associate primary duty do not meet its

burden.  A defendant must provide more than "general descriptions of the functions that [the

plaintiffs] carry out."  *Henderson v. Transp. Grp., Ltd.*, No. 09 Civ. 7328, 2010 WL 2629568, at

*6 (S.D.N.Y. July 1, 2010).  In *Henderson*, the court held that the defendant failed to meet its

burden to prove the plaintiffs exercised discretion and judgment where it described the position

generally and listed their tasks but did not "submit[] evidence describing the specific steps"

involved in performing the tasks.  *Id*.  As discussed below, KPMG makes a similar mistake.

**II.     The "Importance of the Work" Factor Favors Plaintiffs.**

KPMG emphasizes that "primary duty" is determined by identifying the employees'

work that is "most important" to the company, but cannot prove that this criterion favors it.  *See*

*Myrick v. Dolgencorp, LLC*, No. 09 Civ. 5, 2010 WL 146874, at *5 (M.D. Ga. Jan. 11, 2010)

(rejecting "conclusory statement" that duties were important because there was "no evidence"

supporting it).  To determine "relative importance," courts evaluate how the business would run

were the plaintiffs not to perform their nonexempt duties and compare their duties to others.  *See*

*Ely v. Dolgencorp, LLC*, 827 F. Supp. 2d 872, 886 (E.D. Ark. 2011); *Plaunt v. Dolgencorp, Inc.*,

No. 09 Civ. 079, 2010 WL 5158620, at *8 (M.D. Pa. Dec. 14, 2010).[1]

KPMG points to no evidence that exempt First-Year Associate tasks (if any) are more

important to KPMG than tasks that merely require the application of skills.  There is no dispute

that, without Associates, KPMG's ability to complete routine audit work would suffer but work-

---

[1]      KPMG's claim that the primary duty determination "is grounded in the employer's
expectations" is not supported by the cases it cites, which examine what the employees actually
do.  *See* Def. Opp. 14 & n.9.

product review and decision-making capacity would remain.  *See* Def. Resp.[2] ¶¶ 194-97, 202, 204-09, 216, 222-25.

### III.    KPMG Ignores Other Factors Relevant to First-Year Associates' Primary Duty.

KPMG ignores factors relevant to the "primary duty" other than the "importance" factor. It points to no evidence that the First-Year Associate job involves more exempt work than non-exempt work,[3] that First-Year Associates are "relative[ly] free[] from direct supervision," or that it pays First-Year Associates more than non-exempt employees.  29 C.F.R. § 541.700(a). Undisputed evidence weighs in Plaintiffs' favor.  For example,

- First-Year Associates serve as in-charges "very infrequently," between 0-5% of the time, Def. Resp. ¶¶ 124-25;

- First-Year Associates are not expected to make decisions regarding what could go wrong in the client's process activity, *id*. ¶ 163;[4]

- First-Year Associates need not spend much time determining the problem and objectives that the standard auditing procedures that they perform address or the possible alternatives that were considered in selecting the procedures, *id*. ¶ 156;[5]

- Most of First-Year Associates' tasks are laid out for them in audit steps describing the procedures to be completed in gathering audit evidence, *id*. ¶ 155;[6]

---

[2]    "Def. Resp." refers to Defendant KPMG LLP's Response to Plaintiffs' Statement of Undisputed Material Facts, ECF No. 292.

[3]    Plaintiffs do not argue, as KPMG claims, that the most frequent or common work of the First-Year Associate position is the only factor relevant to the primary duty of the position.  *See* Def. Opp. at 17.

[4]    Although KPMG purports to dispute this fact, it actually admits it: "KPMG does not dispute that during Audit Fundamentals, instructors . . . '[r]emind [Associates] that they are not expected to make decisions of what could go wrong for the process activity, but rather they are expected to understand why we identify [What Could Go Wrong] in the process.'"  *See* Def. Resp. ¶ 163.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (unless a fact is specifically disputed, it is deemed admitted).

[5]    KPMG also does not actually dispute this fact: "As noted above, *in addition to the language included in the proposed fact . . . .*"  *See* Def. Resp. ¶ 156 (emphasis added).

[6]    *See* Def. Resp. ¶ 155 ("In addition to the language included in the proposed fact . . . .").

