UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- X
                                                   :

KYLE PIPPINS, JAMIE SCHINDLER, and EDWARD    :
LAMBERT, Individually and On Behalf of All Others    :    11 CV 0377 (CM) (JLC)
Similarly Situated,                                      :
                   Plaintiffs,                   :
             -against-                       :
                                        :
KPMG LLP,                                          :
                   Defendant.                  :
------------------------------------------- X


# KPMG LLP'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10022
Tel.: (212) 839-5300
Fax: (212) 839-5599

*Attorneys for Defendant KPMG LLP*

LA1 2506455v.1

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 1

    I.     Overview Of KPMG's Audit Practice And Applicable Professional Audit Standards ................................................................................................... 1

    II.    KPMG's Recruiting And Hiring Of Audit Associates .......................................... 3

    III.   KPMG's Training Of Audit Associates ................................................................. 4

    IV.   The Role Of Audit Associates ............................................................................... 4

ARGUMENT .................................................................................................................................. 5

    I.     KPMG Audit Associates Are Professionals ........................................................... 5

         A.    Accounting Is A Learned Profession ......................................................... 5

         B.    Audit Associates Are Required To Possess Advanced Knowledge Obtained Through A Prolonged Course Of Specialized Instruction And Study ............................................................ 5

         C.    Audit Associates Have A Primary Duty Requiring Advanced Knowledge ................................................................................................. 6

CONCLUSION ............................................................................................................................. 10

LA1 2506455v.1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brock v. Nat'l Health Corp.*,
   667 F. Supp. 557 (M.D. Tenn. 1987) .................................................................................. 6

*Cohanzick Partners, L.P. v. FTM Media, Inc.*,
   120 F. Supp. 2d 352 (S.D.N.Y. 2000) ................................................................................. 1

*Hendricks v. J.P. Morgan Chase Bank, N.A.*,
   677 F. Supp. 2d 544 (D. Conn. 2009) ................................................................................. 6

*Ho v. Ernst & Young LLP*,
   No. C 05-04867, 2008 U.S. Dist. LEXIS 16713 (N.D. Cal. Mar. 4, 2008) ......................... 9

*Marx v. Friendly Ice Cream Corp.*,
   380 N.J. Super. 302, 882 A.2d 374 (App. Div. 2005) ........................................................ 9

**STATUTES AND REGULATIONS**

29 C.F.R. § 541.301(b) .............................................................................................................. 9

29 C.F.R. § 541.301(c) .............................................................................................................. 5

29 C.F.R. § 541.301(e)(5) .......................................................................................................... 6

29 C.F.R. § 541.704 ............................................................................................................... 3, 7

Cal. Bus. & Prof. Code § 5092 ............................................................................................... 10

225 Ill. Comp. Stat 450/14 ..................................................................................................... 10

Minn. Stat. § 326A.03 ............................................................................................................ 10

N.Y. Comp. Codes R. & Regs. tit. 8, § 70.3 .......................................................................... 10

22 Tex. Admin. Code § 511.122(c) ........................................................................................ 10

Va. Code Ann. § 54.1-4400 .................................................................................................... 10

**RULES AND OTHER AUTHORITIES**

Defining and Delimiting the Exemptions for Executive, Administrative,
   Professional, Outside Sales and Computer Employees, the Preamble to the
   2004 Final Rule, 69 Fed. Reg. 22122, 22152 (Apr. 23, 2004) ........................................ 7, 9

LA1 2506455v.1

UNIFORM ACCOUNTANCY ACT MODEL RULES R. 6-2(d)(2)
(Nat'l Ass'n of State Bds. of Accountancy July 29, 2011),
http://www.aicpa.org/advocacy/state/downloadabledocuments/
uaamodelrules2011.pdf .................................................................................................. 10

**AUDITING AND QUALITY CONTROL STANDARDS**

AS No. 2 ............................................................................................................................. 4

AS No. 5 ............................................................................................................................. 4

KPMG LLP ("KPMG") submits this Reply Memorandum in Support of its Motion for Summary Judgment with respect to Plaintiffs' Fair Labor Standards Act ("FLSA") claims.

