UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

KYLE PIPPINS, JAMIE SCHINDLER, and EDWARD LAMBERT, Individually and On Behalf of All Others Similarly Situated,

           Plaintiffs,

        -against-

KPMG LLP,

           Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**11 CV 0377 (CM) (JLC)**

**ECF Case**

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO MODIFY THE FEBRUARY 3, 2012 HARD DRIVE ORDER TO TRANSFER THE COST OF PRESERVING CERTAIN HARD DRIVES PENDING APPEAL

SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Tel.: (212) 839-5300
Fax: (212) 839-5599

*Attorneys for Defendant KPMG LLP*

LA1 2636120v.1

# TABLE OF CONTENTS

                                                           **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ..........................................................................................................................1

STATEMENT OF FACTS ............................................................................................................3

I.      Proceedings In The District Court After Issuance Of The Hard Drive Order ......................3

           A.      Cross-Motions for Summary Judgment ....................................................................3

           B.      KPMG Produces Sample Hard Drives to Plaintiffs' Experts ...................................4

           C.      Entry Of Summary Judgment For KPMG ................................................................5

           D.      Costs of Preserving the Hard Drives ........................................................................5

ARGUMENT ..................................................................................................................................6

I.      It Is Appropriate To Shift Preservation Costs When, As Here, Those Costs Are Disproportionate To The Potential Value Of The Evidence .................................................6

CONCLUSION .............................................................................................................................12

DC1 3565374v.14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Boeynaems v. LA Fitness Int'l, Inc.*,
 285 F.R.D. 331 (E.D. Pa. 2012) ...................................................................................7, 8

*Daniel v. Coleman Co.*,
 No. 06-5706, 2007 WL 1463102 (W.D. Wash. May 17, 2007) ..........................................6

*Mahar v. US Xpress Enters., Inc.*,
 688 F. Supp. 2d 95 (N.D.N.Y. 2010) .................................................................................8

*Oppenheimer Fund, Inc. v. Sanders*,
 437 U.S. 340 (1978) ...........................................................................................................8

*Pippins v. KPMG LLP*,
 279 F.R.D. 245 (S.D.N.Y. 2012) ..........................................................................1, 2, 6, 7

*Pippins v. KPMG LLP*,
 No. 11-377, 2012 U.S. Dist. LEXIS 173918 (S.D.N.Y. Nov. 29, 2012) ..................3, 5, 10

*Rimkus Consulting Grp., Inc. v. Cammarata*,
 688 F. Supp. 2d 598 (W.D. Tex. 2010) ..............................................................................6

*Treppel v. Biovail Corp.*,
 233 F.R.D. 363 (S.D.N.Y. 2006) ...................................................................................7, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(2)(C) .......................................................................................................6

Fed. R. Civ. P. 56(d) .................................................................................................................3

Martin H. Redish & Colleen McNamara, *Back to the Future: Discovery Cost Allocation
 and Modern Procedural Theory*, 79 Geo. Wash. L. Rev. 773 (2011) ...............................8

Sedona Conference, *The Sedona Conference Commentary on Proportionality in
 Electronic Discovery*, 11 Sedona Conf. J. 289 (2010) ......................................................6

DC1 3565374v.14

Pursuant to the Scheduling Order entered on December 19, 2012, Defendant KPMG LLP ("KPMG"), by and through undersigned counsel, respectfully submits this memorandum of law in support of its Motion to Modify the February 3, 2012 Hard Drive Order to Transfer the Costs of Preserving Certain Hard Drives Pending Appeal.

## INTRODUCTION

With the Court's denial of Plaintiffs' request for reconsideration, judgment has been entered for KPMG, and KPMG seeks to transfer to Plaintiffs the costs of preserving and storing the hard drives of former and departing Audit Associates who have opted into the FLSA collective or are potential members of the putative New York Labor Law ("NYLL") class pending Plaintiffs' appeal.  Since this case began, KPMG has incurred nearly $2.35 million in costs necessary to preserve and store computer hard drives in this case.  Under this Court's February 3, 2012 Hard Drive Order, KPMG originally was required to preserve the hard drives of all former and departing Audit Associates in the country who were either potential members of the nationwide FLSA collective or the putative NYLL class.  *See Pippins v. KPMG LLP*, 279 F.R.D. 245, 247, 254 (S.D.N.Y. 2012).  Since the close of the opt-in period, KPMG has been required to preserve hard drives of former and departing Audit Associates who opted into the FLSA collective or are potential members of the putative NYLL class.  *Id.*

The ongoing cost of preserving these hard drives remains substantial:

- $310,650 to replace the 2,071 hard drives of FLSA Opt-in Plaintiffs and potential members of the putative NYLL class who stopped working at KPMG before the date on which this Court granted KPMG's motion for summary judgment.  If these hard drives must be preserved pending appeal, they cannot be used by other KPMG employees.  *See* Declaration of Kenneth C. Koch  ¶¶ 29-34 ("Koch Decl.").

