**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Rachel Bien
Elizabeth Wagoner
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg Shavitz (admitted *pro hac vice*)
Keith Stern (admitted *pro hac vice*)
Susan H. Stern (admitted *pro hac vice*)
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
Telephone: (456) 447-8888

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KYLE PIPPINS, JAMIE SCHINDLER, and EDWARD LAMBERT, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>KPMG LLP,<br><br>                Defendant. | No. 11 Civ. 0377 (CM) (JLC) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO MODIFY THE
FEBRUARY 3, 2012 HARD DRIVE ORDER TO TRANSFER THE
COST OF PRESERVING CERTAIN HARD DRIVES PENDING APPEAL**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

    I.      The Court Has Already Found KPMG at Fault for Delay. ................................. 1

    II.    Inspection of the Sample Hard Drives Yielded Relevant Data.............................. 3

    III.   The Court Has Consistently Refused to Shift Hard Drive Costs. .......................... 5

    IV.   KPMG Again Failed to Negotiate Preservation in Good Faith. ........................... 6

ARGUMENT ................................................................................................... 9

    I.      KPMG'S Motion Comes Too Late, Filed after Final Judgment and
         Seeking Expenses that KPMG Partially Already Incurred. .................................. 9

    II.    Cost Shifting Requires that Data Be *Inaccessible*, and the Court Has
         Already Ruled  that the Hard Drive Data is Accessible........................................ 10

    III.   KPMG Cites No Authority that a Requesting Party Can Be Ordered to
         Underwrite the Purchase of a Producing Party's Office Equipment that a
         Business Routinely Replaces. ........................................................................... 13

    IV.   KPMG's Other Factual Arguments Do Not Support Cost-Shifting. .................... 16

CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946) ................................................................................................3

*Boeynaems v. LA Fitness Int'l, Inc.*,
  285 F.R.D. 331 (E.D. Pa. 2012) ........................................................................14, 15

*Clean Harbors Envtl. Servs. v. ESIS, Inc.*,
  No. 09 Civ. 3789, 2011 WL 1897213 (N.D. Ill. May 17, 2011) ............................12

*Conn.Gen. Life Ins. Co. v. Earl Scheib, Inc.*,
  No. 11 Civ. 0788, 2013 WL 485846 (S.D. Cal. Feb. 6, 2013) ...............................12

*Dahl v. Bain Capital Partners, LLC*,
  655 F. Supp. 2d 146 (D. Mass. 2009) ....................................................................12

*Daniel v. Coleman Co., Inc.*,
  No. 06 Civ. 5706, 2007 WL 1463102 (W.D. Wash. May 17, 2007) ......................15

*Escamilla v. SMS Holdings Corp.*,
  No. 09 Civ. 2120, 2011 WL 5025254 (D. Minn. Oct. 21, 2011) ...........................13

*Fleisher v. Phoenix Life Ins. Co.*,
  No. 11 Civ. 8405, 2012 WL 6732905 (S.D.N.Y. Dec. 27, 2012) ....................14, 15

*Helmert v. Butterball, LLC*,
  No. 08 Civ. 00342 JLH, 2010 WL 2179180 (E.D. Ark. May 27, 2010) ...............12

*Juster Acquisition Co., LLC v. North Hudson Sewerage Auth.*,
  No. 12 Civ. 3427, 2013 WL 541972 (D.N.J. Feb. 11, 2013) ..................................12

*Kemper Mortg., Inc. v. Russell*,
  No. 06 Civ. 042, 2006 WL 2319858 (S.D. Ohio Apr. 18, 2006) ...........................11

*Kuebel v. Black & Decker Inc.*,
  643 F.3d 352 (2d Cir. 2011) ...............................................................................3, 18

*M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*,
  689 F.3d 263 (2d Cir. 2012) ....................................................................................9

*Mahar v. US Xpress Enters., Inc.*,
  688 F. Supp. 2d 95 (N.D.N.Y. 2010) .......................................................................9

*Mikron Indus., Inc. v. Hurd Windows & Doors, Inc.*,
  No. 07 Civ. 0532, 2008 WL 1805727 (W.D. Wash. Apr. 21, 2008) ......................11

*Nogle v. Beech St. Corp.*,
    No. 10 Civ. 01092, 2012 WL 3687570 (D. Nev. Aug. 27, 2012).............................13

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003)...................................................................................9, 10

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)...................................................................................................10

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
    271 F.R.D. 429 (S.D.N.Y. 2010) ..............................................................................13

*Pippins v. KPMG LLP*,
    279 F.R.D. 245 (S.D.N.Y. 2012) ........................................................................ passim

*Pippins v. KPMG LLP*,
    No. 11 Civ. 0377, 2011 WL 4701849 (S.D.N.Y. Oct. 7, 2011) ...................... passim

*Quinby v. WestLB AG*,
    245 F.R.D. 94 (S.D.N.Y. 2006) ................................................................................12