- First-Year Associates do not assess the risk of material misstatement for audits, which impacts the nature, timing, and extent of the substantive procedures that will be performed on the audit, *id.* ¶¶ 164-65;

- First-Year Associates generally do not determine which controls to test, evaluate the risk of failure for the controls they test, or consider the quality of the underlying data, *id.* ¶¶ 175-78;

- Between 95-100% of the time, First-Year Associates do not design analytical procedures, determine the acceptability of any differences with respect to tests of details, decide which sampling method should be used in performing substantive sampling techniques, determine which considerations are factors with respect to testing controls, determine which control deficiencies represent material deficiencies, or make the decision whether a walkthrough should be completed, *id.* ¶¶ 167-68, 171-72, 174, 180;

- First-Year Associates are closely supervised, *id.* ¶¶ 115-16, 129-31, 133-34, 298-301;

- KPMG compensates non-exempt interns at least as well as First-Year Associates. *Compare* ASF[7] ¶ 443 (Plaintiff paid $47,500 salary plus overtime as an intern), *with* Def. Resp. ¶ 408 (average salary of first year Associates is $55,000); *see* Def. Resp. ¶ 402.

## IV.   Advanced Knowledge Is Not Necessary to First-Year Associates' Primary Duty.

KPMG does not meet its burden to prove that First-Year Associates' primary duty

*requires*: (1) knowledge of GAAS and GAAP, or (2) the coursework to be CPA-eligible.[8]  Def.

Opp. at 22.  Under 29 C.F.R. § 541.301(a)(1), an employee's primary duty must be work

"*requiring* advanced knowledge[.]"  *Id.* (emphasis added).  "Requiring" means "demand[ing] as

necessary or essential."[9]  KPMG points to no evidence connecting the purportedly "advanced

knowledge" with what First-Year Associates actually do, much less proving that it is necessary.

KPMG's job postings may suggest that KPMG *wants* new hires to have knowledge of GAAS

and GAAP, but do not establish that it is *necessary*.  Likewise, while KPMG may prefer that new

---

[7]      "ASF" refers to Plaintiffs' Corrected Statement of Additional Undisputed Material Facts, ECF No. 300.

[8]      Plaintiffs dispute that this is "advanced knowledge." *See* Pls. Br. at 24, ECF No. 272.

[9]      *See* Merriam-Webster Online Dictionary, *available at*: http://www.merriam-webster.com/dictionary/require (last visited July 12, 2012).

Associates are eligible to take the CPA exam, it presents no evidence that First-Year Associates *need* to be CPA-eligible to do the job.[10]

KPMG also repeats the conclusory proposition that "all members of engagement teams are required to be knowledgeable in GAAP and GAAS," Def. Opp. at 10, but provides no evidence explaining why. KPMG also claims that "[f]or an auditor to effectively exercise judgment, he or she *should* have a firm foundation in the technical aspects of GAAP and GAAS," *id.* at 20, but does not argue that such a foundation is *necessary* to what First-Year Associates do. While KPMG claims that its "internal guidance *anticipates* that Audit Associates will have extensive education in accounting," *id.*, it fails to show that any part of the First-Year Associate job demands it.

KPMG also does not effectively dispute Plaintiffs' evidence that the first year is a "learning experience." It claims the evidence is "inapt" and "provides no insight," but admits that it used it to "provide practical orientation" to new Associates in its Washington, D.C. office. Def. Opp. at 7-8. KPMG does not contradict the contents, including that the "first year is a learning experience," or claim the document or ones like it were not used nationwide.

## V. First-Year Associates' Work Does Not Involve Consistent Discretion and Judgment.

KPMG's mantra that "[p]rofessional standards govern" does not carry its burden because the undisputed evidence shows that "professional judgment," "professional skepticism," and "due professional care" mean something very different than "discretion and judgment" under the FLSA.[11] *Compare* Def. Resp. ¶ 227 ("professional judgment" means "the exercise of good

---

[10]     In fact, it is undisputed that the reason KPMG urges Associates to take and pass the CPA exam during their first few years at the firm before they become Managers is so that they will not have to spend time studying as Senior Associates. *See* Def. Resp. ¶ 340.