## PRELIMINARY STATEMENT

In its opening ("KPMG Mem."), KPMG showed that Audit Associates are exempt professionals. In their opposition ("Pls. Opp."), Plaintiffs protest that "a jury could find" some aspect of the exemption to be missing. Despite their length, Plaintiffs' papers (a) ignore the evidence of Associates' primary duty (performing audit procedures consistent with professional standards) and (b) mischaracterize the selective snippets of documents and testimony they cite. Plaintiffs identify no genuine disputed issue of material fact barring summary judgment. *See Cohanzick Partners, L.P. v. FTM Media, Inc.*, 120 F. Supp. 2d 352, 357-58 (S.D.N.Y. 2000). On this record, a jury could *not* find that any element of the professional exemption is lacking. The job requirements, the accounting education and training needed to perform the job, and the applicable professional standards (requiring professional skepticism and judgment) are facts as to which there is no genuine dispute, and they establish the professional exemption. Plaintiffs ask the Court not "to stretch the bounds of the professional exemption" (Pls. Opp. at 10), but it is no stretch to conclude that – consistent with history, common sense, and the law – Audit Associates are professionals. Plaintiffs cite no persuasive authority to the contrary.

## FACTUAL BACKGROUND

**I.     Overview Of KPMG's Audit Practice And Applicable Professional Audit Standards**

Plaintiffs do not attempt to dispute most of the relevant facts set forth in KPMG opening brief. (KPMG Mem. at 3-7) For example, Plaintiffs do not dispute the well-established regulatory framework for the issuance of audited financial statements by public and private entities, and the significance and content of generally accepted accounting principles ("GAAP") and generally accepted auditing standards ("GAAS"). Plaintiffs also do not dispute that the

auditing standards are applicable to all auditors, including Associates. Nor do they dispute that the documents KPMG submitted communicate its expectations of the Associates' duties.[1]

Instead, Plaintiffs attempt to *create* a fact dispute through unsupported assertions that are demonstrably false. Inasmuch that many of the assertions in Plaintiffs' opposition are duplicative of Plaintiffs' motion for summary judgment, KPMG refers where appropriate to its previously-filed papers in opposition to Plaintiffs' motion ("KPMG Opp." [ECF Dkt. No. 291]). For example, Plaintiffs mischaracterize the record in asserting that audit teams are "leveraged operations with a few decision-makers at the top of the pyramid" and that the engagement partner is the "final decision-maker in all respects." (KPMG Opp. at 2) While the engagement partner has ultimate responsibility for the engagement, all members of the audit team are called upon to make decisions on a daily basis, based on their professional judgment, and as in any profession the escalation of matters to more senior professionals takes place on a case by case basis as called for in the circumstances. (KPMG Opp. at 9-10) Similarly, the assertion that the engagement partner "is responsible for planning the engagement from beginning to end" (Pls. Opp. at 2) is erroneous. Audit planning *begins* at the outset of the audit, but continues throughout the audit as auditors conduct audit procedures and as required by professional standards continually re-assess and adjust their procedures in light of the audit evidence, and Associates play a significant role in such planning. (Pls. Opp. at 10-11)

---

[1] Plaintiffs admit ¶¶ 1-2, 2a, 2b, 6-9, 16-17, 25-26, 30, 32-33, 37, 39, 49, 53-57, 60b, 62 & 62a, and admit with minor qualifications ¶¶ 36, 50 & 51 of KPMG's SOF. They admit ¶¶ 4, 10, 19, 21, 24, 38, 43-44, 48, 58 & 59a, subject to the conclusory qualification that they dispute that Associates are "professionals" and that the exercise of due professional care, professional judgment and professional skepticism constitute the exercise of discretion and judgment within the meaning of the FLSA. Plaintiffs do not respond to ¶¶ 22-23. They attempt to dispute the remaining paragraphs, but based on evidence that does not support their denial. (*See* KPMG's Response to Plaintiffs' Statement of Undisputed Material Facts ("KPMG Resp. SOF") [ECF Dkt. No. 292]).