- $632 each to preserve and replace the hard drive of any Opt-in Plaintiff or potential member of the NYLL putative class who has left KPMG since the Court granted KPMG's motion for summary judgment or who will leave KPMG while Plaintiffs' appeal is pending.  *See* Koch Decl. ¶¶ 35-41.

- $38 each to collect and preserve the network storage and Microsoft Exchange datastore of any Opt-in Plaintiff or potential member of the NYLL putative class who has left KPMG since this Court granted KPMG's motion for summary judgment or who will leave KPMG while Plaintiffs' appeal is pending.  *See id.* ¶¶ 42-44.

- $1,880 per year in storage costs.  *See id.* ¶¶ 45-47.

More than a year ago, the Court recognized that if KPMG prevailed on the merits, it would be appropriate to transfer the costs of preservation to Plaintiffs during the pendency of an appeal.  *Pippins*, 279 F.R.D. at 254.  Although the Court ordered KPMG to continue to preserve the hard drives at that time, it stated that if it were to grant KPMG's motion for summary judgment and find "as a matter of law and undisputed fact" that Audit Associates are exempt from the overtime requirements of the FLSA, then KPMG would "no longer need to preserve the hard drives of all Audit Associates for the purposes of this lawsuit," and the Court would "be amenable to an application to transfer the cost of preserving the drives to Plaintiffs pending any appeal."  *Id.*

When the Court granted KPMG's motion for summary judgment, it held that Audit Associates are exempt "learned professionals" who "need not be paid overtime." *Pippins v. KPMG LLP*, No. 11-377, 2012 U.S. Dist. LEXIS 173918, at *25 (S.D.N.Y. Nov. 29, 2012).  As the Court correctly anticipated in the Hard Drive Order, the record from the summary judgment proceedings makes it abundantly clear that the information on the hard drives is not necessary to

2

resolve the legal question whether Audit Associates are exempt professionals, and the cost of preserving the hard drives greatly exceeds any potential marginal benefit they could conceivably provide.  KPMG's motion to transfer the cost of preserving the hard drives to Plaintiffs pending appeal should be granted.

## STATEMENT OF FACTS

### I.   Proceedings In The District Court After Issuance Of The Hard Drive Order

#### A.   Cross-Motions for Summary Judgment

After the parties engaged in discovery, KPMG filed a motion for summary judgment on June 8, 2012, arguing that Audit Associates fall within the exemption to the FLSA for learned professionals.  ECF Dkt. Nos. 264-69.  That same day, Plaintiffs filed their own cross-motion for partial summary judgment, arguing that first-year Audit Associates are not professionally exempt.  ECF Dkt. Nos. 270-73.  Plaintiffs' motion for summary judgment did not require consideration of information from the hard drives, but instead was based on documents, interrogatory responses, and deposition testimony produced during discovery.  *See* Plaintiffs' Statement of Undisputed Material Facts [ECF Dkt. No. 271].

Both parties filed their oppositions on June 29, 2012.  ECF Dkt. Nos. 291-96.  Plaintiffs also moved "in the alternative under Fed. R. Civ. P. 56(d)" for the Court to "defer ruling on KPMG's summary judgment motion" to permit Plaintiffs to complete discovery, including obtaining a sample of the preserved hard drives.  *See* Memorandum of Law in Support of Plaintiffs' Motion for Discovery in the Alternative under Federal Rule of Civil Procedure 56(d), at 2, 4 [ECF Dkt. No. 289].  But even without the hard drives, Plaintiffs continued to argue that the record was sufficient to permit the Court to grant *their* motion for partial summary judgment.  ECF Dkt. No. 303.