*Rimkus Consulting Group, Inc. v. Cammarata*,
    688 F. Supp. 2d 598 (S.D. Tex. 2010) ......................................................................14

*Treppel v. Biovail Corp.*,
    233 F.R.D. 363 (S.D.N.Y. 2006) ..............................................................................15

*Zubulake v. UBS Warburg LLC*,
    216 F.R.D. 280 (S.D.N.Y. 2003) ............................................................................10,

*Zubulake v. UBS Warburg LLC*,
    217 F.R.D. 309 (S.D.N.Y. 2003) ...............................................................11, 12, 15

## FEDERAL RULES

Fed. R. Civ. P. 26 .................................................................................................................11

Fed. R. Civ. P. 52 ...................................................................................................................1

Fed. R. Civ. P. 54 ...............................................................................................................1, 9

## OTHER AUTHORITIES

18B Charles Alan Wright et al., Federal Practice and Procedure § 4478.1, at n.1 (2d ed. 2005) ...............................................................................................................................9

The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery*.........................................................................................................14

## PRELIMINARY STATEMENT

KPMG's motion comes too late and, in any case, is unwarranted by well-settled case law that makes cost shifting an unusual exception.   For three months, from December 19, 2012 until March 20, 2013, defendant KPMG filed no motion to amend the protective order for preservation of hard drives, despite a clear invitation to do so by this Court.  Dec. 19, 2012 Order, ECF No. 352, at p.1.  Rather than take timely steps to obtain judicial clarification of its data-preservation obligations, KPMG chose the route of delay and expending of further costs.  Its failure to take timely action to amend the protective order, waiting inexplicably until after final judgment was already entered (on February 15, 2013), is cause enough for the Court to deny it any relief.  Fed. R. Civ. P. 54(b) (district court's discretion to amend prior orders terminates with entry of final judgment).  KPMG's motion is also futile because the case law is four-square against it.  Cost-shifting is not authorized for readily-accessible data, such as the hard drives in this case.  And the lion's share of KPMG's request for cost-shifting is based on Plaintiffs paying not just to store, but actually to *replace* business equipment (thousands of new hard drives) – costs that KPMG admits have partially already been incurred.  That Plaintiffs should bear this cost is, likewise, wholly unsupported by law.

## STATEMENT OF FACTS

**I.      The Court Has Already Found KPMG at Fault for Delay.**

This Court, as well as Magistrate Judge Cott, already once visited the controversy about the preservation of the hard drives, and issued detailed findings on the relevant issues.  Because final judgment has already been entered – and KPMG neither appealed the rulings, nor sought to amend the findings (under Fed. R. Civ. P. 52(b)) – these findings should be treated as both final and law of the case on this motion for the reasons stated below (*see* ARGUMENT, *infra*, § I).

On the original motion filed by KPMG in 2011, Magistrate Judge Cott noted that KPMG

was responsible for the predicament of storing the hard drives, due to its failure to compromise:

> Additionally, KPMG's ongoing burden is self-inflicted to a large extent. It is
> suffering from the effects of its own reluctance to work with Plaintiffs to generate
> a reasonable sample that may well be less burdensome to maintain . . . . [T]o
> date, KPMG has failed to work effectively with Plaintiffs in order to generate a
> potential means of constructing an appropriate sample. Despite KPMG's
> contention that Plaintiffs have "refus[ed] to even consider the application of
> search terms" as a means of producing a meaningful sample (Def.'s Mem. at 12),
> the record suggests that KPMG did not provide Plaintiffs with the opportunity to
> learn of the hard drive's contents— such as by reviewing a handful of hard drives
> that counsel had vetted for privilege or created a log of contents—that might have
> enabled them to "propound targeted requests for specific files contained within
> the hard drives at lesser cost." (Pls.' Mem. at 12). While the Court will not direct
> KPMG to provide Plaintiffs with five hard drives for inspection, it encourages the
> parties to continue to meet and confer in light of this decision to see if an
> agreement on sampling can be reached, sooner rather than later, thus alleviating
> the cost concerns KPMG has raised in its motion.

*Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2011 WL 4701849, at *9 (S.D.N.Y. Oct. 7, 2011).

This Court adopted Judge Cott's order and also made findings with respect to KPMG. It

faulted KPMG for "hiding behind the stay of discovery" to avoid producing any hard drives:

> KPMG, hiding behind the stay of discovery, insisted it could not produce even
> one hard drive for inspection by Plaintiffs. It also refused to respond to any
> question regarding the content of the hard drives, furnish Plaintiffs' access to any
> hard drives, inform Plaintiffs whether the data on the hard drives might be derived
> from other sources, or discuss the costs of possible alternatives to preserving the
> data on the hard drives. . . .  Instead, KPMG made a series of "take it or leave it"
> offers, and sought to have Plaintiffs agree that KPMG only had to preserve a
> smaller sample of the hard drives without giving Plaintiffs the opportunity to
> review the contents of any hard drive(s) first. . . .  KPMG also demanded that
> Plaintiffs offer search terms to run against the electronic files on the hard drives in
> order to narrow the scope of material to be reviewed—which strikes me as not an
> unreasonable request.