[11]     KPMG is wrong that the reference in *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012), to "a functional, rather than a formal inquiry . . . in the context of the particular

judgment in the performance of one's duties"); ¶¶ 233-36 ("professional skepticism" is a "mindset" that involves "not blindly trusting that information is correct without verifying it" and "approach[ing] issues in an objective, balanced way"); ¶ 238 ("due professional care" means "exercis[ing] professional skepticism"), *with* 29 C.F.R. § 541.202(a)[12] ("the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered").  These concepts reveal nothing about what First-Year Associates do.[13]  *See Henderson*, 2010 WL 2629568, at *6 (general descriptions insufficient).

Critically, KPMG admits that eAudit, its proprietary software program, takes care of almost everything.  eAudit walks Associates "through the steps that must be completed for each area of the audit" and "guides them through various screens that assist them to respond to specific questions or take specific actions."  *See* Def. Resp. ¶¶ 284-86, 288;[14] 29 C.F.R. § 541.202(e) ("must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources").

KPMG admits that "evaluating" the results of an inventory count means agreeing numbers and looking for discrepancies, *see* Def. Resp. ¶ 143; and that it instructs Associates to follow certain "steps" when they find discrepancies, including elevating issues to somebody else or simply recounting, *see id.*  KPMG cannot rely on phrases like, "make many judgments about

---

industry," *id.* at 2170, requires the Court to adopt KPMG's world-view.  To the contrary, a "functional" inquiry "in the context of" the accounting industry supports a finding that the lowest-level employees are not exempt professionals or administrators.

[12]     *See also* 29 C.F.R. § 541.301 (does not include "routine mental . . . work"); 29 C.F.R. § 541.202(c) ("implies that the employee has authority to make an independent choice, free from immediate direction or supervision"); 29 C.F.R. § 541.202(e) ("does not include clerical . . . work, recording or tabulating data, or other . . . repetitive, recurrent or routine work").

[13]     KPMG fails to argue and points to no evidence that the work that First-Year Associates perform is "predominantly intellectual in character."  *See* 29 C.F.R. § 541.301(b).

[14]     KPMG argues that "Audits are not executed by computer, and auditors do not merely follow rote guidelines laid out in a computer program or manual," but cites no evidence in its support.  *See* Def. Resp. ¶ 285.

the scope of inquiry," "constantly assess the design and operating effectiveness[,]" and

"discussing judgment scenarios," Def. Opp. at 12-13, without explaining what they mean.

*Henderson*, 2010 WL 2629568, at *6.

Similarly, just saying that a training module on obsolete inventory "makes crystal clear"

that discretion and judgment are involved, *see* Def. Opp. at 12, does not make it so.  In fact, a

look at this module reveals Associates who "notice a bin of inventory items that appear to be

dusty and . . . damaged" in the "back corner of the [a] warehouse," should follow up.  *See* Swartz

Decl.[15] Ex. GG at KPMG-PIP 0098438-40.  KPMG does not even argue that this requires "the

comparison and the evaluation of possible courses of conduct."  29 C.F.R. § 541.202(a).

The fact that Associates "directly communicate with client representatives" and ask

follow up questions are not examples of discretion and judgment.  *See* Def. Opp. at 12; *In re

Novartis Wage & Hour Litig.*, 611 F.3d 141, 156-57 (2d Cir. 2010), *abrogated on other grounds

by Christopher*, 132 S. Ct. 2156 (answering questions about a product and recognizing a

persuasive message is not discretion); *Henderson*, 2010 WL 2629568, at *7 ("authority to

discuss [with clients] other transactions when [a client] inquires" is not judgment).

KPMG addresses *Brock v. National Health Corp.*, 667 F. Supp. 557 (M.D. Tenn. 1987),

stating that "Associates are not bookkeepers."  *See* Def. Opp. at 19.  The *Brock* plaintiffs were

"staff accountants," the title that KPMG previously used for Associates.  *See* Def. Resp. ¶ 366.[16]

## VI.   "Field of Learning" Is Not Dispositive.

KPMG is wrong to suggest that anyone working in a field of learning is presumptively

exempt.  *See* Def. Opp. at 17-18, 21.  It must prove all three elements of the professional

---

[15]   "Swartz Decl." refers to the Declaration of Justin M. Swartz in Support of Plaintiffs'
Motion for Partial Summary Judgment, ECF No. 273.
[16]   Plaintiffs do not "claim that consultation with others precludes exempt status," as KPMG
tells the Court.  *See* Def. Opp. at 19 n.12.