2

Plaintiffs contend that Associates merely "execute audit procedures" (Pls. Opp. at 2-3), but ignore that such execution – consistent with professional standards – requires them to apply their knowledge and skills and exercise their judgment. The evidence is unambiguous on this point. As in any career track profession, Associates are supervised by more senior colleagues, but that does not alter the fact that they are all professionals who are *required* to exercise their own independent judgment, by the professional standards and by the job responsibilities that KPMG reasonably expects and requires Associates to fulfill. (KPMG Opp. at 5-7)

Plaintiffs' observation that the professional audit standards are "vague" (Pls. Opp. at 9) is an oversimplification, but it actually *proves* the need for judgment. That standards governing auditors (like those governing lawyers) may be of a general or vague nature does not change the fact that they are professional standards that members of the profession must follow. KPMG's proprietary audit methodology and training materials assist individuals in applying the standards in practice. In many instances, where a standard is arguably vague – e.g., attorneys may be required to avoid "conflicts of interest" or "the appearance of impropriety" – the generality of the standard reflects the fact that practitioners must use professional judgment in interpreting and applying it in a particular set of factual circumstances. In other words, the professional standards are not like cookbooks, providing step by step instructions on how to conduct audit procedures. Such standards are hallmarks of *professions* populated by *professionals* who must use their advanced education and professional judgment to apply them.  *See* 29 C.F.R. § 541.704 (use of manuals or procedures does not preclude exemption or affect an employee's exempt status").

**II.    KPMG's Recruiting And Hiring Of Audit Associates**

Plaintiffs contend that KPMG does not require Associates to earn "any particular degree" and allows Associates to satisfy the standards for CPA-eligibility "in any state" and characterize the coursework Associates undertake in college and graduate school as "foundational." (Pls.

3

Opp. at 8-9) As previously shown, these assertions have no validity. (KPMG Opp. at 3-5, 15-16; KPMG Resp. SOF at ¶¶ 305-06 [ECF Dkt. No. 292]) KPMG hires people who are CPA-eligible, which is determined by state boards of accountancy and does not require any particular degree. It is defined in terms of a course of college study that includes a minimum number of accounting credits (usually referred to as a "concentration") plus a minimum number of business courses. To denigrate the accounting education offered by colleges and universities and defined by state boards of accountancy as merely "foundational" is simply without basis. (*See, e.g.,* KPMG Opp. at 15-16, 20-22)

### III. KPMG's Training Of Audit Associates

The evidence regarding KPMG's training programs (KPMG Mem. at 9-14) is also uncontradicted (other than where Plaintiffs misrepresent its plain meaning). KPMG offers training that builds on the specialized accounting knowledge that entering Associates already possess, and KPMG makes clear its expectation that Associates use judgment. (KPMG Mem. at 12; KPMG Opp. at 5) Plaintiffs' claim that Associates merely "execute audit procedures learned in KPMG training and on the job" (Pls. Opp. at 3) is false (KPMG Opp. at 8-9).

### IV. The Role Of Audit Associates

As for the role of Associates (KPMG Mem. at 14-27), Plaintiffs attempt to discount the importance of judgment and discretion by mischaracterizing Associates' actual job responsibilities as dictated by KPMG and professional standards. Plaintiffs' focus on two of the many types of procedures that Associates perform – inventory counts and walkthroughs – actually disproves their contention. Contrary to Plaintiffs' assertions (Pls. Opp. at 3-4), these procedures require the continual exercise of professional judgment (KPMG Opp. at 11-13). Audit standards state that walkthroughs, for example, require the use of judgment. (AS No. 2 ¶ 116; AS No. 5 ¶¶ 34-37) Plaintiffs' assertions regarding supervision of Associates and the

4

planning of audits (Pls. Opp. at 4) are similarly inaccurate (KPMG Opp. at 9-10). Contrary to Plaintiffs' claim (Pls. Opp. at 5), KPMG has not characterized Associate work as "non-judgmental" (KPMG Opp. at 6). Nor has KPMG instructed Associates not to use judgment (Pls. Opp. at 6), but rather instructs Associates to use judgment in everything that they do (KPMG Opp. at 13). The suggestion that eAudit software and KPMG manuals provide Associates with a step-by-step way to perform the job using judgment (Pls. Opp. at 3, 7) similarly misstates the evidence, as no audit that complies with professional standards can be conducted in such a manner. (KPMG Resp. SOF at ¶¶ 283-89; *see also* KPMG's Reply to Plaintiffs' Counter-Statement filed concurrently herewith ("KPMG Reply SOF") at Section I, ¶ 3) In some instances, Plaintiffs rely on their own testimony (*e.g.,* Pls. Opp. at 3), but their testimony cannot be heard to contradict the uncontested evidence of the job requirements as formulated by KPMG or the professional standards imposed on Associates by the AICPA and the PCAOB. Rather, and as discussed below, Plaintiffs' testimony only proves that they failed to perform the job they were hired for, and it is settled that employees cannot create an FLSA claim by merely asserting that they failed to perform the job as required by their employer.