### B.     KPMG Produces Sample Hard Drives to Plaintiffs' Experts.

At the same time that it briefed the summary judgment motions, KPMG recommenced negotiations with Plaintiffs and agreed to a Stipulated Order, which this Court entered on July 3, 2012, under which KPMG provided Plaintiffs' consultant, an expert in computer forensics, with a forensic image of five of the preserved hard drives.  Stipulation Regarding Certain Discovery Matters ¶ 2 [ECF Dkt. No. 297].  In return, Plaintiffs agreed to use the information gained by their expert to make a sampling proposal specifying the data on the hard drives they seek to preserve and the number of hard drives from which they seek this data.  *Id.* ¶ 9.

After their expert reviewed the hard drives, Plaintiffs demanded that KPMG continue to preserve hard drives of (1) all FLSA Opt-in Plaintiffs, (2) one-fourth of the hard drives of former Audit Associates who worked in New York and are not members of the FLSA collective, chosen through a "random selection process agreed upon by Plaintiffs and KPMG to ensure representativeness," and (3) one-third of the hard drives of New York Audit Associates departing on a going-forward basis, chosen through a "random selection process agreed upon by Plaintiffs and KPMG to ensure representativeness."  Plaintiffs' Hard Drive Sampling Proposal at 1 (attached as Exhibit A to Declaration of Colleen M. Kenney ("Kenney Decl.")).  Plaintiffs said all of these hard drives must be preserved because their consultant identified "e-mail metadata" showing the dates that e-mails were "created, accessed and modified," which Plaintiffs claimed would provide a "supplement" to KPMG's TIMEnX records of the hours Audit Associates worked.  *Id.* at 2.  Plaintiffs further claimed that "Microsoft Office data, including all documents created or modified using any Microsoft Office program" and information showing "the version of Microsoft Office in which Audit Associates created each preserved Office document" would allow Plaintiffs to "recreate and analyze" the tasks Audit Associates performed on their computers and would be "likely" to "flesh out and support the metadata analysis regarding Audit

4

Associates' work hours." *Id.* at 1-2.  KPMG responded that Plaintiffs' proposal was overbroad and did not explain how the ESI on the hard drives could be used to show the tasks Audit Associates performed or hours they worked.  KPMG therefore made a counter-proposal under which KPMG would preserve a more limited number of hard drives and its preservation obligation would cease if, among other things, KPMG's motion for summary judgment is granted.  *See* KPMG's Response to Plaintiffs' Hard Drive Sampling Proposal, sent on September 19, 2012 (attached as Exhibit B to Kenney Decl.).

### C. Entry Of Summary Judgment For KPMG

On November 30, 2012, this Court granted KPMG's motion for summary judgment and denied Plaintiffs' cross-motion for partial summary judgment.  The Court held that "Audit Associates are exempt as 'learned professionals,' and so need not be paid overtime." *Pippins*, 2012 U.S. Dist. LEXIS 173918 at *25.  After finding that accounting is a "field of science or learning" and that Audit Associates have "advanced knowledge" of accounting that is "customarily acquired by a prolonged course of specialized instruction," the Court determined that Audit Associates satisfy the "primary duty" prong of the test because their primary duty is "work that is 'predominantly intellectual in character,' and requires the 'constant exercise of discretion and judgment.'" *Id.* at *75 (quoting 29 C.F.R. § 541.301(b)).

### D. Costs of Preserving the Hard Drives

In accordance with the Court's Hard Drive Order, KPMG has undertaken efforts to preserve the 2,071 hard drives of Opt-in Plaintiffs and potential members of the NYLL putative class who left KPMG before this Court granted KPMG's motion for summary judgment, *see* Koch Decl. ¶ 26, and 27 hard drives from additional Opt-in Plaintiffs and potential members of the NYLL putative class who left KPMG after the Court granted KPMG's motion for summary judgment, *see* Koch Decl. ¶ 27.  As requested by the Court in the December 19 Scheduling

Order, KPMG has documented the costs of preserving these hard drives, as well as the hard drives of any other Opt-in Plaintiffs or potential members of the NYLL putative class who leave KPMG while Plaintiffs' appeal is pending, in the attached Koch Declaration.