*Pippins v. KPMG LLP*, 279 F.R.D. 245, 251 (S.D.N.Y. 2012).  As this Court further noted,

"KPMG has inappropriately used the discovery stay as a shield, relying on it in refusing to

produce even a few hard drives so Plaintiffs could examine them.  Judge Cott put it perfectly: 'At

this point it is not entirely clear what the hard drives contain, in part because of KPMG's own

efforts to keep that information at bay.' Order at *7." *Id.* at 253.  It found KPMG culpable for the collapse in negotiations, because it refused to provide Plaintiffs with necessary information about the data:

> I certainly do not intend to reverse Judge Cott's Order on the purported ground that he erred by concluding that KPMG failed to demonstrate that preserving the hard drives was unreasonable. Frankly, the only things that were unreasonable were: (1) KPMG's refusal to turn over so much as a single hard drive so its contents could be examined; and (2) its refusal to do what was necessary in order to engage in good faith negotiations over the scope of preservation with Plaintiffs' counsel, in purported reliance on an order of this Court that it interpreted unreasonably. It smacks of chutzpah (no definition required) to argue that the Magistrate failed to balance the costs and benefits of preservation when KPMG refused to cooperate with that analysis by providing the very item that would, if examined, demonstrate whether there was any benefit at all to preservation.

*Id.* at 254.  As the Court summarized, "KPMG is hoist on its own petard."  *Id.* at 256.

## II.     Inspection of the Sample Hard Drives Yielded Relevant Data.

The ability of plaintiffs in a wage-and-hour case to establish that they worked overtime is important to proving both liability (that the employee worked more than 40 hours a week) and damages (the total number of overtime hours that went uncompensated).  *Pippins v. KPMG*, 2011 WL 4701849, at *6 (noting potential relevance of KPMG hard-drive data to prove liability and damages).  It has long been settled that where an employer's records are insufficient to establish an employee's working hours, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361-64 (2d Cir. 2011).  Plaintiffs face that very situation here, which is why the hard-drive data may become important to proving their claim should the Second Circuit hold, on *de novo* review of summary judgment, that the case must be remanded for trial.

There is cause to believe that KPMG's billing system understates the hours worked by

Plaintiffs.  Audit Associates often worked up to or more than 55 hours per week, including

weekends.  Declaration of Justin Swartz ("Swartz Decl.")[1] Ex. 9 (Lambert Dep. Tr.) 266:8-17.

During certain periods, KPMG itself mandated that Audit Associates work at least 50 hours per

week or 55 hours per week.  Ex. 10 (Schindler Dep. Tr.) 292:13-18.  While Audit Associates

were formally required to enter their hours in the company's TIMEnX client billing system, in

practice they testified that they underreported their time in order to report only mandated hours

and no more.  Ex. 10 (Schindler Dep. Tr.) 291:19-297:9; Ex. 11 (Young Dep. Tr.) 89:9-90:4.

The rationale for under-recording time is that KPMG does not collect money from the client

when the engagement team exceeds the time budgeted for the audit when the billing arrangement

is a flat fee arrangement.  Ex. 12 (Butler Dep. Tr.) 96:4-11.

KPMG seeks to rebut this showing with a page from Plaintiff Lambert's testimony

(Colleen Kenney Decl., Ex. G, Lambert Dep. at 273:6-11), with the following Q&A: "Q And do

the time records that you have fairly and accurately reflect the time that you recorded while you

were an audit associate at KPMG?" "A Yes. I recorded the hours that I worked."  But Lambert

here testifies simply that the time he recorded was reflected accurately in the time records, which

is not inconsistent with the above testimony that TIMEnX did not record every hour of work.

Consistent with this assumption, the forensic computer expert retained to examine five

hard drives found that they contained evidence from which a fact-finder could conclude that

Audit Associates worked far longer than eight-hour days.  The inspection took place under the

parties' stipulated protocol.  July 3, 2012 Stipulation Regarding Certain Discovery Matters, ECF

No. 297.  Based on this inspection, the expert opined that a representative sample of Audit

---

[1]        Unless otherwise indicated, all exhibits are attached to the Swartz Decl.

Associate hard drives should be preserved, because the Usage Information they contain (such as log-in and log-out data) may allow Plaintiffs to reconstruct Audit Associates' work hours.  Ex. 13 (Clingerman Decl.) ¶ 6-10.  Evidence already extracted from the sample hard drives indicates that Audit Associates used their laptop computers far more than forty hours a week.  Ex. 13 (Clingerman Decl.) ¶ 6-10.  The expert concluded that estimates of hours worked based on information stored on the hard drives could be elaborated and developed with additional information, and that information on the hard drives also demonstrated the kind of work that Audit Associates actually performed  – although the expert could not share that information with Plaintiffs' counsel due to the parties' stipulation.  *Id*. at ¶¶ 6-14.