exemption. *See* 29 C.F.R. § 541.301(a). The preamble to the 2004 FLSA regulations does not

equate "working in a field of learning" with "exercising judgment and discretion," *see* Def. Opp.

at 18, it simply observes that workers who meet all three elements usually exercise discretion and

judgment, *see id*. KPMG is also wrong to suggest that all CPAs are exempt. *See* Def. Opp. at

16. CPAs only "*generally* meet the [exemption's] duties requirement." *See* 29 C.F.R. §

541.301(e)(5) (emphasis added). Unlike licensed lawyers and doctors, CPAs are not

automatically exempt. *See* 29 C.F.R. § 541.304(a)(1)-(2) (lawyers and doctors provision).

First-Year Associates are not "similar to" "certified public accountants" under 29 C.F.R.

§ 541.301(e)(5). To make sense in the context of the rest of the exemption criteria, "certified

public accountants" must refer to workers who not only have licenses but actually require them

to perform their duties. While some First-Year Associates have CPAs, a CPA is not required at

KPMG until the manager level. Def. Resp. ¶ 336. KPMG cannot seriously argue that First-Year

Associates perform duties similar to Managers. *See id*. ¶¶ 41, 43, 46, 61-62.

KPMG's comparison of First-Year Associates with first year lawyers is also misguided.

*See* Def. Opp. at 7, 9. First year lawyers have three years of education in law including 83

semester hours[17] *after* obtaining their undergraduate degrees *and* must be licensed to perform

their primary duty. First-Year Associates need only have a few undergraduate courses in

accounting to be hired and do not require any courses in auditing, a degree in accounting, or a

license to perform their primary duty. *See* Def. Resp. ¶¶ 304, 311, 313, 317. In addition, unlike

the legal profession, which allows new lawyers to practice without an apprenticeship period, the

---

[17]     *See* American Bar Association 2011-2012 Standards and Rules of Procedure for
Approval of Law Schools, Chapter 3: Program of Legal Education, Standard 304 &
Interpretation 304-4, *available at*: http://www.americanbar.org/content/dam/aba/publications/
misc/legal_education/Standards/2012_standards_chapter_3.authcheckdam.pdf (last visited July
12, 2012).

accounting industry substitutes a one or two-year apprenticeship for post-graduate studies as a requirement to enter the profession.[18]  First-Year Associates do not have two years of experience and are therefore not yet accountants.  The exemption "do[es] not apply to employees training for employment in . . . [a] professional . . . capacity who are not actually performing the duties of . . . [a] professional . . . employee."  29 C.F.R. § 541.705.[19]

## VII.   Associates Are Not Exempt Administrators.

KPMG is wrong that Associates' primary duty is directly related to its clients' management or general business operations because it admits that Associates cannot act on behalf of clients' management, participate in the management or operations of the client they are auditing, be involved in running its business, perform clients' bookkeeping functions, serve as the accounting department for clients, or perform "payroll and other services related to accounting records or financial statements, financial information systems design or implementation services, appraisals or valuations, actuarial services, internal audit outsourcing, human resource services, broker-dealer services, legal services, or expert services unrelated to the audit."  Def. Resp. ¶¶ 20-27, 30.  These restrictions make Associates unlike workers who work in "functional areas such as . . . auditing," 29 C.F.R. § 541.201(b), including the in-house accountants in the cases that KPMG cites.  *See* Def. Opp. at 25 n.16.

---

[18]    *See* Def. Resp. ¶ 337; *see also* AICPA website, https://www.thiswaytocpa.com/exam-licensure/get-licensed/licensure-checklist/ ("Most states require at least two years of experience in public accounting before allowing [individuals] to practice as a CPA.") (last visited July 12, 2012).