## ARGUMENT

### I. KPMG Audit Associates Are Professionals

#### A. Accounting Is A Learned Profession

KPMG previously demonstrated (KPMG Mem. at 20) that accounting is a "field of science or learning." 29 C.F.R. § 541.301(c). Plaintiffs do not contest this element.

#### B. Audit Associates Are Required To Possess Advanced Knowledge Obtained Through A Prolonged Course Of Specialized Instruction And Study

Notwithstanding KPMG's showing that knowledge of accounting is "customarily acquired by a prolonged course of specialized intellectual instruction" (KPMG Mem. at 20-23),

5

Plaintiffs argue that a jury might find otherwise because KPMG requires "as few as four or five accounting courses" (Pls. Opp. at 22-23), the education might not be "specialized" enough (*id.* at 23-24), and Associates learn "on the job" (*id.* at 24-25). As previously demonstrated, these contentions are untrue. (KPMG Opp. at 3-5, 7-9, 20-22) Associates arrive at KPMG with the same educational backgrounds as licensed CPAs (who are unquestionably exempt professionals). If Plaintiffs were correct that accounting knowledge is not customarily acquired though a prolonged course of specialized intellectual instruction, then no auditor – not even the most senior audit partner – would qualify for the professional exemption, a proposition that is contrary to law and common sense on its face. (KPMG Opp. at 16-17) *See* 29 C.F.R. § 541.301(e)(5) (CPAs generally meet professional exemption, and "many other accountants who are not certified public accountants but perform similar job duties may qualify").

### C. Audit Associates Have A Primary Duty Requiring Advanced Knowledge

Plaintiffs argue that a jury could find that Associates' primary duty is not to perform work requiring "advanced knowledge" on the ground that their work is not "predominantly intellectual in character" and does not involve "the consistent exercise of discretion and judgment." (Pls. Opp. at 13) Plaintiffs' argument is based on several contentions, each of which the uncontroverted record shows to be false.[2]

First, Plaintiffs contend, incorrectly, that Associates merely apply "well-established techniques, procedures or specific standards described in manuals or other sources." (Pls. Opp. at

---

[2] The case on which Plaintiffs rely most heavily, *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 677 F. Supp. 2d 544 (D. Conn. 2009), is not on point. *Hendricks* was an action by employees of a bank, not an accounting firm. The employees in question held jobs in the bank's hedge fund group; they did *not* perform work on audits of public or private companies. *Id.* at 547. Moreover, there was evidence that they might have functioned as mere bookkeepers, not required to possess knowledge of accounting, which precluded the court from determining as a matter of law that the professional exemption applied. *Id.* at 553-54. *Brock v. Nat'l Health Corp.*, 667 F. Supp. 557 (M.D. Tenn. 1987), is also inapposite, as explained previously. (KPMG Opp. at 19)

6

14-15) As noted above (*supra* at 3), and as Plaintiffs appear to concede (Pls. Opp. at 9), the professional standards are often general, and professionals must use judgment in applying them in the particular circumstances they encounter during an audit (KPMG Opp. at 17-18) *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, the Preamble to the 2004 Final Rule, 69 Fed. Reg. 22122, 22152 (Apr. 23, 2004) (hereinafter "Preamble") (CPAs do not lose professional exemption because they follow GAAP); 29 C.F.R. § 541.704 (referencing manuals in financial matters does not preclude exemption). Additionally, Plaintiffs mischaracterize the evidence regarding the use of manuals and the significance of due professional care and related professional obligations, and Plaintiffs' contentions regarding the nature of the professional standards are conclusively refuted by the standards themselves. (*See* KPMG Opp. at 5-7; KPMG Reply SOF at Section I, ¶¶ 6-21)