## ARGUMENT

**I.     It Is Appropriate To Shift Preservation Costs When, As Here, Those Costs Are Disproportionate To The Potential Value Of The Evidence**

As this Court has recognized, the duty to *preserve* relevant evidence is "necessarily interrelated" with the standards governing the evidence that may have to be *produced*. *Pippins*, 279 F.R.D. at 255. And, as to production, Federal Rule of Civil Procedure 26(b)(2)(C) requires the court to limit discovery where "the burden or expense of the proposed discovery outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). Thus, the scope of the duty to preserve relevant evidence, like the scope of the duty to produce relevant evidence, depends, on what is "*proportional* to [the] case and consistent with clearly established applicable standards." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (W. D. Tex. 2010) (emphasis in original). Where information is expensive to preserve and provides little value to the case or is not unique, it need not be preserved.[1]

---

[1] *See, e.g.*, *Daniel v. Coleman, Co.*, No. 06-6706, 2007 WL 1463102, at *3 (W.D. Wash. May 17, 2007) (denying request for order prohibiting plaintiff from disposing of evidence that "might be of interest to the jury to see" where the burden of maintaining the evidence was substantial and defendant had other evidence that could be used to convey the information to the jury); The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 291 (2010) (Principle No. 1) (the "burdens and costs of preservation of potentially relevant information should be weighed against the potential value and uniqueness of the information when determining the appropriate scope of preservation").

6

Early in this case, when discovery had just begun and Plaintiffs had not yet inspected any of the hard drives, this Court required KPMG to preserve the hard drives of all former Audit Associates who were potential members of the FLSA collective or NYLL class.  But circumstances have changed, and a court "should always be willing" to adjust a party's preservation and discovery obligations as "new facts" emerge and the court becomes more knowledgeable about the case.  *Boeynaems v. LA Fitness Int'l, Inc.*, 285 F.R.D. 331, 340-41 (E.D. Pa. 2012) (granting defendants' request to transfer the $300 per month cost of storing over 1,000 boxes of documents because the boxes "contain disproportionately few relevant documents, and in any event, whatever germane nuggets of information they may contain, Plaintiffs should bear the entire costs of production[,] inspection, and preservation.").

In the past year, KPMG provided a sample of the hard drives for inspection by Plaintiffs' expert, both parties conducted discovery and filed summary judgment motions, and the Court granted summary judgment for KPMG, without relying on information from the hard drives.  Consequently, it no longer can be said that the record is "devoid of information" necessary to determine whether "the cost of preserving the hard drives outweighs its benefit." *Pippins*, 279 F.R.D. at 256.  Instead, the record now makes it abundantly clear that the information on the hard drives is not necessary to resolve the legal question whether Audit Associates are exempt professionals, and that the cost of preserving the hard drives greatly exceeds any marginal benefit they could conceivably provide in the subsequent litigation in this case.

Under these circumstances, when "the demanding party seeks the preservation of information that is likely to be of only marginal relevance but is costly to retain, then rather than deny a preservation order altogether, a court may condition it upon the requesting party assuming responsibility for part or all of the expense." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 373

7

(S.D.N.Y. 2006); *see also*, *e.g.*, *Mahar v. US Xpress Enters., Inc.*, 688 F. Supp. 2d 95, 113 (N.D.N.Y. 2010) (same); *cf. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) (although the "presumption is that the responding party must bear the expense of complying with discovery requests," the court may issue an order "conditioning discovery on the requesting party's payment of the costs of discovery" to protect the responding party from "'undue burden or expense'") (quoting Fed. R. Civ. P. 26(c)).  Such cost-shifting may be particularly appropriate when "the discovery is asymmetrical" in that one side has "very few documents" and the other has "millions of documents and millions of items of electronically stored information ("ESI")." *Boeynaems*, 285 F.R.D. at 334.  After all, if "a party bears none of the costs associated with the fulfillment of its requests, a rational party 'will request information that increases the expected value of her legal claim by a little, even though compliance costs the other party a lot.'"  Martin H. Redish & Colleen McNamara, *Back to the Future:  Discovery Cost Allocation and Modern Procedural Theory*, 79 Geo. Wash. L. Rev. 773, 800 (2011) (quoting Robert D. Cooter & Daniel L. Rubenfeld, *Reforming the New Discovery Rules*, 84 Geo. L.J. 61, 65 (1995)); *see also Boeynaems*, 285 F.R.D. at 338 n.7 (citing "the fairly extensive commentary in the legal literature on cost allocation for discovery, particularly where it is asymmetrical").