## III.    The Court Has Consistently Refused to Shift Hard Drive Costs.

The Court has consistently refused all attempts by KPMG to shift preservation costs, to date.  Magistrate Judge Cott's original order declined to shift the cost of preservation of hard drives to the Plaintiffs.  *Pippins*, 2011 WL 4701849, at *10 n.2.  This Court affirmed Judge Cott's order, though reserving for future consideration whether costs should be shared or shifted pending appeal should KPMG prevail on the merits.  *Pippins*, 279 F.R.D. at 254 ("[i]n fact, if I issue a decision vindicating KPMG's position as a matter of law and undisputed fact, I will be amenable to an application to transfer the cost of preserving the drives to Plaintiffs pending any appeal").

On December 10, 2012, the Court reaffirmed the preservation order ("I am not modifying my prior order.  Until the appeal is decided, KPMG maintain the information.").  Ex. 2 (Endorsed Letter of Dec. 10, 2012).  The next day, the Court observed that it might "entertain an order to transfer the cost."  Ex. 3 (Endorsed Letter of Dec. 11, 2012).  In the Court's most recent order addressing the issue, it reaffirmed that "I am not going to grant an application by KPMG to

transfer the past cost of preserving the hard drives to plaintiffs or their counsel," though reserving the issue of "cost-shifting going forward."  Dec. 19, 2012 Order, ECF No. 352, at p. 1. From entry of that order until March 20, 2013, three months later, KPMG filed no motion in this Court.

(The appeal is meanwhile continuing in the Second Circuit.  Notice of appeal was filed March 11, 2013.  In response to this Court's December 19, 2012 Order, urging that the parties expedite the appeal, both parties have been moving cooperatively toward the creation of a joint appendix.  The Civil Appeal Management Program ("CAMP") conference took place the day this brief was filed, Monday, April 22, 2013.  The Plaintiffs' opening brief is scheduled for filing on June 26, 2013.)

**IV.   KPMG Again Failed to Negotiate Preservation in Good Faith.**

As noted above, this Court and Judge Cott previously found that KPMG refused to cooperate in efforts to minimize claimed expenses for preserving the hard drives.  *Pippins*, 279 F.R.D. at 256 ("KPMG is hoist on its own petard"); *Pippins*, 2011 WL 4701849, at *9 ("KPMG's ongoing burden is self-inflicted to a large extent").  One would have supposed, therefore, that KPMG might be more willing to pursue cooperation in the post-summary-judgment period to minimize cost.  Yet this was not the case: KPMG insisted as a precondition to any preservation plan that Plaintiffs had to cover preservation costs, a stance that was both inconsistent with the current order (that no past costs would be shifted) and calculated to stymie any agreement.

KPMG at first offered a plan of preservation that did not contemplate saving the hard-drive data for FLSA opt-ins after summary judgment was granted.  *See* Decl. of Colleen M. Kenney in Support of Defendant's Motion to Transfer the Cost of Preserving Certain Hard

Drives Pending Appeal, Ex. B (KPMG proposal of Sept. 19, 2012, p. 3 – duty to preserve would expire if summary judgment were granted on the FLSA claim, or the FLSA claim were otherwise dismissed). The plan continued to raise the prospect of shifting costs to the Plaintiffs. *Id.* p. 4. (Notably, in light of what actually happened, the plan did *not* address what would happen if the New York Labor Law claims were dismissed without prejudice to be re-filed in state court.)

KPMG's brief curiously ends its discussion of the negotiations between the parties at this point in September 2012, KPMG Br. at 5, while ignoring the more relevant events that occurred thereafter.

On November 26, 2012, Plaintiffs returned a revised version of KPMG's preservation proposal in the form of a stipulation, and accepted KPMG's proposal for the number of hard drives to be retained and how to select hard drives to be retained going forward. Ex. 1 (Email of November 26, 2012). Notably, *the stipulation did not preclude KPMG from seeking cost-shifting,* but neither did it compel plaintiffs to pay KPMG's costs. *Id.* The issue would thus be subject to further discussion or a decision by this Court. Four days later, on November 30, 2012, the Court granted summary judgment to KPMG on the FLSA claims.

On December 10 and 11, 2012, the parties filed letters with the Court stating their respective views on KPMG's preservation duties. Ex. 2 (Endorsed Letter of Dec. 10, 2012); Ex. 3 (Endorsed Letter of Dec. 11, 2012). KPMG, in its December 11, 2012 letter, stated that it would not sign the draft stipulation, noting that the cost-shifting issue was the paramount one: "Most significantly, for the current dispute, Plaintiffs' draft failed to require Plaintiffs to bear the costs of preservation pending appeal if KPMG prevailed on Summary Judgment." Ex. 3 (Endorsed Letter of Dec. 11, 2012) at p. 3. Had KPMG signed the stipulation, it would have been required to retain many fewer hard drives and maintained its right to seek cost shifting.