[19]    KPMG also cites 29 C.F.R. § 541.301(d), Def. Opp. at 20 n.14, but it omits the most important part of the sentence it quotes: "but who attained the advanced knowledge through a combination of work experience and intellectual instruction," 29 C.F.R. § 541.301(d).  It also leaves out the example in the next sentence, which makes it inapplicable: "Thus, for example, the learned professional exemption is available to the occasional lawyer who has not gone to law school, or the occasional chemist who is not the possessor of a degree in chemistry."  *Id.*

KPMG is wrong that Associates are exempt because audits are "important" to its clients.  "The border between administrative and production work does not track the . . . importance" of the work.  *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 532-33 (2d Cir. 2009).  Even if obtaining an audit opinion is required by law, Associates' primary duty is performing "audit work,"  Def. SOF[20] ¶ 48, and helping to produce "the primary output of [KPMG's] business," *Davis*, 587 F.3d at 535, not "acting as advisers or consultants," *see* 29 C.F.R. § 541.201(c).  KPMG admits that regulations prohibit it from providing advisory services to audit clients.  Def. Resp. ¶ 30.  The fact that a client might improve its internal controls or financial reports as a result of an audit, Def. Opp. at 26, does not even raise an inference that Associates' primary duty is "determining the overall course and policies of [KPMG's clients'] business."  *See Davis*, 587 F.3d at 534.

The financial services regulation, 29 C.F.R. § 541.203(b), is completely irrelevant, *see* Def. Opp. at 28, because it applies to workers in the financial services industry (not the accounting industry) and distinguishes between administrative employees "and those whose primary duty is selling the employer's financial products."  Administrator's Interpretation No. 2010-1 (U.S. Dep't of Labor Mar. 24, 2010) at 8.[21]  KPMG does not even claim that Associates' primary duty is listed in the regulation.  *See* 29 C.F.R. § 541.203(b); Def. Resp. ¶ 63; Def. SOF ¶ 48.

KPMG tries to sidestep *Davis*'s interpretation of the administrative/production dichotomy by quoting caselaw from other Circuits, but *Davis*, which is binding here, holds that the dichotomy applies to industries that produce "intangible service[s]" as well as "material

---

[20]   "Def. SOF" refers to KPMG's Statement of Undisputed Material Facts, ECF No. 266.
[21]   *Available at*: http://www.dol.gov/WHD/opinion/adminIntrprtn/FLSA/2010 /FLSAAI2010_1.pdf (last visited July 12, 2012).

good[s]." 587 F.3d at 532. In any case, the primary output of an audit is a tangible good – an independent audit opinion. *See* Def. Resp. ¶¶ 2, 5. *Davis* also does not say that production workers can *only* be evaluated based on the "literal number of items produced," *see* Def. Opp. at 29, but looks to whether the employer quantifies the employees' work, *see Davis*, 587 F. 3d at 534-35. Like measuring productivity by "'average of total actions per day[,]'" *id.* at 534, KPMG measures Associates' work based on their utilization percentage, *see* Def. Resp. ¶¶ 47-50, 52, 54.

Finally, after telling Plaintiffs that it planned to withdraw its administrative exemption defense on a class-wide basis and sending Plaintiffs the amended Answer it planned to file, *see* Swartz Decl. Ex. EEE, KPMG's vigorous support of this exemption (without a word about its prior representations) calls its good faith into question and should not be rewarded.

## VIII.   KPMG Does Not Create a Triable Issue on Its Good Faith Defense.

KPMG has failed to "produce 'plain and substantial evidence of an honest intention to ascertain what the Act requires and to comply with it.'" *Reich v. S. New Eng. Telecommc'ns. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). KPMG admits that it never questioned or re-evaluated its assumption that Associates are exempt, Def. Resp. ¶¶ 377, 386-87, 389-90, 392-94, and KPMG's corporate representative was unable to identify any steps that KPMG took at any time to determine whether it had properly classified Associates, *id*. ¶¶ 382, 388. The cases on which KPMG relies are distinguishable because the courts found "good faith" based on evidence of the specific steps that the employers took to investigate their classification decisions. Plaintiffs do not have to prove "bad faith," as KPMG suggests.[22]

---

[22]    KPMG is wrong that liquidated damages are available only where the employer acted in "bad faith." *See* Def. Opp. at 31; *see Reich*, 121 F.3d at 71 (liquidated damages are presumed unless "overcome . . . by the employer's [showing of] 'good faith'"); *accord Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 142 (2d Cir. 1999).

Dated:      New York, New York
              July 13, 2012

Respectfully submitted,

**OUTTEN & GOLDEN LLP**
By:

/s/ Justin M. Swartz
Justin M. Swartz
Rachel Bien
Elizabeth Wagoner
Dana Sussman
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg Shavitz (admitted *pro hac vice*)
Keith Stern (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (456) 447-8888

**Attorneys for Plaintiffs**