Plaintiffs describe certain tasks as routine. (Pls. Opp. at 14-15 ("[e]ven the complicated-sounding audit tasks simply require carefully following established procedures"). But the evidence does not support this assertion. (KPMG Opp. at 11-13; KPMG Reply SOF at Section II, ¶¶ 142-43, 151-61) The evidence shows that accounting and auditing are complicated, and it takes the advanced knowledge that Associates accumulate through years of education to understand and perform their work with the required "due professional care." These duties can only be called "simple" or "routine" by distorting them. Plaintiffs would transform an important procedure such as "testing the operating effectiveness [of internal controls]," which clearly requires judgment, analysis and skill to perform (KPMG Mem. at 15), into a mindless exercise that "means following a procedure and filling in a template" (Pls. Opp. at 15 (emphasis added)). One might as well assert that "legal research" is not as complicated as it sounds, because all it really means is "using a computer or index to look up cases and write down what they say."

7

Second, Plaintiffs contend that Associates do not weigh alternatives and make decisions. (Pls. Opp. at 16-18) This suggestion is false. For example, when an Associate conducts a walkthrough and documents it in a work paper, the Associate makes daily decisions in the field about what questions to ask and about how to document the work consistent with professional standards. A manager will likely review that work paper, and may make notations or comments on the work paper or request additional follow-up procedures or documentation, but the fact that the manager conducts a higher-level review of the work and documentation does not alter the fact that the Associate in the initial instance performed the procedure and documented it and, in doing so, make decisions, exercised judgment. (KPMG Opp. at 11-13, 18-19) By Plaintiffs' logic, a law firm associate who conducts legal research, formulates arguments, and prepares an initial draft of a legal brief is performing non-exempt work because a law firm partner thereafter reviews and edits it and signs the final brief that is filed with the Court. Again, these points have been well-established based on uncontested record evidence. (*Id.*)

Third, Plaintiffs characterize Associates' work as "routine" (Pls. Opp. at 18-20), but again the evidence does not support this characterization and shows the contrary, and even the specific tasks that Plaintiffs single out, inventory observations and walkthroughs, necessarily involve the exercise of judgment and discretion. These arguments have already been fully debunked in KPMG's prior submissions. (KPMG Opp. at 18-19).

Finally, Plaintiffs contend that due professional care, professional skepticism, and professional judgment as required by auditing standards are not the same as "discretion" and "judgment" for purposes of the FLSA. (Pls. Opp. at 20-22) But there is no reason to conclude that Congress and the DOL use these terms in a manner inconsistent with the way they are used by the AICPA and the PCAOB. As a related matter, as KPMG has shown (KPMG Opp. at 17-

8

18), the DOL regulations do not require that the most common work performed require the exercise of judgment, but rather that the primary (most important) duty be "predominantly intellectual in character," which "includes work requiring the consistent exercise of discretion and judgment." 29 C.F.R. § 541.301(b); *see also* Preamble, 69 Fed. Reg. at 22151 ("having a primary duty of 'performing work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction' includes, by its very nature, exercising discretion and independent judgment"). (KPMG Opp. at 18)

Plaintiffs' reliance on testimony from individual plaintiffs who claim that they performed menial mechanical tasks without using much judgment (Pls. Opp. at 18) fails to create a genuine issue as to the primary duty of *all* Associates – *i.e.*, to perform audit procedures in a manner consistent with professional standards. Rather, at most, Plaintiffs' self-serving testimony proves only that Plaintiffs failed to perform the job required of them, and Plaintiffs may not concoct an FLSA claim in this manner. (KPMG Opp. at 33-35)[3]

If Plaintiffs were correct that Associates do not need to use accounting knowledge to perform their primary duty, then Associates would be hard-pressed to satisfy the experience requirements for licensure as CPAs. But many Associates are licensed based on their work as Associates. Of the opt-in plaintiffs, at least 351 received CPA licenses, 323 within 3 years of their hire date, presumably based on work performed as Associates to meet the experience

---

[3] *Cf. Ho v. Ernst & Young LLP*, No. C 05-04867, 2008 U.S. Dist. LEXIS 16713, at *13-14 (N.D. Cal. Mar. 4, 2008) ("'[a]n employee who is supposed to be engaged in [exempt] activities during most of his working hours and falls below the fifty percent mark due to his own substandard performance should not thereby be able to evade a valid exemption'"; granting summary judgment based on determination that plaintiff met "administrative" exemption); *Marx v. Friendly Ice Cream Corp.*, 380 N.J. Super. 302, 323, 882 A.2d 374, 387 (App. Div. 2005) (trial court correctly concluded that if restaurant general managers spent less time on managerial tasks than required to qualify for the exemption then "'they are not performing their function as managers'"; affirming judgment after bench trial based on determination that plaintiffs met "executive capacity" exemption).