That is the situation in this case.  The Named Plaintiffs have few relevant documents and little, if any, ESI.  KPMG, in contrast, has already produced almost 300,000 pages just in response to Plaintiffs' document requests,[2] and millions of additional pages are stored on the hard drives that KPMG has been ordered to preserve.  *See* Koch Decl. ¶ 11 ("Depending on whether search terms are used to retrieve relevant information via a targeted extraction, it is my

---

[2] *See* Declaration of Colleen M. Kenney in Support of KPMG LLP's Opposition to Plaintiffs' Motion for Discovery in the Alternative under Federal Rule of Civil Procedure 56(d), ¶ 5 [ECF Dkt. No. 311] (attached as Exhibit C to Kenney Decl.).

8

experience that each hard drive would yield between 1 and 5 gigabytes of data (with 1 gigabyte of data being equivalent to approximately 75,000 printed pages)."). And when it is Plaintiffs that must bear the expense, they sought to limit discovery on grounds of reasonableness and burden. In particular, although they demand that KPMG preserve hard drives for all Opt-in Plaintiffs, Plaintiffs refused to produce discovery from even 25% of the Opt-In Plaintiffs, demanding that any discovery from the Opt-In Plaintiffs be limited to "a more reasonable number of Opt-Ins." February 23, 2012 Letter from J. Swartz (attached as Exhibit D to Kenney Decl.). As long as KPMG bears all the costs associated with preserving the hard drives, Plaintiffs have every incentive to ask that it be preserved even if it is highly unlikely that it will ever be used as evidence in this case.

To date, Plaintiffs have made the vague assertions that (1) they could use the hard drives to "recreate the tasks that Audit Associates performed on their laptops and determine how long it took to perform them," which supposedly "will show what Audit Associates did all day long and that they performed mostly menial, repetitive, routine duties," Memorandum of Law in Support of Plaintiffs' Motion for Discovery Under Rule 56(d), at 8; and (2) they believe the hard drives contain "important and useful metadata" that will provide a "supplement" to the information in the TIMEnX records, Plaintiffs' Hard Drive Sampling Proposal at 1-2. Both assertions are flawed and provide no basis for requiring KPMG to bear the cost of preserving the hard drives.

*First*, it is now clear that the hard drives are not necessary to determine whether Audit Associates are exempt professionals. The Court granted summary judgment to KPMG because the primary duty of Audit Associates, and their advanced knowledge of accounting, brings Audit Associates within the professional exemption of the FLSA as *a matter of law*. For example, the

Court found it "undisputed that the *primary* duties of Audit Associates involve performing the various tasks that are associated with performing audits—not doing clerical chores," and that the professional standards require "Audit Associates, no less than Senior Associates or any other individual on an audit team" to exhibit "'professional skepticism' throughout all aspects of their audit work and be on constant lookout for indications of fraud or misstatements as they perform audit procedures." *Pippins*, 2012 U.S. Dist. LEXIS 173918, at *76, *86 (emphasis in original). Thus, even though Audit Associates "spend a great deal of time doing things that are tedious and unglamorous, like comparing numbers or inputting numbers into a spreadsheet," that work is "vital" to the audit process; that it "is tedious and unglamorous does not make it unimportant or non-professional." *Id.* at *100-01.

*Second*, the possible future relevance of any e-mail metadata showing the date and time that emails were created, accessed or modified would be of such marginal utility that it would not justify requiring KPMG to bear the cost of preserving the hard drives. This Court held that KPMG properly classified Audit Associates as exempt professionals, so they are not entitled to overtime compensation. If that decision is affirmed on appeal, there will be no need for Plaintiffs to establish the hours individual Audit Associates worked. If instead Plaintiffs prevailed following appeal, there is abundant evidence that they can use to establish the hours they worked.

KPMG has maintained and will preserve until this litigation is final and all appeals have run the TIMEnX records showing the hours worked by the FLSA Opt-in plaintiffs and putative NYLL class members. During the relevant period, Audit Associates were required to record their time, whether spent on training, practice development, client work, or other projects, in the TIMEnX system. *See* Declaration of David Butler ¶ 72 (filed June 24, 2011) (attached as Exhibit

10

E to Kenney Decl.).  Indeed, named Plaintiff Edward Lambert authenticated his TIMEnX records at deposition and admitted that he had recorded the hours he worked.  *See* Deposition of Edward Lambert at 273:6-11 and Ex. 64 [ECF Dkt. Nos. 101 & 102, Exs. C & H to Declaration of Andrew W. Stern] (attached as Exhibits F & G to Kenney Decl.).