Instead, it decided to maintain the status quo, which required it to maintain *all of the hard drives*, thereby upping the ante for this motion.

Plaintiffs then followed up with an email requesting KPMG's input on the stipulation, Ex. 4 (Email of December 18, 2012), to which KPMG's counsel responded the following day that "[w]e will need more time to discuss internally.  We will get back to you as soon as we can.  Are you in the office next week?"  Ex. 5 (Email of Dec. 19, 2012).  Plaintiffs' counsel followed up again on December 23, 2012, specifically observing as follows: "Please take as much time as you need but also please understand that we would like to enter into an agreement like the one we previously negotiated that imposes little if any costs on KPMG going forward."  Ex. 6 (Email of Dec. 23, 2012).  Plaintiffs followed up on December 27, 2012 with another letter meant to resume talks.  Ex. 7 (Letter of Dec. 27, 2012).

In its final correspondence on the issue, KPMG's counsel sent a letter about cost shifting, KPMG rejected Plaintiffs' suggestion to copy (image) the data onto another medium, such as a server, to allow the hard drives to be freed up to be recycled as office equipment.  Ex. 8 (Letter of Jan. 7, 2013).  KPMG also said that it would file its motion to shift costs pending appeal on January 25, 2013, *id.* at p. 2, but then waited two full months after that date to do so.

Indeed, the only reason KPMG ever offered Plaintiffs for why it waited three months to file a motion to amend the preservation order was that it wanted to wait until the Court issued an unrelated order.  On February 27, 2013, at a courthouse in New Jersey, more than a month after KPMG suggested that it would file its motion and some eleven weeks after the Court invited it to do so, Plaintiffs' counsel asked KPMG's counsel why KPMG hadn't filed its cost-shifting motion yet.  KPMG's counsel said that KPMG had determined that it would make sense to wait until the Court had ruled on the motion for reconsideration.  Swartz Decl ¶ 9.

## ARGUMENT

**I.**   **KPMG'S Motion Comes Too Late, Filed after Final Judgment and Seeking Expenses that KPMG Partially Already Incurred.**

As one of KPMG's own authorities observes, "motions for a protective order must be made in a timely manner, which ordinarily means that the motion must be made by the date set for the discovery or production unless there was no opportunity to so move." *Mahar v. US Xpress Enters., Inc.,* 688 F. Supp. 2d 95, 113 (N.D.N.Y. 2010).  KPMG has been anything but timely here.  It intentionally waited until after final judgment was entered to file a motion.

Under Fed. R. Civ. P. 54 ("Rule 54") and law-of-the-case principles, this motion comes too late.  Because KPMG made a tactical decision not to appeal (or timely move to amend) the original discovery order placing the costs of preservation on itself, the door is now closed to reconsideration.  Rule 54(b) confirms the Court's authority to revise prior orders, but only prior to entry of final judgment.  The rule provides that until the court expressly directs entry of final judgment, an order that resolves fewer than all of the claims or rights among of the parties "is subject to revision at any time *before the entry of judgment* adjudicating all the claims and the rights and liabilities of all the parties" (emphasis added).  Indeed, even timely reconsideration motions should be entertained only in rare circumstances.  *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[w]e have limited district courts' reconsideration of earlier decisions under Rule 54(b) by treating those decisions as law of the case, which gives a district court discretion to revisit earlier rulings in the same case, subject to the caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again'") (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.1964)); *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 689 F.3d 263, 283 (2d Cir. 2012) (same); 18B Charles Alan Wright et al.,

Federal Practice and Procedure § 4478.1, at n.1 (2d ed. 2005) (observing that the Second Circuit in *Official Comm.* took "strict view of the relationship between Civil Rule 54(b) and law-of-the-case doctrine"). Because the motion is far from timely, it can be denied on that ground alone.

This is more than a procedural point. Notwithstanding this Court's December 19, 2012 Order that it would not "transfer the past cost of preserving the hard drives," that is apparently what KPMG now seeks here, at least in part. KPMG wants Plaintiffs to buy replacement hard drives, despite that KPMG has regularly purchased and (presumably) replaced hard drives since entry of the 2011-12 discovery orders. *See* Decl. of Kenneth C. Koch, ¶ 30 (KPMG purchased 2750 new hard drives in 2012, and 499 between November 30, 2012 and January 31, 2013). A new order such as KPMG now requests would retroactively alter the Court's prior ruling, and in effect award KPMG costs for some expenses that it has already incurred. Allowing KPMG to run up expenses, solely because of its delay, and then tax them to Plaintiffs would be grossly unfair.

Here, a final judgment *has* been entered and, significantly, KPMG declined to take an appeal of the preservation order. Having failed to take timely action either to seek Second Circuit review to reverse the order, or to request modification *before* entry of final judgment – as this Court implored KPMG to do in December – the time has passed for the relief KPMG seeks.