9

requirement. (Declaration of Jennifer Altfeld Landau in Support of KPMG's Opposition to Plaintiffs' Motion for Summary Judgment, Ex. V [ECF Dkt. No. 293-22]) Most were licensed in a few states: New York (45), California (37), Texas (26), Illinois (26), Virginia (20) and Minnesota (12). (*Id.*) These states impose significant experience requirements (for example, Texas requires that applicants have performed non-routine services requiring the use of independent judgment).[4] That numerous opt-ins have secured CPA licenses confirms that Associates perform exempt work. It is because these Associates were performing non-routine audit services that require advanced knowledge – consistent with the primary job duty as defined by KPMG and professional standards – that they were able to meet the experience requirements and obtain CPA licenses.

## CONCLUSION

For the reasons set forth above and in its opening memorandum, Defendant KPMG respectfully requests that the Court grant its motion for summary judgment.

---

[4] For example, Texas requires as follows: "All work experience, to be acceptable, shall be gained in the following categories or in any combination of these: (1) Client practice of public accountancy. All work experience gained in a firm in the client practice of public accountancy must be of a non-routine accounting nature which continually requires independent thought and judgment on important accounting matters." 22 Tex. Admin. Code § 511.122(c). The regulation defines "non-routine accounting" as "attest services . . . or professional accounting services or professional accounting work  . . ., and the use of independent judgment, applying entry level or higher professional accounting knowledge and skills to select, correct, organize, interpret, and present real-world data as accounting entries, reports, statements, and analyses extending over a diverse range of tax, accounting, assurance, and control situations." (*Id. § 511.122(b)*) The other five states use a standard from the Uniform Accountancy Act (or a close variant of it): "Experience may consist of providing any type of services or advice using accounting, attest, compilation, management advisory, financial advisory, tax or consulting skills." As relevant to an audit associate, to meet this standard, they would have to demonstrate that they did work that consisted of "providing any type of services or advice using accounting [or] attest … skills." (UNIFORM ACCOUNTANCY ACT MODEL RULES R. 6-2(d)(2) (Nat'l Ass'n of State Bds. of Accountancy July 29, 2011), http://www.aicpa.org/advocacy/state/downloadabledocuments/ uaamodelrules2011.pdf; N.Y. Comp. Codes R. & Regs. tit. 8, § 70.3; Cal. Bus. & Prof. Code § 5092; 225 Ill. Comp. Stat. 450/14; Va. Code Ann. § 54.1-4400; Minn. Stat. § 326A.03) Thus, those who did not perform work that required that they actually use accounting skills or attest skills, cannot qualify.

| | |
|---|---|
| Dated: New York, New York<br>July 13, 2012 | SIDLEY AUSTIN LLP<br><br>By:  */s/ Jennifer Altfeld Landau*<br>Michael C. Kelley (pro hac vice)<br>Douglas R. Hart (pro hac vice)<br>Jennifer Altfeld Landau (pro hac vice)<br>555 West Fifth Street, Suite 4000<br>Los Angeles, California 90013<br>Tel: (213) 896-6000<br>Fax: (213) 896-6600<br>Email: mkelley@sidley.com<br>Email: dhart@sidley.com<br>Email: jlandau@sidley.com<br><br>Colleen M. Kenney (pro hac vice)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Tel: (312) 853-7000<br>Fax: (312) 853-7036<br>Email: ckenney@sidley.com<br><br>Gregory G. Ballard<br>787 Seventh Avenue<br>New York, New York 10022<br>Tel.: (212) 839-5300<br>Fax: (212) 839-5599<br>Email: gballard@sidley.com<br><br>*Attorneys for Defendant KPMG LLP* |