Plaintiffs nevertheless claim that there are instances in which the TIMEnX records were "not accurately recorded."  *See* Plaintiffs' Hard Drive Sampling Proposal at 2.  But Plaintiffs have neither identified the Opt-in Plaintiffs who failed to maintain accurate TIMEnX records nor explained how their hard drives could fill in any missing entries.  There is, moreover, other, more relevant evidence that can be used to resolve such atypical situations:  the testimony of the individual Audit Associate and his or her supervisors and co-workers.  The dates and times at which Audit Associates opened or composed emails would provide little, if any, additional credible evidence of the hours Audit Associates worked.  Such metadata cannot show what the Audit Associates did before and after they accessed or sent an email, or even whether they were working at all.

*Third*, the cost of preserving the hard drives is substantial.  As described in the Koch declaration, KPMG has incurred more than $2.36 million to date in connection with the preservation of computer hard drives in this action.  *See* Koch Decl. ¶ 24.  Further, KPMG will incur significant ongoing costs to preserve computer hard drives pending appeal in this case, including:  (1) $310,650 to replace the hard drives that were preserved before this Court granted KPMG's summary judgment motion and cannot be used by KPMG pending Plaintiffs' appeal, *see id*. ¶¶ 29-34; (2) approximately $632 per hard drive to preserve and replace the hard drive of each Opt-in Plaintiff or potential member of the NYLL putative class who left KPMG after summary judgment was granted or will leave KPMG while Plaintiffs' appeal is pending, *see id*.

11

¶¶ 35-41; (3) $38 to collect and preserve the network storage and Microsoft Exchange datastore of each Opt-in Plaintiff or potential member of the NYLL putative class who left KPMG after summary judgment was granted or will leave KPMG while Plaintiffs' appeal is pending, *see id.* ¶¶ 42-44; and (4) $1,880 per year in hard drive storage costs, *see id.* ¶¶ 45-47.

These costs far outweigh any marginal evidentiary benefit of the information or data that Plaintiffs might be able to retrieve from the hard drives. If Plaintiffs want these hard drives to be preserved pending appeal, they should bear the cost. Specifically, Plaintiffs should pay $330,620, which is the sum of (1) $310,650 to replace the hard drives that were preserved before this Court granted KPMG's summary judgment motion and cannot be used by KPMG (*see* Koch Decl. ¶ 34); (2) $1,880, the cost to store these hard drives for one year (*id.* ¶ 47) ; and (3) $18,090 to preserve and replace the hard drives of the 27 Audit Associates who were Opt-in Plaintiffs or potential members of the NYLL putative class who left employment at KPMG between the entry of summary judgment and January 15, 2013 (in the case of potential members of the putative NYLL class) or February 1, 2013 (in the case of Opt-in Plaintiffs) (*id.* ¶¶ 41, 44).

Plaintiffs should also be ordered to pay $670 for every other Opt-in Plaintiff or potential member of the NYLL putative class who has left or will leave employment with KPMG after that time and before final disposition of Plaintiffs' appeal. *See id.* ¶¶ 36, 43. KPMG will notify Plaintiffs' counsel of the number of such employees who have left employment with KPMG by September 30, 2013, and every six months thereafter while the appeal is pending, and Plaintiffs should pay KPMG within 15 days of receipt of this notification from KPMG.

## CONCLUSION

For the foregoing reasons, KPMG respectfully requests that this Court grant its Motion To Transfer The Cost Of Preserving Certain Hard Drives Pending Appeal.

12

| | |
|---|---|
| Dated: New York, New York<br>March 20, 2013 | SIDLEY AUSTIN LLP<br><br>By: /s/ Colleen M. Kenney<br>Colleen M. Kenney (pro hac vice)<br>One South Dearborn Street<br>Chicago, Illinois 60603<br>Tel: (312) 853–7000<br>Fax: (312) 853–7036<br>Email: ckenney@sidley.com<br><br>Michael C. Kelley (pro hac vice)<br>Douglas R. Hart (pro hac vice)<br>Jennifer Altfeld Landau (pro hac vice)<br>555 West Fifth Street, Suite 4000<br>Los Angeles, California 90013<br>Tel: (213) 896–6000<br>Fax: (213) 896–6600<br>Email: mkelley@sidley.com<br>Email: dhart@sidley.com<br>Email: jlandau@sidley.com<br><br>Gregory G. Ballard<br>787 Seventh Avenue<br>New York, New York 10022<br>Tel.: (212) 839–5300<br>Fax: (212) 839–5599<br>Email: gballard@sidley.com<br><br>*Attorneys for Defendant KPMG LLP* |