## II.   Cost Shifting Requires that Data Be *Inaccessible*, and the Court Has Already Ruled that the Hard Drive Data is Accessible.

In federal court, parties presumptively cover their own discovery expenses. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978); *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 283 (S.D.N.Y. 2003). Only in exceptional cases may courts shift costs, a step that this Court has properly rejected here. Because the Court has already held that the data on the hard drives is accessible, cost shifting is unwarranted. Accepting, as KPMG argues (at p. 6

10

of its brief), that the duty to preserve and produce data are "intertwined," then KPMG has failed

to cite any relevant case law ordering cost shifting for production *or* preservation when the data

is readily accessible.

As Magistrate Judge Cott held, and this Court affirmed, cost-shifting for ESI production

is not authorized where – as in this case –  the data remains in an *accessible* format, and Judge

Cott already held that the data in this case is accessible.  *Pippins,* 2011 WL 4701849, at *10 n.2

("as the parties apparently agree, whether or not that cost-shifting inquiry applies to the expense

of preserving digital data, it is inapplicable here because **the hard drives**, the ESI at issue, **are**

**still in accessible form**") (emphasis added).  *Zubulake,* a foundational case on cost shifting,

specifically held that cost-shifting is proper only for *inaccessible* data (*e.g.,* data on back-up

tapes).  *Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 324 (S.D.N.Y. 2003) (court "should

consider cost-shifting *only* when electronic data is relatively inaccessible, such as in backup

tapes").

The federal rules themselves authorize cost shifting *only* when the responding party

identifies the source of the requested data as not reasonably accessible because of undue burden

or cost.  Fed. R. Civ. P. 26(b)(2)(B).  *See, e.g., Mikron Indus., Inc. v. Hurd Windows & Doors,*

*Inc.*, No. 07 Civ. 0532, 2008 WL 1805727, at *2 (W.D. Wash. Apr. 21, 2008) (cost-shifting

inappropriate where data was available on "defendants' non-backup ESI, including *employee*

*hard drives* and active e-mail servers" because "this ESI is considered reasonably accessible

within the meaning of Fed. R. Civ. P. 26(b)(2)(C)").  This assumes, of course, that the cost of

*preservation* (as opposed to *production*) can be shifted at all, a premise that courts have not

embraced.  *See, e.g., Kemper Mortg., Inc. v. Russell*, No. 06 Civ. 042, 2006 WL 2319858, at *2

(S.D. Ohio Apr. 18, 2006) (finding court was without authority to shift cost of preservation of

data); *see also Pippins*, 2011 WL 4701849, at *10 n.2 (noting, but not reaching issue).  (This Court requested that the parties locate cases about cost-shifting of data preservation pending appeal, Dec. 19, 2012 Order, ECF No. 352, at p.2, but neither side has located such cases.)

Courts have repeatedly reaffirmed the *Zubulake* rule that cost-shifting is never justified for accessible data, such as Magistrate Judge Cott found the hard drives were in this case.  *See, e.g., Juster Acquisition Co., LLC v. North Hudson Sewerage Auth.*, No. 12 Civ. 3427, 2013 WL 541972, at *3 (D.N.J. Feb. 11, 2013) ("[c]ost-shifting is potentially appropriate only when *inaccessible* data is sought") (quoting *Zubulake*); *Conn. Gen. Life Ins. Co. v. Earl Scheib, Inc.*, No. 11 Civ. 0788, 2013 WL 485846, at *2 (S.D. Cal. Feb. 6, 2013) ("shifting the cost of production from the producing party to the requesting party should be considered only when data is sought from an inaccessible format"); *Clean Harbors Envtl. Servs. v. ESIS, Inc.*, No. 09 Civ. 3789, 2011 WL 1897213, at *2 (N.D. Ill. May 17, 2011) ("[c]ost shifting has been found to potentially be appropriate only when 'inaccessible data is sought,' such as with backup tapes"); *Helmert v. Butterball, LLC*, No. 08 Civ. 00342, 2010 WL 2179180, at *10 (E.D. Ark. May 27, 2010) ("a court should consider cost-shifting only when digital data is relatively inaccessible, such as in backup tapes"); *Dahl v. Bain Capital Partners, LLC*, 655 F. Supp. 2d 146, 149 (D. Mass. 2009) (cost-shifting denied where producing party "neglect[s] to identify which documents are inaccessible or the nature of that inaccessibility").

Even if the hard drives had become *in*accessible in the interim, owing to KPMG's actions since entry of the protective order, cost-shifting would remain inappropriate.  *See, e.g., Quinby v. WestLB AG*, 245 F.R.D. 94, 104 (S.D.N.Y. 2006) ("[I]f a party creates its own burden or expense by converting into an inaccessible format data that it should have reasonably foreseen would be discoverable material at a time when it should have anticipated litigation, then it should not be

entitled to shift the costs of restoring and searching the data."); *Nogle v. Beech St. Corp.*, No. 10 Civ. 01092, 2012 WL 3687570, at *8 (D. Nev. Aug. 27, 2012) ("The court, however, should only consider shifting the cost of production to the requesting party when the requested information is not reasonably accessible and the responding party has not caused the information to become inaccessible after it was on notice that the information was relevant to pending or reasonably anticipated litigation"); *Escamilla v. SMS Holdings Corp.*, No. 09 Civ. 2120, 2011 WL 5025254, at *10 (D. Minn. Oct. 21, 2011) (same, quoting *Quinby*); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 437 (S.D.N.Y. 2010) (same).

Because cost shifting is the exception to discovery principles, and KPMG has failed to make a case under established authority that preservation of the hard drives meets the legal standards for this exception, the Court should deny the motion for this reason as well.

### III.   KPMG Cites No Authority that a Requesting Party Can Be Ordered to Underwrite the Purchase of a Producing Party's Office Equipment that a Business Routinely Replaces.

Because the denial of cost-shifting has become final (KPMG did not appeal those orders), the most that KPMG can expect in this Court is to obtain shifting of *future* expenses. And yet its papers reveal that what KPMG truly wants is for Plaintiffs to shoulder the business expense of purchasing laptop hard-drives that must inevitably be replaced. Its papers do not clarify, among other things, how close to obsolescence the old, preserved hard drives might be – many of them could have been near replacement time, anyway – but KPMG wants Plaintiffs to underwrite thousands of entirely new hard drives for its business. As KPMG offers no authority suggesting that cost-shifting of routine business expenditures is ever allowed, the request should be denied.

Nearly all of KPMG's request ($310,650) is a demand that the Plaintiffs pay not merely to store the class member's data, but to pay for thousands of *new* hard drives to replace the ones

presently being used for data storage in this case (KPMG Br. at 11; Decl. of K. C. Koch, ¶ 34, laying out costs of replacement of preserved hard drives). Likewise, below the surface of KPMG's other alleged prospective costs lies *replacement* of drives (such as $632 "to preserve *and replace*" each departing Audit Associate's hard drive, *id.*). Such expenditures are routine business costs: KPMG's declaration (Decl. of Kenneth C. Koch, ¶¶ 29-31) admits that the acquisition of hard drives is a routine expense that the firm has already incurred in 2012-13.

The cases cited by KPMG do not support its extravagant request. No one doubts the generic proposition that the duty to preserve is proportional to the likely relevance of the documents (KPMG Br. at 6, citing *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010), and The Sedona Conference, *The Sedona Conference Commentary on Proportionality in Electronic Discovery*, 11 Sedona Conf. J. 289, 291 (Principle No. 1)). Yet these cases do not address whether the requesting party can be taxed with expenses to replace office equipment that, by KPMG's own admission, is routinely acquired by the firm anyway.

One case heavily relied upon by KPMG, *Boeynaems v. LA Fitness Int'l, Inc.*, 285 F.R.D. 331, 340 (E.D. Pa. 2012), is an outlier opinion that KPMG then inflates well beyond its significance. The court there, as KPMG notes, ordered that plaintiffs cover the physical storage of numerous crates of uninspected documents in a putative class action. But the reported cost was $300 a month, *id.*, or less than 0.1% of the cost being sought here. And KPMG is seeking far more than merely physical storage costs here – it wants Plaintiffs to cover equipment replacement costs as well, a vastly different demand not remotely supported by this case.

Moreover, this out-of-circuit opinion has been explicitly rejected in the Southern District of New York. In *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405, 2012 WL 6732905

(S.D.N.Y. Dec. 27, 2012), Magistrate Judge Francis wrote that "[t]he presumption created by *Boeynaems* [of pre-class certification cost-shifting] has never been adopted in this circuit, and, more importantly, it runs counter to the relevant principle announced by the Supreme Court: 'Under [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests[.]'" *Id.* at *4 (quoting *Oppenheimer Fund*, 437 U.S. at 358). *See also Zubulake*, 217 F.R.D. at 320 ("[i]n order to maintain the presumption that the responding party pays, the cost-shifting analysis must be neutral; close calls should be resolved in favor of the presumption" that responding party pays under the American Rule). Thus, Judge Francis applied test set forth in *Zubulake*, and concluded that cost-shifting was not appropriate under the circumstances. *Boeynaems* thus in no respect supports KPMG's outsized request.

Other cases cited by KPMG are even further afield. In *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 373 (S.D.N.Y. 2006), also cited by KPMG, Judge Francis observed that in some instances the cost of ESI production may be shifted, but (as KPMG fails to note) the court denied such an order in that case as premature – in an echo of this very case, "due in part to Biovail's refusal to provide information about its electronic information system." *Id.* The court nowhere suggested in the opinion that the requesting party could, under the aegis of cost-shifting, be ordered to pay for the producing party's replacement of standard business equipment.

Furthermore, it is passing strange that a major international corporation like KPMG would seek shelter in a case like *Daniel v. Coleman Co., Inc.*, No. 06 Civ. 5706, 2007 WL 1463102 (W.D. Wash. May 17, 2007), where the party with the asserted preservation duty was penurious. *Id.*, 2007 WL 1463102, at *3 (denying an order to preserve a camper where plaintiff was "sole source of support for her family": "She works for nine months of the year in that

capacity and earns $13.26 per hour. Presently it costs her $344.00 per month to maintain the camper. That means her first 25.9 hours of work per month goes to maintaining the camper.").

Finally, this motion implicates basic fairness: KPMG continued to incur expenses for months before it filed its motion in this Court to reconsider cost-shifting, and now seeks to have those expenses shifted onto Plaintiffs. The only expense that ought to be at issue, if any, is future costs, not those already incurred. For this reason also, the motion should be denied.

However the Court rules on this motion, Plaintiffs continue to desire negotiations with KPMG to reduce the cost burden on defendant, including a mutually-agreed version of the stipulation that Plaintiffs previously offered. While the negotiations have been suspended – KPMG would not agree to a stipulation until the cost-shifting issue was resolved in its favor – the parties should still attempt to work out a preservation arrangement that does not impose undue cost on either party. To that end, Plaintiffs request that should the Court decide to shift any future costs to Plaintiffs, that it do so without prejudice to the parties continuing their negotiations over preservation, and Plaintiffs electing not to seek further preservation of some or all of the data on the hard drives. In any event, Plaintiffs should not be taxed for expenses already incurred by KPMG while the prior orders (which did not allow shifting) were in effect.

**IV.  KPMG's Other Factual Arguments Do Not Support Cost-Shifting.**

Finally, even if there were case authority to support its motion, KPMG's factual record also fails to tip the balance in favor of cost-shifting to the Plaintiffs. To begin with, KPMG predicates much of its motion on an assumption that it was Plaintiffs who created the current problem by over-requesting discovery, on KPMG's theory of an alleged "asymmetry" between the parties' respective custody of data and other discovery. KPMG Br. at 8-9. But the difficulty here was in fact one KPMG's own making or, as this Court put it, "KPMG is hoist on its own

16

petard." *Pippins*, 279 F.R.D. at 256.  This Court found (and KPMG does not challenge as clearly erroneous) that it was KMPG's own failure to cooperate with Plaintiffs that required the Court to take strict, protective measures to prevent hard drive destruction.  Plaintiffs, for their part, had not sought full preservation of all absent class members' hard drives and even sought to negotiate with KPMG about measures that would be more economical, though no agreement was reached.

KPMG also points to the TIMEnX billing data as alternative evidence of hours that Plaintiffs worked.  KPMG Br. at 10-11.  First, KPMG had the opportunity to present this entire issue earlier on its first motion, which Judge Cott reviewed and rejected (in an order that is now law of the case).  *Pippins v. KPMG*, 2011 WL 4701849, at *8 ("the documents and other potential discovery materials that KPMG possesses do not appear to be duplicative of the material that Plaintiffs anticipate will be on the hard drives").  This Court agreed.  *Pippins*, 279 F.R.D. at 254 ("I agree with Judge Cott that the hard drives are likely to contain relevant information").  Second, Plaintiffs have also made a showing that such billing records are liable to be insufficient, because they were discouraged from recording their true hours owing to the company's billing practices.  Third, the expert declaration establishes as a factual matter that the hard drive data is liable to possess additional evidence of the hours that Plaintiffs worked.  Finally, we can only assume KPMG is being facetious when it argues that Plaintiffs' oral testimony of hours spent at work, undocumented and offered years after the fact, is "more relevant" than the recorded recollection of their work hours by contemporaneous metadata on the hard drives showing, when they logged on and off on a daily basis.  KPMG Br. at 11.  An employee's un-refreshed recollection is, of course, admissible evidence of overtime hours under

the FLSA, *Kuebel*, 643 F.3d at 361-64, but such recollection bolstered by the actual work history

contained in metadata on the hard drive is more likely to be complete and accurate.

## **CONCLUSION**

For the reasons stated above, we request that the Court deny KPMG's motion.

Dated:      New York, New York
            April 22, 2013

                            Respectfully submitted,

                            **OUTTEN & GOLDEN LLP**
                            By:

                            /s/ Justin M. Swartz
                            Justin M. Swartz
                            Rachel Bien
                            Elizabeth Wagoner
                            3 Park Avenue, 29th Floor
                            New York, New York 10016
                            Telephone:  (212) 245-1000

                            **SHAVITZ LAW GROUP, P.A.**
                            Gregg Shavitz (admitted *pro hac vice*)
                            Keith Stern (admitted *pro hac vice*)
                            Susan H. Stern (admitted *pro hac vice*)
                            1515 S. Federal Highway, Suite 404
                            Boca Raton, Florida 33432
                            Telephone: (456) 447-8888

                            ***Attorneys for Plaintiffs***